## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| Papaya Gaming Ltd., *et al.*,[1] | Case No. 26-11217 |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

## VERIFIED PETITION UNDER CHAPTER 15
## FOR RECOGNITION OF THE ISRAELI PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, ALTERNATIVELY, A FOREIGN NONMAIN PROCEEDING

Stanley B. Tarr (DE No. 5535)
Jennifer K. Malow (DE No. 7424)
**BLANK ROME LLP**
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:      (302) 425-6400
Facsimile:      (302) 425-6464
Stanley.Tarr@BlankRome.com
Jennifer.Malow@BlankRome.com

-and-

Evan J. Zucker (*pro hac vice* pending)
**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:      (212) 885-5000
Facsimile:      (917) 591-2726
Evan.Zucker@BlankRome.com

Michael Klein (*pro hac vice* pending)
Ben Thomson (*pro hac vice* pending)
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001-2157
Telephone:      (212) 479-6000
Facsimile:      (212) 479-6275
mklein@cooley.com
bthomson@cooley.com

-and-

Olya Antle (*pro hac vice* pending)
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:      (202) 842-7800
Facsimile:      (202) 842-7899
oantle@cooley.com

*Counsel to the Foreign Representative*

---

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 2

JURISDICTION AND VENUE ............................................................................................. 3

BACKGROUND .................................................................................................................... 4

    I.     THE DEBTORS' CORPORATE STRUCTURE, OPERATIONS, ASSETS AND LIABILITIES ............................................................................................................ 4

          A.    The Debtors' Corporate Structure and Leadership ................................... 4

          B.    The Debtors' Business Operations ............................................................. 6

          C.    The Debtors' Principal Liabilities and Obligations .................................. 7

               i.     Secured Debt ................................................................................. 7

               ii.    Office Leases ................................................................................ 8

               iii.   Trade Payables and Other Ordinary Course Obligations................ 8

               iv.   The Skillz Judgment ..................................................................... 9

               v.     Other Litigation ............................................................................ 9

    II.    EVENTS LEADING TO THE FILING OF THE ISRAELI PROCEEDING...... 10

    III.   THE ISRAELI PROCEEDING ........................................................................ 12

RELIEF REQUESTED........................................................................................................ 14

BASIS FOR RECOGNITION OF THE ISRAELI PROCEEDING............................................ 15

    I.     THE DEBTORS ARE ELIGIBLE FOR CHAPTER 15 RELIEF AND THE PETITIONS SATISFY THE STATUTORY BASIS FOR RECOGNITION ...... 16

          A.    The Israeli Proceeding is a "Foreign Proceeding" Under Section 101(23) of the Bankruptcy Code ........................................................................ 16

          B.    Mr. Bachar is an Appropriate Foreign Representative ........................... 20

          C.    The Petition Meets the Requirements of Section 1515........................... 21

          D.    Debtors have Property in the United States and Are Eligible for Chapter 15 Relief.................................................................................................. 22

    II.    THE ISRAELI PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN MAIN PROCEEDING........................................................................................ 23

    III.   ALTERNATIVELY, THE ISRAELI PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN NONMAIN PROCEEDING ......................... 26

    IV.   THE FOREIGN REPRESENTATIVE IS ENTITLED TO RELIEF UNDER SECTIONS 1520 AND 1521 UPON RECOGNITION...................................... 27

    V.    GRANTING RECOGNITION WOULD BE CONSISTENT WITH, AND NOT MANIFESTLY CONTRARY TO, UNITED STATES PUBLIC POLICY......... 30

RESERVATION OF RIGHTS .............................................................................................. 31

NO OTHER PROCEEDINGS INVOLVING THE DEBTORS ................................................. 32
NOTICE ............................................................................................................................. 32
CONCLUSION .................................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A.D.R. Kropveld Diamonds Ltd.*,
   Case No. 16-17143, D.I. 25 (Bankr. S.D. Fla. Jun. 16, 2016) .....................................................17

*In re ABC Learning Centres Ltd.*,
   445 B.R. 318 (Bankr. D. Del. 2010), *on reconsideration in part* (Jan. 21,
   2011), *subsequently aff'd,* 728 F.3d 301 (3d Cir. 2013) ......................................................18, 19

*In re Al Zawawi*,
   97 F.4th 1244 (11th Cir. 2024) ................................................................................................23

*In re Ashapura Minechem Ltd.*,
   480 B.R. 129 (S.D.N.Y. 2012) .................................................................................................19

*In re Atlas Shipping A/S*,
   404 B.R. 726 (Bankr. S.D.N.Y. 2009) .....................................................................................31

*In re Avanti Commc'ns Grp. PLC*,
   582 B.R. 603 (Bankr. S.D.N.Y. 2018) .....................................................................................28

*In re Bagir Grp. Ltd.*,
   Case No. 21-10803, D.I. 19 (Bankr. S.D.N.Y. Aug. 18, 2021) ................................................17

*In re Barnet*,
   737 F.3d 238 (2d Cir. 2013) .....................................................................................................23

*In re Bemarmara Consulting A.S.*,
   Case No. 13-13037..................................................................................................................22

*In re Betcorp Ltd.*,
   400 B.R. 266 (Bankr. D. Nev. 2009) ........................................................................................18

*In re Better Place, Inc.*,
   Case No. 13-11814 (LSS), D.I. 58 (Bankr. D. Del. Aug. 30, 2013)........................................17

*Beveridge v. Vidunas (In re O'Reilly)*,
   598 B.R. 784 (Bankr. W.D. Pa. 2019) ......................................................................................27

*In re Creative Fin. Ltd.*,
   543 B.R. 498 (Bankr. S.D.N.Y. 2016)......................................................................................27

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A.
   de C.V.)*,
   482 B.R. 96 (Bankr. S.D.N.Y. 2012)........................................................................................29

*Flynn v. Wallace (In re Irish Bank Resolution Corp.)*,
   538 B.R. 692 (D. Del. 2015) ...................................................................................18

*In re Gamida Cell Ltd.*,
   No. 24-10847 (JKS), D.I. 46 (Bankr. D. Del. May 15, 2024) ...................................17

*In re Glob. Ocean Carriers, Ltd.*,
   251 B.R. 31 (Bankr. D. Del. 2000) .............................................................................4

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990) ......................................................................................31

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005) ......................................................................................31

*In re Michael David Greenfield*,
   Case No. 21-11411, D.I. 20 (Bankr. S.D.N.Y. Oct. 20, 2021) ..................................17

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
   458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 88 (S.D.N.Y. 2012) .................26, 27, 28

*In re Mood Media Corp.*,
   569 B.R. 556 (Bankr. S.D.N.Y. 2017) ......................................................................26

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
   714 F.3d 127 (2d Cir. 2013) .................................................................................24, 30

*In re OAS S.A.*,
   533 B.R. 83 (Bankr. S.D.N.Y. 2015) ........................................................................30

*In re Ocean Rig UDW Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017) ......................................................................23

*In re Rede Energia S.A.*,
   515 B.R. 69 (Bankr. S.D.N.Y. 2014) ........................................................................28

*Shierson v. Vlieland-Boddy*,
   [2005] EWCA Civ. 974, [2005] W.L.R. 3966 (2005) ..............................................27

*In re Siu-Fung Ceramics Holdings Ltd.*,
   No. 24-33299, 2026 WL 382424 (Bankr. S.D. Tex. Feb. 10, 2026) .........................23

*Skillz Platform Inc. v. Papaya Gaming Ltd. et al.*,
   No. 1:24-cv-01646-DLC ..........................................................................................1, 9

*In re Sovereign Assets Ltd.*,
   Case No. 14-13009, D.I. 26 (Bankr. S.D.N.Y. Dec. 17, 2014)..................................17

*In re SPhinX, Ltd.*,
　351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007)............................24

*In re Toft*,
　453 B.R. 186 (Bankr. S.D.N.Y. 2011)................................................................................29

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
　825 F.2d 709 (2d Cir. 1987)...............................................................................................31

