**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Papaya Gaming Ltd., *et al.*,[1] | Case No. 26-11217 |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

**DECLARATION OF ORIEL BACHAR IN SUPPORT OF THE (I) VERIFIED
PETITION UNDER CHAPTER 15 FOR RECOGNITION OF THE ISRAELI
PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, ALTERNATIVELY, A
FOREIGN NONMAIN PROCEEDING, AND (II) MOTION FOR PROVISIONAL
<u>RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE</u>**

I, Oriel Bachar, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.      I am a citizen of Israel and over the age of 18. I am the co-founder and Chief Executive Officer of Papaya Gaming Ltd. ("<u>Papaya Israel</u>") and Papaya Gaming, Inc. ("<u>Papaya US</u>," and together with Papaya Israel, "<u>Papaya</u>" or the "<u>Debtors</u>"). As set forth below, I am authorized to act on behalf of the Debtors in respect of their debt arrangement (the "<u>Debt Arrangement</u>") commenced under the Insolvency and Financial Rehabilitation Law, 5778-2018 (as amended and modified, the "<u>Israeli Insolvency Law</u>") and Insolvency and Economic Rehabilitation Regulations, 5779-2019 pending before the District Court of Tel Aviv, Israel (the "<u>Israeli Court</u>"), Case No. 87154-07-26 (the "<u>Israeli Proceeding</u>"). Consistent with my role as co-founder and Chief Executive Officer of the Debtors, I have knowledge of the Debtors' history, day-to-day operations, assets, financial condition, business affairs, and books and records. All facts set forth in this declaration are based upon (a) my personal knowledge of the Debtors and their

---

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

assets and financial condition; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Israeli Proceeding and these chapter 15 cases (the "Chapter 15 Cases"); or (c) information supplied to me by the other officers, directors, employees or professionals retained by the Debtors. I submit this declaration in support of (a) the *Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* (the "Verified Petition"),[2] and (b) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"), each filed contemporaneously herewith.

2. If I were called upon to testify, I could and would testify competently to the statements set forth herein.

## BACKGROUND

**I.    THE DEBTORS' CORPORATE STRUCTURE, OPERATIONS, ASSETS AND LIABILITIES**

3. On the date hereof (the "Petition Date"), in my capacity as foreign representative of the Debtors, I filed voluntary petitions (the "Petitions") with this Court under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of the Debtors' Israeli Proceeding.

**A.    The Debtors' Corporate Structure and Leadership**

4. Papaya Israel is a privately held company incorporated under the laws of Israel in March 2016 with its registered address and principal place of business at 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel. Papaya US is a corporation incorporated under the laws of the State

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Verified Petition.

of Delaware in July 2016 with its registered mailing address at 8 the Green, Ste. A, Dover, DE 19901. Papaya Israel owns 100% of Papaya US.

5. The Papaya group of entities also includes the following non-debtor subsidiaries: Papaya Gaming UK Ltd. (England and Wales), which distributes the Debtors' games in the United Kingdom; Papaya Gaming India Private Limited (Mumbai, India), which has been dormant since October 2024; Papaya Gaming Brazil LTDA (Brazil), which has no active operations; Papaya Poland sp. Z.o.o. (Poland), which provides development services to the group; Papaya Stars Ltd. (Israel), a social network subsidiary; and Papaya Payments Inc. (Delaware, USA), which supports additional clearing solutions for the group. None of these subsidiaries are Debtors in the Israeli Proceeding and are not seeking relief in the Chapter 15 Cases. An organizational chart depicting the Papaya group's full corporate structure, including the Debtors and non-Debtors, is as follows:[3]



6. Papaya Israel centrally manages all corporate activities of the Papaya group from its offices in Tel Aviv, Israel. As of the Petition Date, Papaya Israel's board of directors is comprised of five directors, all of whom are located in Israel. Each of Papaya Israel's officers, including its Chief Executive Officer, Chief Financial Officer, Chief Technology Officer, Chief Operating Officer, VP Marketing, VP Business Development, VP HR, VP R&D, and VP General Counsel are likewise all located in Israel.

---

[3] Orange color in the organizational chart denotes Debtors and blue color denotes non-Debtors.

