**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Papaya Gaming Ltd., *et al.*,[1] | Case No. 26-11217 |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

**DECLARATION OF PINNI YANIV IN SUPPORT OF THE (I) VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF THE ISRAELI PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, ALTERNATIVELY, A FOREIGN NONMAIN PROCEEDING, AND (II) MOTION FOR PROVISIONAL RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE**

I, Pinni Yaniv, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a partner of Meitar | Law Offices ("Meitar"), a law firm with offices in Ramat Gan, Israel. In 1991, I graduated from Tel Aviv University with a bachelor's degree in law and was, thereafter, admitted to the Israeli Bar in 1992. In 2015, I received a master's degree in law from Tel Aviv University. I have extensive experience in representing Israeli and international parties in various types of legal proceedings, including insolvency proceedings under the Insolvency and Financial Rehabilitation Law, 5778-2018 (as amended and modified, the "Israeli Insolvency Law")[2] and Insolvency and Economic Rehabilitation Regulations, 5779-2019 (the "Israeli Regulations"), as well as under the former legal regime (the Companies Ordinance, New Version, 1983). I am included in the "List of Trustees" formulated by the Israeli Commissioner of

---

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

[2] An English translation of the Israeli Insolvency Law, as published by the Israeli Ministry of Justice on their website (https://www.gov.il/en/departments/publications/reports/2911), is attached hereto as Exhibit A. Part J to the Israeli Insolvency Law, as amended and updated in 2022 following the foregoing publication on the Israeli Ministry of Justice website, is attached hereto as Exhibit B together with an English translation.

1

Insolvency, a government entity that oversees all insolvency and debt arrangement proceedings under the Israeli Insolvency Law, and I am appointed as a trustee in complex insolvency cases from time to time.

2.     Although my native language is Hebrew, I am fluent in English and have elected to execute and submit this declaration in English.

3.     I submit this declaration in support of the (a) Verified Petition under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding (the "Verified Petition"),[3] and (b) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code, each filed contemporaneously herewith.

4.     This declaration is comprised of matters that are statements of legal opinion and/or statements of fact.  Where the statements are legal opinion, such statements represent my view of Israeli law as a practicing lawyer. To the extent the statements are statements of fact, they are statements based upon my personal knowledge or based upon documents and/or information supplied to me by or on behalf of the above-captioned debtors (the "Debtors") and Mr. Oriel Bachar, the Debtors' Foreign Representative, and are true to the best of my knowledge, information and belief.  Meitar has been retained by the Debtors, inter alia, to serve as their legal counsel in connection with the Debtors' debt arrangement proceeding under the Israeli Insolvency Law and Israeli Regulations pending before the District Court of Tel Aviv, Israel (the "Israeli Court"), Case No. 87154-07-26 (the "Israeli Proceeding" and the debt arrangement contemplated therein, the "Debt Arrangement").

---

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Verified Petition or the *Declaration of Oriel Bachar in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding, and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Foreign Rep. Declaration"), as applicable.

5.      If I were called upon to testify, I could and would testify competently to the statements set forth herein.

## I.      Overview of Israeli Insolvency Law

6.      Under the Israeli Insolvency Law, district courts have exclusive jurisdiction over insolvency and restructuring issues of Israeli corporate entities.

7.      In 2018, Israel's insolvency law underwent a comprehensive statutory reform, and the Knesset, the Israeli parliament, enacted the Israeli Insolvency Law. The Israeli Insolvency Law became effective on September 15, 2019, and governs the insolvency, liquidation, and restructuring proceedings of individuals, corporations, and partnerships.

8.      The Israeli Insolvency Law has three primary objectives: (i) to promote a debtor's financial rehabilitation as the main purpose of insolvency proceedings; (ii) to maximize recoveries to creditors, and (iii) to promote the economic reintegration of an individual debtor into economic life. Israeli Insolvency Law, § 1.

9.      The Israeli Insolvency Law is comprised of fourteen parts:

- Part A: General principles, interpretation and definitions
- Part B: Corporate Insolvency Proceedings
- Part C: Individual Insolvency Proceedings
- Part D: Creditorship
- Part E: The Status and Rights of Creditors
- Part F: The Commissioner of Insolvency Proceedings
- Part G: Authorities of the Court
- Part H: Liability of Directors & Officers in an Insolvent Entity
- Part I: Cross-Border Insolvency Proceedings
- Part J: Reorganization Schemes without a Commencement of Proceedings Order
- Part K: Penalties and enforcement authorities
- Part L: Miscellaneous
- Part M: Indirect amendments
- Part N: Commencement, applicability, transition provisions and temporary provisions

10.     The Israeli Insolvency Law provides for a ranking of priority for different types of claims. In general terms, this ranking is as follows (*Id*. § 231):

- Secured debts;
- Insolvency proceedings expenses;
- Priority debts;
- Debts secured by a floating charge;
- General unsecured debts;
- Certain rights of interest on debts;
- Deferred debts (usually, shareholders).

