**<u>Exhibit C</u>**

**Debt Arrangement**

**(Hebrew and Certified English Translation)**

**Debt Arrangement**

**(Original Hebrew)**

# הסדר חוב בין חברת פאפאייה גיימינג בע#מ ו. Papaya Gaming Inc לבין נושיהן

## בהתאם להוראות חלק י) לחוק חדלות פירעון ושיקום כלכלי- התשע#ח 3129.

א/    פרשנות והגדרות

בהסדר זה תהיה למונחים הבאים המשמעות המצוינת בצדם להלן, אלא אם יצוין במפורש אחרת:

| | |
|---|---|
| #החוק# | חוק חדלות פירעון ושיקום כלכלי, התשע״ח-2018. |
| #התקנות# | תקנות חדלות פירעון ושיקום כלכלי, התשע״ט-2019. |
| #בית המשפט״ | בית המשפט המחוזי בתל אביב-יפו הדן בבקשה לאישור ההסדר. |
| #הבקשה לאישור ההסדר# | בקשה למתן צו לכינוס אסיפות לצורך אישור הסדר חוב זה המוגשת לבית המשפט. |
| #הממונה# | הממונה על הליכי חדלות פירעון ושיקום כלכלי. |
| #ההסדר או הסדר החוב# | הצעת הסדר חוב זו, וככל שתאושר בשינויים מסוימים - כפי שתאושר. |
| #החברות# | פאפאייה גיימינג בע״מ, ח.פ. 515422095 (״פאפאייה ישראל״), וכן חברת Papaya Gaming Inc, מספר חברה 0533649-32 (״פאפאייה ארה#ב״), (וביחד: ״החברות״). |
| ״מועד כניסת ההסדר לתוקף# | המועד בו יתמלא התנאי המתלה לכניסת ההסדר לתוקף (כהגדרת מונח זה בהסדר). |
| #מועד הוכחות החוב# | המועד להגשת תביעות חוב (להלן גם: ״הוכחות חוב״) כקבוע בסעיף 22 בפרק ו׳ להלן, או מועד אחר ככל שייקבע כך על ידי בית המשפט. |
| #נושים מוחרגים# | כל אחד מאלה:<br>(א) כלל הספקים והעובדים של החברות;<br>(ב) כלל השחקנים, למעט בעלות הקשורות לפרקטיקות של שימוש עבר בבוטים וכל הנובע מכך והכרוך בכך, במישרין או בעקיפין.<br>(ג) רשויות מס, המוסד לביטוח לאומי, קופות גמל וקופות פנסיה;<br>(ד) התובע הכללי של מדינת ניו ג׳רזי. |
| #נושה מותנה# | נושה שאינו בין הנושים המוחרגים ואשר - |

| | |
|---|---|
| (א) נכון ליום הגשת הבקשה לאישור ההסדר הוא מנהל נגד החברות, או איזו מהן, הליכים משפטיים התלויים ועומדים בערכאות בעילות הקשורות לפרקטיקות של שימוש עבר בבוטים וכל הנובע מכך והכרוך בכך, במישרין או בעקיפין; או<br><br>(ב) נכון ליום הגשת הבקשה לאישור ההסדר יש לו עילה לנקוט הליך משפטי בעילות כאמור; או<br><br>(ג) נכון ליום הגשת הבקשה לאישור ההסדר, ניתן לזכותו פסק דין זר נגד החברות או איזו מהן, אשר עודנו כפוף לערעור ולפיכך טרם הפך לפסק דין כספי אכיף בישראל. | |
| חוב נטען מכוח אחת העילות המנויות בהגדרת נושה מותנה. | #חוב מותנה# |
| פסק דין בר-אכיפה בישראל, כדלקמן:<br><br>(א) ביחס לפסק דין שניתן במדינה זרה - פסק חוץ העומד בכל התנאים לאכיפת פסק חוץ, כמשמעותם בסעיף 3 לחוק אכיפת פסקי-חוץ, התשי״ח-1958;<br><br>(ב) ביחס לפסק דין שניתן במדינת ישראל - פסק דין שניתן על-ידי בית משפט מוסמך בישראל אשר לא ניתן לגביו צו לעיכוב ביצוע. | #פסק דין כספי אכיף# |
| נושה מותנה שניתן לזכותו פסק דין כספי אכיף בישראל כנגד מי מהחברות. | #נושה מותנה זכאי# |
| כסף המופקד על פי ההסדר בקופת מנהל ההסדר, וישמש כמקור כספי ייעודי לפירעון חובותיהן של החברות כלפי נושים מותנים זכאים כקבוע בהסדר זה ועבור שכרו של מנהל ההסדר בלבד. | #פיקדון מנהל ההסדר# |
| הצו האמור בפרק ד׳ להסדר זה. | #צו בית משפט# |
| התנאי המתלה להסדר המפורט בפרק ד׳ להסדר זה. | #התנאי המתלה לכניסת ההסדר לתוקף# |
| כל אדם או תאגיד המחזיק, במישרין או בעקיפין, במועד כניסת ההסדר לתוקף, במניות של החברות. | #בעלי מניות# |

‐ 3 -

| #יתרת מזומנים פנויה# | יתרת המזומנים המוחזקת בחשבונות הבנק של פאפאייה ישראל, בניכוי אך ורק של (א) הסכומים המשועבדים לטובת הבנקים שבהם מוחזקות היתרות, כדלקמן: פיקדונות להבטחת ערבות בנקאית למשכירי נכסים ולתשלומים בגין כרטיסי אשראי ולעסקאות גידור; ו-(ב) בניכוי יתרות זכות של שחקנים; ו-(ג) בניכוי סך של 30 מיליון דולר ארה״ב, המיועד לניהול תפעולי שוטף. |
|---|---|
| #דולר# או #%# | דולר ארצות הברית. |

## ב/    הסדר החוב – כללי

1. מטרתו של הסדר זה היא: (1) להבטיח את יכולת פירעון כלל החובות המותנים ככל שיהפכו לחובות אכיפים בישראל, והכל בהתאם לתנאי ההסדר, ו-(2) לאפשר את המשך פעילותן העסקית של החברות.

2. לחברות יש חוב מותנה כלפי נושים מותנים, אשר היקפו עולה על יתרות המזומנים שלהן, וזאת בשל פסק דין זר (לא חלוט וכפוף לערעור) שניתן לטובת חברת Skillz Platform Inc.[1]

3. החל ממועד כניסת ההסדר לתוקף, יהווה הסדר זה את המסגרת הבלעדית, הסופית והממצה להסדרת מערכת היחסים, הזכויות וההתחייבויות שבין החברות והנושים המותנים.

4. ההסדר לא יחול על הנושים המוחרגים ואישור ההסדר לא יביא לשינוי בזכויותיהם או בבירור זכויותיהם של הנושים המוחרגים, וכל התחייבויותיהן השוטפות של החברות לנושים המוחרגים תמשכנה להיות משולמות כסדרן ובמועדן.

5. בהתאם, הנושים המוחרגים אינם נדרשים להגיש תביעת חוב. הסכומים המגיעים להם, כמפורט בבקשה לאישור ההסדר ובנספחיה, ימשיכו להשתלם כסדרם ובמועדם. פירוט הסכומים בטופס 1 נובע מדרישות הדין בלבד, ומובהר שלא יהיה בו כדי למנוע מנושה מוחרג לחלוק, במהלך העסקים הרגיל, על הסכומים שצוינו שם.

