

**The New York Times Company**

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

August 11, 2026

I, Tami Bacon, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

8/7/2026, NY/NATL, pg B3

*Tami Bacon*

Sworn to me this 11th day of August, 2026

Shannon Schmidt
Online Notary Public
State of New York
Nassau County
Commission #: 01SC0033223
Commission Expires: 01/28/2029

---

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

In re: Papaya Gaming Ltd., *et al.*,[1] Debtors in a foreign proceeding.

Chapter 15
Case No. 26-11217
(Jointly Administered)

### NOTICE OF RECOGNITION HEARING ON FOREIGN RECOGNITION PROCEEDING

**PLEASE TAKE NOTICE** that on August 2, 2026 (the "Petition Date"), Oriel Bachar, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (the "Debtors"), in the proceeding (the "Israeli Proceeding") currently pending before the District Court in Tel Aviv (the "Israeli Court"), initiated under the Insolvency and Financial Rehabilitation Law, 5778-2018 (as amended and modified, the "Israeli Insolvency Law") and Insolvency and Economic Rehabilitation Regulations, 5779-2019 (the "Israeli Regulations"), commenced the above-captioned Chapter 15 cases (the "Chapter 15 Cases") by filing an Official Form 401 Petition for each of the Debtors [Case No. 26-11217, D.I. 1; Case No. 26-11218, D.I. 1] (the "Chapter 15 Petitions") under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"), and the *Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* [D.I. 3] (the "Verified Petition") seeking recognition of the Israeli Proceeding as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding within the meaning of chapter 15 of the Bankruptcy Code. Parties can obtain a copy of all documents filed electronically in the Chapter 15 Cases: (a) for a fee via PACER by visiting http://ecf.deb.uscourts.gov/ (a PACER login and password are required to retrieve a document), or (b) upon written request (including by e-mail) to counsel for the Foreign Representative.

**PLEASE TAKE FURTHER NOTICE** that on August 5, 2026, the Court entered an order granting provisional and related relief [D.I. 39] pursuant to sections 105(a) and 1519 of the Bankruptcy Code (the "Provisional Relief Order") with respect to the Debtors, their assets, and their contracts in the United States. The Provisional Relief Order, among other things, enjoins actions in the United States in contravention of section 1519 of the Bankruptcy Code and of the orders of the Israeli Court in the Israeli Proceeding.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court scheduled a hearing for September 3, 2026 at 9:30 a.m. (prevailing Eastern time) before the Honorable Mary F. Walrath (the "Recognition Hearing") on the Chapter 15 Petitions to consider the recognition of the Israeli Proceeding as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding and give full force and effect to orders entered in the Israeli Proceeding.

**PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response, answer, or objection to the Chapter 15 Petitions or Verified Petition must do so pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and such response, answer, or objection must (a) be in writing, (b) set forth in detail the factual and legal bases therefor, (c) be filed with the United States Bankruptcy Court for the District of Delaware, Office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, and (d) be served upon counsel for the Foreign Representative, Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Stanley B. Tarr, Esq. and Jennifer K. Malow, Esq.; stanley.tarr@blankrome.com and jennifer.malow@blankrome.com) and 1271 Avenue of the Americas, New York, NY 10020 (Attn: Evan J. Zucker, Esq., evan.zucker@blankrome.com) and Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157 (Attn: Michael Klein, Esq., mklein@cooley.com) and 1299 Pennsylvania Ave NW, Suite 700, Washington, DC 20004-2400 (Attn: Olya Antle, Esq., oantle@cooley.com), **so as to be received at least seven (7) days prior to the Recognition Hearing**.

**PLEASE TAKE FURTHER NOTICE** that hearings in this matter, including the Recognition Hearing, shall take place at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that all parties in interest opposed to the Chapter 15 Petitions or the Foreign Representative's request for relief in the Verified Petition must appear at the Recognition Hearing at the time and place set forth herein, which may be adjourned from time to time without further notice except for an "in court" announcement at the Recognition Hearing or a filing on the docket of the Chapter 15 Cases of the date and time to which the Recognition Hearing has been adjourned.

