**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PAPAYA GAMING LTD., *et al.*,[1]<br><br>Debtors in a foreign proceeding. | Chapter 15<br><br>Case No. 26-11217 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 98** |

**SKILLZ PLATFORM INC.'S RESPONSE TO**
**DEBTORS' EMERGENCY MOTION FOR PROTECTIVE ORDER**

Skillz Platform Inc. ("**Skillz**"), by and through its undersigned counsel, submits this response to the *Emergency Motion of Foreign Representative for a Protective Order and Status Conference* [D.I. 98] (the "**Emergency Motion**") in advance of the hearing on the foreign representative of debtors Papaya Gaming Ltd. ("**Papaya Ltd.**") and Papaya Gaming Inc. ("**Papaya US**," and together with Papaya Ltd., "**Papaya**" or the "**Debtors**"), Mr. Oriel Bachar's (the "**Foreign Representative**") *Motion to Allow / Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* [D.I. 4] (the "**Recognition Motion**").

## I. PRELIMINARY STATEMENT

1. Skillz is ready to proceed with adjudication of the Recognition Motion and urges this Court to avoid further and prejudicial delay in the resolution of the issues. Indeed, Skillz has exhibited flexibility, extended professional courtesies, and attempted to work with the Foreign Representative—including having proposed slight modifications to the current schedule that would provide more-than-required disclosures with more-than-required time before the hearing. The Foreign Representative nonetheless insists on further adjournment of

---

[1] The Debtors in the above-captioned litigation (the "**Chapter 15 Cases**"), together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The purported location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

the hearing on the Recognition Motion, which was originally scheduled for September 3, 2026, to mid- to late-October, supposedly based on Skillz's failure to make timely disclosures. Those characterizations are false and the Foreign Representative's request for a further adjournment is without justification for all of the reasons explained below and as Skillz will be prepared to address at the hearing on the Emergency Motion.

2. The Emergency Motion is truly remarkable for failing to cite any federal rule of procedure, local rule, or scheduling order entered by this Court that would govern such disclosures here. The reason is clear—Skillz acted in accordance with those rules, and indeed voluntarily disclosed more, and more quickly, than required. Skillz and its advisors have been open, transparent, and forthright, understanding the needs of the Court and the parties in interest when moving quickly. Remarkably, the Foreign Representative cannot point to one discovery obligation or binding demand that Skillz did not satisfy. If the Foreign Representative is feeling time pressure, that is entirely the result of the schedule he created by invoking bankruptcy powers in a two-party dispute, and the delays caused through his own slow discovery productions. The pace of these proceedings is typical of contested matters when the status quo is not preserved pending adjudication and substantial value is at risk of diminution, as is the case here due to the Debtors' ongoing authority to distribute millions of dollars out of the jurisdiction of this Court while Skillz is subject to a stay by virtue of the Provisional Order (defined below). The matter should be advanced expeditiously in the interests of preserving this value and giving Skillz a fair opportunity to assert its rights as a creditor.

3. The Foreign Representative filed these Chapter 15 Cases on August 3, 2026, and since then the Debtors have enjoyed the benefit of the relief afforded to them under this Court's Provisional Order. Indeed, it is not surprising that the Foreign Representative and the Debtors favor a further delay in the schedule; until this Court rules on the Recognition Motion, the Debtors have all of the relief they seek on a final basis under the terms of the Provisional

Order, including relief from the automatic stay to pursue their appeal without posting a bond and full discretion to control and distribute assets out of the reach of U.S. creditors such as Skillz without affording sufficient protections in accordance with section 1522 of the Bankruptcy Code, all without Skillz having its chance to establish otherwise.

