# EXHIBIT A

## Skillz's Scheduling Proposal

# SCHEDULING PROPOSAL

| DATE | CASE ACTIVITY OR DEADLINE |
|---|---|
| **September 11, 2026** | **Skillz to file Objection to Recognition Motion** |
| **September 16, 2026** | **Skillz to file any declarations in support of Objection to Recognition Motion** |
| **September 17-22, 2026** | **Depositions of any witnesses identified by Skillz**<br>• **Ms. Maya Ben Meir –** ***proposed for September 17***<br>• **Mr. Jim Bergman –** ***proposed for September 18*** |
| **September 22, 2026** | **Foreign Representative to file any reply brief and any additional or supplemental declarations** |
| **September 30 & October 1** | **Hearing on Recognition Motion** |

# EXHIBIT B

## Certified Translation from August 25, 2026 Hearing

MORNINGSIDE
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2026/08/28**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Hebrew

To:

- English (USA)

The documents are designated as:

- 'tempPdfFile.pdf'

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director



299 South Main Street, Suite 1300
Salt Lake City, UT 84111

-

**The Tel Aviv Magistrate Court Insolvency (T2T) 87154-07-26**
**Meeting from August 25, 2026**

Before: The Honorable Judge Iris Lushi-Aboudi

Transcription after human editing

Adv. Yaniv:
Thank you, Madam. First of all, I would like to thank her Honor because this review covers all the essential points and I would like to address a few of them.
First of all, regarding the cash-flow insolvency and the collective principle of paying creditors to what would be called regular creditors. It is important to say that I believe this sort of insolvency case doesn't come to these halls on a daily basis: a company that has a successful product, millions of customers as well as dozens of suppliers who received their money on time and still continues to earn profits. This is the main point. When we're talking about operations, because that's basically the term here, the operations are very profitable, not profitable on the margins. Many times, when we talk about operations, it is balanced [or] hanging by a thread; here, this is really not the case.

The Honorable Judge Lushi-Aboudi:
I don't know, I assume as such, I don't know.

Adv. Yaniv:
We file the motion exactly a month ago, basically a month ago, a month passed from our forecast, we're standing before a really good forecast, that's what it means.

The Honorable Judge Lushi-Aboudi:
Yes, but there is need to see it long-term, excuse me, meaning I [need to see it].

Adv. Yaniv:
No, for sure.

The Honorable Judge Lushi-Aboudi:
Because one of the things you wrote about has a real effect upon the issue of competition. Now, competition will naturally continue, and we see this affects the statements and I assume this will also affect the future, but I haven't seen it expressed. But again, I am not making specific comments, I'm really being modest. I looked at the things, I read them, and I assume you need to dedicate much more time to this in order to understand and also see more updated documents, etc.

Adv. Yaniv:
We are definitely asking, and we have repeatedly asked that an arrangement administrator be appointed and enter the company, get a seat in the CFO's office and see everything that happens. The forecast provided is very serious and very reliable, it's not just throwing numbers around, it can be expanded upon, it is possible to bring an expert opinion, we have been working continuously despite the competition, despite the very hard litigation it has experienced over the last two years, which is constantly changing and developing. And that's really the board's ability, because we know when you're standing in place, you're going backward, you're not staying in place. It's an active, bustling market and is also a very important reason, and I think Her Honour hinted at such, to keep the board with an incentive to move forward, because that's what gives money to creditors.

The Honorable Judge Lushi-Aboudi:
And the other side is also like what I said, you don't need to forget it, that's fine, but it's the same board, the same board that caused this situation. So this board therefore needs to bring itself as well, and that is aside for ongoing management.

Adv. Yaniv:
So I want to say something.

The Honorable Judge Lushi-Aboudi:
Yes.

Adv. Yaniv:
Regarding the court ruling in the USA, we respect them very much. The commissioner's representative wrote a letter that if is even a small chance to appeal, then it is not the moment to lower the curtain on the company. So, I will honestly say, in a sentence, that I don't think that in her Honor's court it is possible to give a ruling for 719,000 USD, but NIS 719,000 without hearing the other party's witnesses. It would not have happened.

The Honorable Judge Lushi-Aboudi:
I am not getting into that.

Adv Yaniv.
I also am not getting into it, but Israel, they would say something about it.

The Honorable Judge Lushi-Aboudi:
At some stage or another they told them they cannot testify and then they said they were waiving the right to remain silent. And there was some sort of ping-pong of that type and rulings - I didn't see all of them, and I respect them because I assume these things passed through someone.

Adv. Yaniv:
They were examined by a judge.

The Honorable Judge Lushi-Aboudi:
Now let's see.

Adv. Yaniv:
An honorable federal judge.

The Honorable Judge Lushi-Aboudi:
Okay. So let's see, let's see.

Adv. Yaniv:
Like I said, we're not arguing here.

The Honorable Judge Lushi-Aboudi:
That's why I always say, I - I'm happy they are appealing because it's always good for another eye to see it. But in general we know that if the ruling is well reasoned and legally sound, then the chances of intervening in it aren't high.

Adv. Yaniv:
In the USA, there is also something called "remand the case", meaning that if there were all sorts of procedural defects made, I'm not expressing a professional opinion, I'm not an American attorney.

The Honorable Judge Lushi-Aboudi:
Okay, Counsel, so really, let's move on because I really don't want to deal with something I can't have any influence over.

Adv. Yaniv:
The issue of the use of bots is not illegal, the entire issue is no active disclosure of the use of bots, meaning false advertising. This board, with a correct verdict, committed an offence with false advertising, what in our commercial tort law would be called a false description.

The Honorable Judge Lushi-Aboudi:
That's what the court wrote.

Adv. Yaniv:
And what the jurors decided it was right to take from it was unjust enrichment that was six times the revenues during the period.

The Honorable Judge Lushi-Aboudi:
By the way, what sort of effect does this ruling have? I first opened a parenthesis and I didn't say this about the issue of an investor, but what sort of impact does this type of ruling on the public who plays? There is a public that could say, "I am no longer entering this sort of place if they are taking advantage of me; I don't know if they are still taking advantage of me or if they also do so next time, I don't want to enter". And there is someone who will say, "What do I care? I log in, the platform is always working, there are games, there are people, one time I win, one time I lose, I think it's somehow balanced per the regular rules that appear on these sorts of websites. I already have it, I already deal with the platform, Yalla, everything's fine.

Adv. Yaniv:
I really would like to thank Your Honour for this question. We have two points in time to deal with. There is the jury's ruling, that was given and was widely published in the media, that was initially 420,000 USD, with a professional opinion advising 719,000 USD – that was in April. And I asked that exact question, what about the impact on use? And the answer was unequivocal: There is no impact and there is no decrease and players continue to sign up. It should also be kept in mind that the judge – who was not suspected of bias toward the Plaintiffs, wrote on page 52 of her judgement that these bots are no longer in use.

The Honorable Judge Lushi-Aboudi:
That was according to the expert opinion you brought.

Adv. Yaniv:
No, no, that wasn't the parties' dispute, and she also ruled that there also was no chance of the Plaintiffs going back to this after that ruling.

The Honorable Judge Lushi-Aboudi:
There are no games in the USA. If someone does something illegal, that's it, there is no second chance. It's not like here. Even guests, et cetera, et cetera.

Adv. Yaniv:
By the way, Skillz still uses bots.

The Honorable Judge Lushi-Aboudi:
Because Skillz wasn't here over this issue.

Adv. Yaniv:
Yeah, but it's an interesting point. Now I also want to say something about what Her Honour spoke about.

The Honorable Judge Lushi-Aboudi:
By the way, if it's using bots and it states it, then according to "sir's" methodology, there is no problem.

Adv. Yaniv:
I just want to say, no, that what I'm emphasizing is that it is legal to use bots; whether it states it does or doesn't state it does and whether that is legal or illegal I don't know, but I do know that there also are class action lawsuits against it in the US over the use of bots, that are pending and underway.

The Honorable Judge Lushi-Aboudi:
Maybe.

Adv. Yaniv:
So, but it's true, it should be kept in mind. Now, regarding what I started speaking about, I started talking about the collective principle and payment to suppliers and customers, regular payments to suppliers. We need to keep in mind the rationale that says why there is a need to stop payments and there is a need to not pay past debts. The rationale is simple, not to harm the cash, not to harm creditors. Because if there is a company that is losing or is at the point of no income, every shekel you remove, every day that passes, you are harming real people. In a successful company, it's the opposite. If we stop paying suppliers who maintain the app stores, or a supplier who maintains the servers or the supplier who brings mineral water.