**Statutes**

11 U.S.C.
　§ 101(23)..................................................................................................16, 17, 18, 20
　§ 101(24)....................................................................................................3, 14, 20, 21
　§ 101(41)................................................................................................................20
　§ 105(a)..............................................................................................................3, 14
　§ 109(a)............................................................................................................22, 23
　§ 361........................................................................................................3, 14, 28
　§ 362........................................................................................................3, 14, 28
　§ 365..........................................................................................................3, 14
　§ 365(e)................................................................................................................29
　§ 1501..............................................................................................................15, 30
　§ 1502(2)..............................................................................................................26
　§ 1504..................................................................................................................1, 4
　§ 1506....................................................................................................................30
　§ 1507............................................................................................................3, 14, 29
　§ 1509......................................................................................................................4
　§ 1510............................................................................................................3, 15
　§ 1515.............................................................................................................. *passim*
　§ 1515(c)........................................................................................................22, 32
　§ 1516(c)................................................................................................................24
　§ 1517......................................................................................................3, 14, 16, 22
　§ 1517(a)........................................................................................................16, 21
　§ 1517(a)(3)..........................................................................................................21
　§ 1517(b)................................................................................................................16
　§ 1517(b)(1)..........................................................................................................23
　§ 1517(b)(2)..........................................................................................................26
　§ 1517(c)................................................................................................................32
　§ 1518....................................................................................................................32
　§ 1519........................................................................................................1, 3, 15, 29
　§ 1519(a)................................................................................................................32
　§ 1520....................................................................................................15, 26, 28
　§ 1520(a)................................................................................................................29
　§ 1520(a)(l)............................................................................................................28
　§ 1521.............................................................................................................. *passim*
　§ 1521(a)........................................................................................................28, 29, 32
　§ 1521(a)(1)..........................................................................................................29

§ 1521(a)(1)–(7)............................................................................................................29
§ 1521(a)(2) ...................................................................................................................29
§ 1521(a)(7) ...................................................................................................................29
§ 1522(a) ........................................................................................................................29

28 U.S.C.
§ 157...............................................................................................................................3
§ 157(b)..........................................................................................................................4
§ 1334............................................................................................................................3
§ 1410............................................................................................................................4

Insolvency and Financial Rehabilitation Law, 5778-2018 ...................................................1

Israel Companies Ordinance, 5743-1983...........................................................................17

**Other Authorities**

Fed. R. Bankr. P. 1007(a)(4).............................................................................................22

H.R. Rep. 109-31, pt. 1 (2005) .........................................................................................16

Insolvency and Economic Rehabilitation Regulations, 5779-2019 .......................................1

Local Rules of Bankruptcy Practice and Procedure, Rule 9013-1(f)....................................4

United States Constitution Article III ................................................................................4

Oriel Bachar, in his capacity as a duly authorized foreign representative (the "Foreign Representative") of Papaya Gaming Ltd. ("Papaya Israel"), a company incorporated in Israel, and Papaya Gaming Inc. ("Papaya US," and together with Papaya Israel, the "Debtors" or "Papaya"), a company incorporated in the State of Delaware, through their undersigned counsel, respectfully submits this verified petition (the "Verified Petition")[2] in furtherance of the *Official Form Petitions* (collectively, with this Verified Petition, the "Petitions"), filed as of the date hereof (the "Petition Date") under sections 1504 and 1515 of Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), commencing these Chapter 15 cases (the "Chapter 15 Cases") and seeking an order (a) granting recognition of the Debtors' debt arrangement proceeding commenced under the Insolvency and Financial Rehabilitation Law, 5778-2018 (as amended and modified, the "Israeli Insolvency Law") and Insolvency and Economic Rehabilitation Regulations, 5779-2019 (the "Israeli Regulations") pending before the District Court of Tel Aviv, Israel (the "Israeli Court"), Case No. 87154-07-26 (the "Israeli Proceeding" and the debt arrangement contemplated therein, the "Debt Arrangement")[3] as (i) a foreign main proceeding or, (ii) in the alternative, a foreign nonmain proceeding, and (b) granting related relief. In support thereof, the Foreign Representative respectfully states as follows:

---

[2] Filed contemporaneously with this Verified Petition are the (a) *Declaration of Oriel Bachar in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Foreign Rep. Declaration"), and (b) *Declaration of Pinni Yaniv in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding, and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Israeli Counsel Declaration"). All exhibits referenced herein are attached to the Foreign Rep. Declaration or the Israeli Counsel Declaration.

[3] A true and correct copy of the Debt Arrangement (without appendices), along with a certified translation, is attached to the Israeli Counsel Declaration as Exhibit C.

**PRELIMINARY STATEMENT**

1.        Founded in Israel in March 2016, Papaya Israel is a privately held Israeli company that develops and operates a proprietary mobile gaming platform through which players compete in multiplayer, skill-based, prize-bearing tournaments comprised of classic popular games, including Solitaire, Bingo, Bubble and others.

2.        Papaya US is a wholly owned subsidiary of Papaya Israel incorporated in Delaware in July 2016. Its function is limited in scope to collecting payments from end customers in the United States and other countries, and remitting the proceeds to Papaya Israel. In furtherance of that function, Papaya US enters into agreements with U.S.-based payment processors.

3.        On July 30, 2026, the Debtors commenced the Israeli Proceeding pursuant to Part J of the Israeli Insolvency Law, seeking approval of their proposed Debt Arrangement. Following commencement of the Israeli Proceeding, on August 1, 2026, the Israeli Court entered an order, on an *ex parte* basis, staying all proceedings against the Debtors and their assets, which is expected to be extended upon a hearing before the Israeli Court.

4.        The Foreign Representative has accordingly commenced these Chapter 15 Cases to recognize the Israeli Proceeding as a foreign main proceeding, or alternatively, as a foreign nonmain proceeding, and to seek recognition and enforcement of the Debt Arrangement in the United States, including related relief.

5.        Through the Debt Arrangement, the Debtors seek to address a certain class of Contingent Debt (as defined in the Debt Arrangement) and pay such allowed claims, in full, over time. The Debtors will continue to operate in the ordinary course of business and will pay all ordinary-course obligations.

6.        Through this Verified Petition, the Foreign Representative respectfully requests entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

2

(a) recognizing the Israeli Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code; (b) recognizing the Foreign Representative as a foreign representative of the Debtors as defined in section 101(24) of the Bankruptcy Code; (c) recognizing and enforcing such orders of the Israeli Court with respect to the Debtors that are issued prior to the hearing on the Petition; (d) applying sections 361, 362 and 365 of the Bankruptcy Code in these Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; (e) finding that the Petition meets the requirements of section 1515 of the Bankruptcy Code; (f) providing that no action taken by the Foreign Representative in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Israeli Proceeding, any order entered in respect of the Petitions, these Chapter 15 Cases, any further order for additional relief in these Chapter 15 Cases, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code; and (g) granting such other and further relief as the Court deems just and proper.[4] The relief requested in this Verified Petition is without prejudice to any additional relief the Foreign Representative may request, including the recognition and enforcement of any further orders of the Israeli Court, such as the order confirming the Debt Arrangement.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Foreign Representative properly commenced

---

[4] The Foreign Representative has also filed the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") concurrently herewith.

these Chapter 15 Cases pursuant to sections 1504 and 1509 of the Bankruptcy Code by filing the Petitions under section 1515 of the Bankruptcy Code.

8.    This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Foreign Representative consents to the entry of a final order by the Court in connection with this Verified Petition to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.    Venue is proper before the Court pursuant to 28 U.S.C. § 1410 because Papaya Israel's principal assets within the United States are located in Delaware[5] and such venue is consistent with the interests of justice and the convenience of the parties for Papaya US.

## BACKGROUND

### I.    THE DEBTORS' CORPORATE STRUCTURE, OPERATIONS, ASSETS AND LIABILITIES

10.    On the Petition Date, the Foreign Representative filed with this Court the Petitions under Chapter 15 of the Bankruptcy Code seeking recognition of the Israeli Proceeding.