7.      As of the Petition Date, Papaya US's board of directors consists of four directors, three of whom are located in Israel. One of the directors, who is located in the United States, serves as Papaya US's sole independent contractor and was appointed solely to serve as a local point of contact. I am Papaya US's sole officer and I reside in Israel.

**B.      The Debtors' Business Operations**

8.      Papaya is an established mobile gaming business founded and headquartered in Tel Aviv, Israel. Founded in 2016, Papaya Israel has developed a proprietary platform (the "Papaya Platform") through which players compete in multiplayer, skill-based and prize-bearing tournaments of classic mobile games, including Solitaire, Bingo, Bubble, and others. The United States jurisdiction accounts for the majority of the Debtors' total revenues. As of the Petition Date, Papaya Israel serves approximately one million daily active users and four million monthly active users, running approximately fifteen million tournaments per day.

9.      Revenue is primarily generated from the difference between entry fees collected from players and prizes distributed to winners. Papaya Israel has achieved annual revenues of approximately half a billion dollars per year.

10.      Papaya Israel leases its principal offices in Tel Aviv, pursuant to two long-term lease agreements running through July 2027 and September 2027, respectively. As of the Petition Date, Papaya Israel employs approximately 300 full-time employees, all of whom are based in Israel and form the backbone of the group's business and technological capabilities, including software engineers, product personnel, designers, marketing personnel, and support staff.[4] These employees perform all accounting, finance, treasury, tax, and human resources functions for the Debtors whose operations are highly integrated and managed from Papaya Israel's offices in Israel.

---

[4] Papaya Poland, a non-Debtor and Papaya Israel's wholly owned subsidiary, provides development services to the group from its offices in Poland and engages approximately 40 individuals.

11.     Papaya US has no employees, no physical offices or facilities, and no independent decision-making authority. All of its activities are managed and directed by Papaya Israel's management in Israel. Within the United States, Papaya US provides payment processing services for its parent. Pursuant to its agreements with five U.S.-based payment processors,[5] Papaya US receives player deposits into its U.S. bank accounts, and after remitting amounts owed to the applicable vendors, transfers the remaining funds to Papaya Israel in the ordinary course. Papaya US retains only such amounts as are necessary for its immediate operational needs, and as of year-end 2025, its cash balances represented approximately 2% of the group's total consolidated cash and cash equivalents. The funds transferred from the U.S. to Israel are used to fund, among other things, (a) salaries, benefits and other compensation and costs for the Debtors' employees and contractors, (b) withdrawals by its worldwide customers of amounts held on the Papaya Platform, (c) payments to the Debtors' vendors, and (d) tax obligations. The Debtors are reliant on the revenue they generate in the U.S. to fund these critical payments. Papaya Israel compensates Papaya US for its payment processing services on a cost-plus basis pursuant to the Debtors' Intercompany Services Agreement governed by the laws of Israel.

12.     The Debtors have contracts with service providers and vendors in the U.S., including the payment processors described above, that are critical to their business operations and, if terminated, would have an immediate crippling impact and be difficult to replace. Certain of these contracts contain provisions allowing the counterparty to terminate upon the commencement of the Israeli Proceeding or these Chapter 15 Cases.

---

[5] Papaya US has entered into five merchant service agreements with the following providers: Worldpay Gaming Solutions, LLC, Silicon Valley Bank, CyberSource Corporation, Nuvei Technologies Inc. and PayPal, Inc. Each of the merchant service agreements was negotiated and approved by Papaya Israel's management in Israel, with Papaya US serving as the contracting party on behalf of its parent.

### C. The Debtors' Principal Liabilities and Obligations

13. The following is a summary of the Debtors' principal liabilities and obligations as of the Petition Date.

#### i. *Secured Debt*

14. Bank Leumi Ltd. ("Bank Leumi"), located in Israel, holds liens on deposits of Papaya Israel at Bank Leumi, which serve as collateral for the guarantees Bank Leumi issued to Papaya Israel's landlords. Papaya Israel's obligation to Bank Leumi is contingent and arises only upon a lawful demand to forfeit a guarantee. Absent such demand, Papaya Israel owes no amounts to Bank Leumi. Silicon Valley Bank, a division of First-Citizens Bank & Trust Company ("SVB") holds liens securing the Debtors' obligations with respect to credit cards issued by SVB. As of the Petition Date, the Debtors are current on all obligations to SVB. The Debtors have no other secured obligations.