11.     Generally, the Israeli Insolvency Law requires that all creditors and interest holders be treated the same as similarly situated creditors and interest holders, respectively.

12.     With respect to corporations, the Israeli Insolvency Law primarily provides two types of proceedings, which are subject to judicial oversight, to address a company's financial affairs, which entail three types of financial solutions: (i) liquidations, (ii) reorganizations, and (iii) negotiated debt arrangements. Relevant here, Part J of the Israeli Insolvency Law provides for a procedure to allow a company to negotiate a "debt arrangement," whereby a compromise or arrangement between a company and its stakeholders (*i.e.*, creditors and shareholders) or any class of them, can become binding on the company and all of its affected stakeholders if approved by the requisite majority, in accordance with the Israeli Insolvency Law, and approved by an Israeli district court. *Id*. §§ 318, 320, 321(a).

13.     To obtain approval of a debt arrangement, a company is required to file a motion in the district court. *Id*. § 321. Additionally, a corporation is required to file schedules summarizing its assets and liabilities.

14.     Commencement of the proceedings is then reflected on the website of the Commissioner of Insolvency, which is a unit within the Ministry of Justice.[4] In connection with

---

[4] *See* https://pirsumim.justice.gov.il/Layout/Main.aspx.

the proceedings, creditors may submit proofs of debt (Israeli equivalent of proofs of claim) against the corporation and object to the debt arrangement if they believe they are adversely affected by the debt arrangement. Where the court orders that the proposed debt arrangement be brought for the creditors' decision, notice thereof is published by the Commissioner of Insolvency on the aforementioned website, and proofs of debt must be filed within 60 days of that publication unless the court orders otherwise. Notice of the convening of the creditor meetings is then delivered by an arrangement administrator (as described further below), or, if none has been appointed, by the applicant, to each creditor identified in the application, and such notice includes the time and place of the meeting and the deadline to submit proofs of debt. The deadline for submitting proofs of debt applies to both known and unknown creditors of the corporation as of the date the corporation filed its debt arrangement. In order to ensure broad notice of the deadline to submit proofs of debt, a corporation may also publish in a newspaper of general circulation information concerning the deadline to submit proofs of debt. Israeli courts consider such publication notice as sufficient notice for creditors of a corporation.

15.     After the proceedings are commenced, the district court may order a meeting of creditors to be convened to vote on the debt arrangement. *Id*. § 322(a). Additionally, a district court will convene a meeting of shareholders if the total assets of a corporation exceed its total debts and the debt arrangement proposes to pay creditors in full. *Id*. § 322(b). The district court, however, is not required to convene a meeting of stakeholders if it finds that convening such a meeting would harm the proceeding. *Id*. § 322(c).

16.     In connection with convening a class of creditors or shareholders, a district court may, but is not required to, appoint an arrangement administrator to (i) decide on the parties' voting rights and voting power, (ii) decide on the scope of the rights of a party in the debt arrangement

(i.e., hearing disputes concerning a party's claim), and (iii) take any additional actions as may be ordered by the district court to assist in implementing a debt arrangement. *Id*. § 326.

17.     If a district court orders that a meeting be convened, all creditors identified in the application are personally notified of the date of such meeting, the date of such meeting would be advertised on the website of the Commissioner of Insolvency, and the court may approve additional manners of publication.  For a class of interested parties to approve a debt arrangement, a majority of the votes in the class must vote in favor of the debt arrangement, and such creditors voting to accept the debt arrangement must jointly hold 75% in value of the debt of such class. *Id*. §§ 85, 324. A debt arrangement may bind dissenting creditors in a class if the requisite majority of creditors of the class vote to approve the debt arrangement. *Id*. § 320.

18.     A district court may consider the following criteria in exercising its discretion to approve a debt arrangement at a hearing (*Id*. § 86(b)):

- Considerations relating to the fairness of the proceeding;
- Considerations related to the employees of a corporation; and
- Considerations related to the benefit of the public.

19.     Upon satisfaction of such criteria,[5] a district court will enter an order approving and confirming a debt arrangement. A confirmed debt arrangement is binding upon a debtor, its creditors, and shareholders.