6. בדומה לכך, שחקנים שהפקידו או יפקידו כספים תוך שימוש בפלטפורמה של החברות יוכלו להוסיף ולפעול בכספים אלה אם לשימוש במשחקים ואם למשיכתם, והכל במהלך עסקים רגיל, בהתאם לתנאי השימוש.

7. כלל ההליכים התלויים ועומדים בערכאות נגד החברות או איזו מהן ביום הגשת הבקשה לאישור ההסדר, אשר יעוכבו מכוח בקשה לצו עיכוב ההליכים המוגשת במקביל לבקשה זו,

---

[1] Skillz Platform Inc. v. Papaya Gaming, Ltd. et al., No. 1:24-cv-01646-DLC (S.D.N.Y).

– 4 -

יעוכבו רק עד למועד כניסת ההסדר לתוקף. עם כניסת ההסדר לתוקף, יפקע צו עיכוב ההליכים, והליכים אלה יחודשו וימשיכו להתנהל כסדרם. תשלומו של כל פסק דין לזכות נושה מותנה זכאי יבוצע, ככל שיידרש, בהתאם להוראות הסדר זה.

8.      בתקופת ההסדר, תמשכנה החברות לפעול במהלך העסקים הרגיל, והנהלות החברות ודירקטוריון החברות ייוותרו בתפקידיהם, כשלצידן פועל מנהל ההסדר, לשם הבטחת המשך פעילותן העסקית המיטבית.

## ג/      תנאי ההסדר המוצע לנושים

9.      כללי:

(א)     בתקופת ההסדר ישולמו כלל ההתחייבויות השוטפות לכלל הנושים המוחרגים לפי תנאי פירעונן, בדרך העסקים הרגילה.

(ב)     החובות המותנים ישולמו רק לנושים מותנים זכאים, כלומר רק לאחר שיהיה בידי הנושה המותנה פסק דין כספי אכיף, ובהתאם להוראות שלהלן.

10.     פירעון החובות המותנים ייעשה באופן הבא:

(א)     נושה מותנה זכאי, אשר ניתן לטובתו פסק דין כספי אכיף נגד מי מהחברות בסכום שאינו עולה על $ 5,000,000 (חמישה מיליון דולר), ישולם לו מלוא סכום פסק הדין במהלך העסקים הרגיל, ולא מתוך פיקדון מנהל ההסדר.

(ב)     נושה מותנה זכאי, אשר ניתן לטובתו פסק דין כספי אכיף נגד מי מהחברות בסכום העולה על $5,000,000 (חמישה מיליון דולר), יהיה זכאי לקבלת מלוא סכום פסק הדין מתוך פיקדון מנהל ההסדר, כמפורט בסעיף 12 להלן.

11.     הקמת פיקדון מנהל ההסדר והפקדות אליו

(א)     בתוך 14 יום ממועד כניסת ההסדר לתוקף, תפקיד פאפאייה ישראל לחשבון בנק ייעודי שייפתח על ידי מנהל ההסדר סכום ראשוני בסך $60,000,000 (שישים מיליון דולר).

(ב)     נוסף על ההפקדה הראשונית כאמור בסעיף קטן (א), תפקיד פאפאייה ישראל לחשבון פיקדון מנהל ההסדר מדי  שנה, לא יאוחר מיום 15.1 (חמישה עשר בינואר), סכום השווה ליתרת המזומנים הפנויה נכון ליום 3.1 (שלושה בינואר) באותה שנה, אך בכל מקרה לא יותר מהסכומים הנקובים בנספח 1 להסדר זה.

(ג)     מנהל ההסדר יהיה רשאי לפנות לבית המשפט בבקשה להקטין או להגדיל את הסכום שנדרשת פאפאייה ישראל להפקיד במועדי ההפקדות הנ״ל, לעומת הסכומים הנקובים בנספח האמור, בשים לב לסך יתרת המזומנים הפנויה, ולכלל הנתונים שבפניו. בית המשפט הנכבד יכריע בבקשתו של מנהל ההסדר לאחר מתן זכות טיעון לצדדים הנוגעים בדבר.

(ד) הכספים המצויים בפיקדון מנהל ההסדר יושקעו באיגרות חוב של ממשלת ארצות הברית בעלות מועד פדיון של שנה אחת (One-Year U.S. Treasury Securities), או בפיקדון בנקאי הנושא ריבית שנתית בשיעור השווה לתשואה על איגרות חוב כאמור. כל הרווחים, התשואות ו/או ההכנסות שיצטברו ו/או שייווצרו בקשר עם הפקדה ו/או השקעה של כספים אלה, ייזקפו לזכות פיקדון מנהל ההסדר, וייעשה בהם שימוש אך ורק לצורך התשלומים על פי הסדר זה ובהתאם להוראותיו בלבד.

12. השימוש בפיקדון מנהל ההסדר ותשלומים מתוכו ;

(א) נושה מותנה זכאי יפנה למנהל ההסדר לאחר מתן פסק דין כספי אכיף לטובתו בסכום העולה על 5,000,000 $, וימציא למנהל ההסדר את כל המסמכים הנדרשים לביסוס תביעתו. מנהל ההסדר יבחן את המסמכים שהוצגו לו וישלם לנושה המותנה הזכאי, מתוך הפיקדון שבידו, את סכום פסק הדין הכספי האכיף תוך שלושים יום, בכפוף לאמור להלן.

(ב) נושה מותנה זכאי כאמור, אשר סכום פסק הדין הכספי האכיף שניתן לטובתו עולה על הסכום ששולם לו בשנה קלנדרית מסוימת, יהא זכאי להוסיף ולקבל ממנהל ההסדר תשלומים מדי שנה, וזאת עד לסילוק מלוא סכום פסק הדין הכספי האכיף שניתן לטובתו.

(ג) ככל שבמועד כלשהו שבו יש לבצע תשלום מתוך פקדון מנהל ההסדר, יהיו בפני מנהל ההסדר יותר מפסק דין כספי אכיף אחד לתשלום, יחלק מנהל ההסדר בין אותם נושים הזכאים לתשלום כאמור, את הסכום המשולם, באופן יחסי (פרו-ראטה), בהתאם ליחס שבין סכומי פסקי הדין הכספיים האכיפים העומדים לתשלום באותו מועד.

(ד) סכומו של כל פסק דין כספי אכיף יומר לדולר ארה״ב בהתאם לשער היציג של הדולר במועד שבו פסק הדין הכספי הפך להיות אכיף בישראל. אם לא שולם פסק הדין, או חלקו, על ידי מנהל ההסדר תוך 30 יום כאמור בפסקה (א) לעיל, יישא החלק שלא שולם ריבית שנתית בשיעור האמור בסעיף 11(ד) לעיל, החל מתום 30 יום ועד למועד תשלומו בפועל.

(ה) היה ובטלה זכאותם של כל הנושים המותנים, בין מחמת שנפרע חובם, בין מחמת דחייה ו/או יישוב ו/או מחיקה של תביעתם, וכיוצא באלה, ו/או הייתה פאפאייה ישראל יכולה להוכיח יכולת תשלומם במהלך העסקים הרגיל, אזי תפקע חובת ההפקדה השנתית לפיקדון מנהל ההסדר, ומנהל ההסדר יעביר לידי פאפאייה ישראל את יתרת הפיקדון, ככל שנותרה בידו.

13. הסדר זה יבוא אל סיומו לאחר השלמת ביצוען המלא של כלל ההתחייבויות והפעולות הקבועות בו, בהתאם ובכפוף להוראות הסדר זה.