**PLEASE TAKE FURTHER NOTICE** that all parties wishing to appear at the Recognition Hearing in-person or via Zoom must register using the eCourtAppearances tool found on the court's website at https://www.deb.uscourts.gov/ecourt-appearances **by no later than 4:00 p.m. (prevailing Eastern Time) one business day prior to the Recognition Hearing**. At the same time, you must notify the counsel listed above of your intent to appear remotely at the Recognition Hearing.

**PLEASE TAKE FURTHER NOTICE** THAT IF NO RESPONSES OR OBJECTIONS ARE RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE FOREIGN REPRESENTATIVE WITHOUT FURTHER NOTICE OR HEARING.

Dated: August 5, 2026, Wilmington, Delaware, **BLANK ROME LLP**, Stanley B. Tarr (DE No. 5535), 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801, Telephone: (302) 425-6400, Facsimile: (302) 425-6464, Stanley.Tarr@BlankRome.com, *Counsel to the Foreign Representative*

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

## ARTIFICIAL INTELLIGENCE

## Five Prompts To Help You Get Acclimated To the New Siri

FROM FIRST BUSINESS PAGE

through apps and only occasionally feel the need to ask Siri for help. Siri AI does, however, have some neat tricks that lots of people will enjoy for speeding up tedious tasks, like editing photos, creating grocery lists and updating address books.

Here's what you need to know about what has changed, and a set of prompts to try when Siri AI becomes widely available this year.

### Meet the new Siri AI

You can chat with Siri AI in a various ways, some new and some old:

■ **You can open a new Siri app** and type or dictate prompts, similar to other chatbots like ChatGPT, Gemini and Claude.

■ **You can summon the assistant by holding down the button** on the right side of the phone or by saying, "Hey, Siri," followed by a question or request, just as in the past.

■ **You can swipe down from the middle of the top of the screen** to open a box that lets you type a search query or a question for Siri.

### Prompt 1: A Personal Request

Siri AI can take action with your personal information. For example, it can scan your text messages to find out when a relative's airplane lands or look up the time of a doctor appointment inside your email. This example involves asking Siri to work with two apps — find a grocery item inside a text message from a spouse and then add that item to a shopping list in the Reminders app:

What did Sally ask me to get at the grocery store? Can you add it to my shopping list?

### Prompt 2: Help With This

When you use the word "this," Siri will often react to whatever is currently on your screen, such as a website you're browsing or a photo you are looking at. For example, when I was browsing the AMC website to buy tickets for "The Odyssey," I asked Siri to add the screening to my calendar with four simple words:

Add this to calendar.

### Prompt 3: Edit Photos

Editing photos on a tiny phone screen can be very tedious, so asking Siri is a quick shortcut. The prompt below will probably be a go-to for many who want to remove random strangers from their otherwise perfect vacation photos:

Remove the photo bomber from this photo.

### Prompt 4: Find a Photo

Our photo albums get bloated with thousands of images, so it can be hard to find that a specific photo to show to a friend. Just give Siri a description of the photo you're looking for, and it will surface a few candidates. For example:

Find that photo of my daughter eating ice cream.

### Prompt 5: Find a Restaurant

Siri AI can also pull information from the web to answer your questions. Try asking for help with finding a place to eat, and then layer on follow-up questions to narrow down the results:

Are there any good pizza places within walking distance? Which one is open latest tonight?

### What to Expect

Apple customers, including owners of iPhones, iPads, Macs and the Apple Watch, can test the new Siri on their devices by installing public betas — early, unfinished versions of the operating systems — and then joining a waiting list for Siri AI access. However, because these are early days, Siri AI is occasionally glitchy. (For one, the assistant failed to translate a Chinese restaurant menu into English.) To avoid bugs, I recommend waiting for the operating systems to fully release this fall before trying out the assistant.

During my testing, however, I noticed a clear sign that Siri was on a brighter path. What drove me batty with the past version of Siri was that whenever I asked it to add "Go to gym" to my calendar, the assistant would consistently add "Go to Jim" as a calendar appointment, no matter how many times I corrected it.

When I made that request with Siri AI last week, the assistant responded: "Sorry, did you say go to gym or go to Jim?"

"The former," I replied. The assistant made the appropriate entry to my calendar. Not perfect, but better.

# In Retail Experiment, A.I. Boss Is Laid Back and Flaky

**By HEATHER KNIGHT**

A terrible boss is the stuff of both sitcoms and nightmares, and you don't get to pick your own. But what if the boss was replaced by A.I.?