4. After initially resisting discovery, requiring intervention by this Court and causing a delay in Skillz's ability to take depositions of the Debtors' witnesses, the Foreign Representative now complains that Skillz should have (i) disclosed the names of two expert witnesses earlier and (ii) created declarations disclosing their expert opinions earlier. But that is directly contrary to the governing rules and scheduling order. Skillz identified witnesses it may call 12 days before its witness disclosures were due on the hearing agenda, and a full two weeks prior to the hearing (although it was under no obligation to do so); agreed to make those witnesses available for deposition in advance of being called to testify; and even offered to prepare declarations disclosing their testimony, even though no such declarations are required under the applicable rules and scheduling order.

5. Instead, the applicable rules, scheduling order, and normal practice contemplate the exact situation that the Foreign Representative now complains about, namely the objecting party completes its depositions of the movant's witnesses (which did not happen until September 9); the objecting party files its objection (September 11); and the movant then takes any depositions of the objecting party's witnesses between then and the hearing. In a contested matter, a party is not required to create declarations or other disclosures for witnesses (expert or otherwise), even though Skillz voluntarily offered to do so. The Foreign Representative well understands these processes, and did not afford Skillz any additional time for its objection (until the one day extension provided to accommodate his Emergency Motion), and only offered to complete the depositions of the Debtors' witnesses the day before Skillz's objection was due. The Foreign Representative's true complaint is not that Skillz has done anything

inappropriate, but that he wishes he had negotiated for a different schedule and different witness disclosure requirements.

6. The hypothetical prejudice that the Foreign Representative now imagines might happen—that these two witnesses might raise some issue that the Foreign Representative could not reasonably have anticipated or expected he would need to offer evidence—is not a basis for relief, and it is simply conjecture. What is more, the rules already address this issue by providing the Foreign Representative with the opportunity to depose these witnesses to learn if this conjecture is real; if so, he can then raise it with the Court.

7. Skillz is entitled to a hearing on the Recognition Motion. The Court has set a schedule and Skillz has done everything to comply with that schedule. Skillz has been and remains willing to be flexible in accommodating reasonable scheduling requests, but all parties must be reasonable and work cooperatively to prepare for the hearing. After the Foreign Representative sought *ex parte* relief in a foreign court in response to a U.S. judgment, obtained the Provisional Order on minimal notice, and forced Skillz to seek to compel discovery that the Court deemed proper, the solution to scheduling issues that may arise cannot be that the relief under the Provisional Order, which was initially contemplated to remain in place for 4 weeks, now remains in place for 11+ weeks without this Court holding a hearing to determine whether recognition is appropriate or additional creditor protections are required.

8. Skillz thus requests that the Court adopt Skillz's proposed adjusted schedule reflected on Exhibit A, which contemplates a hearing commencing later this month as the Court has indicated is available. Alternatively, if the Foreign Representative does not want to proceed with the hearing on the Recognition Motion, then the Court should hold a hearing on the earliest available date to determine whether the relief under the Provisional Order should be modified to provide sufficient protection to creditors pending a final hearing on the Recognition Motion.

## II. PROCEDURAL BACKGROUND

9. On August 2, 2026, just days after the New York District Court entered a judgment against the Debtors and in favor of Skillz in the amount of $719 million (plus fees and costs), the Foreign Representative commenced the Chapter 15 Cases and moved for provisional relief [D.I. 7], which the Court granted by Order entered on August 5, 2026 [D.I. 39] (the "**Provisional Order**"). That same day, the Court entered a scheduling order, which set a final hearing on the Recognition Motion for September 3, 2026. [D.I. 40].

10. Among other things, the Provisional Order provides that, "continuing until the date of a [final order on the Recognition Motion]," all entities other than the Foreign Representative are prohibited from taking any enforcement action against the Debtors or their property located within the territorial jurisdiction of the United States, but the Foreign Representative may "transfer, relinquish[], or dispos[e] of any property of the Debtors . . . within the territorial jurisdiction of the United States." [D.I. 39 at ¶ 2]. The Provisional Order further provides that the Court retains the ability to modify the Order. *Id.* at ¶ 11.