The Honorable Judge Lushi-Aboudi:
Or players.

Adv. Yaniv:
Excuse me? To

The Honorable Judge Lushi-Aboudi:
Or players.

Adv. Yaniv:
Or players, obviously. Clearly if the business stops bringing in revenues, that will actually harm people. That's why this subject needs to be treated as material and not as a principle.

The Honorable Judge Lushi-Aboudi:
Okay, that too.

Adv. Yaniv:
Clearly, it's known.

The Honorable Judge Lushi-Aboudi:
And I will refer to the law in this case, and rightfully so; that option exists in law.

Adv. Yaniv:
That’s all well-known, what we're doing is this: increasing the company's profits so that there are funds to pay creditors. And no, certainly, in a situation like this, dividends are not withdrawn. One word about dividends: what should be said here is that tens of millions of dollars have been withdrawn since the lawsuit was filed.

The Honorable Judge Lushi-Aboudi:
58,000,000.

Adv. Yaniv:
Okay, so let’s put things in order for a moment. This lawsuit as it was filed was not for an amount. No one imagined it would reach the amounts it did, which I would call unreasonable, to put it mildly. From the moment the lawsuit was filed, there was an expert opinion that stated the amount of 719,000 for the first time. No one believed it would reach a verdict, but that’s what happened. From the moment that expert opinion was filed, basically no dividends were distributed at all, maybe 10,000 USD, but it really isn’t the big deal it’s being made out to be. It is also important to keep this in mind with regard to what was said based on customers, as if we had [any].

The Honorable Judge Lushi-Aboudi:
What was 10,000 USD?

Adv. Yaniv:
I believe 10,000 USD was at the end of 2025. The expert opinion was filed in the middle of 2025; since then, nothing was distributed other than that amount. I hope I’m not making a mistake, but that’s it.

The Honorable Judge Lushi-Aboudi:
No, Counsel said that this distribution was essentially made, basically before there was a ruling.

Adv. Yaniv:
For sure.

The Honorable Judge Lushi-Aboudi:
You stopped the distribution based on the expert opinion, that’s what Counsel wanted to say. Okay.

Adv. Yaniv:
Obviously, they are not distributing dividends under the Companies Law if they don’t meet the criteria for it.

The Honorable Judge Lushi-Aboudi:
No, no, clearly. I just wanted to understand the chronology.

Adv. Yaniv:
For sure. Before the ruling, before the jury came to a decision, before the evidence, before everything. With regard to the client basis, that was, quote-unquote taken from someone, which has no evidentiary basis, but let’s assume. Clients in this world come and most of them also leave. That’s why advertising costs in this world are enormous. We spend millions of dollars per month on advertising and that’s what makes the company profitable – the advertising – because as far as clients, a large portion of them leave within a month and an even greater portion leave.

The Honorable Judge Lushi-Aboudi:
That’s not what they’re saying.

Adv. Yaniv:
No, I just want to say, not here.

The Honorable Judge Lushi-Aboudi:
One second. I am putting this on the table. I didn't check how much you spent on advertising and how much they spent on advertising; they're saying they invest a ton of money into this.

Adv. Yaniv:
Yes.

The Honorable Judge Lushi-Aboudi:
The issue is that everyone here is basically saying that a player logs into this platform, if there are no players against him, he is like a person who came to a casino and if the casino is empty, he leaves. So they're saying, what did you create here?

Adv. Yaniv:
Not quite.

The Honorable Judge Lushi-Aboudi:
I didn't hear.

Adv. Yaniv:
Not quite

The Honorable Judge Lushi-Aboudi:
Why not quite? What, even if you go to Las Vegas and it's empty, what do you have to do there? You came to play alone? Play in a room.

Adv. Yaniv:
The social experience is it.

The Honorable Judge Lushi-Aboudi:
Okay, listen up. We know what's being spoken about: people log on because they want to have someone to play with them, more or less at their level, okay? If it's a matter of level. And if there is no such thing, 1,000 [NIS in] advertising expenses will not help you. That's what I'm trying to tell you: the advertising expenses are in their proper place, but come on, we know what happens in the field. What if Counsel tells me he spent – right now – 1,000 NIS in advertising on a nursery and all the saplings are rotten, then people will come?

The Honorable Judge Lushi-Aboudi:
Our saplings are not rotten.

Adv. Yaniv:
Okay, Counsel was caught.

The Honorable Judge Lushi-Aboudi:
I want to say.

The Honorable Judge Lushi-Aboudi:
I'm talking about that. There is something here, there is some agreement here, people enter, they want to be part of the players' world, that's everything.

Adv. Yaniv:
That's right, that's right. I am assuming that I really don't need to quote for her Honor that the really clear preference is always the option of recovery, that's even what I heard her Honor say.

The Honorable Judge Lushi-Aboudi:
Right.

Adv. Yaniv:
Here, looking at case law, we're really talking about settlement files, files that prefer rehabilitation. They say there are 20 workplaces here, because there are 30 workplaces there. Her Honor, here, we're talking about 300 families, which is indirectly thousands of people. I don't need to explain to her Honor, who knows this well, the wave of large collapse of suppliers, this company, the Plaintiffs, pay Israeli suppliers over NIS 200,000 per annum regularly to suppliers in Israel, that is a business that sustains many businesses and families in Israel, and so there really needs to be an effort to save it, and not like the other party is requesting – its liquidation, and this liquidation is clear.

The Honorable Judge Lushi-Aboudi:
They don't want, they are arguing, look.

Adv. Yaniv:
This liquidating is clearly coming from foreign considerations.

The Honorable Judge Lushi-Aboudi:
Second of all, Adv. Yaniv, look, I am saying something. Those who know me and enter this courtroom know that what I say is what I think, and I don't think – it is clear – there is something below the surface. We aren't so naïve to think the other side doesn't have long-standing scores to settle with you, and maybe he also wants you to get off the stage. I don't know if he will actively do something, but he will be happy, nobody wants to have competitors. But at the moment I can't catch them, quote-unquote, and tell them, "You're out of order with what you wrote". Even if what stands around the background to this is just a story about competition, etc., because I am saying the plan is insufficient and they have reasons to oppose it. The next stage will be next stage, let's examine it in the next stage. I will also tell Counsel that had they been here today, they would have an already enforceable ruling in Israel that can be enforced in Israel. They were following Article 18, they filed a motion for an order initiating a proceeding, right? Such a motion should have met standards, there is already a ruling by Justice Brenner about this matter, that if the person filing a motion is your competitor, then a thousand eyes are directed at this type of motion, and it is clear that this needs to be given weight and everything else along with other considerations, because the final considerations are obviously what the chances of rehabilitation are. Now they will have a hard time showing, and I am already saying it (in English), it will be hard for them to show what they say as an option, it's more than what you're saying, it will be hard. I am saying this and I won't be able to say it, I remember saying when the law went into effect, I was at some conference in Eilat and I said, there was the judge, there was Adv. Erez Hever, I don't know, I was on a panel and I said: "Listen up, trustees will need to start bringing an expert opinion under Article 318, that Amendment 4 later one, what brings in more money? And it will be very difficult. So he told me we simply won't bring one. So no one will bring one. So what do you think I can I say about that? In the end, we will let the creditors decide a lot, that's clear. But there needs to be a framework, there needs to be someone to supervise it, there needs to be someone who sees everything.

Adv. Yaniv:
I agree but I think one of the things, her Honor mentioned Amendment 4, which today is the improved Amendment 9, exactly.

The Honorable Judge Lushi-Aboudi:
We'll assume.

Adv. Yaniv:
Maybe relative to 4.

The Honorable Judge Lushi-Aboudi:
We'll assume, yeah.

Adv. Yaniv:
It's this exact thing that at the time came because of Covid-19, and there, in the explanatory notes, it wrote about an exogenous event. We are in that exact thing; it's an exogenous event that is totally irrelevant to the company's current operations and this sort of exogenous event is exactly the reason why we have Amendment 9.