### A.    The Debtors' Corporate Structure and Leadership

11.    Papaya Israel is a privately held company incorporated under the laws of Israel in March 2016 with its registered address and principal place of business at 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel. *See* Foreign Rep. Decl., ¶ 4. Papaya US is a corporation incorporated under the laws of the State of Delaware in July 2016 with its registered mailing address at 8 the Green, Ste. A, Dover, DE 19901. *Id*. Papaya Israel owns 100% of Papaya US. *Id*.

---

[5] *See In re Glob. Ocean Carriers, Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) (finding stock of a Delaware Corporation constitutes property in Delaware).

12.     The Papaya group of entities also includes the following non-debtor subsidiaries: Papaya Gaming UK Ltd. (England and Wales), which distributes the Company's games in the United Kingdom; Papaya Gaming India Private Limited (Mumbai, India), which has been dormant since October 2024; Papaya Gaming Brazil LTDA (Brazil), which has no active operations; Papaya Poland sp. Z.o.o. (Poland), which provides development services to the group; Papaya Stars Ltd. (Israel), a social network subsidiary; and Papaya Payments Inc. (Delaware, USA), which supports additional clearing solutions for the group. Foreign Rep. Decl., ¶ 5. None of these subsidiaries are Debtors in the Israeli Proceeding and are not seeking relief in the Chapter 15 Cases. *Id.* An organizational chart depicting the Papaya group's full corporate structure, including the Debtors and non-Debtors, is as follows:[6]



*Id.*

13.     Papaya Israel centrally manages all corporate activities of the Papaya group from its offices in Tel Aviv, Israel. Foreign Rep. Decl., ¶ 6. As of the Petition Date, Papaya Israel's board of directors is comprised of five directors all of whom are located in Israel. *Id*. Each of Papaya Israel's officers, including its Chief Executive Officer, Chief Financial Officer, Chief Technology Officer, Chief Operating Officer, VP Marketing, VP Business Development, VP HR, VP R&D, and VP General Counsel are likewise all located in Israel. *Id*.

14.     As of the Petition Date, Papaya US's board of directors consists of four directors, three of whom are located in Israel. Foreign Rep. Decl., ¶ 7. One of the directors, who is located

---

[6] Orange color in the organizational chart denotes Debtors and blue color denotes non-Debtors.

in the United States, serves as Papaya US's sole independent contractor and was appointed solely to serve as a local point of contact. *Id*. Papaya US's sole officer, Mr. Oriel Bachar, also serves as CEO of Papaya Israel and resides in Israel. *Id*.

**B.        The Debtors' Business Operations**

15.        Papaya is an established mobile gaming business founded in 2016 and headquartered in Tel Aviv, Israel. Foreign Rep. Decl., ¶ 8. Over the years, Papaya Israel has developed a proprietary platform (the "Papaya Platform") through which players ("Papaya Customers") compete in multiplayer, skill-based and prize-bearing tournaments of classic mobile games, including Solitaire, Bingo, Bubble, and others. *Id*. The United States accounts for the majority of the Debtors' total revenues. *Id*. As of the Petition Date, Papaya Israel serves approximately one million daily active users and four million monthly active users, running approximately fifteen million tournaments per day. *Id*.

16.        Revenue is primarily generated from the difference between entry fees collected from Papaya Customers and prizes distributed to winners. Foreign Rep. Decl., ¶ 9. Papaya Israel has achieved annual revenues of approximately half a billion dollars per year. *Id*.

17.        Papaya Israel leases its principal offices in Tel Aviv, pursuant to two long-term lease agreements. Foreign Rep. Decl., ¶ 10. As of the Petition Date, Papaya Israel employs approximately 300 full-time employees, all of whom are based in Israel and form the backbone of the group's business and technological capabilities, including software engineers, product personnel, designers, marketing personnel, and support staff.[7] *Id*. These employees perform all

---

[7] Papaya Poland, a non-Debtor and Papaya Israel's wholly owned subsidiary, provides development services to the group from its offices in Poland and engages approximately 40 individuals.

6

accounting, finance, treasury, tax, and human resources functions for the Debtors whose operations are highly integrated and managed from Papaya Israel's offices in Israel. *Id*.

18.     Papaya US has no employees, no physical offices or facilities, and no independent decision-making authority. Foreign Rep. Decl., ¶ 11. All of its activities are managed and directed by Papaya Israel's management in Israel. *Id*. Within the United States, Papaya US provides payment processing services for its parent. Pursuant to its agreements with five U.S.-based payment processors,[8] Papaya US receives player deposits into its U.S. bank accounts, and after remitting amounts owed to the applicable vendors, transfers the remaining funds to Papaya in the ordinary course. *Id*. Papaya US retains only such amounts as are necessary for its immediate operational needs, and as of year-end 2025, its cash balances represented approximately 2% of the group's total consolidated cash and cash equivalents. *Id*. Papaya Israel compensates Papaya US for its payment processing services on a cost-plus basis pursuant to the Debtors' Intercompany Services Agreement governed by the laws of Israel. *Id*.

### C.     **The Debtors' Principal Liabilities and Obligations**

19.     The following is a summary of the Debtors' principal liabilities and obligations as of the Petition Date.

#### i.     ***Secured Debt***

20.     Bank Leumi Ltd. ("Bank Leumi"), located in Israel, holds liens on deposits of Papaya Israel at Bank Leumi, which serve as collateral for the guarantees Bank Leumi issued to Papaya Israel's landlords. Foreign Rep. Decl., ¶ 14. Papaya Israel's obligation to Bank Leumi is contingent and arises only upon a lawful demand to forfeit a guarantee. *Id*. Absent such demand,

---

[8] Papaya US has entered into five merchant service agreements with the following providers: Worldpay Gaming Solutions, LLC, Silicon Valley Bank, CyberSource Corporation, Nuvei Technologies Inc. and PayPal, Inc. Each of the merchant service agreements was negotiated and approved by Papaya Israel's management in Israel, with Papaya US serving as the contracting party on behalf of its parent.

Papaya Israel owes no amounts to Bank Leumi. *Id*. Silicon Valley Bank, a division of First-Citizens Bank & Trust Company ("SVB") holds liens securing the Debtors' obligations with respect to credit cards issued by SVB. *Id*. As of the Petition Date, the Debtors are current on all obligations to SVB. *Id*. The Debtors have no other secured obligations. *Id*.

ii.    ***Office Leases***

21.    Papaya Israel leases its principal offices at 35 HaMasger St., Tel Aviv, Israel, under two separate lease agreements. Foreign Rep. Decl., ¶ 15. Current terms of the leases run through July 2027 and September 2027, respectively, with an aggregate remaining rental obligation of approximately $3.5 million. *Id*. Papaya Israel pays rent in advance on a quarterly basis and has no past-due amounts owing on its lease obligations. *Id*.

22.    Papaya US has no offices or facilities and has no real property interest of any kind. Foreign Rep. Decl., ¶ 16. Its presence in the United States is limited to a registered mailing address. *Id*.

iii.    ***Trade Payables and Other Ordinary Course Obligations***

23.    Papaya Israel incurs obligations to its employees, suppliers, technology vendors, marketing partners, and other service providers in the ordinary course. Foreign Rep. Decl., ¶ 17. As of the Petition Date, Papaya Israel is current on all such obligations, including its intercompany obligations to Papaya US. *Id*. In addition, as of the Petition Date, Papaya Israel holds approximately $12 million in player deposits, representing funds deposited by players on the Papaya Platform that may be withdrawn by players at any time. Player deposits are collected by Papaya US and remitted to Papaya Israel in the ordinary course. *Id*.