#### ii. *Office Leases*

15. Papaya Israel leases its principal offices at 35 HaMasger St., Tel Aviv, Israel, under two separate lease agreements. Current terms of the leases run through July 2027 and September 2027, respectively, with an aggregate remaining rental obligation of approximately $3.5 million. Papaya Israel pays rent in advance on a quarterly basis and has no past-due amounts owing on its lease obligations.

16. Papaya US has no offices or facilities and has no real property interest of any kind. Its physical presence in the United States is limited to its registered mailing address.

#### iii. *Trade Payables and Other Ordinary Course Obligations*

17. Papaya Israel incurs obligations to its employees, suppliers, technology vendors, marketing partners, and other service providers in the ordinary course. As of the Petition Date, Papaya Israel is current on all such obligations, including its intercompany obligations to Papaya

US. In addition, as of the Petition Date, Papaya Israel holds approximately $12 million in player deposits, representing funds deposited by players on the Papaya Platform that may be withdrawn by players at any time. Player deposits are collected by Papaya US and remitted to Papaya Israel in the ordinary course.

18.    Papaya US has no funded debt and no material third-party liabilities. Its only ordinary course obligations are its payment processing arrangements and intercompany balances owed to Papaya Israel, all of which are current as of the Petition Date.

        iv.    ***The Skillz Judgment***

19.    In March 2024, Firy Inc. (f/k/a Skillz Platform Inc.) ("Skillz") commenced an action against Papaya Israel and Papaya US in the United States District Court for the Southern District of New York (the "District Court"), styled *Skillz Platform Inc. v. Papaya Gaming Ltd. et al.*, No. 1:24-cv-01646-DLC (the "Skillz Litigation"), asserting claims for false advertising and unfair competition. On April 23, 2026, the jury returned a verdict in favor of Skillz. Following post-trial motions, on July 31, 2026, the District Court entered a final judgment on the damages award in the amount of $719 million plus certain fees and costs (the "Skillz Judgment"). Papaya intends to appeal the Skillz Judgment.

        v.    ***Other Litigation***

20.    I understand that in addition to the Skillz Litigation, the Debtors are party to several other legal proceedings (each of the following, a "Pending Proceeding" and collectively with the Skillz Litigation, "Pending Proceedings"). ***First***, a consumer class action was filed in the Los Angeles County Superior Court by plaintiffs asserting false advertising claims on behalf of U.S. consumers, which the Debtors resolved through a $15 million settlement that received court approval in March 2026. A motion filed by a group of dissenting plaintiffs to set aside the court's judgment approving the settlement was denied by operation of law on June 24, 2026. The

dissenting plaintiffs filed a notice of appeal of such denial on July 9, 2026, which remains pending. *Second*, an individual plaintiff, Dawn Pavlovich, who opted out of that settlement, has asserted substantially similar claims in a separate action pending in Los Angeles, California, seeking approximately $308,880 in damages, attributing the entire alleged damage jointly and severally to both the Debtors and a competitor entity, AviaGames; however, service of the statement of claim has not yet been effected as of the Petition Date. *Third*, an action initially filed in the U.S. District Court for the Southern District of New York by a plaintiff in March 2024 asserting claims that the Debtors' games were misleadingly advertised as fair and skill-based was transferred to arbitration in December 2024, and an individual arbitration demand was filed in February 2025. In May 2025, the arbitrator ruled that the arbitration agreement is enforceable and that the arbitration shall continue before him. *Fourth*, a motion to certify a consumer class action was filed in September 2025 in the Israeli Court against Papaya Israel by a former customer of Papaya Israel who is a resident of the United Kingdom, asserting false advertising claims on behalf of non-U.S. consumers. A pretrial hearing in that matter is scheduled for December 1, 2026.