20.     In Part I of the Israeli Insolvency Law, Israel adopted the United Nations Commission on International Trade Law's Model Law on Cross-Border Insolvency (the "Model Law"). Among the provisions in the Model Law and the Israeli Insolvency Law is that a trustee appointed under Part B "may, within the framework of his authorities and subject to the

---

[5] A district court may approve a debt arrangement notwithstanding the failure of any class to approve the arrangement by the requisite majority, if the court is satisfied that certain conditions are met, mainly that the arrangement is fair and just with respect to each creditor in such dissenting class. *Id*. § 87.

instructions of the competent authority in Israel, apply directly to a foreign competent authority and to a foreign officer, and in this regard request from them directly information or assistance in connection with insolvency proceedings." *Id*. § 309(b).

21.     During the pendency of a debt arrangement proceeding under Part J, a debtor's management remains in control of the company and has the duties and powers that a trustee may have under section 309(b) of the Israeli Insolvency Law. Further, a limited company, organized under the Israeli Companies Law, operates according to its articles of association, which vest the power to act, manage, and restructure the debts and affairs of the company in its board of directors. A company's board of directors may, by resolution, either in a unanimous written consent, or at a meeting in which there is a quorum, appoint and authorize a person to exercise the power and authority granted to the board of directors in the company's articles of association.

## II.     The Israeli Proceeding[6]

22.     On July 30, 2026, the Debtors commenced the Israeli Proceeding under Part J of the Israeli Insolvency Law requesting entry of an order to approve the Debt Arrangement and grant related relief. Among other things, the Debtors filed with the Israeli Court (a) a motion to convene creditors' meetings for the purpose of approving the Debt Arrangement together with a copy of the Debt Arrangement and related appendices, which Debt Arrangement is attached hereto as Exhibit C together with its certified translation; (b) a motion for a temporary stay of proceedings for the purpose of convening creditors' meetings and approving the Debt Arrangement, initially, on an *ex parte* basis, and subsequently, on a 45-day basis subject to further extension upon additional application; (c) a motion for an order affirming the appointment of the Foreign

---

[6] A detailed description of the Debtors' financial affairs and the events leading up to the Israeli Proceeding are set forth in the Foreign Rep. Declaration.

7

Representative; and (d) affidavits in support of each of the foregoing. The Israeli Proceeding has been assigned Case Number 87154-07-26.

23.    In connection with all insolvency and debt arrangement proceedings, the Israeli Court maintains an electronic case filing system.  This system is available to any creditor that identifies itself as such with the Israeli Court in order to obtain access to the filing system and to any party in interest, subject to the Israeli Court approval. Attached hereto as <u>Exhibit D</u> is a true and correct copy of two pages of the docket of the Israeli Proceeding as of July 30, 2026, along with a certified translation.

24.    Through the Israeli Proceeding, the Debtors requested that the Israeli Court: (a) grant a temporary stay of proceedings against the Debtors, prohibiting the commencement or continuation of any legal proceedings against the Debtors, initially on an *ex parte* basis, and subsequently, on a 45-day basis upon a hearing on the motion, subject to further extension; (b) convene meetings of interested parties for the purpose of bringing the proposed Debt Arrangement to a vote by creditors; (c) appoint an arrangement administrator (the "<u>Arrangement Administrator</u>"), pursuant to section 326 of the Israeli Insolvency Law; (d) require all parties not excluded from the Debt Arrangement claiming a debt from the Debtors to file proofs of debt with the Arrangement Administrator within 21 days of the Arrangement Administrator's appointment; (e) narrow the list of creditors entitled to receive personal notice of the creditors' meetings and direct that publication of notice concerning creditors located in Israel and the United States be made in two newspapers of national circulation in Israel and two newspapers of national circulation in the United States; (f) grant an exemption from personal service of the Debt Arrangement application on employees and on material creditors to whom the Debt Arrangement

does not apply; (g) affirm the appointment of the Foreign Representative; (h) set deadlines for creditors to object to the relief requested by the Debtors; and (i) grant other related relief.

25.     On August 1, 2026, the Israeli Court entered an order, on an *ex parte* basis, staying all proceedings against the Debtors and their assets. This order and its certified translation are attached hereto as <u>Exhibit E</u>. Through the order, the Israeli Court set a hearing on the Debtors' motion for a temporary stay of proceedings for August 16, 2026, following which the Israeli Court may grant a 45-day extension of the stay, subject to further extension upon subsequent application by the Debtors.