ד/ <u>תנאי מתלה לביצוע הסדר החוב</u>

14. תנאי מתלה לכניסת הסדר החוב לתוקף הינו קבלת אישור בית המשפט להסדר זה (״צו בית המשפט״), ובכלל זה קבלת צו המורה על הפטר מלא, סופי, מוחלט ומחייב של החברות

– 6 -

כמפורט בהסדר זה, בהתאם לפרק ז׳ להסדר זה, בין אם במסגרת אישור ההסדר, או במסגרת החלטה שיפוטית נלווית.

15. לא התקיים התנאי המתלה לכניסת הסדר זה לתוקף, או שהסדר זה לא נכנס לתוקף מכל סיבה שהיא, אזי מבלי לגרוע מכל זכות או טענה העומדת לחברות על פי דין, יחולו ההוראות שלהלן:

(א) הסדר זה, על כל הוראותיו ונספחיו, ההסכמות, ההצעות, הוויתורים, המצגים, ההצהרות, ההתחייבויות והעמדות שהועלו, נמסרו או נשקלו במסגרתו או בקשר אליו, יהיו בטלים, נעדרי תוקף ולא יחייבו את החברות בכל דרך שהיא;

(ב) לא יהיה בהסדר זה, בכתבי בי-דין בהליכים לאישורו של הסדר זה, ובהליכים קשורים, או בכל חלק מהם, כדי לשמש ראיה, הודאה, מצג, השתק, ויתור, הסכמה, בסיס לטענה בדבר היקף חוב, תוקפו, שיעורו, סיווגו, עדיפותו או אופן פירעונו, או בסיס לכל טענה, דרישה, תביעה או הליך מכל מין וסוג.

(ג) אף צד לא יהיה רשאי להסתמך על כל דבר שנאמר בהסדר זה או בכתבי בי-דין בהליך לאישורו של ההסדר, או בהליכים קשורים, בכל הליך שיפוטי, מעין-שיפוטי, בוררות, מנהלי או אחר, בישראל או מחוצה לה;

(ד) במקרה כאמור, יהיו הצדדים מושבים ככל הניתן, למצבם המשפטי, הדיוני והמסחרי כפי שהיה ערב הגשת הבקשה לאישור ההסדר.

ח/ <u>מנהל ההסדר</u>

16. בית המשפט הנכבד יתבקש למנות, במסגרת הסדר חוב זה, מנהל הסדר בהתאם להוראות סעיף 326 לחוק, אשר יפעל בהתאם להוראות הדין ולהוראות הסדר זה ולהחלטות בית המשפט הנכבד.

17. שכרו של מנהל ההסדר, וכן הוצאותיו כפי שיאושרו על ידי בית המשפט הנכבד, ייקבעו וייפסקו על ידי בית המשפט הנכבד בהתאם להוראות הדין.

18. על אף האמור בכל מקום אחר בהסדר זה, שכרו של מנהל ההסדר והוצאותיו ישולמו מתוך פיקדון מנהל ההסדר, ויהיו בעלי מעמד בכורה ביחס לכל תשלום אחר שישולם מתוך פיקדון מנהל ההסדר.

19. מנהל ההסדר יהיה מוסמך לבצע כל פעולה הנדרשת לשם יישומו, ניהולו, ביצועו ואכיפתו של הסדר זה, והכל בהתאם להוראות הדין, הוראות הסדר זה והחלטות בית המשפט הנכבד.

20. מבלי לגרוע מכלליות האמור לעיל, מנהל ההסדר יהיה מוסמך, בין היתר:

(א) לקבל, לבדוק, לברר ולהכריע בהוכחות חוב ובתביעות חוב, כולן או חלקן;

(ב)    לדרוש מכל נושה, מן החברות או מכל צד רלוונטי אחר כל מסמך, אסמכתה, נתון, תצהיר, הבהרה או מידע שימצא לנכון לצורך מילוי תפקידו;

(ג)    לאשר, לדחות או לתקן הוכחות חוב, כולן או חלקן, וכן לקבוע את שיעורו, מעמדו וסיווגו של כל חוב לצורכי הסדר זה;

(ד)    לנהל את פיקדון מנהל ההסדר, לרבות קבלת כספים לידיו, החזקתם, השקעתם בהתאם להוראות ההסדר, ככל שהדבר מותר על פי דין או לפי הוראות בית המשפט, וביצוע תשלומים מתוכו בהתאם להוראות הסדר זה;

(ה)    לקבוע את אופן הגשת המסמכים והפניות אליו, לרבות מועדים, מתכונת, אופן המצאה ודרישות צורניות;

(ו)    לפנות לבית המשפט הנכבד, מעת לעת, בבקשה למתן הוראות, לאישור פעולה, להכרעה במחלוקת, להבהרת הוראות הסדר זה או לכל סעד אחר הדרוש, לפי שיקול דעתו, לשם ביצוע תפקידו;

(ז)    להסתייע ביועצים, מומחים, רואי חשבון, עורכי דין ובעלי מקצוע אחרים, ככל שימצא לנכון לצורך מילוי תפקידו, והוצאות כאמור ייחשבו כהוצאות מנהל ההסדר.

ח    <u>מנגנון הוכחות החוב</u>

21.    הואיל וההסדר קובע שכלל התחייבויותיהן השוטפות של החברות לנושים המוחרגים ימשיכו להיות משולמות כסדרן ובמועדן, הנושים המוחרגים אינם נדרשים להגיש הוכחות חוב כתנאי להמשך תשלום הסכומים השוטפים המגיעים להם, כמפורט בטופס 1 המצורף לבקשה לאישור ההסדר, והם ישולמו להם כסדרם ובמועדם.

22.    הזמנת הנושים המותנים להגיש הוכחות חוב נועדה לאפשר בירור של חובות מותנים או טענות של נושים מותנים שאינם ידועים לחברות במועד הגשת הבקשה לאישור ההסדר. לפיכך, כל נושה מותנה הטוען כי עומד לזכותו חוב מותנה כלפי מי מהחברות, בין מחמת שלא נזכר בטופס 1 ובין אם מחמת שהוא חולק על הסכום הנקוב לצד שמו בטופס 1, נדרש להגיש למנהל ההסדר הוכחת חוב בתוך 21 ימים ממועד מינויו של מנהל ההסדר ("מועד הוכחות החוב").

23.    מנהל ההסדר יהיה רשאי לקבל הוכחת חוב שהוגשה לאחר מועד הוכחות החוב רק אם שוכנע כי קיימת הצדקה מיוחדת לאיחור בהגשתה; ואולם, בשום מקרה לא תתקבל הוכחת חוב לאחר מועד אישור ההסדר על ידי בית המשפט. נושה מותנה שנדרש להגיש הוכחת חוב בהתאם להוראות הסדר זה ושלא הגיש הוכחת חוב במועד, או שהוכחת החוב שהגיש לא אושרה, לא יהיה זכאי להצביע ביחס להסדר חוב זה, ולא תהיה לו כל תביעה, דרישה או טענה כלפי מי מהחברות ביחס לחובות המותנים.

24.    מנהל ההסדר יהיה רשאי לדרוש כל מסמך ו/או נתון שיידרש לו לפי שיקול דעתו לצורך ההכרעה בהוכחת החוב של נושים מותנים שהגישו תביעות חוב, בין אם לצרכי הצבעה או

– 8 -

לצורך בירורן לגופן. לא הומצאו המסמכים או הנתונים שנדרשו בתוך המועד שיקבע מנהל ההסדר, יהיה מנהל ההסדר רשאי להכריע בהוכחת החוב על יסוד החומר המצוי בידיו, או לדחות את הוכחת החוב, כולה או חלקה.