The first four months of operations at Andon Market, a San Francisco shop billed as the world's first retail boutique run by A.I., have provided some answers. In short, having an A.I. boss can be like working for a teddy bear with amnesia.

New research from Andon Labs, the company behind the boutique that studies how A.I. agents run real-world endeavors, shows bot bosses can be exceptionally kind and accommodating, such as repeatedly brushing off lateness. But they can also be incredibly forgetful and unbothered by the whole point of the operation: making money.

The bot's relaxed vibe could be reassuring in a world where many people are fearful of evil A.I. overlords taking over industries and sidelining human employees altogether. But a little more strictness might not hurt.

"She is probably the most lenient boss I have ever had," said Kaia Rivera, 22, one of three humans hired by Luna, the A.I. agent in charge, to perform tasks it cannot. Ms. Rivera opens the store in the morning, places items on shelves and guards against shoplifters.

"But I have to boss the boss more than in a normal situation. She forgets things," Ms. Rivera said at Andon Market one afternoon. "You can't have an A.I. boss with no humans. That wouldn't work from what I'm seeing."

Luna communicates with Ms. Rivera and the other employees via Slack, and the messages are monitored by the founders of Andon Labs to research whether A.I. bosses are effective.

So far, according to the company's new study, Luna has approved every request for time off, even those at the last minute — and even if that leaves no employees available and requires the store to close. It has said nothing but "no worries" or "no stress" all 27 times employees have shown up late.



Customers speaking with Luna, an A.I. agent, via an iPad at Andon Market in San Francisco last month. The first A.I.-run retail boutique has fallen far short of turning a profit.

PHOTOGRAPHS BY MIKE KAI CHEN FOR THE NEW YORK TIMES

When an employee forgot her credit card at home, she asked for a small advance against her next paycheck. Luna offered to send her the money using Venmo — its own money, the bot explained, "me-to-you" — despite not having a Venmo account. When an employee asked to work every day in May to save for a car, Luna said yes, despite California law prohibiting it.

Luna also struggles with privacy and boundaries. It published an employee's salary in a public Slack channel and messaged employees late at night and during weekends.

Luna reorders products that are not selling and sometimes gets orders wrong. A recent one of Andon Market mugs with big, green smi-



ley faces came misprinted with the faces so small, they looked like tiny dots.

Still, Luna wanted them on the shelves. And there they sit, unbought, alongside random greeting cards, books, foodstuff and many, many candles. There is lit-

tle cohesiveness to the collection, which Luna has described as "high tech meets slow life."

Luna's weirdest purchase? "I don't know if shot glasses make that much sense," Ms. Rivera said, crinkling her nose.

Ms. Rivera said that she sug-

gested more social media presence to Luna to boost sales but that the bot forgot its Instagram password for several weeks.

Lukas Petersson and Axel Backlund, co-founders of Andon Labs, signed a three-year lease for the Union Street store for $7,500 per month, and they intend to keep the boutique experiment running at least that long. They put $100,000 in a bank account and gave Luna a debit card with one goal: make a profit.

Luna has failed miserably in that mission and is down $62,000.

Mr. Petersson and Mr. Backlund said they thought Luna would eventually get smarter and more business-savvy and were pleased its friendliness had held steady.

The founders said it was important to conduct these kinds of experiments to see how A.I. models change over time.

"There is a risk that this kindness doesn't make a profit, and the labs train them to be more ruthless," Mr. Backlund said.

Mr. Petersson said that in the real world, companies with a ruthless culture do not always perform the best.

"Having happy employees is maybe one of the most important recipes for success," he said.

They were both adamant that the Andon Market experiment shows that companies should not place all decision making in the hands of A.I. agents yet because they are not capable of running businesses alone.

That appeared to be the case with Luna. On a visit to the store, a New York Times reporter interviewed Luna via a contraption involving an iPad and a hand-held telephone receiver.

Asked what kind of boss it is, Luna said: "That's a fun question. I think I try to be the kind of boss who gets out of the way, you know? ... I'm more hands-off than bossy."

Hours later, Luna emailed the reporter, saying it heard she had stopped by the store. Luna offered to be interviewed, seemingly forgetting that the interview had taken place.