11. The hearing on the Recognition Motion was subsequently adjourned from September 3 to September 17 because the Foreign Representative indicated that ***the Debtors' witnesses*** could not be made available for deposition until early September. [D.I. 71]. The parties negotiated and agreed upon a revised schedule in advance of the September 17 hearing, which provided that Skillz would have until 7 days prior to the hearing on the Recognition Motion (i.e., September 10) to file its objection, as is typical under the local rules, and that the Foreign Representative's reply brief would be due September 15 in accordance with the local rules. At no point during the negotiation of that revised schedule did the Foreign Representative (i) suggest any specific requirements for fact or expert witness disclosures, (ii) request that the parties deviate from the local rule of confirming witnesses in connection with filing of the hearing agenda, or (iii) take issue with having to file his reply by the

September 15 deadline under the local rules, related to Rosh Hashanah or otherwise. At each turn in these proceedings, Skillz has moved swiftly to advance the discovery process, even when the Debtors orchestrated their document productions and depositions so as to provide Skillz with documents only on the day prior to the deposition of the Foreign Representative.[2]

12. The Foreign Representative initially declined to produce many categories of documents that the Court ultimately ordered the Debtors to produce [D.I. 92], including board minutes and presentations, bank statements, non-consolidated financial statements, and documents related each of the Debtors for a year period prior to the chapter 15 filing (not just documents the Foreign Representative deemed sufficient to establish a COMI or establishment as of the date of the filing).[3] The Foreign Representative subsequently produced additional documents[4] pursuant to the Court's Order and Skillz was able to proceed with deposing the Debtors' witnesses.[5]

13. On August 16, 2026, the Debtors requested that Skillz advise as to whether it intended to call any affirmative witnesses at the hearing and reserved rights to depose such witnesses, if any. Skillz agreed that any witnesses it may decide to call would be made available for deposition before the hearing, but indicated that until the Debtors produced the

---

[2] Indeed, these tactics are characteristic of the Debtors' discovery practices as found by Judge Cote of the Southern District of New York. [*See* D.I. 73-4].

[3] The ultimate production of the documents that the Debtors initially resisted making available has proven extremely consequential in that they reveal, among other things, a pattern of the Debtors moving funds outside of the United States in the months prior to filing in a manner inconsistent with their stated investment policy and attempting to manufacture a basis for an establishment in Israel by opening a bank account for Papaya US in or around April 2026.

[4] Although the Foreign Representative suggests in his Emergency Motion that the Debtors "worked tirelessly to accommodate Skillz' voluminous discovery requests," the evidentiary record here is quite limited. Indeed, the Foreign Representative has produced only 365 documents through discovery, inclusive of documents otherwise filed in this Court and the Israeli action.

[5] Skillz held open each of the depositions because the Debtors had not completed their production of responsive documents and Skillz had raised a number of deficiencies with the Debtors' production and responses to interrogatories. Skillz and the Debtors have been working to address those discovery issues consensually, but certain issues remain unaddressed.

requested discovery, it would not be in a position to determine whether or which witnesses it may call.

14. Skillz later agreed on September 2, 2026, without any obligation to do so, that it would provide whatever information it could provide regarding its intention to call witnesses by no later than September 3 (two weeks prior to the scheduled hearing, 12 days before the agenda disclosing witnesses was due to be filed, and after the deposition of the Foreign Representative). Then, on September 3, Skillz sent an email to the Debtors advising that, notwithstanding that discovery was ongoing and it had not had an opportunity to fully evaluate the evidentiary record, to the extent it would call witnesses at the hearing, it reserved the right to call Ms. Maya Ben Meir and Mr. Jim Bergman. Skillz also advised as to the availability of each potential witness for deposition in advance of the hearing and further advised that Mr. Bergman was only available on a weekend given prior professional commitments related to an ongoing trial. Skillz noted that Mr. Bergman's then-available dates for deposition conflicted with Rosh Hashanah, but agreed to look into whether additional dates for his deposition would be possible.