The Honorable Judge Lushi-Aboudi:
I am prepared to say that it is an exogenous event in another context, not the content Counsel is talking about, because I'm not sure I fully agree with it. I think that it is an exogenous event in the context of these operations being illegal, or that the ruling that they deceptively stated it is exogenous. In that context that did not stick company operations as something fraudulent. That I am prepared to say is exogenous. But to call this incident exogenous? You did something, you have competitors, you, let's put it this way, this world, and I also saw other things, we know how it starts. Someone comes and says, I have an idea, lets bring in. I'm just saying this, it's not what happened: let's bring in a bot, we'll bring in a bot, it will earn us such and such profit, we'll bring in another, we'll pay for it, etc., etc. And we'll say our expenses for the bots are NIS 100 per year. So we only take 100, but if this works, we take 100, and then we take 300, and then we take 400. I am not saying that's what happened here, I just want to say it not so exogenous, these bots didn't come down from Mount Sinai with the Ten Commandments, how is that exogenous? It's an event where people have a hand and foot in part of such. Now to say whether it's okay or not, if people want to redevelop it, Adv. Yaniv, I am not expressing an opinion on that position. The court ruled what it ruled, that isn't the point. I am once again trying to say that I don't want to determine what is an exogenous event. Let's summarize it like this: I am willing to accept Counsel's argument in the context being deceptive, even in the context of not accepting the other party's argument that this sort of company should not be allowed to formulate an arrangement because of what it did. That I can agree to. Moving forward.

Adv. Yaniv:
Because there is no intent, no intent to defraud, it obviously isn't that type of thing. Now I want to say something in addition, I am not, this hearing is not about bots and it's not about the ruling in the USA, but her Honor is dragging me by the tongue so I will say one more sentence. Even if we buy securities on the stock market, we buy them from bots. The use of bots is something very common in industry and that is the sole factual argument of Skillz, which was not attested in the affidavit. They said: "No, that's not right," and that's the sole factual argument that is missing from their Declarant's affidavit, and it is not accidental. This is something very common in this industry and in all internet industries in general, what we buy, sell, use, import and export. So this.

The Honorable Judge Lushi-Aboudi:
Yesterday we also saw robots that run 100 meters.

Adv. Yaniv:
Excuse me?

The Honorable Judge Lushi-Aboudi:
A lot of things. Our entire world is going in this direction, unfortunately, I don’t know who will argue before me in the end, whether it is a robot or not.

Adv. Yaniv:
And another thing about customers and bots that is important to keep in mind. For example, in the lawsuit, we have Milberg’s attorney, from the Milberg office which is the Plaintiff’s law office in the USA. They came to a compromise settlement and the customers, the players, could decide whether they wanted to receive the money into their bank account or into an application, to continue to play, because they were defrauded, quote-unquote, so the protocol understands.

The Honorable Judge Lushi-Aboudi:
What did they decide?

Adv. Yaniv:
Ten percent opted to get the money in their bank account, and that says a great deal about this world and how they feel?

The Honorable Judge Lushi-Aboudi:
The type of users, that’s obvious.

Adv. Yaniv:
That’s not it.

The Honorable Judge Lushi-Aboudi:
They give them grades.

Adv. Yaniv:
They like the expression of user experience, it’s to enjoy, it’s entertainment, like me playing my game on a phone, other people also play.

The Honorable Judge Lushi-Aboudi:
What game is counsel playing? Tell us, it’ll give us something interesting. I started playing Cats. No, it’s like this: it’s matrices, it’s a geometric thing that you need to think about. It’s really complicated.

Adv. Yaniv:
That’s more intelligent than mine. Fine. So there obviously are more points that I have to address, but I think at this stage, I obviously agree with what her Honor said as well as with what the commissioner’s representation wrote, we need to look at the Respondents’ comments; there are Respondents who want to make comments on the settlement and there is one respondent has said she opposes any settlement no manner what, and that’s what also shows something.

The Honorable Judge Lushi-Aboudi:
I don't know.

Adv. Yaniv:
That's what I read there.

The Honorable Judge Lushi-Aboudi:
Okay, I want, I'll hear them in a second, I don't think that's what they are saying, they cannot tell me that after everything I said.

Adv. Yaniv:
What?

The Honorable Judge Lushi-Aboudi:
Okay, if they say that after what I just said, it's not good.

Adv. Yaniv:
And I am reminding her Honor the court in the court in Delaware as well, and Her Honour said what we wrote, there was a hearing about it two weeks ago, they cross-examined the Petitioner's CEO as well as some other Israeli attorney. The court there ruled and the court there ruled it thinks the right thing to prevent irreversible harm is to grant the temporary injunctions; it also denied Skillz's motion to prevent the orderly transfer of funds to Israel, in order to truly enable the proceeding we have here. I think it is appropriate to appoint an arrangement administrator who will listen to the parties' comments. Some of their comments I actually agree with, some of the comments I strongly object to, but it's not me, the arrangement administrator will submit an amended, improved, upgraded arrangement.

The Honorable Judge Lushi-Aboudi:
I saw and I also asked. Look, the choice per law, if you give a temporary stay of proceedings, then you appoint an administrator, I haven't yet given such stay, I wanted to hear the parties because I thought this was a special case that doesn't need to go 1:1 per the narrative the law sets forth at the moment, maybe afterward. We need to see, this entire case needs to, even if there is a law you do it (English), there are allegations here. I also asked you for clarifications, there weren't any, that's a very serious matter. Yes, please, Adv. Alcavi.

Adv. Alcavi:
Greetings, her Honor. My good colleague said that this isn't the place to deal with the ruling in the USA, but he is dragged by the tongue and said a lot about the ruling in the USA and he said really tried to downplay what was said there, and I think he didn't just try to downplay what was said there, he also tried to say that Skillz itself uses bots when in the ruling there is an explicit finding that there is no evidence of such. My colleague, I don't think it's okay for someone who was found in the ruling to have been found [to have done] very serious things to take no responsibility, and his response to it is to defame the party that was harmed to the tune of hundreds of millions of dollars from such conduct. In contrast to what was determined inside the ruling, it infuriates me and I feel obligated to say this right at the beginning. There are no bots in the world; it is extremely unacceptable to have bots in a world of players playing for money.

The Honorable Judge Lushi-Abudi:
And if you tell them that there are bots?

Adv. Elkawi:
There are none. In the gaming world for money, there are no bots.

The Honorable Judge Lushi-Abudi:
I'm asking.

Adv. Elkawi:
Bots can always win.

The Honorable Judge Lushi-Abudi:
Why?

Adv. Yaniv:
These factual claims are not supported in the affidavit.

The Honorable Judge Lushi-Abudi:
I'm really not arguing at the moment. I don't have knowledge in this field, but I'm really asking logically; where is the logic that if anyone wants to enter the platform and he's willing to pay and he's willing to play against bots, where's the problem? If someone tells him, listen, there are bots, play against bots, if he's willing.

Adv. Elkawi:
But he's not ready, they lied to him

The Honorable Judge Lushi-Abudi:
Okay, so another question.

Adv. Elkawi:
Now, that was the question, but there was also a ruling, and the ruling did not mention facilitating terminology. The US court is a very serious court, and when it writes things that Papaya's fraudulent activity was extraordinary, or that Papaya's founders and managers knowingly and deliberately created and controlled a plan that was intended to generate profit by misleading consumers at the expense of a competitor like Skillz. And that Papaya entered the American market through widespread fraud and lied to the app stores, the payment processors, and others.

The Honorable Judge Lushi-Abudi:
And deleted responses from Facebook or I don't know from where, indeed, it's clear, sir, that these fantastic amounts that the court in the United States ruled, it did not merely rule, it ruled that there were things that it found that were wrong, so there's no need to persuade me about that. I was already persuaded.

Adv. Elkawi:
I understand that Madam was persuaded.

The Honorable Judge Lushi-Abudi:
I was persuaded. I was persuaded. The court in the United States persuaded me.

Adv. Elkawi:
When it decides, it decides. Now, I'll only say I'll refer to another point that my colleague said. For an entire year, the witnesses on behalf of Papaya said that they were not prepared to cooperate in preliminary testimony because of immunity from self-incrimination, so if everything is so fine, why are they afraid of an indictment? So now to come here and try to minimize this because there are appeals proceedings is really not serious.

The Honorable Judge Lushi-Abudi:
I don't know. I don't know why they used that. I haven't checked it. Maybe they had good reasons for doing so. I have no idea what was there. Everything I say here won't be serious.

Adv. Elkawi:
Madam, I wish to refer to a point raised here and I want, I think that it should be taken off the table, because it's illogical.

The Honorable Judge Lushi-Abudi:
What?