24.    Papaya US has no funded debt and no material third-party liabilities. Its only ordinary course obligations are its payment processing arrangements and intercompany balances owed to Papaya Israel, all of which are current as of the Petition Date. Foreign Rep. Decl., ¶ 18.

iv.    ***The Skillz Judgment***

25.    In March 2024, Firy Inc. (f/k/a Skillz Platform Inc.) ("Skillz") commenced an action against Papaya Israel and Papaya US in the United States District Court for the Southern District of New York (the "District Court"), styled *Skillz Platform Inc. v. Papaya Gaming Ltd. et al.*, No. 1:24-cv-01646-DLC (the "Skillz Litigation"), asserting claims for false advertising and unfair competition. Foreign Rep. Decl., ¶ 19. On April 23, 2026, the jury returned a verdict in favor of Skillz. *Id.* Following post-trial motions, on July 31, 2026, the District Court entered a final judgment on the damages award in the amount of $719 million plus certain fees and costs (the "Skillz Judgment"). *Id.* Papaya intends to appeal the Skillz Judgment. *Id.*

v.    ***Other Litigation***

26.    In addition to the Skillz Litigation, the Debtors are party to other legal proceedings (each of the following, a "Pending Proceeding" and collectively with the Skillz Litigation, "Pending Proceedings"). Foreign Rep. Decl., ¶ 20. ***First***, a consumer class action was filed in the Los Angeles County Superior Court by plaintiffs asserting false advertising claims on behalf of U.S. consumers, which the Debtors resolved through a $15 million settlement that received court approval in March 2026. *Id*. A motion filed by a group of dissenting plaintiffs to set aside the court's judgment approving the settlement was denied by operation of law on June 24, 2026. *Id.* The dissenting plaintiffs filed a notice of appeal of such denial on July 9, 2026, which remains pending. *Id*. ***Second***, an individual plaintiff, Dawn Pavlovich, who opted out of that settlement, has asserted substantially similar claims in a separate action pending in Los Angeles, California, seeking approximately $308,880 in damages, attributing the entire alleged damages jointly and severally to both the Debtors and a competitor entity, AviaGames; however, service of the statement of claim has not yet been effected as of the Petition Date. *Id*. ***Third***, an action initially filed in the U.S. District Court of the Southern District of New York by a plaintiff in March 2024

9

asserting claims that the Debtors' games were misleadingly advertised as fair and skill-based was transferred to arbitration in December 2024, and an individual arbitration demand was filed in February 2025. *Id*. In May 2025, the arbitrator ruled that the arbitration agreement is enforceable and that the arbitration shall continue before him. *Id*. **Fourth**, a motion to certify a consumer class action was filed in September 2025 in the Israeli Court against Papaya Israel by a former customer of Papaya Israel who is a resident of the United Kingdom, asserting false advertising claims on behalf of non-U.S. consumers. *Id*. A pretrial hearing in that matter is scheduled for December 1, 2026. *Id*.

27.     The Debtors are subject to a civil consumer investigation by the New Jersey Attorney General's Office concerning their past use of automated opponents. Foreign Rep. Decl., ¶ 21. The Debtors are cooperating fully with that investigation, which has been ongoing for approximately two-and-a-half years, and are actively working to bring it to a close. *Id*. Papaya is not seeking to address or impair any potential claims by the New Jersey Attorney General through the Debt Arrangement. The investigation additionally falls outside the definition of "Pending Proceeding" as defined above. The Debtors are not aware of any other proceedings. *Id*.

## II.     EVENTS LEADING TO THE FILING OF THE ISRAELI PROCEEDING

28.     The Debtors face an extraordinary liability arising from the Skillz Litigation, as the Skillz Judgment exceeds the Debtors' cash balances. Foreign Rep. Decl., ¶ 22. Skillz is likely to seek enforcement against the Debtors' U.S. assets during the pendency of the appeal, and such enforcement, if not stayed or overturned, would exhaust the Debtors' liquidity and compel their liquidation. *Id*. This outcome would be value-destructive to all stakeholders, as all creditors, including Skillz, would likely recover only a fraction of their claims, and hundreds of millions of dollars in going concern value would be erased. *Id*.

29.    Skillz's aggressive enforcement posture is not speculative. Immediately following the jury verdict, Skillz filed an emergency motion in the District Court seeking to restrain the Debtors from transferring any revenue earned in the United States to Israel pursuant to their established ordinary course operations, and from selling, transferring, assigning, or otherwise interfering with any assets that may be necessary to satisfy a forthcoming judgment. Foreign Rep. Decl., ¶ 23. Skillz filed this motion without prior notice to the Debtors, notwithstanding a joint stipulated briefing schedule that the parties entered just days earlier. *Id*. Had the motion been granted, it would have severely disrupted Papaya's business, required Papaya to affirmatively rework its fundamental operations, and risked preventing Papaya from paying its employees, business partners, and government authorities. *Id*. Although the District Court denied Skillz's emergency motion, the motion itself demonstrates that Skillz has every intention to take aggressive, immediate steps to collect on the Skillz Judgment and to interfere with the Debtors' ordinary course operations in the process. *Id*. Skillz's willingness to collapse the Debtors' going-concern value without regard for the consequences to other creditors, employees, or other stakeholders, let alone its own potential recovery, confirms that the Debtors cannot rely on Skillz to act as a responsible stakeholder during the pendency of the appeal. *Id*.

30.    Accordingly, rather than waiting for this harm to materialize, the Debtors, following consultations with their advisors and respective boards of directors, acted prudently and proactively to commence the Israeli Proceeding and convene meetings of creditors to vote on the proposed Debt Arrangement, which will provide for the payment of all the Debtors' obligations to their creditors in full and preserve the value of the business for the benefit of all stakeholders. Foreign Rep. Decl., ¶ 24.

### III.   THE ISRAELI PROCEEDING

31.   On July 30, 2026, the Debtors commenced the Israeli Proceeding under Part J of the Israeli Insolvency Law requesting entry of an order to approve the Debt Arrangement and grant related relief. Among other things, the Debtors filed with the Israeli Court (a) a motion to convene creditors' meetings for the purpose of approving the Debt Arrangement together with a copy of the Debt Arrangement and related appendices; (b) a motion for a temporary stay of proceedings for the purpose of convening creditors' meetings and approving the Debt Arrangement, initially, on an *ex parte* basis, and subsequently, on a 45-day basis subject to further extension upon additional application; (c) a motion for an order affirming the appointment of the Foreign Representative; and (d) affidavits in support of each of the foregoing. *See* Israeli Counsel Decl., ¶ 22.

32.   Through the Israeli Proceeding, the Debtors requested that the Israeli Court: (a) grant a temporary stay of proceedings against the Debtors, prohibiting the commencement or continuation of any legal proceedings against the Debtors, initially on an *ex parte* basis, and subsequently, on a 45-day basis upon a hearing on the motion, subject to further extension; (b) convene meetings of interested parties for the purpose of bringing the proposed Debt Arrangement to a vote by creditors; (c) appoint an arrangement administrator (the "Arrangement Administrator"), pursuant to section 326 of the Israeli Insolvency Law; (d) require all parties not excluded from the Debt Arrangement claiming a debt from the Debtors to file proofs of debt with the Arrangement Administrator within 21 days of the Arrangement Administrator's appointment; (e) narrow the list of creditors entitled to receive personal notice of the creditors' meetings and direct that publication of notice concerning creditors located in Israel and the United States be made in two newspapers of national circulation in Israel and two newspapers of national circulation in the United States; (f) grant an exemption from personal service of the Debt Arrangement application on employees and on material creditors to whom the Debt Arrangement

12

does not apply; (g) affirm the appointment of the Foreign Representative; (h) set deadlines for creditors to object to the relief requested by the Debtors; and (i) grant other related relief. Israeli Counsel Decl., ¶ 24.

33. On August 1, 2026, the Israeli Court entered an order, on an *ex parte* basis, temporarily staying all actions against the Debtors and prohibiting legal proceedings against the Debtors or with respect to any property of the Debtors from being commenced or continued, pending hearings before the Israeli Court (the "Stay Order").[9] Israeli Counsel Decl., ¶ 25. A true and correct copy of the Stay Order, together with a certified English translation, is attached to the Israeli Counsel Declaration as Exhibit E.