21.     I am also informed that the Debtors are subject to a civil consumer investigation by the New Jersey Attorney General's Office concerning their past use of automated opponents. I understand that the Debtors are cooperating fully with that investigation, which has been ongoing for approximately two-and-a-half years, and are actively working to bring it to a close. Papaya is not seeking to address or impair any potential claims by the New Jersey Attorney General through the Debt Arrangement. I understand from the information provided by the Debtors' legal advisors that the New Jersey Attorney General is an "Excluded Creditor" under the Debt Arrangement, meaning its claim is excluded from the Debt Arrangement. The investigation additionally falls

outside the definition of "Pending Proceeding" as defined above and in the Verified Petition. I am not aware of any other proceedings against the Debtors.

## II.    EVENTS LEADING TO THE FILING OF THE ISRAELI PROCEEDING

22.    The Debtors face an extraordinary liability arising from the Skillz Litigation. As I understand, the Skillz Judgment exceeds the Debtors' cash balances. Based on my review of the circumstances and consultations with the Debtors' advisors, I am confident that Skillz will seek enforcement against the Debtors' U.S. assets during the pendency of the appeal, and such enforcement, if not stayed or overturned, would exhaust the Debtors' liquidity and compel their liquidation. This outcome would be value-destructive to all stakeholders (e.g., employees, vendors, shareholders, players), as all creditors, including Skillz, would likely recover only a fraction of their claims, and hundreds of millions of dollars in going concern value would be destroyed.

23.    Skillz's aggressive enforcement posture is not speculative. I am informed that immediately following the jury verdict, Skillz filed an emergency motion in the District Court seeking to restrain the Debtors from transferring any revenue earned in the United States to Israel pursuant to their established ordinary course operations, and from selling, transferring, assigning, or otherwise interfering with any assets that may be necessary to satisfy a forthcoming judgment. I am further informed that Skillz filed this motion without prior notice to the Debtors, notwithstanding a joint stipulated briefing schedule that the parties entered just days earlier. Had the motion been granted, it would have severely disrupted Papaya's business, required Papaya to affirmatively rework its fundamental operations, and risked preventing Papaya from paying its employees, business partners, and government authorities. The District Court denied Skillz's emergency motion. Nevertheless, the motion itself demonstrates, in my view, that Skillz has every intention to take aggressive, immediate steps to collect on the Skillz Judgment and to interfere with the Debtors' ordinary course operations in the process. Skillz's willingness to collapse the

Debtors' going-concern value without regard for the consequences to other creditors, employees, or other stakeholders, let alone its own potential recovery, confirms that the Debtors cannot rely on Skillz to act as a responsible stakeholder during the pendency of the appeal.

24.     Rather than waiting for this harm to materialize, the Debtors, following consultations with their advisors and respective boards of directors, acted proactively and prudently to commence the Israeli Proceeding and convene meetings of creditors to vote on the proposed Debt Arrangement, which will provide for the payment in full of all Papaya's obligations to creditors and preserve the value of the business for the benefit of all stakeholders.

## III.    THE ISRAELI PROCEEDING

25.     On July 30, 2026, the Debtors commenced the Israeli Proceeding under Part J of the Israeli Insolvency Law requesting entry of an order to approve the Debt Arrangement and grant related relief.

26.     The Israeli Proceeding is the only foreign insolvency proceeding currently pending with respect to the Debtors.

27.     Additional details concerning the Israeli Proceeding, as well as the events following the commencement of the Israeli Proceeding, are reflected in the *Declaration of Pinni Yaniv in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding, and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Israeli Counsel Declaration").

## IV.    THE CHAPTER 15 CASE

### A.     Appointment as a Foreign Representative

28.     I have been informed by the Debtors' legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by a "foreign

representative." I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> . . . a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

29.     As set forth in the Israeli Counsel Declaration, I am informed that during the pendency of the Israeli Proceeding, the Debtors are authorized to administer the reorganization of their assets and affairs and to run their business in the ordinary course. In furtherance thereof, the Debtors' respective boards of directors each appointed me to serve as the Debtors' "foreign representative" and to apply for the recognition of the Israeli Proceeding in this Court. *See* Exhibit A (Papaya Israel Board Resolutions) and Exhibit B (Papaya US Board Resolutions).

30.     In light of the foregoing, I believe that I have the authority to administer the reorganization of the Debtors' assets or affairs and, therefore, I satisfy the requirements to serve as the foreign representative of the Israeli Proceeding.