26.     Under the proposed Debt Arrangement, the Debtors will continue to operate in the ordinary course of business and will pay in full all ordinary-course obligations to employees, suppliers, service providers, and trade counterparties as and when due. During the arrangement period, the Debtors will not distribute dividends to shareholders, and all available cash balances, except for a fixed amount allocated for ongoing operations, will be directed to a special deposit administered by the Arrangement Administrator for the payment in full of all claims subject to compromise under the Debt Arrangement (the "<u>Arrangement Claims</u>"), including claims that are the subject of the Pending Proceedings.

27.     Arrangement Claims will be paid through a dedicated mechanism administered by the Arrangement Administrator, pursuant to which Papaya Israel will make periodic deposits into a supervised fund. Distributions to creditors will then be made from the fund in accordance with the outcome of their respective legal proceedings, once final. Annual deposits into the fund are expected to be approximately $90 million for 2026, with significant deposit amounts in subsequent years, as further detailed in the Debt Arrangement. The Debtors' management and their respective

9

boards of directors will remain in place to ensure the continued growth, profitability, and operational stability of the business.

28.    The Debtors have proposed that creditors' meetings for the purpose of voting on the Debt Arrangement be divided into two separate class meetings among holders of Arrangement Claims in accordance with Section 84 of the Israeli Insolvency Law: (a) a meeting of holders of pending claims and holders of alleged causes of action; and (b) a separate meeting of Skillz Platform Inc. ("Skillz") as a creditor whose interest is materially distinct from that of all other creditors holding Arrangement Claims.  Skillz holds a judgment against the Debtors entered by the United States District Court for the Southern District of New York that remains subject to appeal, which, in addition to other factors, distinguishes its position from all other holders of Arrangement Claims.

29.    In connection with the Israeli Proceeding, the Debtors will provide notice to creditors and interested parties through multiple channels in accordance with orders of the Israeli Court. The Debtors expect to receive an exemption from providing personal service upon certain creditors of the Debtors who are excluded from the Debt Arrangement and whose obligations will continue to be paid in full in the ordinary course of business. The Debtors expect that personal service of the Debt Arrangement application and the temporary stay orders will be effected only on Bank Leumi Ltd., as secured creditor, and on the holders of five contingent claims located in the United States and Israel, in each case shortly after such orders are entered.

30.    In addition, pursuant to applicable regulations, the Debtors will provide publication notice of the Israeli Proceeding through (i) the Commissioner of Insolvency and Economic Rehabilitation Proceedings for publishing the notice on the Israeli Ministry of Justice website, and (ii) two financial newspapers in Israel and two U.S. nationwide newspapers. The Commissioner

of Insolvency will also publish notice of the grant of the stay orders on the Ministry of Justice website shortly after the stay orders are entered. Further, upon entry of the order approving the convening of the creditors' meetings, the Arrangement Administrator will transmit a copy of such order to the Commissioner of Insolvency for publication on the Ministry of Justice website, and separately serve all creditors identified in the Debt Arrangement application with notice of such order, together with a copy of the Debt Arrangement application, at least 21 days prior to the date set for the meetings, which notice will include the time and place of the meetings and the deadline for filing a proof of claim for purposes of participating in the vote. Under applicable Israeli law, publication notice of this kind constitutes adequate notice for known and unknown creditors, and each creditor and interested party retains the right to seek relief in the Israeli Proceeding in accordance with applicable law.

### III.   **Appointment of the Foreign Representative**

31.     Based on my review of the board resolutions of Papaya Israel (the "Board Resolutions"), the articles of association of Papaya Israel, the Israeli Companies Law and the Israeli Insolvency Law, it is my opinion that the Board Resolutions are valid and binding resolutions of the respective boards of directors of Papaya Israel, authorizing Mr. Oriel Bachar to act as the Foreign Representative and to take the actions set forth therein. During the pendency of the Israeli Proceeding, the Debtors are authorized to administer the reorganization of their assets and affairs and to continue to run their business in the ordinary course. In furtherance thereof and based on my review of the Board Resolutions and the applicable provisions of the Israeli Insolvency Law, Mr. Oriel Bachar, as authorized by the respective boards of directors of the Debtors, may apply for assistance in connection with the Israeli Proceeding in the United States.

Accordingly, it is my opinion that Mr. Oriel Bachar is an appropriate "foreign representative" within the meaning of Article 2(d) of the UNCITRAL Model Law on Cross-Border Insolvency.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: August 2, 2026                                    /s/ *Pinni Yaniv*
                                                         Pinni Yaniv