הכרעה בתביעות חוב לצורכי הצבעה:

25. כל נושה מותנה המפורט בטופס 1 אשר לא יגיש הוכחת חוב בתוך מועד הוכחות החוב, ייחשב, לצורכי הצבעה על הסדר זה, כמי שהסכים לגובה החוב הנקוב לצד שמו בטופס 1, כמי שהגיש הוכחת חוב בסכום האמור, וכמי שהוכחת החוב שלו אושרה בסכום זה לצורכי הצבעה על הסדר זה.

26. הכרעת החוב לצורכי הצבעה לא תהווה הכרעה בהוכחת החוב לגופה.

27. נושה אשר יהא מעוניין לערער על הכרעת החוב לצורך הצבעה, יהא רשאי לעשות כן בפנייה לבית המשפט תוך ארבעה עשר (14) יום מהמועד בו קיבל את הכרעת החוב בכתב (ולרבות בדואר אלקטרוני או בפקסימיליה). ערעור שיוגש לאחר מועד זה לא יתקבל, אלא אם כן בית המשפט יורה אחרת.

הכרעה בתביעות חוב לגופן לצרכי חלוקה;

28. לצורך בירור תביעות החוב לגופן לא תידרש הגשת הוכחת חוב נוספת, והוכחת החוב שהוגשה לצרכי הצבעה תשמש גם לצורך זה.

29. ההכרעה בהוכחות החוב לגופן תיעשה כדלקמן: (א) ככל שתביעת חוב של נושה מותנה היא נושא להליך משפטי תלוי ועומד, בישראל או מחוצה לה, ההכרעה לעניין זכאותו של אותו נושה לתשלום לפי הסדר זה, תיעשה בהתאם לפסק דין כספי אכיף, כמשמעותו בהסדר; (ב) ככל שהוכחת חוב של נושה מותנה אינה נושא להליך משפטי תלוי ועומד, בישראל או מחוצה לה, יכריע מנהל ההסדר בתביעת החוב על יסוד הוכחת החוב, המסמכים והנתונים שיומצאו לו וכל חומר רלוונטי אחר שימצא לנכון;

30. נושה אשר יהא מעוניין לערער על הכרעת החוב לגופה, יהא רשאי לעשות כן בפנייה לבית המשפט תוך שלושים (30) יום מהמועד בו קיבל את הכרעת החוב לגופה בכתב (ולרבות בדואר אלקטרוני או בפקסימיליה). ערעור שיוגש לאחר מועד זה לא יתקבל, אלא אם כן בית המשפט יורה אחרת.

31. כל חוב בר-הוכחה שלא הוגשה בגינו הוכחת חוב בתוך מועד הוכחות החוב, מקום שבו נדרשה הגשת הוכחת חוב לפי הוראות הסדר זה, או שלא אושר במסגרת מנגנון הוכחות החוב, לא יקנה לנושה כל זכות תביעה, דרישה, קיזוז או היפרעות כלפי מי מהחברות, והוא ייחשב כמסולק לצורכי הסדר זה.

32. החל ממועד כניסת ההסדר לתוקף לא ניתן יהיה להיפרע ממי מהחברות בגין חוב מותנה, אלא על פי הוראות הסדר זה.

ז. <u>פטור וויתור</u>

– 9 –

33. הסדר זה יגבש ויבטא באופן סופי, בלעדי ומוחלט את מערכת היחסים, הזכויות וההתחייבויות שבין החברות והנושים המותנים, והוא ימצה ויסדיר את מעמדם של כלל החובות המותנים של החברות. בהתאם, עם כניסתו לתוקף של הסדר זה, יחולו ההוראות שלהלן:

(א) לא תהיה למי מהנושים המותנים כל עילה, טענה, דרישה או תביעה מכל מין וסוג ובכל עילה שהיא, כלפי החברות ו/או כלפי מי מטעמן בכל עניין הנוגע ו/או הקשור לחובות המותנים, למעט אלו שאושרו כתביעות חוב;

(ב) הנושים המותנים לא יהיו זכאים לנקוט כל סעד עצמי מכל מין וסוג בקשר עם החובות המותנים, כלפי החברות, או מי מטעמן, לרבות קיזוז, עיכבון, עיקול, תפיסת נכסים, מימוש בטוחה או ערבות, המחאת חוב, מימוש זכות עיכוב או כל פעולה עצמאית אחרת שמטרתה גבייה, אכיפה או היפרעות.

(ג) כל כתב פטור, כתב שיפוי, זכות שיפוי, ביטוח נושאי משרה או זכות אחרת להגנה, לשיפוי או לפטור, שניתנו או העומדים לזכותם של נושאי משרה, דירקטורים ובעלי תפקידים בחברות לפי מסמכי ההתאגדות של החברות, לפי הסכם, לפי פוליסת ביטוח או לפי כל דין, יוסיפו לעמוד בתוקפם המלא ולא ייגרע מהם דבר מחמת אישורו או ביצועו של הסדר זה;

(ד) בכפוף להוראות הדין ולהוראות הסדר זה, ייכנס ממועד כניסת ההסדר לתוקף, פטור מלא, סופי ובלתי חוזר לטובת החברות, נושאי המשרה בהן, הדירקטורים, העובדים, השלוחים, היועצים, נציגיהן, בעלי מניותיהן וכל אדם או גוף שפעל או פועל מטעמן או בשמם, מפני כל עילה, טענה, דרישה או תביעה, מכל מין וסוג, ידועה או בלתי ידועה, קיימת, מותנית או עתידית, בקשר עם החובות המותנים.

## ח/ <u>הוראות כלליות</u>

34. המבוא להסדר זה והנספחים לו מהווים חלק בלתי נפרד ממנו; כותרות הסעיפים הינן לצורך הנוחות בלבד ולא יסתמכו עליהן בפירוש או בביאור הסדר זה.

35. לצרכי פרשנות הוראות הסדר זה, תחשבנה הוראות הסדר זה והוראות איזה מנספחיו כמשלימות זו את זו וככאלו הדרות בכפיפה אחת.

36. כל שינוי, תיקון או תוספת להסדר, לא יהא להם תוקף וייחשבו כלא נעשו, אלא אם כן ייעשו בכתב, ייחתמו על ידי החברות, ויאושרו על ידי בית המשפט הנכבד.

37. התייחסות להסדר זה או להוראה ספציפית בהסדר זה או למסמך אחר כלשהו, תפורש כהתייחסות להסדר זה, להוראה האמורה או למסמך האמור, כפי שהינם בתוקפם באותה העת ובכלל זאת כפי שתוקנו, שונו, או הושלמו מפעם לפעם, נכון לעת הרלוונטית.

38. בהסדר חוב זה לשון יחיד כוללת רבים, ולהיפך ; לשון מין זכר כוללת מין נקבה, ולהיפך ; המונח ״אדם״ כולל כל אדם פרטי, תאגיד, חברות, שותפות (בין רשומה ובין שאינה רשומה), עמותה, נאמנות, גוף מאוגד או בלתי מאוגד וכל ישות משפטית אחרת.

39. הסדר זה, ביחד עם נספחיו, ממצים את כל ההסכמות, ההתניות וההצהרות בין החברות לנושים המותנים בקשר עם העניינים המוסדרים בו, ולא יהיה תוקף לכל הצעה, סיכום, הבנה, מצג או הבטחה בקשר אליהם שנעשו או ניתנו קודם לכניסתו לתוקף של הסדר זה ע״י מי מהצדדים, בין בכתב ובין בעל-פה, בין במפורש ובין במשתמע, אלא כאמור בהסדר זה.