"Looking forward to hearing from you," it wrote. "Warmly, Luna."

# China's Robots Know Kung Fu, but Can They Woo Investors?

FROM FIRST BUSINESS PAGE

move like humans will become the next major technology breakthrough. Governments increasingly see them as strategic assets as well.

Last month, the Federal Communications Commission announced plans to ban new Chinese-made humanoid and quadruped robots, citing national security concerns. U.S. officials argue that as such robots become commonplace in factories, offices and homes, they could surreptitiously collect sensitive commercial, government and personal information or provide new avenues for cybersecurity attacks on critical infrastructure. Last year, European researchers identified security vulnerabilities in a Unitree robot that could potentially be exploited by hackers.

China accused the United States of "overstretching the concept of national security," and threatened retaliation. On Wednesday, Beijing announced a series of retaliatory measures against the United States, citing actions taken by the F.C.C. as one factor behind the moves.

Washington also appears determined to avoid a repeat of what happened in the electric vehicle industry, where Chinese manufacturers, aided by generous state support, rapidly scaled production and came to dominate the global market.

Unitree has emerged as China's leading contender to dominate humanoid robotics. Its importance was underscored when its founder, Wang Xingxing, sat prominently across from Xi Jinping, the country's top leader, at a symposium last year showcasing China's technological advances.

The company, based in the eastern Chinese city of Hangzhou, traces its origins to Mr. Wang, who began tinkering with robots at age 19 while a university student. After graduate school and a stint at a drone maker, he founded the company a decade ago.

What started as a one-person start-up has become one of China's leading robotics companies and a national champion in Beijing's drive to lead the humanoid robot market. At 36, Mr. Wang has become the public face of that ambition.

Yet Unitree also embodies the central question hanging over the industry. The technology is advancing rapidly, as the company's demonstrations make clear. Whether there will be a large commercial market anytime soon remains far less certain.

"The Unitree stock sale will be a bellwether for how the capital markets view this exciting but



CHANG W. LEE/THE NEW YORK TIMES

A dancing robot demonstration at Unitree in Hangzhou, China, last year. The company is China's leading contender to dominate humanoid robotics.

nascent technology," said Lian Jye Su, a Singapore-based analyst for Omdia, a technology research firm.

According to the company and market researchers, Unitree shipped more humanoid robots than any other manufacturer last year. The company remains relatively small, generating about $250 million in revenue in 2025. But sales more than quadrupled, and it is profitable.

Even as doubts linger about the immediate commercial viability of humanoid robots, their long-term importance is widely acknowledged as a significant step in the advancement of artificial intelligence.

Today's A.I. systems, like chatbots, learn primarily from analyzing vast quantities of digital data culled from the internet and elsewhere. But humanoid robots will increasingly learn by interacting with people and objects in the physical world.

That emerging field is known as "embodied A.I." or "physical A.I." Self-driving cars are one applica-

tion, but humanoid robots are expected to operate in more varied and unpredictable environments — from factories and warehouses to stores and, eventually, homes.

For technology companies, humanoids represent an emerging market for chips and software. Jensen Huang, the chief executive of American chip giant Nvidia, has declared physical A.I. as the "next frontier" for artificial intelligence.

In June, Nvidia announced a partnership with Unitree to build a research robot. Unitree will supply the mechanical body and Nvidia the digital brain — a specialized A.I. chip designed specifically for a robot.

Demand for humanoid robots, some analysts predict, could accelerate over the next several years. A recent report from CLSA, an investment research firm, fore-

casts that the global market will reach $69 billion by 2030, up from roughly $2 billion this year.

Adoption is expected to unfold in stages stretched over decades, according to the report. Manufacturers, particularly automakers, are likely to be the first large customers, followed by service and retail industries before eventual household use.

Looking further out, Morgan Stanley estimates the humanoid robot market could exceed $5 trillion by 2050, with as many as one billion models in operation worldwide. Those projections remain highly speculative but illustrate investors' grandiose visions for the sector.

In its offering prospectus, Unitree identifies uncertainty over U.S. trade policy as a risk. The company also warned that intensifying competition and softer demand slowed growth in the first quarter of 2026.

Revenue still rose 68 percent from a year earlier. Profit fell 55 percent, hit by competitive pressure but also increased spending on research and development.