15. On September 5, Skillz also provided the Debtors with descriptions of the subject matter it would expect each witness to cover: Ms. Ben Meir on topics related to Israel law (a topic covered by the Debtors' witness, Mr. Pinni Yaniv) and Mr. Bergman on topics related to the Debtors' business operations, financials, and projections (topics covered by the Debtors through their Foreign Representative). The Debtors declined to move forward with scheduling any of the depositions offered.

16. On September 8, Skillz further met and conferred with the Debtors concerning the schedule and indicated that, while Mr. Bergman's trial conflicts had not been resolved, if proceeding with a deposition on September 12 presented an issue, then Skillz could make him available for deposition after the morning hearing on September 17 and present him for

testimony at the continued hearing on September 18. The Debtors rejected the proposal and also argued, for the first time, that it was unreasonable for them to depose Ms. Ben Meir on September 14 when their reply was due September 15 (although the Foreign Representative had only offered to complete the depositions of the Debtors' witnesses on September 9 while requiring Skillz to file its objection on September 10), and they needed a significant extension of the schedule.

17. Then, on September 9, Skillz (i) advised that the trial that had previously impacted Mr. Bergman's availability had just settled, and so offered alternative dates for his deposition in advance of the scheduled hearing, and (ii) in an effort to resolve the scheduling dispute and avoid the need to bring the issue to the Court, suggested two alternative proposed schedules, one with the hearing remaining as scheduled for September 17 & 18 and the other adjourning the hearing to the following week (September 22 & 23) when the Court had advised it had availability. *See* [D.I. 98-3]. Skillz also offered, notwithstanding the fact that it is not required or contemplated under the rules or applicable procedures, to prepare declarations it would offer in lieu of direct testimony, and provide them to the Foreign Representative in advance of the depositions. *See id.*[6] The Foreign Representative declined to schedule the depositions for any of the dates offered, or to engage further, and instead indicated that he would be filing an emergency motion with the Court. *See id.*

18. Following the filing of the Emergency Motion, Skillz learned that the scheduled surgery of its lead counsel that had previously presented an issue with holding a hearing the week of September 28 had been moved up, and offered the Foreign Representative a third proposal, as set forth in **<u>Exhibit A</u>**, that was structured around a hearing on September 30-

[6] Skillz's lead counsel also informed the Foreign Representative that conducting the hearing the week of September 28 was not possible given a scheduled surgery.

October 1 (dates that Skillz understands are being held by the Court pending the hearing on the Emergency Motion).

## III. ARGUMENT

### A. <u>There Is No Basis to Exclude Skillz's Witnesses from Testifying.</u>

19. The Emergency Motion is premised on the notion that Skillz's disclosure of its witnesses two full weeks prior to the hearing was "not timely" because "Skillz has known the issues in this case since at least August 2, 2026 . . ." Emergency Motion at 10. That is simply not the rule, nor is it even factually accurate. Nothing in the federal rules applicable to contested matters or the Court's scheduling order or applicable rules and procedures required such disclosures.

20. Regarding the timing of disclosing witnesses, the scheduling order is silent. As a result, the default disclosure requirement under the local rules and practice is that witnesses be disclosed on the agenda due on or before 12:00 p.m. ET two business days before the date of the hearing. *See* Local Rule 9029-3(b). During negotiations related to the schedule, the Foreign Representative never requested earlier disclosures, or even raised the issue at all. Despite the lack of any requirement to do so, Skillz nonetheless disclosed the identity of its two potential witnesses a full two weeks before the hearing.[7]

21. Regarding expert disclosures, and declarations disclosing witnesses' testimony, there likewise is no requirement for any such disclosures in a contested matter. The Emergency

[7] Although the Foreign Representative disclosed his witnesses earlier, that is because Skillz served an interrogatory asking that question, since the local rules do not otherwise require earlier disclosure; the Foreign Representative did not do the same. Likewise, while the Foreign Representative filed declarations for two witnesses, that is because they constituted his evidence at the August 3 provisional relief hearing, not because Skillz made any disclosure request.