Adv. Elkawi:
The statement as if it's possible that Skillz is not acting for financial objectives, but with the objective of removing a competitor from the market. I wish to tell Madam that that is a financial absurdity. We're talking about a public American company, its parent company, its valuation today is $150,000, say it has a ruling of $730,000 in its favor. Papaya writes that it's a loss-making company that is in difficulties. It's completely clear that its sole material interest is to collect the money, there's nothing.

The Honorable Judge Lushi-Abudi:
I haven't seen it very clearly written in your little daughter Rachel, even though I'm prepared to assume that you, sir, mean that, but I can say that when people mean something, they should write it very clearly. And I'm telling you, sir, that what arises in your favor, again, has not been said that I think that you're silent about something, and I think that this bad blood is also expressed in the way it is expressed, so I am prepared to assume in your favor that I really don't want to tell someone here objects in bad faith and I have no reason to say that. But I can say that there is a sense that you're so angry that you said that we'll object to this in any event. And I am prepared to say that I read this and told myself that they don't mean that they'll object in any event, but they're objecting in any event to the currently proposed settlement because if we're dealing with a sweeping objection.

Adv. Elkawi:
No.

The Honorable Judge Lushi-Abudi:
So there's bad faith.

Adv. Elkawi:
We're not making a sweeping objection, us.

The Honorable Judge Lushi-Abudi:
So I brought you, sir, to a point that we can all agree on, that everything is a question of what will be in the settlement.

Adv. Elkawi:
Completely clear. And I will tell my associate something else. We're not asking to stop the activity. We understand that continuing the activity is something that is very important, to our chances of being repaid. I reiterate that our financial interest is clear - $730,000. I want a moment, because the things have been said, to take the other side and show how the claim of wanting to remove a competitor in order to make money is not financial. Papaya reports to us that it attached Annex 2 about its forecasts. It reports to us, Madam, that it lost $25,000 in 2025 and that it expects that that will be $36,000 in 2026. Now, let's assume that something is happening that we really don't want to happen and that Papaya leaves the market against our interest. What will Skillz gain from that? How much out of the $30,000 that they profit in a year, what Skillz can generate from that is ten percent of the market, is 20 percent of the market, is $15,000 a year.

The Honorable Judge Lushi-Abudi:
Advocate Elkawi, I always tell myself and always caution myself that I only see what people show me. What they don't show me, I don't know. Now, the heart desires, the fact that it's possible that Skillz really invested many years in development and wishes to do an engagement with the customers and did not succeed in a way that Papaya entered only in 2019 – and already achieved a breakthrough and already reached such achievements, after you invested a lot of money in this thing and didn't see. So I want to assume to your benefit that you want to receive the money, obviously. On the other hand, just as I always say in this hall, I also want to be beautiful and rich, and smart, and healthy to 120. So if I can both receive the money and do something nice to the other party, I'll do it for him, why not?

Adv. Elkawi:
But that's impossible.

The Honorable Judge Lushi-Abudi:
It's possible, everything, everything. Listen, everything is possible, everything is possible. They say that you, you want.

Adv. Elkawi:
We're not offering any solution that means stopping operations; on the contrary. Now we, our interest, as I said, is to reach a fair solution. Now, the fair solution, the solution they proposed, Madam, I wish to tell you, Madam, what they said actually said, what they basically said here and that's why we got angry. What they actually said here, listen, agree with us, we cheated you, but agree with us, we'll profit. We will continue to make a profit until 2032. We'll multiply our profits five-fold. Agree with us, nothing will happen on the road, no new technology will enter and you'll take all the risk.

The Honorable Judge Lushi-Abudi:
You don't need it.

Adv. Elkawi:
Without guarantees.

The Honorable Judge Lushi-Abudi:
Advocate Elkawi, you don't need it. I said that at the start of my remarks, reiterate it now in the protocols too. The model proposed in the settlement is not good enough. It doesn't take your justified concerns into account that there must be reference to you and improve this settlement. There's nothing to talk about.

Adv. Elkawi:
More than that now, Madam. I say that this settlement was drawn in a very problematic way. I want to understate, I'll explain because of what was actually written in it? They're trying to create a presentation as if there is some kind of 100 percent repayment.

The Honorable Judge Lushi-Abudi:
Just a moment, a second, let's open the brackets. My position is that the supervisor expressed his response that there is no need to order the convening of meetings at the moment.

Adv. Elkawi:
I understand, Madam.

The Honorable Judge Lushi-Abudi:
That therefore means, what is stated behind the page? It says that he should amend this settlement. So this settlement, as it is now, it won't be the settlement that will stand before the creditors. But, nonetheless, sir, I want to comment, so under my comment, sir, I will comment.

Adv. Elkawi:
I'll comment on that, because, in the context that they're saying as if our objection was to any settlement, I'll only say a few sentences, the settlement tells you, if we have more than $30,000 in cash flow, when we can determine whether we'll have cash flow or we won't have cash flow, we'll deposit money that in the end and after six years if we really do well and ensure that we'll have cash flow because, after all, we can invest, and there is no restriction on our investment and also, they say that there is no commitment in the agreement to repay the money, there's nothing, that means that you're looking, and I'll tell you further, I'm very angry about section 1 of the agreement, about how they want to distribute the funds between the branded creditors. What are they saying there, Madam? That if Milberg is paid today, its proceedings are over, and it has a consensual ruling of $15,000, they now want to take at my expense, this, maybe from the fund and if they don't pay all the money I'll end up in a situation where people who wanted the settlement to apply to them won't get pro rata. I am harmed because they're going for an appeal proceeding, and because Milberg closed a settlement with them. It will get the money before me, at my expense. Now, it's no coincidence that it's worded in that way, it's as if, I don't want to say a bribe, but it's a benefit to a creditor to support the settlement, now, with that.

The Honorable Judge Lushi-Abudi:
I hear you. I hear you. I respect what you are saying, sir. I only want to say that I also respect the other party, which did not conceal from me, put it on the table. That may be. I now have a kind of creditors settlement that I must decide something about a debtor, okay? So, in this section, something was decided that refers to some other section, you read the other section, it sends you to a different section. No, we want to know what we're talking about, it's explicitly written.

Adv. Elkawi:
It's still infuriating.

The Honorable Judge Lushi-Abudi:
Okay, but at least, sir, you know and everybody knows what we're talking about and there's no need to guess.

Adv. Elkawi:
Now, Madam, there's a question in this event, a question what is correct? Should proceedings be under Chapter L? Or Chapter B? I emphasize, Madam, we don't want liquidation, we want.

The Honorable Judge Lushi-Abudi:
Chapter B is not appropriate, not appropriate now. What is it appropriate? Tell us.

Adv. Elkawi:
I'll tell you.

The Honorable Judge Lushi-Abudi:
After all, the rehabilitation and recovery and liquidation option exists in Chapter B.

Adv. Elkawi:
Obviously.

The Honorable Judge Lushi-Abudi:
And investigations are not what matters to us now, investigations, no one argues that the creditors were knowingly defrauded in advance. We're talking about a ruling that retroactively determined that a particular conduct is misleading conduct, so let us state now that I give you a headline that you deliberately acted to defraud creditors, not certain, so why isn't Chapter J appropriate? So why isn't Chapter J appropriate? Moreover, your proposal, sir, that an investor will come and all, doesn't sit with Chapter J, Chapter J is quite a destroyer of value. I don't know, pardon, Chapter B. I cannot say exactly how much, and while we're talking about the destruction of value, we don't always know exactly what it does. We don't know. I won't, I'll tell myself that I don't always know, okay? But there is destruction of value here, because if the company continues to work and generate money and knows to tell you and someone objective tells me that it knows how to continue to generate that in the existing format. Let's assume that Chapter B will sell the company's activity and give the managers some kind of parachute who will continue to operate it well and skillfully for some period of time, I don't know how long. I don't know if they know to continue doing the same thing, how much you, sir, will see from the sale of this activity? I don't know. I said earlier that I struggle to see an investor who came today and put sums, let's assume, he needs to put $300,000 today, yes? In order to get 20, 30 percent under their forecasts. If I were to make a rough calculation, I don't know if it's correct, right? Here, I will say Mr. Bachar, yes, then yes $300,000. Then he has to put up $300,000 in a company that has a $720,000 ruling hanging over it. That has some kind of difficulty, it will have to, as I previously said, bring an opinion that this currently operating company, whose legal advisers will say, or someone will say that it's operating, that it has no problem in its operations under the American ruling, okay? Is that something that could change, correct? The investor wants to know, right? He also wants to know that he is investing money in the next step, in the next tact [sic] of the company, its development. Where is this company's development going? I don't know, there isn't investment in development here, this is investment here. To save it from the situation it is in. I don't know whether anyone would do that. Come, let's be logical. So under Chapter B, I see a very great limiting of options. I have the same options in Chapter J, they also exist, and if I don't succeed under Chapter J, I'll switch to Chapter B. That means that this so-called movement is possible from here to there, from there to here isn't so possible. Although I have Section 97 or something, but I don't think that it's possible to make this move to Chapter J already. So why should I sabotage myself? It's possible that this settlement might be appropriate for you, and if it's inappropriate for you, then we'll switch to Chapter B and retain the option. Why should I waive this option in advance? For what reason?