34. Under the proposed Debt Arrangement, the Debtors will continue to operate in the ordinary course of business and will pay in full all ordinary-course obligations to employees, suppliers, service providers, and trade counterparties as and when due. Israeli Counsel Decl., ¶ 26. During the arrangement period, Papaya Israel will not distribute dividends to shareholders, and all available cash balances, except for a fixed amount allocated for ongoing operations, will be directed to a special deposit administered by the Arrangement Administrator for the payment in full of all claims subject to compromise under the Debt Arrangement (the "Arrangement Claims"), including claims that are the subject of the Pending Proceedings. *Id.*

35. Arrangement Claims will be paid through a dedicated mechanism administered by the Arrangement Administrator, pursuant to which Papaya Israel will make periodic deposits into a supervised fund. Distributions to creditors will then be made from the fund in accordance with the outcome of their respective legal proceedings, once final. Israeli Counsel Decl., ¶ 27. Annual

---

[9] Upon a hearing on the Debtors' motion for a temporary stay of proceedings, the *ex parte* stay may be extended to a period of 45 days, which period can be extended further upon application.

deposits into the fund are expected to be approximately $90 million for 2026, with significant deposit amounts in subsequent years, as further detailed in the Debt Arrangement. *Id*. The Debtors' management and their respective boards of directors will remain in place to ensure the continued growth, profitability, and operational stability of the business. *Id*.

36. In connection with the Israeli Proceeding, the Debtors have proposed that creditors' meetings for the purpose of voting on the Debt Arrangement be divided into two separate class meetings among holders of Arrangement Claims in accordance with section 84 of the Israeli Insolvency Law: (a) a meeting of holders of pending claims and holders of alleged causes of action; and (b) a separate meeting of Skillz as a creditor whose interest is materially distinct from that of all other creditors holding Arrangement Claims. Israeli Counsel Decl., ¶ 28.

## RELIEF REQUESTED

37. To ensure effective and economic administration of the Debtors' restructuring efforts, prevent the disruption of business, and recognize the legal effect of the Israeli Proceeding in the United States, the Debtors require protection afforded to foreign debtors pursuant to Chapter 15 of the Bankruptcy Code.

38. The Foreign Representative seeks entry of the Proposed Order: (a) recognizing the Israeli Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code; (b) recognizing the Foreign Representative as a foreign representative of the Debtors as defined in section 101(24) of the Bankruptcy Code; (c) recognizing and enforcing such orders of the Israeli Court with respect to the Debtors that are issued prior to the hearing on the Petition; (d) applying sections 361, 362, and 365 of the Bankruptcy Code in these Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; (e) finding that the Petition meets the requirements of section 1515 of the Bankruptcy Code; (f) providing that no action taken by the Foreign Representative in preparing,

disseminating, applying for, implementing, or otherwise acting in furtherance of the Israeli Proceeding, any order entered in respect of the Petitions, these Chapter 15 Cases, any further order for additional relief in these Chapter 15 Cases, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code; and (g) granting such other and further relief as the Court deems just and proper.

39.    The relief requested in this Verified Petition is without prejudice to any additional relief the Foreign Representative may request, including the recognition of any further orders of the Israeli Court.

## BASIS FOR RECOGNITION OF THE ISRAELI PROCEEDING

40.    The Foreign Representative and the Debtors seek to fully implement the Debt Arrangement to effectuate its terms.  To that end, the Israeli Proceeding must be recognized and, upon subsequent motion, the Israeli Court's order confirming the Debt Arrangement must be binding and enforceable in the U.S., and creditors and other interested parties must be precluded from taking any actions in the United States that may frustrate the restructuring effectuated in the Israeli Proceeding.

41.    Chapter 15 of the Bankruptcy Code is designed to, among other things, protect and maximize the value of a foreign debtor's assets and to facilitate the rehabilitation of financially distressed businesses. *See* 11 U.S.C. § 1501. Chapter 15 further authorizes bankruptcy courts in the United States to grant assistance to a foreign representative in connection with a foreign proceeding, including by granting injunctive and other relief pursuant to sections 1519, 1520, and 1521 of the Bankruptcy Code.

42.    Consistent with these principles, the Foreign Representative commenced these Chapter 15 Cases to obtain recognition of the Israeli Proceeding and to give full recognition and

enforcement to the Israeli Court's order confirming the Debt Arrangement. The Foreign Representative believes that these Chapter 15 Cases will enable the Debtors to achieve the objectives of the Debt Arrangement by (a) ensuring that the parties in interest to the restructuring, including the Debtors and their creditors, are treated in the United States consistent with the intentions of the Debt Arrangement; (b) ensuring that the restructuring is binding, valid, and enforceable in the United States; (c) preserving the Debtors' ability to continue their business operations; and (d) ensuring proper coordination and full alignment between the Israeli Proceeding and these Chapter 15 Cases.

I.    **THE DEBTORS ARE ELIGIBLE FOR CHAPTER 15 RELIEF AND THE PETITIONS SATISFY THE STATUTORY BASIS FOR RECOGNITION**

43.    Section 1517(a) of the Bankruptcy Code provides that the Court shall enter an order recognizing a foreign proceeding if (a) recognition is sought for a "foreign proceeding" that qualifies as either "foreign main" or "foreign nonmain;" (b) recognition is sought by a "foreign representative;" and (c) the Chapter 15 petition meets certain procedural requirements in section 1515. *See* 11 U.S.C. § 1517(a). The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings. H.R. Rep. 109-31, pt. 1 (2005). The requirements of section 1517 are all that must be fulfilled to attain recognition. *Id.*

44.    Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, Chapter 15 Petitions meet the statutory requirements.

A.    **The Israeli Proceeding is a "Foreign Proceeding" Under Section 101(23) of the Bankruptcy Code**

45.    The Israeli Proceeding is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code. As a threshold matter, this Court has previously recognized an Israeli debt arrangement proceeding commenced under the Israeli Insolvency Law as a foreign main proceeding. *See* Order, *In re Gamida Cell Ltd.*, No. 24-10847 (JKS), D.I. 46 (Bankr. D. Del. May

16

15, 2024) (recognizing a debt arrangement proceeding commenced under Part J of the Israeli Insolvency Law as a foreign main proceeding). Additionally, courts in the United States, including this Court, have recognized other types of Israeli insolvency proceedings as foreign proceedings. *See e.g.*, Order, *In re Michael David Greenfield*, Case No. 21-11411, D.I. 20 (Bankr. S.D.N.Y. Oct. 20, 2021) (recognizing an Israeli liquidation proceeding under the Israeli Insolvency Law as a foreign main proceeding); Order, *In re Bagir Grp. Ltd.*, Case No. 21-10803, D.I. 19 (Bankr. S.D.N.Y. Aug. 18, 2021) (recognizing an Israeli liquidation proceeding under sections 18 and 24 of the Israeli Insolvency Law as a foreign main proceeding); Order, *In re A.D.R. Kropveld Diamonds Ltd.*, Case No. 16-17143, D.I. 25 (Bankr. S.D. Fla. Jun. 16, 2016) (recognizing Israeli liquidation proceeding, under the Israel Companies Ordinance,[10] 5743-1983, as a foreign main proceeding); Order, *In re Sovereign Assets Ltd.*, Case No. 14-13009, D.I. 26 (Bankr. S.D.N.Y. Dec. 17, 2014) (same); Order, *In re Better Place, Inc.*, Case No. 13-11814 (LSS), D.I. 58 (Bankr. D. Del. Aug. 30, 2013) (same).

46.    A foreign proceeding, as defined under section 101(23), has seven elements:

> (a) a proceeding; (b) either judicial or administrative in character; (c) collective in nature; (d) in a foreign country; (e) authorized or conducted under a law related to insolvency or the adjustment of debts; (f) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (g) which is for the purpose of reorganization or liquidation.

*See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 327 (Bankr. D. Del. 2010), *on reconsideration in part* (Jan. 21, 2011), *subsequently aff'd,* 728 F.3d 301 (3d Cir. 2013) (citation omitted); 11 U.S.C. § 101(23). As set forth below, the Israeli Proceeding satisfies all of the elements.

---

[10] The Israel Companies Ordinance, 5743-1983, is the predecessor statute to the Israeli Insolvency Law with regard to liquidations and rehabilitation proceedings.