## B.     The Debtors Have Property in the United States

31.     I am informed that a Chapter 15 debtor is not required to satisfy the property requirements of Section 109(a) of the Bankruptcy Code. However, even if that section applies, each of the Debtors has property in the United States. Papaya Israel owns 100% of the stock in Papaya US, a Delaware incorporated company, and 100% of the stock in Papaya Payments Inc., also a Delaware corporation; maintains U.S.-based bank accounts; and holds an interest in unearned portions of a retainer provided to its Delaware counsel. Papaya US maintains U.S.-based bank accounts; is party to five agreements with U.S. payment processors governed primarily by U.S. law; holds a $200,000 security deposit in the custody of Worldpay Gaming Solutions, LLC

in connection with its merchant service agreement; maintains a claim for recovery of certain tax withholdings erroneously remitted to the IRS; holds an expected federal tax refund for the 2024 tax year; and maintains an interest in unearned portions of a retainer provided to its Delaware counsel.

**C.**   **The Israeli Proceeding is a Foreign Main Proceeding**

32.   With assistance of counsel, I filed the Verified Petition pursuant to Sections 1504 and 1515 of the Bankruptcy Code commencing these Chapter 15 Cases in this Court, seeking recognition of the Israeli Proceeding as a "foreign main proceeding," and seeking other necessary or appropriate relief in support of the Israeli Proceeding.

33.   I am informed that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [C]ollective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation .
> . . .
>
> 11 U.S.C. § 101(23).

34.   I believe that the Israeli Proceeding falls within the foregoing definition. As more fully explained in the Israeli Counsel Declaration, the Israeli Proceeding is (i) a collective judicial proceeding, (ii) in Israel, and (iii) is governed by the Israeli Insolvency Law. *See* Israeli Counsel Decl., ¶ 12. The purpose of the Debt Arrangement is to effectuate a restructuring of the Debtors' debts.

35.   I am also informed that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI"). 11

U.S.C. § 1502(4). I am informed by legal advisors that while COMI is not defined in Chapter 15, section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

36.     Papaya Israel was incorporated in Israel and maintains its registered and principal office in Tel Aviv, Israel. I believe that, based on the place of incorporation and location of its registered office, the COMI of Papaya Israel is Israel. Other factors that support Israel as the COMI for Papaya Israel include, but are not limited to, the following:

a. Papaya Israel has conducted all of its business operations from Israel since its inception in 2016;

b. Papaya Israel's senior management, including each of its officers, is located in Israel. All business decisions, including strategic direction, financial management, and day-to-day operational matters, are made by Papaya Israel's management out of Israel;

c. Papaya Israel employs approximately 300 full-time employees, all of whom are located in Israel. All human resources decisions and functions are managed and performed in Israel;

d. All intellectual property, including Papaya Israel's proprietary gaming platform and its leading game titles and their respective trademarks such as Solitaire Cash, Bubble Cash, Bingo Cash, Triple Match Cash, and Blocks Match Cash, are owned exclusively by Papaya Israel and managed by its employees in Israel;

e. All substantive activity, revenues, and tangible assets of the Papaya group are held and managed by Papaya Israel in Israel;

f. All financial reporting, cash management, budgeting, treasury, and tax compliance functions for Papaya group are performed by Papaya Israel's finance department, based in Israel, with the assistance of its Israeli-based advisors, EY Israel and KPMG Israel. Papaya Israel's auditors are also located in Israel; and

g. Papaya Israel's books and records are located and maintained in Israel, and its enterprise resource planning system is provided and hosted by Priority Software Solutions, an Israel-based company.

37. Although Papaya US is incorporated in Delaware, I believe that the COMI of Papaya US is also Israel. Specifically, the following factors support Israel as the COMI for Papaya US:

   a. Papaya US's presence in the United States is limited. It has a registered mailing address in Delaware, but has no offices, facilities, or physical presence of any kind in the United States;

   b. Papaya US was incorporated to perform the limited function of processing payments for its parent, Papaya Israel, on a cost-plus basis pursuant to the Debtors' Intercompany Services Agreement, which is governed by Israeli law;

   c. Papaya US remits substantially all cash receipts to Papaya Israel in the ordinary course, retaining only minimum amounts necessary for ongoing operational needs;