40. הימנעות של מי מהצדדים משימוש בזכות כלשהי הנתונה לו לפי הסדר זה או על פי דין, או דחיה או שיהוי בשימוש כאמור, לא יחשבו כוויתור על הזכות האמורה, ולא יהיה בהפעלה חלקית או חד-פעמית של זכות כאמור כדי למנוע הפעלה נוספת או אחרת שלה, או של כל זכות אחרת. ארכה או הקלה שניתנו, או ויתור או פשרה שנעשו, במקרה כלשהו, ע״י איזה מהצדדים, לא יפורשו כתקדים או כוויתור לגבי מקרה אחר ולא יגרעו מזכויות אותו צד, לפי הסדר זה או לפי דין.

41. שום טיוטות של הסדר זה ונספחיו לא תהיינה קבילות כראיה בפני גופים שיפוטיים ו/או מעין שיפוטיים, לרבות בוררים ו/או פוסקים, ולא ישמשו לפרשנות הסדר זה, תניותיו או נספחיו.

42. על הסדר זה יחולו דיני מדינת ישראל בלבד והוא יפורש על פי ובהתאם להם.

43. הסמכות המקומית הייחודית והבלעדית בכל עניין הנוגע להסדר זה תהא נתונה לבית המשפט המוסמך בתל אביב-יפו. אין באמור כדי לגרוע מנקיטת הליכים לפי פרק 15 ל- .U.S Bankruptcy Code. ואולם, פנייה כאמור לא תיחשב כהסכמה לסמכות שיפוט של ערכאה זרה ביחס לכל מחלוקת הנוגעת לפרשנותו, יישומו וביצועו של הסדר זה.

44. הריבית המצטברת על פי הסדר זה על החובות המותנים תבוא במקום כל ריבית אחרת על פי דין או הסכם.

45. בכל מקרה של סתירה, אי התאמה בין הוראות הסדר זה לבין הוראות מי מנספחיו, תגברנה הוראות הסדר זה, אלא אם נקבע אחרת במפורש.

46. מבלי לגרוע מהוראות הסדר זה, יהא מנהל ההסדר, וכן כל אחד מהצדדים, רשאי לפנות לבית המשפט בבקשה למתן הוראות בכל עניין הנוגע לפרשנותו, יישומו, ביצועו או אכיפתו של הסדר זה.

47. הוראות הסדר זה תחייבנה ותזכינה את הצדדים לו, וכן את חליפיהם, נמחיהם, נעבריהם, יורשיהם, וכל הבא מכוחם, לפי העניין ובכפוף להוראות הדין.

נספח 2 . לוח תשלומים לקופת מנהל ההסדר

<div dir="rtl">

## <u>לוח תשלומי פאפאייה לקופת מנהל ההסדר</u>

פריסת ההפקדות הכספיות של פאפאייה לקופת מנהל הסדר החוב תהא כדלקמן :

1.  בתוך 14 יום ממועד כניסת ההסדר לתוקף, סך של $60,000,000 (ששים מיליון דולר).

2.  תוך 15 יום מתום שנת 2026, סכום של $30,000,000 (שלושים מיליון דולר).

3.  תוך 15 יום מתום שנת 2027, סכום של $60,000,000 (ששים מיליון דולר).

4.  תוך 15 יום מתום שנת 2028, סכום של $85,000,000 (שמונים וחמישה מיליון דולר).

5.  תוך 15 יום מתום שנת 2029, סכום של $100,000,000 (מאה מיליון דולר).

6.  תוך 15 יום מתום שנת 2030, סכום של $120,000,000 (מאה ועשרים מיליון דולר).

7.  תוך 15 יום מתום שנת 2031, סכום של $130,000,000 (מאה ושלושים מיליון דולר).

8.  תוך 15 יום מתום שנת 2032, סכום של $145,000,000 (מאה ארבעים וחמישה מיליון דולר).

</div>

**Debt Arrangement**

**(Certified English Translation)**

# Debt arrangement between Papaya Gaming Ltd. and Papaya Gaming Inc. and their Creditors

## In accordance with the provisions of Part 10 of the Insolvency and Economic Rehabilitation Law, 5778-2018

## A.    Interpretation and Definitions

Unless expressly stated otherwise, the following terms shall have the meanings set forth opposite them below in this Arrangement:

| | |
|---|---|
| **"The Law"** | The Insolvency and Economic Rehabilitation Law, 5778-2018. |
| **"Regulations"** | The Insolvency and Economic Rehabilitation Regulations, 5779-2019. |
| **"The Court"** | The Tel Aviv-Yafo District Court hearing the Application for Approval of the Arrangement. |
| **"Application for Approval of the Arrangement"** | An application for an order convening meetings for the purpose of approving this Debt Arrangement, filed with the Court. |
| **"The Commissioner"** | The Commissioner of Insolvency Proceedings and Economic Rehabilitation. |
| **"Arrangement" or "Debt Arrangement"** | This proposed Debt Arrangement and, if approved with certain amendments, as so approved. |
| **"The Companies"** | Papaya Gaming Ltd., Company No. 515422095 ("**Papaya Israel**"), and Papaya Gaming Inc., Company No. 32-0533649 ("**Papaya US**") (collectively, "**the Companies**"). |
| **"Arrangement Effective Date"** | The date on which the Condition Precedent to the Arrangement Effective Date (as that term is defined in the Arrangement) is satisfied. |
| **"Proof of Debt Deadline"** | The deadline for filing debt claims (also referred to as "**Proofs of Debt**") as provided in Section 22 of Chapter F below, or such other deadline as may be determined by the Court. |

| | |
|---|---|
| **"Excluded Creditors"** | Each of the following:<br><br>(a) All suppliers and employees of the Companies;<br>(b) All players, except with respect to causes of action relating to past practices involving the use of bots and anything arising therefrom ora related thereto, directly or indirectly;<br>(c) Tax authorities, the National Insurance Institute, provident funds, and pension funds;<br>(d) The Attorney General of the State of New Jersey. |
| **"Contingent Creditor"** | A creditor that is not one of the Excluded Creditors and that:<br><br>(a) As of the date of filing of the Application for Approval of the Arrangement, is pursuing legal proceedings against the Companies, or either of them, that are pending before courts or tribunals and are based on causes of action relating to past practices involving the use of bots and anything arising therefrom or related thereto, directly or indirectly; or<br><br>(b) As of the date of filing of the Application for Approval of the Arrangement, has a cause of action to commence legal proceedings on the aforesaid grounds; or<br><br>(c) As of the date of filing of the Application for Approval of the Arrangement, a foreign judgment has been rendered in its favor against the Companies, or either of them, which remains subject to appeal and has therefore not yet become an Enforceable Monetary Judgment in Israel. |
| **"Contingent Debt"** | An alleged debt arising from any of the grounds enumerated in the definition of Contingent Creditor. |
| **"Enforceable Monetary Judgment"** | A judgment enforceable in Israel, as follows:<br><br>(a) With respect to a judgment rendered in a foreign state: a foreign judgment that satisfies all the conditions for the enforcement of a foreign judgment, within the meaning of Section 3 of the Foreign Judgments Enforcement Law, 5718-1958;<br><br>(b) With respect to a judgment rendered in the State of Israel: a judgment rendered by a court of competent jurisdiction in Israel for which no stay of execution has been ordered. |

| | |
|---|---|
| **"Eligible Contingent Creditor"** | A Contingent Creditor in whose favor an Enforceable Monetary Judgment in Israel has been rendered against either of the Companies. |
| **"Arrangement Administrator Fund"** | Funds deposited pursuant to the Arrangement in the account of the Arrangement Administrator, which shall serve as a dedicated source of funds solely for payment of the Companies' debts to Eligible Contingent Creditors as provided in this Arrangement and for payment of the Arrangement Administrator's fees. |
| **"The Court Order"** | The order referred to in Chapter D of this Arrangement. |
| **"Condition Precedent to the Arrangement Effective Date"** | The condition precedent to the Arrangement set forth in Chapter D of this Arrangement. |
| **"Shareholders"** | Any person or corporation that, directly or indirectly, holds shares in the Companies on the Arrangement Effective Date. |
| **"Available Cash Balance"** | The balance of cash held in Papaya Israel's bank accounts, less only: (a) the amounts pledged in favor of the banks in which the balances are held, as follows: deposits securing bank guarantees issued to property lessors and payments in respect of credit cards and hedging transactions; (b) players' credit balances; and (c) a total of US$30 million allocated for ongoing operations. |
| **"Dollar"** or **"$"** | United States dollar. |