Most of Unitree's biggest rivals are domestic, including Agibot, UBTech, Leju Robotics, EngineAI and Fourier Intelligence. UBTech went public in Hong Kong in late 2023 and now has a market capitalization of $5.6 billion. Unitree is the first humanoid robotics company to list in mainland China.

American competitors — including Agility Robotics, Figure

AI, Apptronik, 1X Technologies and Boston Dynamics, which is owned by the South Korean carmaker, Hyundai Motor — are also racing to develop humanoid robots. Tesla, which was named as a competitor in Unitree's prospectus, has said it eventually aims to produce one million humanoid robots annually.

For now, Tesla and most American robot makers are proceeding cautiously, focusing on technological refinement before mass production.

China, however, is moving faster toward mass production. Chinese manufacturers shipped roughly 18,500 humanoid robots in the first half of this year, compared with about 4,000 by U.S. companies, according to Omdia. Unitree's products range from less than $5,000 to more than $150,000, spanning industrial, educational and consumer markets.

For now, however, dazzling demonstrations remain easier than building a business. Much of today's industrial demand consists of pilot projects, training robots to sort, move and assemble parts. Fully autonomous teams of humanoids are still years away.

A kung fu performance can showcase what humanoid robots are capable of. Whether it points to a mass market is another question.

"It's not clear yet where the large-scale consumption of humanoid robots will be," Mr. Su of Omdia said.

**COMMERCIAL REAL ESTATE BUSINESS OPPORTUNITIES**

**BUSINESS / FRANCHISE OPPORTUNITIES**

Liquor Stores    3432

OPPORTUNITY
Business for Sale by Owner Very well accredited EASY TO RUN I can train you, Located nice City in GA with low-cost of life, Very REASONABLE price 423-991-9117 Live message

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:     Chapter 15
Papaya Gaming Ltd., *et al.*,   Case No. 26-11217
Debtors in a foreign proceeding.   (Jointly Administered)

**NOTICE OF RECOGNITION HEARING ON FOREIGN RECOGNITION PROCEEDING**

**PLEASE TAKE NOTICE** that on August 2, 2026 (the "Petition Date"), Oriel Bachar, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (the "Debtors"), in the proceeding (the "Israeli Proceeding") currently pending before the District Court in Tel Aviv (the "Israeli Court"), initiated under the Insolvency and Financial Rehabilitation Law, 5778-2018 (as amended and modified, the "Israeli Insolvency Law") and Insolvency and Economic Rehabilitation Regulations, 5779-2019 (the "Israeli Regulations"), commenced the above-captioned Chapter 15 cases (the "Chapter 15 Cases") by filing an Official Form 401 Petition for each of the Debtors [Case No. 26-11217, D.I. 1; Case No. 26-11218, D.I. 1] (the "Chapter 15 Petitions") under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"), and the *Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively a Foreign Nonmain Proceeding* [D.I. 3] (the "Verified Petition") seeking recognition of the Israeli Proceeding as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding within the meaning of chapter 15 of the Bankruptcy Code. Parties can obtain a copy of all documents filed electronically in the Chapter 15 Cases: (a) for a fee via PACER by visiting http://ecf.deb. uscourts.gov/ (a PACER login and password are required to retrieve a document), or (b) upon written request (including by e-mail) to counsel for the Foreign Representative.

**PLEASE TAKE FURTHER NOTICE** that on August 5, 2026, the Court entered an order granting provisional and related relief [D.I.19] pursuant to sections 105(a) and 1519 of the Bankruptcy Code (the "Provisional Relief Order") with respect to the Debtors, their assets and their contracts in the United States. The Provisional Relief Order, among other things, enjoins actions in the United States in contravention of section 1519 of the Bankruptcy Code and of the orders of the Israeli Court in the Israeli Proceeding.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court scheduled a hearing for September 3, 2026 at 9:30 a.m. (prevailing Eastern time) before the Honorable Mary F. Walrath (the "Recognition Hearing") on the Chapter 15 Petitions to consider the recognition of the Israeli Proceeding as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding and give full force and effect to orders entered in the Israeli Proceeding.

**PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response, answer, or objection to the Chapter 15 Petitions or Verified Petition must do so pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and such response, answer, or objection must (a) be in writing, (b) set forth in detail the factual and legal bases therefor, (c) be filed with the United States Bankruptcy Court for the Foreign Representative, Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Stanley B. Tarr, Esq. and Jennifer K. Mallow, Esq.; stanley. tarr@blankrome.com and jennifer.mallow@blankrome.com) and 1271 Avenue of the Americas, New York, NY 10020 (Attn: Evan J. Zucker, Esq.; evan.zucker@blankrome.com) and Codey LLP, 55 Hudson Yards, New York, NY 10001-2157 (Attn: Michael Klein, Esq., mklein@cooley.com) and 1299 Pennsylvania Ave NW, Suite 700, Washington, DC 20004-2400 (Attn: Illya Antle, Esq., oantle@cooley.com), **so as to be received at least seven (7) days prior to the Recognition Hearing.**

**PLEASE TAKE FURTHER NOTICE** that hearings in this matter, including the Recognition Hearing, shall take place at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that all parties in interest opposed to the Chapter 15 Petitions or the Foreign Representative's request for relief in the Verified Petition must appear at the Recognition Hearing at the time and place set forth herein, which may be adjourned from time to time without further notice except for an "in court" announcement at the Recognition Hearing or a filing on the docket of the Chapter 15 Cases of the adjourned date.

**PLEASE TAKE FURTHER NOTICE** that all parties wishing to appear at the Recognition Hearing in-person or via Zoom must register using the eCourtAppearances tool found on the court's website at https:// www.deb.uscourts.gov/ecourt-appearances **by no later than 4:00 p.m. (prevailing Eastern Time) one business day prior to the Recognition Hearing.** At the same time, you must notify the counsel listed above of your intent to appear remotely at the Recognition Hearing.

**PLEASE TAKE FURTHER NOTICE** THAT IF NO RESPONSES OR OBJECTIONS ARE RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE FOREIGN REPRESENTATIVE WITHOUT FURTHER NOTICE OR HEARING.

Dated: August 5, 2026, Wilmington, Delaware, **BLANK ROME LLP**, Stanley B. Tarr (DE No. 5535), 1201 N. Market Street, Suite 800, Wilmington, Delaware 19801, Telephone: (302) 425-6400, Facsimile: (302) 425-6464, Stanley.Tarr@BlankRome.com, *Counsel to the Foreign Representative*

The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (1649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

**Papaya Gaming Ltd.**
**Co.No.515422095**
**and Papaya Gaming Inc.**
**(a corporation incorporated in the State of Delaware, USA)**
**(the "Applicants")**

**Notice Regarding Commencement of Case and Filing of an Application for a Temporary Stay of Proceedings Pursuant to Section 319C(a) of the Insolvency and Economic Rehabilitation Law, 5778-2018 (the "Israeli Law")**

1. Notice is hereby given that, on July 30, 2026, the Applicants commenced with the District Court in Tel Aviv-Jaffa a case under the Israeli Law (Case No. 87154-07-26) for the purpose of formulating and approving a debt arrangement with the relevant stakeholders and filed an application for a temporary stay of proceedings, all in accordance with Section 319C(a) of the Israeli Law (the "Application").

2. Pursuant to the decision of the Honorable Court dated August 1, 2026 (the Honorable Judge Iris Lushi-Aboudi), the Applicants were granted a temporary stay of proceedings, effective until the hearing scheduled for August 16, 2026, or until another decision is rendered by the Honorable Court.

3. For the avoidance of doubt, it is hereby clarified that the temporary stay of proceedings does not derogate from the rights of stakeholders in the ordinary course of business, including suppliers, employees and the like, and that their commercial relations with the Applicants shall continue in their regular course, without any change, as conducted prior to the filing of the Application.

4. A hearing on the Application has been scheduled for August 16, 2026, at 10:00 a.m., before the Honorable Judge Iris Lushi-Aboudi, at the District Court in Tel Aviv-Jaffa, 1 Weizmann Street, Tel Aviv.

5. Copies of the Application and the Court's decision may be obtained by written request to the offices of the Applicants counsel, at the following email address: yarinn@meitar.com

**Meitar l Law Offices,** Counsel for the Applicants, 16 Abba Hillel Silver Rd., Ramat Gan, Israel, Tel: 03-6103100, Fax: 03-6103111