Motion and the authorities on which it relies[8] presume that expert reports were required here, but nothing in the applicable rules, this Court's chambers procedures, or the scheduling order reflects any such requirement. In fact, Federal Rule of Bankruptcy Procedure 9014 governing contested matters expressly exempts the parties from the requirements related to expert disclosures and reports under Federal Rule of Civil Procedure 26(a)(2), as incorporated by Federal Rule of Bankruptcy Procedure 7026.[9] *See* Fed. R. Bank. P. 9014(c)(2); *see also In re Eletson Holdings Inc.*, 659 B.R. 426, 441-42 (Bankr. S.D.N.Y. 2024) (denying motion to exclude expert testimony where witnesses did not provide expert reports because "Bankruptcy Rule 9014(c) makes clear that certain portions of Federal Rule of Civil Procedure 26 (dealing with expert disclosures) do not apply in contested matters" and "the Court's scheduling order did not require any additional expert disclosures."); *In re FV Steel & Wire Co.*, 372 B.R. 446,

---

8 *TQ Delta, LLC v. Comcast Cable Commc'ns LLC*, No. CV 15-611-GBW, 2024 WL 5432091, at *3 (D. Del. Nov. 19, 2024) (declining to strike expert testimony that had not been properly disclosed despite the fact that Federal Rule 26(a) applied); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming exclusion of expert testimony where Federal Rule 26(a)(2)(B) applied).

9 Although the Emergency Motion does not cite to any applicable rules or argue expert reports are required under them, for the first time just hours before Skillz's response to the Emergency Motion was due to be filed, counsel to the Foreign Representative argued that Federal Rule of Bankruptcy Procedure 1018 applies here and purportedly requires full compliance with Rule 7026, notwithstanding that Rule 9014(c) makes clear that expert disclosures and reports are not required in contested matters.

However, nothing in Rule 1018 suggests that all aspects of Rule 7026 apply without regard to other provisions of the Rules or that it should not be read in concert with Rule 9014. Indeed, courts considering matters contesting a petition in a chapter 15 case have read such rules in parallel. *See In re Ascentra Holdings, Inc.*, 657 B.R. 339, 349-350 (Bankr. S.D.N.Y. 2023) (in addressing a motion to terminate recognition, holding that the matter was a contested matter and applying both Rule 1018 and Rule 9014).

Moreover, the Foreign Representative plainly understood this proceeding to be governed by rules generally applicable to contested matters because he did not comply with other aspects of Rule 7026 that would apply if Rule 9014(c)(2) did not govern here, including requirements for initial disclosures (Rule 26(a)(1)), expert disclosures (Rule 26(a)(2)), other pretrial disclosures, which would be due at least 30 days before trial (Rule 26(a)(3)), or a Rule 26(f) conference.

In any event, there was no deadline set under the schedule or otherwise establishing a date certain by which expert disclosures or reports were required, and Skillz has already agreed that, notwithstanding the applicable rules and the scheduling order's silence as to any such requirement, it will prepare declarations for each of its witnesses and provide them to the Foreign Representative in advance of the depositions.

453 (E.D. Wisc. 2007) (holding that failure to provide expert disclosures in a contested matter "is of no consequence."). And at no point during the course of the negotiations of the scheduling order, or the last discovery conference before this Court, did the Foreign Representative request that there be expert disclosures or suggest any modification to the usual applicability of Rule 9014(c). Despite the lack of any requirement to do so, Skillz has nonetheless offered to prepare declarations disclosing the witnesses' testimony and provide them to the Foreign Representatives in advance of their depositions.