Adv. Elkawi:
I'll tell you, I'll tell you, Madam. First, I begin at the end. If I were thinking that, financially, Chapter B is something that would limit our chance of obtaining the consideration, I would offer this proposal. Second, Madam.

The Honorable Judge Lushi-Abudi:
Why is that important to me? Excuse me, I do not wish to offend, but why is it important to me what you, sir, think? After all, I need some kind of figure that will show me that I can work one vis-à-vis the other and say what will bring me more. I strongly respect what you think, sir, like the opinion of everyone here, but I cannot decide something on that basis. How can I say that what you, sir, are saying is correct, or if some imaginary editor [sic] will now stand up and tell me that it brings more, then I should, then how can I decide?

Adv. Elkawi:
So, I'll say, Madam.

The Honorable Judge Lushi-Abudi:
Okay.

Adv. Elkawi:
First of all, I think that one of the sources of this settlement should be personal responsibility imposed on the people who brought the company to this state. They are people who not only withdrew dividends, but are the people who caused this damage. Now this thing, it's the financial source that people can build on.

The Honorable Judge Lushi-Abudi:
Advocate Elkawi, they'll bring the managers, the shareholders, who should bring money. To tell him in advance that he is going to have personal responsibility and will continue to run the company and bring you money, he won't do that. Why should he do that? What can be said, and the Supervisor said that in his position, and I reiterate it, it's possible to say that if, in future, of course, that if this settlement is not completed, they also have to in future meet what is called taking charge of their fate in this matter and dealing with personal lawsuits, if any. But to say that in advance? How does that serve me? What does that serve me? Show me the money, not that. Show me how it is with the money that the manager came today and is willing to put in money today in order to buy the exemption. I'm not saying no, by the way, I'm not saying that it's impossible in the settlement that he will bring a donation, I'm not ruling that out, but not the opposite like you, sir, are saying. First, I'll tell them that they are personally liable and then that they, it's also a matter of wording. Why investigate? Why investigate? Now, why should I investigate now? What do I have to investigate now? What? Why should I waste, take a trustee who will now take I don't know what insane opinion, you paid millions in the United States and will have to pay millions more for an opinion in the United States, why all that money? That's money that people want, if it's $300,000 or if it's $15,000, what's the issue? I don't want to give it, I'm not prepared to give it, I won't approve a trustee to take such an opinion. Why? Not at this moment. If I learn that this business plan that you're building is mendacious and intended to extricate themselves and not bring the money, then, God willing, yes, it's possible to go to Chapter B, with the full arsenal of tools and they are talented people who had grounds prepared for them, they'll want to buy this thing for cash, apparently, that's all. So, for now, I asked you, sir, begin by shortening 45 days? Yes or no? That's my question and I add 45, because that's limited. We have holidays and people will have to work harder. You'll get the money, no problem; they'll also work during the holidays.

Adv. Elhawi:
Another point that I don't know, I would like to draw my lady's attention to.
The proceeding here, Madam, today is a that is being followed in Israel.

Hon. Madam Justice Iris Lushi-Abudi:
That's right.

Adv. Elhawi:
About an American company whose player is American, whose money she produces, she produces in the United States, the Court of Justice that determined that fraud was committed in an American Court of Justice.

Hon. Madam Justice Iris Lushi-Abudi:
Isn't it an Israeli company?

Adv. Elhawi:
The parent company is.

Hon. Madam Justice Iris Lushi-Abudi:
Parent. Company

Adv. Elhawi:
The parent company is an Israeli company. And then after they receive a verdict and cannot comply with American rules, regarding the question of how to delay a verdict in the United States, which is to post bail, they take this whole incident to the State of Israel to circumvent the rules of the country where they are making the money.

Hon. Madam Justice Iris Lushi-Abudi:
Have you filed a motion for an adjournment on the threshold of the proceedings, sir?

Adv. Elhawi:
I say.

Hon. Madam Justice Iris Lushi-Abudi:
No, I am asking.

Adv. Elhawi:
I say this in context.

Hon. Madam Justice Iris Lushi-Abudi:
I now need, at the end of today's hearing, to discuss a request for summary dismissal due to, perhaps, a lack of subject matter jurisdiction.

Adv. Elhawi:
(English) I then say, I raise this point to.

Hon. Madam Justice Iris Lushi-Abudi:
What am I supposed to do? What should I say about this? I don't know, don't know.
I didn't receive a response, I didn't hear an argument, this is something that needs to be discussed from the beginning, so what can I say? So now it may be that you sir are right, what does this do to me now and contribute to me at the end of the hearing? How does this help me? Sir, I'll tell you, look, you made excellent arguments, your position was heard and in my opinion, it was acceptable, in a dispute, in the sense that this arrangement needs to change. But I do not accept that it is necessary to go to Part B. 'and I am asking for your position at the moment only on this matter, that I intend to go according to Part J, 'and my question is whether you have any objection to a temporary stay of proceedings of 45 days? And I understand that ultimately there is no point in opposing it if we accept the concept that if this proceeding does not succeed and this model does not improve then you...

Adv. Elhawi:
Madam, we will need to get confirmation from the client and inform you.

Hon. Madam Justice Iris Lushi-Abudi:
So, now yes.

Adv. Elhawi:
I don't know what time it is there now, but we can try.

Hon. Madam Justice Iris Lushi-Abudi:
So, we can try, because in the meantime I will take some kind of pause and I would like to hear from the supervisor.

Adv. Yaniv:
If I can.

Hon. Madam Justice Iris Lushi-Abudi:
His position.

Adv. Yaniv:
Before concluding, I would just like to briefly address two or three points that were made here.

Hon. Madam Justice Iris Lushi-Abudi:
Okay, even though this ping pong is over, but it is all right.

Adv. Yaniv:
No, not ping pong, really just a brief reference. First, this statement that Skillz does not operate for economic purposes that my friend, my good friend, Adv. Elhawi, wants to take off the table, is completely on the table, madam. We are not here in that discussion, when a hearing comes, if it comes on Section 87, then we will bring evidence
about it, many senior figures have left Skillz and they have something to say about what is driving this whole war. We can bring evidence about it, that is not a problem.

Hon. Madam Justice Iris Lushi-Abudi:
What evidence will you bring? I really hope so.

Adv. Yaniv:
He said, we didn't bring any evidence.

Hon. Madam Justice Iris Lushi-Abudi:
For you, don’t get to -87.

Adv. Yaniv:
I really hope for Skillz that they will actually vote.

Hon. Madam Justice Iris Lushi-Abudi:
No, I hope for you that you will also formulate something that will be good enough to be hard to oppose. Listen, listen, for the time being their resistance is perfectly fine, leave aside what you claim under the table, their resistance is justified.

Adv. Yaniv:
So why did this happen?

Hon. Madam Justice Iris Lushi-Abudi:
You have to try to improve it, that's all. So if you improve and they say it's wrong, then it will be harder.

Adv. Yaniv:
Of course I don't right now.

Hon. Madam Justice Iris Lushi-Abudi:
In the current situation, I'm already telling you, Sir, if a petition were submitted under 87, would you submit it? I wouldn't accept it.

Adv. Yaniv:
Madam, you have spoken clearly and I heard you well. I have no problem with this issue, I caught the very clear hints. I would like to say, however, that there are many arrangements that are approved in the Courts of Justice for active companies that are based on the operational profits, on the future operations, there are many such arrangements, it is not an improper thing.

Hon. Madam Justice Iris Lushi-Abudi:
Yes, but look, even a supervisor writes his own opinion that he can't comment on that.