47.     *First*, the Israeli Proceeding is clearly a "proceeding." "[T]he hallmark of a 'proceeding' is a statutory framework that contains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants, and creditors can know them in advance, and apply them evenly in practice." *Flynn v. Wallace (In re Irish Bank Resolution Corp.)*, 538 B.R. 692, 697 (D. Del. 2015) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009)). Here, the relevant statutory framework is provided by the Israeli Insolvency Law. Israeli Counsel Decl., Art. I. With respect to corporations, the Israeli Insolvency Law primarily provides two types of proceedings, which are subject to judicial oversight, to address a company's financial affairs, which entail three types of financial solutions: (i) liquidations, (ii) reorganizations, and (iii) negotiated debt arrangements. Israeli Counsel Decl., ¶ 12. Part J of the Israeli Insolvency Law provides for a procedure to allow a company to negotiate a "debt arrangement," whereby a compromise or arrangement between a company and its stakeholders (i.e., creditors and shareholders) or any class of them, can become binding on the company and all of its affected stakeholders if approved by the requisite majority, in accordance with the Israeli Insolvency Law, and sanctioned by an Israeli district court. *Id*. Thus, because the Israeli Proceeding is subject to the Israeli Insolvency Law, a statutory framework, the Israeli Proceeding is a "proceeding" within the meaning of 11 U.S.C. § 101(23).

48.     *Second*, the Israeli Proceeding is clearly judicial in nature given the oversight by the Israeli Court and that the Israeli Court is required to approve the Debt Arrangement. Israeli Counsel Decl., ¶¶ 6, 19. Additionally, each creditor and interested party has the right to seek relief in the Israeli Proceeding in accordance with applicable law. *Id.*, ¶ 30. Accordingly, the Israeli Proceeding is judicial in nature.

49.     *Third*, the Israeli Proceeding is collective in nature. A proceeding is "collective" if it considers the rights and obligations of all creditors. *See In re ABC Learning Centres Ltd.*, 445 B.R. at 328; *see also In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (stating a proceeding is collective in nature if it "considers the rights and obligations of all creditors."). A proceeding under the Israeli Insolvency Law is collective because it is designed to facilitate compromises and arrangements between a company and its creditors and to address creditors' claims against a debtor. Israeli Counsel Decl., ¶ 12.

50.     *Fourth*, the Israeli Proceeding is clearly pending in a foreign country. The Israeli Court, which is overseeing the Israeli Proceeding, is located in Tel Aviv, Israel. Israeli Counsel Decl., ¶ 4.

51.     *Fifth*, the Israeli Proceeding was initiated under a law relating to insolvency or adjustment of debt. The Israeli Proceeding was commenced under Part J of the Israeli Insolvency Law, which provides for the adjustment of a debtor's debts. Israeli Counsel Decl., ¶¶ 8, 12. Therefore, the Israeli Insolvency Law constitutes a law relating to insolvency or the adjustment of debt.

52.     *Sixth*, the Israeli Proceeding subjects the Debtors' assets and affairs to a foreign court's supervision. Under the terms of the Debt Arrangement, in accordance with Israeli Insolvency Law, creditors have the right to submit proofs of debt, object to the amount of their claims listed in the Debtors' schedules filed with the Israeli Court listing the Debtors' assets and liabilities, and object to the Debt Arrangement. Israeli Counsel Decl., ¶ 14. Through their motion to approve the Debt Arrangement filed in the Israeli Proceeding, the Debtors have requested that the Israeli Court set a deadline for filing of proofs of debt, as well as deadlines for creditors to object to the relief requested in the motions filed with the Israeli court. Israeli Counsel Decl., ¶ 24.

Furthermore, Israeli Court approval is required before the Debt Arrangement can become effective. Israeli Counsel Decl., ¶ 19.

53.     *Seventh*, the Israeli Proceeding is a proceeding for the purpose of effectuating a debt arrangement of the Debtors. Israeli Counsel Decl., ¶ 22. As described in the Israeli Counsel Declaration, a debtor may seek to reorganize by proposing a plan, compromise, or arrangement to be voted upon by creditors, and if approved by the requisite majority of creditors, implemented with the approval of the Israeli Court. *Id.*, ¶ 12. Here, the Debtors are implementing a restructuring through the Debt Arrangement by proposing a repayment plan for the Arrangement Claims and by enabling the continuation of the Debtors' ongoing business operations. Once the Debt Arrangement is approved, it will be binding on all creditors.

54.     Accordingly, the Israeli Proceeding is a foreign proceeding as defined under section 101(23).

### B.     Mr. Bachar is an Appropriate Foreign Representative

55.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

56.     *First*, Mr. Bachar clearly satisfies the requirement of being a "person" as section 101(41) of the Bankruptcy Code defines a person to include "individuals."

57.     *Second*, during the pendency of the Israeli Proceeding, the Debtors are authorized to administer the reorganization of their assets and affairs and to run their business in the ordinary course. Israeli Counsel Decl., ¶ 31. In furtherance thereof, the Debtors' respective boards of

20

directors appointed Mr. Bachar to serve as their "foreign representative" and to apply for the recognition of the Israeli Proceeding in this Court. *See* Foreign Rep. Decl., ¶ 29 and Exs. A and B; Israeli Counsel Decl., ¶ 31.

58.    Accordingly, Mr. Bachar is a duly authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code.

### C.    The Petition Meets the Requirements of Section 1515

59.    The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code. 11 U.S.C. § 1517(a)(3). Specifically, section 1515 of the Bankruptcy Code provides that:

> (b)    A petition for recognition shall be accompanied by—
>
> > (1)    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
> >
> > (2)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
> >
> > (3)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
>
> (c)    A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.
>
> (d)    The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515.

60.    Here, all of these procedural requirements are satisfied.

21

61.     *First*, the Foreign Representative has submitted documents, translated into English, which evidence the existence of the Israeli Proceeding, including an order entered by the Israeli Court and a copy of the Israeli Court's electronic docket.  *See* Exs. D and E to Israeli Counsel Decl.

62.     *Second*, the Foreign Representative has submitted evidence of Mr. Bachar's appointment as the Foreign Representative by the Debtors' respective boards of directors. *See* Exs. A and B to Foreign Rep. Decl.

63.     *Third*, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Rep. Declaration contains a statement identifying the Israeli Proceeding as the only foreign insolvency proceeding currently pending with respect to the Debtors. Foreign Rep. Decl., ¶ 47.

64.     *Fourth*, pursuant to Bankruptcy Rule 1007(a)(4), the required lists and statements were included with the Petitions.

65.     As set forth above, each of the prerequisites to recognition under section 1517 are met. Accordingly, the Foreign Representative respectfully requests that the Court recognize (i) the Israeli Proceeding and (ii) the Foreign Representative as a foreign representative.

**D.     Debtors have Property in the United States and Are Eligible for Chapter 15 Relief**

66.     In this District, a Chapter 15 debtor is not required to satisfy the property requirements of section 109(a).  *See, e.g., In re Bemarmara Consulting A.S.*, Case No. 13-13037, Hr'g Tr. 8:19-9:10 (Bankr. D. Del. Dec. 17, 2013), D.I. 38 (holding section 109(a) did not apply to chapter 15 case).[11]

---

[11] While courts within this District and elsewhere, including the Southern District of Florida, have found that the requirements of section 109(a) do not need to be satisfied by a Chapter 15 debtor, not all courts have agreed. *Compare In re Al Zawawi*, 97 F.4th 1244, 1247–48 (11th Cir. 2024) (finding that section 109(a) does not apply in a Chapter 15 proceeding), *with In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013) (holding that satisfaction of section 109(a) was a condition to chapter 15 relief); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 698 (Bankr. S.D.N.Y. 2017) (same); *In re Siu-Fung Ceramics Holdings Ltd.*, No. 24-33299, 2026 WL 382424, at *14 (Bankr. S.D. Tex. Feb. 10, 2026) (holding that section 109(a) of the Bankruptcy Code applies to Chapter 15). Because the Petitions are filed in this Court, the Debtors address section 109(a) requirements only out of an abundance of caution.