   d. Papaya US has no employees and no independent control over the scope, manner, or timing of its activities. It is entirely managed and operated by Papaya Israel and its employees and management, all of whom are located in Israel;

   e. Three of Papaya US's four directors are the co-founders of Papaya Israel and are located in Israel. All decision-making authority for Papaya US is performed in Israel. Its sole U.S.-based director and independent contractor serves solely as a local point of contact, reporting to and taking direction from me;

   f. All financial reporting, treasury management, cash management, and tax compliance functions for Papaya US are performed by Papaya Israel's finance department in Israel. Papaya US is audited by EY Israel, and its financial advisors are likewise Israel-based; and

   g. All material contracts entered into in the name of Papaya US, including the merchant service agreements with its five payment service provider counterparties, were negotiated and approved by Papaya Israel's management in Israel.

38. In light of the foregoing, I believe that the COMI of both Debtors is Israel and that the Israeli Proceeding is a "foreign main proceeding."

14

**D.      Alternatively, the Israeli Proceeding is a Foreign Nonmain Proceeding**

39.      In the event that the Court concludes that the Debtors' COMI is not Israel, I believe that this Court should recognize the Israeli Proceeding as a "foreign nonmain proceeding." I am informed that a foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests, but where it has an "establishment," as defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

40.      Israel is the location of Papaya Israel's primary operations. Its management, workforce, intellectual property and other assets are all located in Israel. Papaya US's activities are entirely managed and operated from Israel in aid of the business operations for the entire group of entities, which takes place from Israel. Both Debtors therefore have, at a minimum, an "establishment" in Israel.

**E.      Provisional Relief is Necessary to Facilitate a Successful Debt Arrangement**

41.      I am informed that, to protect a debtor during the gap period before a foreign proceeding is granted recognition, Chapter 15 allows a debtor to receive provisional relief "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). The Debtors urgently require provisional relief (the "Provisional Relief") requested in the Provisional Relief Motion to protect the value of their assets and the interests of their creditors.

42.      Without the Provisional Relief, there is a real and significant risk that the underlying value of the Debtors' estates will be irreparably harmed. Specifically, absent a stay, Skillz may attempt to enforce the Skillz Judgment against the Debtors' U.S. assets while the appeal process continues. Because a substantial majority of the Debtors' revenues are collected in the United States and transferred to Israel in the ordinary course to fund operations, any disruption to this revenue pipeline would immediately impair the Debtors' ability to pay their employees, satisfy

15

customer withdrawal requests, and meet their obligations to vendors, service providers, business partners and tax authorities. The Debtors rely on the revenue generated in the U.S. to fund these critical payments.

43.     Such disruption would compel the Debtors to cease operations and liquidate, destroying Papaya's going concern value. Such a result would be value-destructive to all stakeholders: all creditors, including Skillz, would recover only a fraction of their claims, while hundreds of millions of dollars in going concern value and substantial customer goodwill and trust—built over years of operations serving approximately one million daily active users—would be erased. The Debt Arrangement, by contrast, preserves the Debtors' profitable business operations and provides a supervised mechanism through which the Debtors will deposit funds into a dedicated account to satisfy any enforceable judgment obligations, including the Skillz Judgment, consistent with the outcome of the appeal.

44.     The Debtors are also parties to contracts in the United States that contain provisions allowing the respective contract counterparties to terminate such contracts upon the commencement of the Israeli Proceeding or these Chapter 15 Cases. Without the Provisional Relief, counterparties may attempt to terminate contracts that are critical to the Debtors' business operations and would be difficult to replace. Any terminations would further impair the Debtors' ability to operate and frustrate the Debt Arrangement.

45.     Granting the Provisional Relief will therefore benefit the Debtors' creditors by ensuring that the value of the Debtors' assets is preserved, protected and maximized for the benefit of all stakeholders.

**F.      Statement Pursuant to Section 1515 of the Bankruptcy Code**

46.     I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign

16

proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

47.     Pursuant to section 1515(c) of the Bankruptcy Code and Bankruptcy Rule 1004.2(a), I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code and, other than the Israeli Proceeding, I am not aware of any other foreign proceedings with respect to the Debtors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: August 2, 2026                              _/s/ *Oriel Bachar*_____
                                                   Oriel Bachar