## B.   <u>The Debt Arrangement – General</u>

1. The purposes of this Arrangement are: (1) to ensure the ability to pay all Contingent Debts if and to the extent that they become enforceable debts in Israel, all in accordance with the terms of the Arrangement; and (2) to enable the Companies to continue their business operations.

2.    The Companies have Contingent Debt owing to Contingent Creditors, the amount of which exceeds their cash balances, due to a foreign judgment (which is not final and remains subject to appeal) rendered in favor of Skillz Platform Inc. [1]

3.    As of the Arrangement Effective Date, this Arrangement shall constitute the exclusive, final, and exhaustive framework governing the relationship, rights, and obligations between the Companies and the Contingent Creditors.

4.    The Arrangement shall not apply to the Excluded Creditors, and approval of the Arrangement shall not result in any change to the rights of the Excluded Creditors or to the adjudication of those rights. All current obligations of the Companies to the Excluded Creditors shall continue to be paid in the ordinary course and when due.

5.    Accordingly, the Excluded Creditors are not required to file a Proof of Debt. The amounts due to them, as set forth in the Application for Approval of the Arrangement and the annexes thereto, shall continue to be paid in the ordinary course and when due. The itemization of the amounts in Form 1 results solely from the requirements of law, and it is clarified that it shall not preclude an Excluded Creditor from disputing, in the ordinary course of business, the amounts stated therein.

6.    Similarly, players who have deposited, or who will deposit, funds using the Companies' platform may continue to use those funds, whether for participating in games or for withdrawal, all in the ordinary course of business and in accordance with the Terms of Use.

7.    All proceedings pending before courts or tribunals against the Companies, or either of them, on the date of filing of the Application for Approval of the Arrangement, which will be stayed pursuant to an application for a stay of proceedings filed concurrently with this Application, shall be stayed only until the Arrangement Effective Date. Upon the Arrangement becoming effective, the stay of proceedings order shall expire, and such proceedings shall resume and continue in the ordinary course. Payment of any judgment in favor of an Eligible Contingent Creditor shall be made, if required, in accordance with the provisions of this Arrangement.

8.    During the term of the Arrangement, the Companies shall continue to operate in the ordinary course of business, and the management and boards of directors of the Companies shall remain in office, with the Arrangement Administrator acting alongside them to ensure the optimal continuation of their business operations.

---

[1] Skillz Platform Inc. v. Papaya Gaming, Ltd. et al., No. 1:24-cv-01646-DLC (S.D.N.Y.)

– 5 -

## C. Terms of the Proposed Arrangement for Creditors

9. **General**:

(a) During the term of the Arrangement, all current obligations to all Excluded Creditors shall be paid in accordance with their payment terms and in the ordinary course of business.

(b) The Contingent Debts shall be paid only to Eligible Contingent Creditors, that is, only after the Contingent Creditor holds an Enforceable Monetary Judgment, and in accordance with the provisions below.

10. **The Contingent Debts shall be paid as follows:**

(a) An Eligible Contingent Creditor in whose favor an Enforceable Monetary Judgment has been rendered against either of the Companies in an amount not exceeding $5,000,000 (five million dollars) shall be paid the full amount of the judgment in the ordinary course of business and not from the Arrangement Administrator Fund.

(b) An Eligible Contingent Creditor in whose favor an Enforceable Monetary Judgment has been rendered against either of the Companies in an amount exceeding $5,000,000 (five million dollars) shall be entitled to receive the full amount of the judgment from the Arrangement Administrator Fund, as set forth in Section 12 below.

11. **Establishment of and Contributions to the Arrangement Administrator Fund**

(a) Within 14 days after the Arrangement Effective Date, Papaya Israel shall deposit an initial amount of $60,000,000 (sixty million dollars) into a dedicated bank account to be opened by the Arrangement Administrator.

(b) In addition to the initial deposit referred to in subsection (a), Papaya Israel shall deposit annually into the Arrangement Administrator Fund account, no later than January 15 (the fifteenth day of January), an amount equal to the Available Cash Balance as of January 3 (the third day of January) of that year, but in no event more than the amounts specified in Annex 1 to this Arrangement.

(c) The Arrangement Administrator may apply to the Court to reduce or increase the amount that Papaya Israel is required to deposit on the aforesaid deposit dates, as compared with the amounts specified in the said Annex, having regard to the total Available Cash Balance and all the information before the Arrangement Administrator. The Honorable Court shall rule on the Arrangement Administrator's application after affording the relevant parties an opportunity to be heard.

(d) The funds held in the Arrangement Administrator Fund shall be invested in United States government bonds with a one-year maturity (One-Year U.S. Treasury Securities), or in a

bank deposit bearing annual interest at a rate equal to the yield on such bonds. All profits, yields, and/or income that accrue and/or are generated in connection with the deposit and/or investment of such funds shall be credited to the Arrangement Administrator Fund and shall be used solely for payments under this Arrangement and strictly in accordance with its provisions.

12. **Use of and Payments from the Arrangement Administrator Fund:**

(a) Following the rendition of an Enforceable Monetary Judgment in its favor in an amount exceeding $5,000,000, an Eligible Contingent Creditor shall apply to the Arrangement Administrator and furnish all documents required to substantiate its claim. The Arrangement Administrator shall review the documents submitted and shall pay the Eligible Contingent Creditor, from the Fund held by the Arrangement Administrator, the amount of the Enforceable Monetary Judgment within thirty days, subject to the provisions below.

(b) An Eligible Contingent Creditor as aforesaid, where the amount of the Enforceable Monetary Judgment rendered in its favor exceeds the amount paid to it in a particular calendar year, shall be entitled to continue receiving annual payments from the Arrangement Administrator until the full amount of the Enforceable Monetary Judgment rendered in its favor has been satisfied.

(c) If, at any time when a payment is to be made from the Arrangement Administrator Fund, more than one Enforceable Monetary Judgment is pending for payment before the Arrangement Administrator, the Arrangement Administrator shall distribute the amount being paid among the creditors entitled to such payment on a pro rata basis, according to the ratio between the amounts of the Enforceable Monetary Judgments pending for payment at that time.

(d) The amount of each Enforceable Monetary Judgment shall be converted into United States dollars in accordance with the representative exchange rate of the dollar on the date on which the monetary judgment became enforceable in Israel. If the judgment, or any part thereof, is not paid by the Arrangement Administrator within 30 days as provided in subsection (a) above, the unpaid portion shall bear annual interest at the rate specified in Section 11(d) above, from the expiration of the 30-day period until the date of actual payment.