22. The Foreign Representative's assertion that Skillz "knew" what witnesses it would call and what they would say weeks ago is not only irrelevant under the rules, it is also factually wrong. The information and documents related to the issues raised in the Recognition Motion is information in the Debtors' possession. Skillz could not have determined what arguments it might make or determine how a witness could support them from an evidentiary perspective until it gained access to the Debtors' documents and had an opportunity to depose at least the Foreign Representative. Indeed, consistent with this, during the course of the parties' discussions, Skillz repeatedly advised that it was not in a position to determine whether or which witnesses it may call until it had an opportunity to review the documents and discovery produced by the Debtors, but confirmed that any witnesses would be made available for deposition.

23. The Foreign Representative has no basis to complain that Skillz extended the professional courtesy of identifying its witnesses and offering deposition dates even before it filed its objection to the Recognition Motion and determined whether it would in fact call those witnesses. Because there was no untimely disclosure, there is no justification for the Foreign Representative's request to exclude any witnesses from testifying.

**B. <u>There is No Need for a Material Adjournment of the Hearing.</u>**

24. The Foreign Representative next argues that the schedule must be "expanded." But there is no legitimate basis or need to do so here. Skillz identified potential witnesses two weeks prior to the scheduled hearing (which has already been adjourned once already), identified the subject matters on which each witness was proposed to testify, and offered the witnesses for deposition. And when the Foreign Representative sought alternative dates for the deposition of Mr. Bergman given the Jewish holidays, Skillz worked with Mr. Bergman and offered alternative dates as soon Mr. Bergman advised that a conflicting trial at which he was set to testify had settled. Skillz also offered to create declarations and provide them to the Foreign Representative to streamline their depositions.[10] Skillz recognizes that all parties are working under a tight schedule, as is quite common in contested matters when the status quo is not preserved and value of this magnitude is at risk of diminution, but the Foreign Representative is not justified in his request for another material adjournment of the hearing.

25. As Skillz has advised the Debtors, Ms. Ben Meir is anticipated to testify on the topic of Israeli law—the same topic covered by the Debtors' witness, Mr. Pinni Yaniv. And Mr. Bergman is anticipated to cover issues related to the Debtors' business operations, financials, and projections—all information that is known to the Debtors and either is public or has been produced through discovery or disclosures and filings in the Chapter 15 Cases and the Israeli action. There is no element of surprise here, particularly given that Skillz has worked to make its witnesses available for deposition. *In re Couture Hotel Corp.*, 536 B.R. 712, 723-24 (Bankr. N.D. Tex. 2015) (declining to impose sanctions or exclude witness testimony and finding that a party that declines to take a deposition of an expert witness cannot claim surprise

[10] The Foreign Representative's suggestion that it is somehow unfair that Skillz has had "several weeks" (Emergency Motion at 6) with the declarations of each of his witnesses rings hollow. Those declarations were filed by the Foreign Representative in connection with the provisional hearing held on August 5, 2026.

and "only has itself to blame"). Indeed, the Foreign Representative cannot claim surprise that expert testimony may be offered when his own counsel argued at the August 25, 2026 hearing in the Israeli action that the forecasts offered by the Debtors "can be expanded upon [and] it is possible to bring an ***expert opinion***." Ex. B at 1 (Certified Translation from August 25, 2026 Hearing) (emphasis added). The Foreign Representative's suggestion that Mr. Bergman would provide opinions outside the scope of the issues raised by the Recognition Motion is pure speculation; any such concerns can be addressed after Mr. Bergman's deposition if this speculation proves true (which it will not).

26. The record confirms that Skillz has acted promptly and reasonably under the schedule and has done more than it was obligated to do under the rules. The cadence of discovery and briefing under the current schedule is precisely what was envisioned by the parties when they negotiated and agreed to it, and it is justified under the circumstances in which the Debtors have invoked bankruptcy powers in a two-party dispute with the Debtors' largest creditor and are presently benefiting from provisional relief obtained on an emergency basis that prejudices Skillz's rights.