Adv. Yaniv:
Let's remember, it's over two billion shekels. It's a huge arrangement and we can handle it.

Hon. Madam Justice Iris Lushi-Abudi:
Okay, I say to you once again, Sir, the additional effort should be not in increasing the amount, but in distributing it
differently over time, meaning, no matter how I repeat myself, issuing rights this way or another, investing, injecting, I don't know what, there must be some larger amount on the table at the beginning, and then if you want to base it on the continuation of the activity, fine.

Adv. Yaniv:
We are listening, we are listening.

Hon. Madam Justice Iris Lushi-Abudi:
That is fine.

Adv. Yaniv:
My colleague, Adv. Elhawi, raised one substantive argument regarding recent verdicts and distant verdicts.

Adv. Elhawi:
Only one?

Adv. Yaniv:
Yes, it was one, one substantive.

Hon. Madam Justice Iris Lushi-Abudi:
If he said, there is one already.

Adv. Yaniv:
Correct. And this matter, madam, at the end of the day, the ruling in this field is well-known for its long-term bond series and short-term bond series. Really, there are sometimes conflicts of interest among people in these matters. There is also a ruling by the Honorable Judge Varda Alshech on this. These conflicts of interest are well-known and can be dealt with. We as a company have no interest, I don't care who I pay, but we can find solutions for this. This shouldn't be a problem. Regarding Part B, "Really, there is nothing here to sell, because it's impossible to sell activity, because they're going to Part B, and speaking of lawsuits, it's impossible to retain the directors and the entire management team will leave, and then there won't be any activity and nothing to sell".

Hon. Madam Justice Iris Lushi-Abudi:
I know, I'm not 100 percent sure that's what will happen either.

Adv. Yaniv:
When a transaction is made, madam, by a willing seller to a willing buyer, there is a mutual commitment by the managers to remain for a period of one, two, or three years.

Hon. Madam Justice Iris Lushi-Abudi:
Adv. Yaniv, they will make an effort and if they have to, they will probably agree to stay for a while. But we are not there right now.

Adv. Yaniv:
That's right, we're not there.

Hon. Madam Justice Iris Lushi-Abudi:
Because I'm not sure that even if they were there and agreed to three years, we would see enough of it to pay the creditors. Certainly not what you're suggesting, which is 100 percent, which is fantastic, right?

Adv. Yaniv:
We definitely offer a result that is great in the sense of fantastic. Regarding the authority, as the authority claimed that it should have been argued at the first opportunity and it did not come up, but we explicitly stated in our petition the Section of the law, which is 319(1), by virtue of which this Court of Justice has authority, the next company is an empty company, it has no offices, it has no assets, it has almost nothing there, no employees. And the fact that there are customers in the United States certainly does not change the picture. Check Point is also a company that sells mainly in the United States, but it is still an Israeli company. It is very interesting what my friend said about, about how he has an interest in the continuation of the activity, because if the company stops, who knows how much of it he will profit, out of the 30,000 dollars, how much will really go to him. It is very interesting because it really completely contradicts the logic of the American verdict that says that every shekel that Skillz profits is actually at the expense of this competitor and not at the expense of the rest of the market, but even that, it is not off the record; the appeal is there. That is it, thank you.

Hon. Madam Justice Iris Lushi-Abudi:
Thank you. If only, Sir, could you come closer to one of the loudspeakers and say your name again, Attorney Milberg, yes.

Adv. Eliyahu:
Adv. Avichai Eliyahu.

Hon. Madam Justice Iris Lushi-Abudi:
Yes.

Adv. Eliyahu:
Attorney of the Milberg Group. At the outset, I would just like to address what my colleague, Adv. Elhawi, said, implying a bribe, some other benefit that was given.

Hon. Madam Justice Iris Lushi-Abudi:
God forbid, the word bribe was not mentioned. It was said that they want to produce some kind of positive incentive for the creditor. Let's use nice words. Even a positive incentive is something that bothers him.

Attorney Eliyahu:
I understand, madam, no, but he was talking indeed about the considerations of a compromise agreement, etc., I.

Hon. Madam Justice Iris Lushi-Abudi:
It's a positive incentive, what's wrong with that?

Attorney Eliyahu:
I understand, Madam, I am just for the avoidance of doubt, of course, any argument of that type is denied, also the law firm that represents there, the Milberg Group, is also a reputable law firm, they manage their clients' affairs with no discernment, while taking reasonable chances and risks. Of course, there is no need to expand on this point any further. Only regarding the temporary stay of proceedings order, I repeat what was said in our response, in particular in Section 7 which refers to Section 9 of the Appendix, and this is the distinction between the stay of collection proceedings and the stay of other legal proceedings. We will request that it not be applied, the stay of proceedings order will not apply to legal proceedings, everything that is derived from the need to continue the implementation of the approval of the compromise agreement in the Court of Justice, all of these things.

Hon. Madam Justice Iris Lushi-Abudi:
So, I'll tell you, Sir, a moment on this matter. I've also seen that the supervisor supports this position of yours. I'm not entirely sure that it's the right thing to do, because today she thinks that the company should invest its efforts in the arrangement and not in legal defenses. On the other hand, we're still under arrangement. So, at this stage, I'm ready to go with this stand, but I, like Adv. Yaniv said earlier, heard from within the ranks, don't know what to do next right now. If a trustee or a settlement manager comes and tells me that it's really bothering him, because now the lawyers also have to be paid, so that they can continue working, which is also some kind of maybe creditor preference, I don't know, it's a question, an interesting question and I'm not going into it right now, I think the supervisor should also give his opinion on this. If they paid in advance, they paid in advance, if they didn't pay in advance, then what now? The settlement manager should also ask me to approve now, pay some American lawyer, some other amount of 100,000 dollars for an appearance, why? Why do I need this? All of these things will be examined in a debt claim that will be submitted to the settlement manager, we will reach agreements, I'm sure they will be agreements that if you don't agree to, then it won't happen, so what? Like okay, I hear what you're saying because I respect, there's already a proceeding, I respect it, but look, look (English) as if you're talking about these things. I'm sitting here, what do I care? I'm going home later. What are you going to do? You need to run now, bring lawyers, pay them, I continue my affairs, like, and that's it, I'm not talking about wasting judicial time for the judge who has to hear this lawsuit now. Because it might be possible to end it in a different way. I am respectful right now. Okay? Okay.

Adv. Yaniv:
Thank you very much, madam. I didn't exactly understand what madam said about being respectful at the moment.

Hon. Madam Justice Iris Lushi-Abudi:
I am saying that if the settlement manager tells me that now the costs of lawyers are a preference for creditors, I will ask for a response from the supervisor, it is a matter of principle, it is not my business to decide on it at this moment.

Adv. Yaniv:
Okay, for the record, I say that I am Adv. Yaniv. It is very important to me to say that, contrary to what we wrote, that we are willing to agree to this type of thing, of reducing the scope of the order, in principle I have no problem with that, and as madam says, the settlement manager will decide, madam will decide, I have no problem with that in principle. But practically, I very much ask that no general change be made to the order, because this thing could cause damage, because this order, I remind Madam of what we started with.

Hon. Madam Justice Iris Lushi-Abudi:
What change?

Adv. Yaniv:
A change that will reduce the temporary order. That will reduce it only regarding the enforcement proceedings and not to litigation. The order, as I recall, also applies to the issue of what we call Section 66 of an existing contract, which is where we started this case the previous day.

Hon. Madam Justice Iris Lushi-Abudi:
Okay, but there is no impediment to explicitly make such a reduction when you submit your proposed order.

Adv. Yaniv:
Exactly.

Hon. Madam Justice Iris Lushi-Abudi:
Please indicate the proceeding.

Adv. Yaniv:
Exactly.

Hon. Madam Justice Iris Lushi-Abudi:
Tell me what this is about and right now, so I'll sign off on that, I won't change it,
I won't change the wildcard. Exactly. But there will be exceptions, and the exception will be submitted in your proposed order, okay?

Adv. Yaniv:
And I say, we will not oppose any pending proceeding that seeks to renew it, as long as...

Hon. Madam Justice Iris Lushi-Abudi:
Everything is egalitarian, yes, it is clear. madam, Adv. Eshkol, yes? She wrote a nice response.
Yes, good lawyer, since we've already arrived up to where we arrived.

Adv. Eshkol:
If possible, only a few words.