67.    To the extent, however, section 109(a) of the Bankruptcy Code is applicable in a Chapter 15 case, the debtor eligibility requirements are easily satisfied here. Each of the Debtors has property in the United States. Papaya Israel owns 100% of the stock in Papaya US, a Delaware incorporated company, and 100% of the stock in Papaya Payments Inc., also a Delaware corporation; maintains U.S.-based bank accounts; and holds an interest in unearned portions of a retainer provided to its Delaware counsel. Foreign Rep. Decl., ¶ 31. Papaya US maintains U.S.-based bank accounts; is party to five agreements with U.S. payment processors governed primarily by U.S. law; holds a $200,000 security deposit in the custody of Worldpay Gaming Solutions, LLC in connection with its merchant service agreement; maintains a claim for recovery of certain tax withholdings erroneously remitted to the IRS; holds an expected federal tax refund for the 2024 tax year; and maintains an interest in unearned portions of a retainer provided to its Delaware counsel. *Id.*

## II.    THE ISRAELI PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN MAIN PROCEEDING

68.    A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests ("COMI"). *See* 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c).

69.    When considering a debtor's COMI, many courts consider the analogous concept of an entity's "principal place of business" or "nerve center." *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 138 n.10 (2d Cir. 2013). The factors a court considers include: (a) the location of a debtor's headquarters; (b) the location of those persons or entities that actually manage a debtor; (c) the location of a debtor's primary assets; (d) the location

of the majority of the debtor's creditors or of a majority of the creditors that would be affected by the case; and/or (e) the jurisdiction whose law would apply to most disputes. *See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007). In *In re SPhinX*, the bankruptcy court explained that the factors should not be applied "mechanically" and "[i]nstead, they should be viewed in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *Id*.

70.     Here, Papaya Israel was incorporated in Israel and maintains its registered and principal office in Tel Aviv, creating a presumption that Israel is the COMI for this Debtor. *See* Foreign Rep. Decl., ¶ 36.

71.     Other factors that support Israel as the COMI for this Debtor include, but are not limited to, the following:

a.     Papaya Israel has conducted all of its business operations from Israel since its inception in 2016;

b.     Papaya Israel's senior management, including each of its officers, is located in Israel. All business decisions, including strategic direction, financial management, and day-to-day operational matters, are made by Papaya Israel's management out of Israel;

c.     Papaya Israel employs approximately 300 full-time employees, all of whom are located in Israel. All human resources decisions and functions are managed and performed in Israel;

d.     All intellectual property, including Papaya Israel's proprietary gaming platform and its leading game titles and respective trademarks such as Solitaire Cash, Bubble Cash, Bingo Cash, Triple Match Cash, and Blocks Match Cash, are owned exclusively by Papaya Israel and managed by its employees in Israel;

e.     All substantive activity, revenues, and tangible assets of the Papaya group are held and managed by Papaya Israel in Israel;

f.     All financial reporting, cash management, budgeting, treasury, and tax compliance functions for the Papaya group are performed by Papaya Israel's

24

finance department, based in Israel, with the assistance of its Israeli-based advisors, EY Israel and KPMG Israel. Papaya Israel's auditors are also located in Israel; and

g.    Papaya Israel's books and records are located and maintained in Israel, and its enterprise resource planning system is provided and hosted by Priority Software Solutions, an Israel-based company.

*Id.*

72.    Although Papaya US is incorporated in Delaware, the presumption that its registered office in Delaware is its COMI is rebuttable and overcome by the weight of undisputed facts demonstrating that Israel is likewise the COMI for Papaya US. Foreign Rep. Decl., ¶ 37.

73.    Specifically, the following factors support Israel as the COMI for Papaya US:

a.    Papaya US's presence in the United States is limited. It has a registered mailing address in Delaware but has no offices, facilities, or physical presence of any kind in the United States;

b.    Papaya US was incorporated to perform a limited function of processing payments for its parent, Papaya Israel, on a cost-plus basis pursuant to the Debtors' Intercompany Services Agreement, which is governed by Israeli law;

c.    Papaya US remits substantially all cash receipts to Papaya Israel, retaining only minimum amounts necessary for ongoing operational needs;

d.    Papaya US has no employees and no independent control over the scope, manner, or timing of its activities. It is entirely managed and operated by Papaya Israel and its employees and management, all of whom are located in Israel;

e.    Three of Papaya US's four directors are the co-founders of Papaya Israel and are located in Israel. All decision-making authority for Papaya US is performed in Israel. Its sole U.S.-based director and independent contractor serves solely as a local point of contact, reporting to and taking direction from Papaya Israel's CEO, Mr. Bachar;

f.    All financial reporting, treasury management, cash management, and tax compliance functions for Papaya US are performed by Papaya Israel's finance department in Israel. Papaya US is audited by EY Israel, and its financial advisors are likewise Israel-based;

g.    All material contracts entered into in the name of Papaya US, including the merchant service agreements with its five payment service provider

25

counterparties, were negotiated and approved by Papaya Israel's management in Israel with Papaya US serving as the contracting party on behalf of its parent.

*Id.*

74. Accordingly, the Debtors' COMI is in Israel and the Israeli Proceeding is a "foreign main proceeding."

## III. ALTERNATIVELY, THE ISRAELI PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN NONMAIN PROCEEDING

75. While the Israeli Proceeding clearly satisfies the statutory requirement for a foreign main proceeding, out of an abundance of caution, the Foreign Representative seeks, in the alternative, recognition of the Israeli Proceeding as a foreign nonmain proceeding. Courts recognize a foreign proceeding as a "foreign nonmain proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. § 1517(b)(2).

76. Section 1502(2) defines "[e]stablishment" as "any place of operations where the debtor carries out a nontransitory economic activity." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011), *aff'd,* 474 B.R. 88 (S.D.N.Y. 2012) ("Millennium Glob. I"). "Non-transitory" economic activity requires "a seat for local business activity" in the applicable country with a "local effect on the marketplace." *In re Mood Media Corp.*, 569 B.R. 556, 561–63 (Bankr. S.D.N.Y. 2017); *see also Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 806 (Bankr. W.D. Pa. 2019); *In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016). Thus, in determining whether a debtor has non-transitory economic activity in a country, courts consider several factors including: "the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence."

26

*Millennium Glob. I*, 458 B.R. at 85. At least one court—noting the "paucity of U.S. authority" on the subject—has favorably cited a "persuasive" English case holding that the presence of an asset and minimal management or organization can create a debtor establishment. *See Millennium Glob. I*, 458 B.R. at 84–85 (*citing Shierson v. Vlieland-Boddy*, [2005] EWCA Civ. 974, [2005] W.L.R. 3966 (2005)).

77.     In this case, Israel is the location of Papaya Israel's primary operations. Foreign Rep. Decl., ¶ 40. Its management, workforce, intellectual property and other assets are all located in Israel. *Id*. Papaya US's activities are entirely managed and operated from Israel in aid of the business operations for the entire group of entities, which takes place from Israel. *Id*. Both Debtors maintain bank accounts in Israel and have, at a minimum, an "establishment" in Israel. Foreign Rep. Decl., ¶¶ 31, 40. The Israeli Proceeding is therefore entitled to recognition as a foreign nonmain proceeding to the extent the Court determines it is not entitled to recognition as a foreign main proceeding.

78.     Denying recognition of the Israeli Proceeding as either a foreign main or nonmain proceeding would leave the Debtors without access to U.S. courts. Such a result would be at odds with the purpose of Chapter 15 of the Bankruptcy Code—to engender cooperation among foreign courts with respect to restructuring and insolvency proceedings. *See Millennium Glob. I*, 458 B.R. at 69, 81–82.