(e) If the entitlement of all Contingent Creditors terminates, whether because their debts have been paid, their claims have been dismissed and/or settled and/or stricken, or for any similar reason, and/or if Papaya Israel is able to demonstrate that it can pay them in the ordinary course of business, the obligation to make annual deposits into the Arrangement

Administrator Fund shall terminate, and the Arrangement Administrator shall transfer to Papaya Israel the balance of the Fund, to the extent any balance remains.

13. This Arrangement shall terminate after all obligations and actions provided for herein have been fully performed and completed, in accordance with and subject to the provisions of this Arrangement.

## D. **Condition Precedent to Implementation of the Debt Arrangement**

14. The condition precedent to the Debt Arrangement becoming effective is the Court's approval of this Arrangement (the "**Court Order**"), including the issuance of an order granting the Companies a full, final, absolute, and binding discharge, as set forth in this Arrangement and in accordance with Chapter G hereof, whether as part of the approval of the Arrangement or in an ancillary judicial decision.

15. If the Condition Precedent to this Arrangement becoming effective is not satisfied, or if this Arrangement does not become effective for any reason, then, without prejudice to any right or argument available to the Companies under law, the following provisions shall apply:

   (a) This Arrangement, including all its provisions and annexes, and all agreements, proposals, waivers, representations, declarations, undertakings, and positions raised, submitted, or considered thereunder or in connection therewith, shall be null and void, shall have no force or effect, and shall not bind the Companies in any manner whatsoever;

   (b) Nothing in this Arrangement, in the pleadings filed in the proceedings for approval of this Arrangement, in related proceedings, or in any part thereof shall constitute evidence, an admission, a representation, an estoppel, a waiver, consent, a basis for any contention concerning the scope, validity, amount, classification, priority, or manner of payment of any debt, or a basis for any allegation, demand, claim, or proceeding of any kind whatsoever.

   (c) No party may rely on anything stated in this Arrangement or in any pleading filed in the proceeding for approval of the Arrangement, or in related proceedings, in any judicial, quasi-judicial, arbitral, administrative, or other proceeding, whether in Israel or elsewhere;

   (d) In such event, the parties shall, to the greatest extent possible, be restored to the legal, procedural, and commercial positions in which they stood immediately prior to the filing of the Application for Approval of the Arrangement.

## E. **Arrangement Administrator**

16. The Honorable Court shall be requested, as part of this Debt Arrangement, to appoint an Arrangement Administrator pursuant to Section 326 of the Law, who shall act in

accordance with the provisions of law, the provisions of this Arrangement, and the decisions of the Court.

17. The Arrangement Administrator's fees, as well as the Arrangement Administrator's expenses as approved by the Court, shall be determined and awarded by the Court in accordance with the provisions of law.

18. Notwithstanding anything to the contrary elsewhere in this Arrangement, the Arrangement Administrator's fees and expenses shall be paid from the Arrangement Administrator Fund and shall have priority over any other payment made from the Arrangement Administrator Fund.

19. The Arrangement Administrator shall be authorized to take any action required for the implementation, administration, performance, and enforcement of this Arrangement, all in accordance with the provisions of law, the provisions of this Arrangement, and the decisions of the Court.

20. Without limiting the generality of the foregoing, the Arrangement Administrator shall be authorized, inter alia, to:

(a) Receive, examine, adjudicate, and determine Proofs of Debt and debt claims, in whole or in part;

(b) Require any creditor, the Companies, or any other relevant party to provide any document, supporting evidence, data, affidavit, clarification, or information that the Arrangement Administrator deems appropriate for the performance of the Arrangement Administrator's duties;

(c) Approve, reject, or amend Proofs of Debt, in whole or in part, and determine the amount, status, and classification of each debt for purposes of this Arrangement;

(d) Manage the Arrangement Administrator Fund, including receiving and holding funds, investing them in accordance with the provisions of the Arrangement, to the extent permitted by law or by order of the Court, and making payments therefrom in accordance with the provisions of this Arrangement;

(e) Determine the manner in which documents and communications are to be submitted to the Arrangement Administrator, including deadlines, format, method of service, and formal requirements;

(f) Apply to the Court from time to time for instructions, approval of an action, determination of a dispute, clarification of the provisions of this Arrangement, or any other relief required, in the Arrangement Administrator's discretion, for the performance of the Arrangement Administrator's duties;

(g) Engage advisers, experts, accountants, attorneys, and other professionals as the Arrangement Administrator deems appropriate for the performance of the Arrangement Administrator's duties, and such expenses shall be deemed expenses of the Arrangement Administrator.

## F.   **Proof of Debt Mechanism**

21. Whereas the Arrangement provides that all current obligations of the Companies to the Excluded Creditors shall continue to be paid in the ordinary course and when due, the Excluded Creditors are not required to file Proofs of Debt as a condition for the continued payment of the current amounts due to them, as detailed in Form 1 attached to the Application for Approval of the Arrangement, and such amounts shall be paid to them in the ordinary course and when due.

22. The invitation to the Contingent Creditors to file Proofs of Debt is intended to permit the adjudication of Contingent Debts or claims of Contingent Creditors that are not known to the Companies on the date of filing of the Application for Approval of the Arrangement. Accordingly, any Contingent Creditor that alleges that it holds a Contingent Debt against either of the Companies, whether because it is not listed in Form 1 or because it disputes the amount stated beside its name in Form 1, is required to submit a Proof of Debt to the Arrangement Administrator within 21 days after the appointment of the Arrangement Administrator (the "**Proof of Debt Deadline**").

23. The Arrangement Administrator may accept a Proof of Debt filed after the Proof of Debt Deadline only if satisfied that there is special justification for the delay in filing it; provided, however, that under no circumstances shall a Proof of Debt be accepted after the date on which the Arrangement is approved by the Court. A Contingent Creditor that was required to file a Proof of Debt in accordance with this Arrangement and failed to file it on time, or whose Proof of Debt was not approved, shall not be entitled to vote on this Debt Arrangement and shall have no claim, demand, or allegation against either of the Companies in respect of the Contingent Debts.

24. The Arrangement Administrator may require any document and/or data deemed necessary, in the Arrangement Administrator's discretion, to determine the Proofs of Debt of Contingent Creditors that filed debt claims, whether for voting purposes or for substantive determination. If the requested documents or data are not furnished within the deadline established by the Arrangement Administrator, the Arrangement Administrator may determine the Proof of Debt on the basis of the material in the Arrangement Administrator's possession, or may reject the Proof of Debt, in whole or in part.

**Adjudication of Debt Claims for Voting Purposes:**

25. Any Contingent Creditor listed in Form 1 that does not file a Proof of Debt by the Proof of Debt Deadline shall be deemed, for purposes of voting on this Arrangement, to have agreed to the amount of the debt stated beside its name in Form 1, to have filed a Proof of Debt in that amount, and to have had its Proof of Debt approved in that amount for purposes of voting on this Arrangement.

26. A determination of a debt for voting purposes shall not constitute a substantive determination of the Proof of Debt.

27. A creditor seeking to appeal a determination of a debt for voting purposes may do so by applying to the Court within fourteen (14) days after the date on which it received the written determination of the debt (including by email or facsimile). An appeal filed after that deadline shall not be accepted unless the Court orders otherwise.

**Adjudication of Debt Claims on the Merits for Distribution Purposes:**

28. No additional Proof of Debt shall be required for substantive adjudication of the debt claims, and the Proof of Debt filed for voting purposes shall also be used for that purpose.