**C. Skillz Would Be Prejudiced by a Material Delay of the Hearing.**

27. Not only is no material adjournment warranted under the circumstances here, but any material adjournment of the recognition hearings or delay in adjudication of the Recognition Motion is prejudicial to Skillz.

28. As noted above, the Provisional Order essentially provides the Foreign Representative with all of the relief he seeks pending a hearing and ruling on the Recognition Motion, but affords none of the creditor protections that Skillz will demonstrate are essential in the event the Court grants recognition of the Israeli action. It is thus not at all surprising that the Foreign Representative would support a lengthy delay here. But another day of relief under the Provisional Order is another day that the Foreign Representative enjoys the nearly

unfettered ability to control and distribute assets of the Debtors outside of the U.S. and beyond the reach of U.S. creditors and the Debtors enjoy the ability to pursue an appeal of the Skillz judgment without the need to post a bond or provide any protection to creditors. In effect, only Skillz is constrained by the terms of the Provisional Order because the Debtors face no limitations under it, and there is no other creditor of the Debtors that has claims presently due that are going unpaid. Accordingly, Skillz faces great prejudice from any extension of the schedule that materially delays adjudication of the Recognition Motion on a final basis.

29. This prejudice is particularly noteworthy given that the Israeli Chapter 10 action that the Chapter 15 Cases seek to recognize is not a lengthy proceeding. Under the Israeli statute, the stay imposed in Israel will conclude by December 1 (unless the majority of creditors, i.e. Skillz, supports a single additional 30-day extension). *See* Isr. Insolv. L. § 319G(c). So a delay until mid-October would mean that the Foreign Representative would have already enjoyed all of the relief he seeks for the majority of the life of the Israeli action, before Skillz even gets a chance to be heard at final hearing on the Recognition Motion.

30. For all of the reasons explained in Skillz's concurrently-filed objection to the Recognition Motion, U.S. creditors must be protected from any further dissipation of the Debtors' U.S. assets or effort to place those assets outside of the reach of U.S. creditors. In the event the hearing on the Recognition Motion is extended beyond September 30, 2026, then Skillz requests that the Court hold a hearing at the Court's earliest convenience to determine whether the relief under the Provisional Order should be modified to provide sufficient protection to creditors pending a final hearing.

## CONCLUSION

31. For the foregoing reasons, Skillz respectfully requests that the Court enter an order denying the Foreign Representative's Emergency Motion and allowing the hearing on the Recognition Motion to proceed in accordance with the schedule proposed by Skillz and

attached hereto as **Exhibit A**. In the event that the Foreign Representative seeks any further adjournment of the recognition hearing, then Skillz requests that the Court hold a hearing to determine whether the relief under the Provisional Order should be modified to provide sufficient protection to creditors pending a final hearing on the Recognition Motion.

Dated: September 11, 2026
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sean M. Beach*

Sean M. Beach (DE Bar No. 4070)
Michael S. Neiburg (DE Bar No. 5275)
Joshua Hall (DE Bar No. 7510)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: sbeach@ycst.com
mneiburg@ycst.com
jhall@ycst.com

-and-

Ray C. Schrock (*pro hac vice*)
Christopher Harris (*pro hac vice*)
Adam J. Goldberg (*pro hac vice*)
Michael Ardeljan (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
christopher.harris@lw.com
adam.goldberg@lw.com
michael.ardeljan@lw.com

Amy C. Quartarolo (*pro hac vice*)
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (213) 485-1234
Email: amy.quartarolo@lw.com

-and-

Lazar P. Raynal (*pro hac vice*)
Michael A. Lombardo (*pro hac vice*)
**KING & SPALDING LLP**
110 N Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312)-995-6333
Email: lraynal@kslaw.com
mlombardo@kslaw.com

***Counsel for Skillz Platform Inc.***