Honorable Judge Lushi-Abudi:
Yes, please, would the lady like to speak, yes. Until a woman wants to speak in my courtroom.

Attorney Eshkol:
That’s right, by the way, that’s one of the reasons I moved.

Honorable Judge Lushi-Abudi:
No, women get treated well here, favorably, favorably.

Attorney Yaniv:
Okay, bring Maya, Yaron.

Attorney Eshkol:
First of all, I simply hope.

Honorable Judge Lushi-Abudi:
Please come a little forward, to the microphone, yes, exactly.

Attorney Eshkol:
A few key points. First of all, at the substantive level, as we wrote in the response filed on August 18, essentially, the relief that Skills is seeking today is relief based on the laws of unjust enrichment, relief for the restitution of funds that came out of the consumers’ pockets. And it is very important to me that it be clear that, at the heart of this matter, those who were harmed more than anyone else are the consumers, whose money came out of their pockets to finance all of the company’s activities, including the legal battle, at costs of tens of millions of dollars, that's the point.

Honorable Judge Lushi-Abudi:
What is the significance of this?

Attorney Eshkol:
Because I think, I simply want it to be in the background regarding these matters.

Honorable Judge Lushi-Abudi:
That’s fine, but I always ask myself, when someone tells me something, what am I supposed to do with it? Am I supposed to address it now in some way?

Attorney Eshkol:
I don’t have anything operative at this point.

Honorable Judge Lushi-Abudi:
Okay, so the lady wanted to make the comment, all right.

Attorney Eshkol:
Yes.

Honorable Judge Lushi-Abudi:
Okay. As far as I’m concerned, I have nothing.

Attorney Eshkol:
The only thing is, it’s not something that is concrete at the moment, but ultimately, there is a dispute here between two commercial companies, and the main concern is that, because of that same injustice inflicted on the consumers, the main concern is that, in the course of this dispute, the ones whose rights will be trampled are precisely the consumers.

Honorable Judge Lushi-Abudi:
Okay. My position is not popular, I think consumers are adults, they know what they are doing. I'm not so sure.

Attorney Elhawi:
So now.

Honorable Judge Lushi-Abudi:
I don't think consumers are unaware of what's going on, they know very well what is happening and they should make their own decisions.

Attorney Eshkol:
That was actually the next point I wanted to make, because I heard that there was a discussion here about the allegedly legal implications of the continuation of the consumers' game today? I think these questions have both factual and legal aspects, and the one who should be dealing with them is the court hearing the class action. I actually think it is important to say that the consumers are not aware of what is going on. We are talking here about consumers; the United States will read a judgment of tens of pages down to the details of the advertising.

Honorable Judge Lushi-Abudi:
What a nice representation.

Attorney Eshkol:
Ms. Robinson specifically does, yes, but of course, other consumers don't. All they know is that when they enter the app and see a profile, they assume that the profile is human. They don't just assume that; it is based on explicit representations and commitments.

Honorable Judge Lushi-Abudi:
The starting point is what appears in the settlement and in the motion, that the applicants are no longer engaging in any use that is contrary to the judgment, that's how I'll put it, full stop. So I'm not supposed to, no, I'm already telling you, I would say the same thing with protective orders, I'm not sitting here now, lying down here and checking every single thing, whether there is or isn't, that is not my role at all. If you find that there's some problem, you go to wherever you need to go. At the moment, within the framework of the settlement, what is the relevance of this? What am I supposed to do with it?

Attorney Eshkol:
No, I just wanted this to be in the protocol, since a discussion was held here and these matters, as stated, need to be clarified.

Honorable Judge Lushi-Abudi:
Okay.

Attorney Eshkol:
In the court that is hearing the class action.

Honorable Judge Lushi-Abudi:
They will be clarified, fine, thank you very much, ma'am. Appointed, since, as I understand it, ma'am's position is as she wrote it, and ma'am even proposed 45 days of a temporary stay, and that the deadlines for filing the claims of debt would apply from the date of the removal of the Gag order, if I'm not mistaken, that is what ma'am wrote.

Attorney Naot:
No, I proposed that the 45 days be counted from the date of the removal of the Gag order, but I am concerned that the date I specified, which is September 17, is –

Honorable Judge Lushi-Abudi:
Too short.

Attorney Naot:
No, it is actually later, meaning it is already beyond the 45 days, meaning the date I proposed. But of course, the settlement administrator, once appointed, will be able to file a request for an additional extension. I would, I did propose that an additional advertising be made, the purpose of which would be that it be, as I understand it, the advertisings at present are actually on the Supervisor's website. I don't think that this is sufficient advertising under the circumstances of users from all over the world. I don't think there is anyone who will go onto this website and understand what they are looking at, and therefore I also discussed this with Attorney Yaniv, and under the regulations at present, I'm sorry, I don't remember the regulation, when there are creditors abroad, the court should order advertising as it sees fit. I proposed to Attorney Yaniv that advertising be made in the apps themselves. Attorney Yaniv, if he wants me to say what he said, do you want to state your position? But in any event, I will leave this to the court's discretion, we will hear Attorney Yaniv and his position on the matter, and I will leave this to the discretion of the court. And I proposed that within two weeks from the date of the advertising, which, as I understand it, is supposed to be effective advertising, if we really want to ensure that this settlement will compensate the claims of anyone who claims to have been harmed as a result of this event, the proofs of debt should be submitted within two weeks from the date of the advertising. That was my proposal. Does this actually mean that such proofs of claim filed during these two weeks would, in effect, constitute a procedural bar, meaning that no additional class actions could be filed, for that matter, in the United States, or would they still be able to be filed? I received, It is important to me to raise this before ma'am, Attorney Yaniv was not.

Honorable Judge Lushi-Abudi:
Why would additional claims be filed?

Attorney Naot:
So I understood from Attorney Yaniv, but it is important for me to put these matters on the record so that the picture is complete.

Honorable Judge Lushi-Abudi:
I don't think so. Even if they are filed, I will stay them, I think that the stay of proceedings that I grant will apply there, nothing will help.

Attorney Naot:
Because what I was told,

Attorney Yaniv:
They are threatening to file.

Attorney Naot:
That once there is a check,

Honorable Judge Lushi-Abudi:
File proofs of debt here.

Attorney Yaniv:
Correct.

Honorable Judge Lushi-Abudi:
Yes, what is that?

Attorney Naot:
There will be recognition, I just want, I simply want to put ma'am's mind at ease that I considered the matter, I received the answers, I was told that according to (English), once there is recognition, such claims will be blocked anyway, and I wanted to make sure, to close the loop, that's what I'm saying.

Attorney Eshkol:
This is a substantive matter concerning the relationship between class action proceedings and insolvency proceedings. As part of the certification application that I filed, the application was submitted on behalf of all Papaya users, except that there are notification procedures whereby, when the action is certified as a class action, notices are sent to all users, and they have the option, if they wish, to opt out. I think I also addressed this in the response, carrying out now a procedure that is intended for users who have not yet filed a claim is not necessarily required, since they are already part of the class actions. If there is a judgment in the United States, then it includes everyone who has a claim in the United States, and when the proceeding is certified here in Israel on behalf of users from the rest of the world, then it will be relevant to users from the rest of the world. I think there may perhaps also be an attempt here to harm the users.

Honorable Judge Lushi-Abudi:
No, there is no attempt to harm them, there is an attempt to fence these matters in. And the fencing makes sense, especially if there is an alternative for those users, they can file a proof of debt. So I don't know if.

Attorney Eshkol:
I don't think it will be possible to hold users who have not filed a legal demand as having waived their claims, since there is a class action, which is intended to this matter.

Honorable Judge Lushi-Abudi:
I admit that this is a significant question, I have not heard enough about it or read enough about it. My intuitive inclination is that the solution is in proofs of debt, but I will have to hear about it. So she thinks that initially it will be necessary to say that these are proofs of debt and that they should file proofs of debt, and if any of them wants to argue otherwise, that is a different matter and the issues will be examined. I don't think that from the outset I should necessarily accept this position, but rather the opposite, the position that serves the insolvency proceedings. That is the position that, in my view, should be the leading one. If someone else wants to argue that another law conflicts with the insolvency proceedings and that proofs of debt should not be filed, but rather their right to join there should be preserved, let them file a motion, I will consider it. I will consider it according to the rules, after I hear the arguments.

Attorney Yaniv:
What Ms. Eshkol is saying, in my opinion, means that they do not need to join, but that they are already essentially included.