## IV.     THE FOREIGN REPRESENTATIVE IS ENTITLED TO RELIEF UNDER SECTIONS 1520 AND 1521 UPON RECOGNITION

79.     Upon recognition of a foreign main proceeding, certain relief is automatically granted as a matter of right. *See In re Rede Energia S.A.*, 515 B.R. 69, 89 (Bankr. S.D.N.Y. 2014) ("If a foreign case is recognized as a foreign main proceeding, as it was here, certain relief automatically goes into effect, pursuant to 11 U.S.C. § 1520 . . . ."); 11 U.S.C. § 1520. This relief

27

includes, among other things, imposition of an automatic stay with respect to the foreign debtor and all of its property in the United States. *See* 11 U.S.C. § 1520(a)(l) ("Upon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States.").

80.    As set forth above, the Foreign Representative has satisfied all of the requirements for recognition of the Israeli Proceeding as a foreign main proceeding.  Therefore, this Court should enter an order recognizing the Israeli Proceeding as a foreign main proceeding and grant all relief that is automatically available upon recognition of a foreign main proceeding, including imposition of the automatic stay with respect to all of the Debtors' property in the United States.

81.    Additionally, Section 1521(a) outlines the discretionary relief a court may order upon both main and nonmain recognition. The scope of the discretionary relief available under 1521(a) is "exceedingly broad," as the Bankruptcy Code permits the granting of "any appropriate relief" to effectuate the purposes of Chapter 15 and to protect a debtor's assets and the interests of creditors. *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 612 (Bankr. S.D.N.Y. 2018). Section 1521(a) contains a non-exhaustive list of specific items this Court has discretion to grant upon recognition. *See* 11 U.S.C. § 1521(a)(1)–(7).[12] Relief under section 1521(a) can only be granted if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel*

---

[12] Section 1507 of the Bankruptcy Code also empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; and (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title.  11 U.S.C. § 1507.

*Caribe, S.A. de C.V.)*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor balancing the interest of the foreign representative and those affected by the relief.").

82.     Here, the Foreign Representative seeks, to the extent it has not been stayed under section 1520(a): (a) a stay of the commencement or continuation of an individual action or proceeding concerning the Debtors' assets, rights, obligations or liabilities, and (b) a stay of execution against the Debtors' assets.[13] 11 U.S.C. § 1521(a)(1) & (2). Further, the Foreign Representative seeks additional relief that may be available to a trustee under the Bankruptcy Code, including the application of section 365(e) of the Bankruptcy Code with respect to these Chapter 15 Cases and the Debtors' executory contracts and unexpired leases. 11 U.S.C. § 1521(a)(7).

83.     The balance of interests weighs in favor of granting the relief requested. Recognition and the application of the stay will allow for the efficient and orderly administration of the Debtors' assets and affairs in a centralized, organized proceeding, maximizing the value of assets and preventing any opportunistic parties from circumventing the Israeli Proceeding and commencing actions in the United States at the expense of the broader process. Further, creditors and other parties in interest will be provided notice of the Israeli Proceeding through multiple channels, including personal service on certain known creditors and publication notice through two financial newspapers in Israel and two U.S. nationwide newspapers, as well as the Israeli Ministry of Justice website. *See* Israeli Counsel Decl., ¶ 30. Each creditor and party in interest may

---

[13] By separate motion filed contemporaneously herewith, the Foreign Representative seeks provisional relief pursuant to section 1519 of the Bankruptcy Code, and pending a hearing on recognition, interim relief in the form of a stay of actions and proceedings against the Debtors and their assets in the United States. At the appropriate time, the Foreign Representative will additionally seek enforcement of the Debt Arrangement and an order confirming and giving full force and effect to the same. The Foreign Representative reserves all rights to seek any and all additional and appropriate relief under sections 1521 and 1507 of the Bankruptcy Code.

seek relief in the Israeli Proceeding in accordance with applicable law. *Id*. The discretionary relief sought will not bar or otherwise disenfranchise parties from participating in the Israeli Proceeding, where each party's right to be heard will remain unaffected. Accordingly, any prejudice to creditors caused by the discretionary relief requested is extremely limited.

## V.   GRANTING RECOGNITION WOULD BE CONSISTENT WITH, AND NOT MANIFESTLY CONTRARY TO, UNITED STATES PUBLIC POLICY

84.     The purpose of Chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes the cooperation between foreign courts involved in cross-border insolvency proceedings, the protection and maximization of the value of the debtor's assets, and the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment." 11 U.S.C. § 1501.

85.     While section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires this Court to take any action that would be manifestly contrary to the public policy of the United States, this exception is narrowly construed. *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (citing *In re Fairfield Sentry Ltd.*, 714 F.3d at 139). The public policy exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code—the centralization of disputes involving the debtor. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .") (internal citations and quotation marks omitted). Indeed, it is a firm policy of the United States to "extend comity to foreign bankruptcy proceedings because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (internal quotation marks omitted) (citing *Victrix S.S. Co.,*

30

*S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987)); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").

86.     The relief requested by the Foreign Representative is not manifestly contrary to, but rather fully consistent with, the public policy of the United States. The purpose of the Israeli Proceeding is, *inter alia*, to bring about a final and exhaustive repayment of the Debtors' past obligations to their creditors in respect of debts created prior to the effective date of the Debt Arrangement, except for ordinary course obligations, and to enable the continuation of the Debtors' business operations.

87.     Recognition of the Israeli Proceeding as a foreign main proceeding will enable the Debtors to achieve these goals by fully implementing the Debt Arrangement, preserving employment of all employees of Papaya Israel, and allowing the business of the Debtors to continue without interruption. Thus, the Israeli Proceeding, like a Chapter 11 bankruptcy under the Bankruptcy Code, provides for a centralized restructuring process overseen by a court of competent jurisdiction, with all creditors' rights determined pursuant to a uniform, court-supervised framework. As a result, the Israeli Proceeding is demonstrably consistent with the public policy of the United States.

## RESERVATION OF RIGHTS

88.     Pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, the Foreign Representative hereby reserves all rights to seek, at any point (either before or after a change in circumstances under section 1518 of the Bankruptcy Code), further and other relief from this Court that may be necessary to implement the Israeli Proceeding and to effectuate the purposes of Chapter 15.

**NO OTHER PROCEEDINGS INVOLVING THE DEBTORS**

89.    Pursuant to section 1515 of the Bankruptcy Code, a Chapter 15 petition must "be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c). Other than the Israeli Proceeding, the Foreign Representative is not aware of any other foreign proceeding involving the Debtors. The Foreign Representative will promptly inform this Court if it becomes aware of any such foreign proceeding, or if it commences a foreign proceeding in another jurisdiction to aid in the administration of the Debtors' Israeli Proceeding.

**NOTICE**

90.    Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time." Accordingly, the Foreign Representative requests that this Court set the recognition hearing ("Recognition Hearing") for a date at the earliest possible convenience of the Court, in accordance with the Local Rules and Federal Rules of Bankruptcy Procedure. In addition, the Foreign Representative requests that this Court approve the manner of service set forth in the *Foreign Representative's Motion for Entry of an Order Specifying Form and Manner of Service and Notice*, filed contemporaneously herewith.

**CONCLUSION**

**WHEREFORE**, the Foreign Representative respectfully requests that this Court grant the relief requested herein and such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

32

Dated: August 2, 2026
Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
Jennifer K. Malow (DE No. 7424)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:     (302) 425-6400
Facsimile:     (302) 425-6464
Stanley.Tarr@BlankRome.com
Jennifer.Malow@BlankRome.com

-and-

Evan J. Zucker (*pro hac vice* pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 885-5000
Facsimile:     (917) 591-2726
Evan.Zucker@BlankRome.com

-and-

**COOLEY LLP**
Michael Klein (*pro hac vice* pending)
Ben Thomson (*pro hac vice* pending)
55 Hudson Yards
New York, NY 10001-2157
Telephone:     (212) 479-6000
Facsimile:     (212) 479-6275
mklein@cooley.com
bthomson@cooley.com

-and-

Olya Antle (*pro hac vice* pending)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:     (202) 842-7800
Facsimile:     (202) 842-7899
oantle@cooley.com

*Counsel to the Foreign Representative*

33