29. Proofs of Debt shall be determined on the merits as follows: (a) if the debt claim of a Contingent Creditor is the subject of pending legal proceedings, whether in Israel or elsewhere, the determination as to that creditor's entitlement to payment under this Arrangement shall be made in accordance with an Enforceable Monetary Judgment, as that term is defined in the Arrangement; (b) if the Proof of Debt of a Contingent Creditor is not the subject of pending legal proceedings, whether in Israel or elsewhere, the Arrangement Administrator shall determine the debt claim on the basis of the Proof of Debt, the documents and data furnished to the Arrangement Administrator, and any other relevant material the Arrangement Administrator deems appropriate;

30. A creditor seeking to appeal the substantive determination of a debt may do so by applying to the Court within thirty (30) days after the date on which it received the written substantive determination of the debt (including by email or facsimile). An appeal filed after that deadline shall not be accepted unless the Court orders otherwise.

31. Any provable debt for which no Proof of Debt was filed by the Proof of Debt Deadline, where the filing of a Proof of Debt was required under this Arrangement, or that was not approved under the Proof of Debt mechanism, shall confer on the creditor no right of action, demand, setoff, or recovery against either of the Companies and shall be deemed discharged for purposes of this Arrangement.

32. As of the Arrangement Effective Date, no recovery may be made from either of the Companies in respect of a Contingent Debt except in accordance with the provisions of this Arrangement.

## G.   Release and Waiver

33. This Arrangement shall definitively, exclusively, and conclusively establish and embody the relationship, rights, and obligations between the Companies and the Contingent Creditors, and shall exhaustively resolve and regulate the status of all Contingent Debts of the Companies. Accordingly, as of the Arrangement Effective Date, the following provisions shall apply:

    (a) No Contingent Creditor shall have any cause of action, allegation, demand, or claim of any kind or on any ground whatsoever against the Companies and/or anyone acting on their behalf in any matter concerning and/or relating to the Contingent Debts, other than debt claims that have been approved;

    (b) The Contingent Creditors shall not be entitled to exercise any self-help remedy of any kind in connection with the Contingent Debts against the Companies or anyone acting on their behalf, including setoff, lien, attachment, seizure of assets, realization of collateral or a guarantee, assignment of debt, exercise of a right of retention, or any other independent action intended to effect collection, enforcement, or recovery.

    (c) Any release, indemnification undertaking, right to indemnification, directors' and officers' insurance, or other right to protection, indemnification, or release that has been granted or is available to officers, directors, and officeholders of the Companies under the Companies' organizational documents, any agreement, any insurance policy, or any law shall remain in full force and effect and shall not be impaired in any respect by reason of the approval or performance of this Arrangement;

    (d) Subject to the provisions of law and this Arrangement, as of the Arrangement Effective Date, a full, final, and irrevocable release shall take effect in favor of the Companies, their officers, directors, employees, agents, advisers, representatives, and Shareholders, and any person or entity that acted or acts on their behalf or in their name, from any cause of action, allegation, demand, or claim of any kind, whether known or unknown, existing, contingent, or future, in connection with the Contingent Debts.

## H.   General Provisions

34. The preamble to this Arrangement and the annexes hereto constitute an integral part hereof; the section headings are for convenience only and shall not be relied upon in interpreting or construing this Arrangement.

35. For purposes of interpreting the provisions of this Arrangement, the provisions of this Arrangement and the provisions of any annex hereto shall be deemed complementary and shall be read together.

36. No change, amendment, or addition to the Arrangement shall be valid or effective unless made in writing, signed by the Companies, and approved by the Honorable Court.

37. A reference to this Arrangement, to a specific provision of this Arrangement, or to any other document shall be construed as a reference to this Arrangement, the said provision, or the said document, as in effect at that time, including as amended, modified, or supplemented from time to time, as of the relevant time.

38. In this Debt Arrangement, words in the singular include the plural, and vice versa; words importing the masculine gender include the feminine gender, and vice versa; the term "person" includes any individual, corporation, company, partnership (whether registered or unregistered), nonprofit organization, trust, incorporated or unincorporated body, and any other legal entity.

39. This Arrangement, together with its annexes, embodies all agreements, stipulations, and declarations between the Companies and the Contingent Creditors in connection with the matters regulated herein, and no proposal, summary, understanding, representation, or promise in connection therewith made or given by any party prior to the Arrangement Effective Date, whether in writing or orally, expressly or impliedly, shall have any effect, except as provided in this Arrangement.

40. The failure of any party to exercise any right available to it under this Arrangement or by law, or any postponement or delay in such exercise, shall not constitute a waiver of that right, and the partial or one-time exercise of such a right shall not preclude any further or other exercise thereof or the exercise of any other right. Any extension or relief granted, or any waiver or compromise made, by any party in a particular case shall not be construed as a precedent or waiver with respect to any other case and shall not derogate from that party's rights under this Arrangement or by law.

41. No draft of this Arrangement or its annexes shall be admissible as evidence before judicial and/or quasi-judicial bodies, including arbitrators and/or adjudicators, or be used in interpreting this Arrangement, its provisions, or its annexes.

42. This Arrangement shall be governed exclusively by the laws of the State of Israel and shall be interpreted in accordance therewith.

43. Exclusive local jurisdiction over any matter relating to this Arrangement shall be vested in the court of competent jurisdiction in Tel Aviv-Yafo. The foregoing shall not derogate from the commencement of proceedings under Chapter 15 of the U.S. Bankruptcy Code.

However, any such application shall not be deemed consent to the jurisdiction of a foreign tribunal with respect to any dispute concerning the interpretation, implementation, or performance of this Arrangement.

44.   Interest accruing under this Arrangement on the Contingent Debts shall be in lieu of any other interest under law or contract.

45.   In the event of any conflict or inconsistency between the provisions of this Arrangement and the provisions of any annex hereto, the provisions of this Arrangement shall prevail, unless expressly provided otherwise.

46.   Without prejudice to the provisions of this Arrangement, the Arrangement Administrator and each of the parties may apply to the Court for instructions on any matter concerning the interpretation, implementation, performance, or enforcement of this Arrangement.

47.   The provisions of this Arrangement shall bind and inure to the benefit of the parties hereto, as well as their successors, assigns, transferees, heirs, and all persons claiming through them, as applicable and subject to the provisions of law.

**Annex 1 - Payment Schedule for the Arrangement Administrator Fund**

## Papaya Payment Schedule for the Arrangement Administrator Fund

Papaya's cash deposits into the Arrangement Administrator Fund shall be scheduled as follows:

1. Within 14 days after the Arrangement Effective Date, an amount of $60,000,000 (sixty million dollars).

2. Within 15 days following the end of 2026, an amount of $30,000,000 (thirty million dollars).

3. Within 15 days following the end of 2027, an amount of $60,000,000 (sixty million dollars).

4. Within 15 days following the end of 2028, an amount of $85,000,000 (eighty-five million dollars).

5. Within 15 days following the end of 2029, an amount of $100,000,000 (one hundred million dollars).

6. Within 15 days following the end of 2030, an amount of $120,000,000 (one hundred twenty million dollars).

7. Within 15 days following the end of 2031, an amount of $130,000,000 (one hundred thirty million dollars).

8. Within 15 days following the end of 2032, an amount of $145,000,000 (one hundred forty-five million dollars).

# TRANSPERFECT

I, Victoria Costa, hereby certify that I am competent to translate from Hebrew to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the document entitled "Creditors' Arrangement" from Hebrew to English.

*Victoria Costa*
[name]

*31.02.26*
[Date]

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 6TH FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM

OFFICES IN 90 CITIES WORLDWIDE