Honorable Judge Lushi-Abudi:
Yes, but according to what she is saying, they also don't, they also don't, whoever –

Attorney Eshkol:
Whoever does not file will be deemed to have waived their rights.

Attorney Naot:
So it is possible, so it is possible.

Honorable Judge Lushi-Abudi:
But they will be notified, if they receive, no, let Attorney Eshkol be, I'm not, I will address this, I'm currently. I don't see any point in saying this, but addressing it now in the decision, but it is obvious that if they are given the opportunity to know that there is such a proceeding and that they can file a proof of debt, and the wording will be such that if they do not file a proof of debt, they will not be considered to be included today in the current application, then they will consider their next steps. I don't know, but I cannot say in advance that I am giving them a carte blanche not to file proofs of debt.

Attorney Eshkol:
Okay.

Honorable Judge Lushi-Abudi:
No, that cannot be done.

Attorney Yaniv:
My good colleague, Attorney Naot.

Honorable Judge Lushi-Abudi:
Yes.

Attorney Yaniv:
My learned colleague, Attorney Naot.

Honorable Judge Lushi-Abudi:
You object to advertising in the app, you have, I have reasons.

Attorney Yaniv:
One, the relevant players are players who played three years ago. Players generally do not remain in this game for three years. Therefore, advertising today will cause harm, because it is clear that it will affect revenues, but on the other hand, it will not bring the hoped-for benefit because it does not target the right audience. The right audience is those who played up until November 23.

Honorable Judge Lushi-Abudi:
How are we going to make sure they know? We guarantee –

Attorney Yaniv:
Three years have passed. What I want to check,

Honorable Judge Lushi-Abudi:
I don't care whether it will be in the app or not.

Attorney Yaniv:
What I want to check is whether it is possible, I assume the company has the email addresses of those players from that period who are still active today, and to reach out to them by email. That is advertising.

Honorable Judge Lushi-Abudi:
What you are telling me right now, sir, is something that is going to take time.

Attorney Yaniv:
Why? Email is a quick.

Honorable Judge Lushi-Abudi:
No, the email, yes, but finding all these people.

Attorney Yaniv:
We are a very advanced high-tech company, everything is done at the push of a button.

Honorable Judge Lushi-Abudi:
Okay, so, sir, you go back to the office today, and tomorrow morning there is a notice regarding all the emails that were sent.

Attorney Yaniv:
Tomorrow morning?

Attorney Naot:
This evening.

Honorable Judge Lushi-Abudi:
Or this evening.

Attorney Naot:
This evening.

Honorable Judge Lushi-Abudi:
Okay, we've reached the interesting issue. I would like to hear from ma'am the reasons for each of the people who were excluded from the list. Why were they excluded?

Attorney Yaniv:
They are all plaintiffs.

Honorable Judge Lushi-Abudi:
It's not relevant, they are absent. I want to know the reasons for their inclusion, considering what I wrote in my decision, so please, if ma'am wants this to be done in another forum, then they will all leave and ma'am will explain it to me.

Attorney Naot:
Yes, I was going to, no, ma'am, you know what, I prefer that we do this in a broader forum. I just want to say, it was brought to my attention at the outset of the hearing, by Attorney Pini Yaniv, and this was confirmed on Google, that Erez Hever's firm represented Papaya. So I am concerned that I will not be able to present his candidacy, and we are in fact left with four candidates. We requested, first of all, I will say.

Honorable Judge Lushi-Abudi:
By the way, when you propose candidates, don't you check with them beforehand in such proceedings?

Attorney Naot:
But of course, there is an affidavit of no conflict of interest and linkage.

Honorable Judge Lushi-Abudi:
I'm asking, didn't Attorney Hever declare that?

Attorney Naot:
Ma'am.

Honorable Judge Lushi-Abudi:
That's the question.

Attorney Naot:
I will present it to ma'am and ma'am will see.

Attorney Yaniv:
It may be that he did not know, it was representation in the past, there is no –

Honorable Judge Lushi-Abudi:
Yes, Yaniv, I'm asking, I want to know.

Attorney Yaniv:
They also filed a claim against Papaya, by the way.

Attorney Naot:
I don't understand, they both represented and filed a claim against Papaya?

Attorney Yaniv:
The website says that he represents Papaya, there was also a claim against Papaya, in short, it's better not to go near him.

Honorable Judge Lushi-Abudi:
Okay, he should have written that, okay, please, ma'am, take this, apparently it is phrased in some way, I don't know, never mind, yes.

Attorney Naot:
Ma'am, I believe, first of all.

Honorable Judge Lushi-Abudi:
Yes, ma'am can, no, ma'am can take it, I saw.

Attorney Naot:
First of all, we approached the candidates in order of priority, that is a first condition, we requested.

Honorable Judge Lushi-Abudi:
In my view, this is not a first condition, the first condition is what the court writes in its decision, with all due respect to you. If the court tells you that a particular case requires certain knowledge, I think those are considerations. I'm asking, I didn't say that they are not, I asked to know what your reasons and considerations are, you want me to approve someone, I need to know what your considerations are, I'm not a rubber stamp here.

Attorney Naot:
I believe I can present to ma'am again those affidavits that were submitted by the proposed officeholders, the cases in which they acted are detailed there, whether as officeholders or as parties. Ma'am is welcome, I would be happy if ma'am would review these affidavits.

Honorable Judge Lushi-Abudi:
I will review them, ma'am.

Attorney Naot:
And based on what appears there, ma'am may perhaps truly be able to form an impression as to whether, in her understanding, they have the required experience or not. There are candidates here who have many cases. I think it is full of that.

Honorable Judge Lushi-Abudi:
So that it will not be hinted at, so that it will not be hinted at. All the candidates, respectable candidates, have extensive experience.

I'm asking about experience, here you also need a lot of understanding of American law and what is happening there, I want to know whether among those candidates whom ma'am says have extensive experience and many cases and they do their work faithfully, and I know them, they are all good, I'm asking about specific experience, and I want to know if ma'am knows how to tell me, based on the cases that appear in the conflict of interest affidavit, which of them?

Attorney Naot:
Ma'am, I don't know all the cases here. I'm sorry, I can't.

Honorable Judge Lushi-Abudi:
On what basis are you recommending this? That's what I want.

Attorney Naot:
Because we know the skills of these candidates, we assess what skills are required for the establishment of a complex creditors' arrangement, they are capable of performing this work well and to the satisfaction of all parties.

Honorable Judge Lushi-Abudi:
I hear ma'am, I think each of them is truly an excellent trustee, that was not my question, but okay, my decision will be given later, you will have a machine-generated **transcript** later, or tomorrow.

Attorney Elhawi:
I will just say to ma'am –

Attorney Yaniv:
Excuse me, when does the machine-generated **transcript** actually come out? Will it be today or tomorrow? Does the machine-generated transcript come out within a day, within two days? Because sometimes it takes weeks.

Honorable Judge Lushi-Abudi:
When there is pressure, I don't think there is any pressure at the moment.

Attorney Yaniv:
It's good that we're in recess.

Attorney Eshkol:
I wrote in the objection that we agree to 45 days, subject to the rights of the class being preserved. I also raised arguments regarding the convening of the meetings, and I would request that, if we file, as there will be a supervisor, also regarding the calculation of the aggregate value of the class for the purpose of filing a proof of debt, also regarding the convening of the meetings.

Honorable Judge Lushi-Abudi:
When a settlement administrator is appointed, ma'am will refer to the settlement administrator. At the moment, since I am not ordering the convening of meetings, we will accept the Supervisor's position on this matter.

Attorney Naot:
Ma'am, I request, since we have in fact presented four candidates, I request that ma'am allow me to present an additional candidate within the next 24 hours.

Honorable Judge Lushi-Abudi:
Okay, all right, ma'am will present, no problem.

Attorney Elhawi:
Just to complete the picture, unfortunately, we were unable to reach the client, and therefore

we cannot deviate from the documents that we filed and that were approved for us, in which we wrote what we wrote, it is simply impossible to reach them at the moment.

Honorable Judge Lushi-Abudi:
So, sir, please let me know by tomorrow morning. I assume that by then you will be able to know whether your client agrees to the 45-day period, as recommended by the Court. Okay?

Attorney Yaniv:
Okay,

Honorable Judge Lushi-Abudi:
Thank you all very much.

Attorney Yaniv:
Thank you very much.

- The recording ended -