**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Papaya Gaming Ltd., *et al.*,[1] | Case No. 26-11217 |
| Debtors in a foreign proceeding. | (Jointly Administered) |
| | **Hearing Date: October 14, 2026 at 2:00 p.m. (ET)**<br>**Obj. Deadline: At the hearing** |
| | **Re: D.I. 70** |

**EMERGENCY MOTION OF THE FOREIGN REPRESENTATIVE FOR AN ORDER SEALING THE COURTROOM DURING THE PRESENTATION OF CONFIDENTIAL INFORMATION AT THE HEARING SCHEDULED TO BEGIN OCTOBER 14, 2026**

Oriel Bachar, in his capacity as a duly authorized foreign representative (the "Foreign Representative") of Papaya Gaming Ltd. ("Papaya Israel") and Papaya Gaming Inc. ("Papaya US," and together with Papaya Israel, the "Debtors" or "Papaya"), through his undersigned counsel, hereby submits this *Emergency Motion of the Foreign Representative for an Order Sealing the Courtroom During the Presentation of Confidential Information at the Hearing Scheduled to Begin October 14, 2026* (the "Motion"). In support of the Motion, the Foreign Representative respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By this motion, the Foreign Representative seeks tailored relief to protect Papaya's most sensitive commercial, financial, and proprietary information from public disclosure during the Recognition Hearing scheduled to begin October 14, 2026. Papaya produced over 5,200 pages of discovery in good faith and in reliance on the express confidentiality protections of the court-

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

approved Protective Order, designating its most sensitive materials as Highly Confidential – AEO without objection from Skillz. Permitting that information to be heard entirely in open court has the potential to cause Papaya substantial competitive harm to the detriment of all creditors.

The Foreign Representative accordingly seeks an order (i) sealing the courtroom during the presentation of specifically enumerated highly confidential information at the hearing scheduled to begin October 14, 2026, (ii) permitting the parties to refrain in open court from eliciting testimony regarding, or displaying, specifically enumerated categories of sensitive details within certain categories of Discovery Material, and (iii) authorizing Papaya to release a redacted transcript of the sealed portions of the hearing in lieu of public access to those portions.

**BACKGROUND**

2. On August 18, 2026, the Court entered the *Order Approving Stipulated Protective Order Governing Discovery Material* [D.I. 70] (the "Protective Order"), which approved the Stipulated Protective Order Governing Discovery Material entered into by and among the Foreign Representative, the Debtors, and Skillz Platform, Inc. ("Skillz"). In the Protective Order, the Court retained jurisdiction over all matters arising from or related to the implementation or interpretation of the Protective Order.

3. The Protective Order governs the parties' use and disclosure of all information, documents, testimony, and other materials produced or provided in connection with the Chapter 15 Cases ("Discovery Material").

4. The Protective Order permits a Producing Party[2] or Receiving Party to designate Discovery Material as "Confidential" where, among other things, it believes in good faith that the material contains non-public, proprietary, or confidential technical, business, financial, personal

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Protective Order.

or other information of a nature that can be protected under Federal Rule of Civil Procedure 26(c) or Bankruptcy Rules 7026 or 9018. *Id.* ¶ 4(a). Discovery Material may also be designated "Highly Confidential – Attorneys' Eyes Only" ("Highly Confidential – AEO") where its disclosure beyond certain persons identified in the Protective Order would create a risk of disclosure or other significant injury, concerning trade secrets and sensitive financial, commercial, or business information. *Id.* ¶ 4(b). Specifically, Highly Confidential – AEO information may only be disclosed to:

> a. outside counsel representing any Receiving Party, and such counsel's associated attorneys, paralegals and other professional and non-professional personnel including support staff, translators and outside electronic discovery and document review services, who have been advised by such counsel of their obligations under this Protective Order;
>
> b. outside industry advisors, financial advisors, accounting advisors, experts, consultants, investigators and other professionals, and their respective staff, retained by the Foreign Representative or any Receiving Party, provided that any such person or entity has signed a written statement in the form provided as Exhibit 1;
>
> c. court reporters, stenographers, videographers and translators who record or interpret testimony;
>
> d. the Court and its officers and clerical staff;
>
> e. any court, tribunal or other adjudicative authority, including the District Court of Tel Aviv, Israel, and any law enforcement, regulatory or governmental authority, and their respective officers, staff and personnel, in each case subject to any applicable confidentiality, sealing or non-public treatment procedures;
>
> f. nonparties specifically retained to assist counsel of record with copying and computer services necessary for document handling, and other litigation support personnel (e.g., graphic designers and animators, database entry personnel);
>
> g. persons who have been retained by a party to provide translation or interpretation from one language to another; and

> h. any other person or entity with respect to whom the Designating Party may consent in writing, provided such person or entity has signed a written statement in the form provided as Exhibit 1.
>
> Notwithstanding anything to the contrary in this Protective Order, no Highly Confidential – AEO Material shall be disclosed to any director, officer, employee, or in-house counsel of any Receiving Party, or to any other person who is an employee, principal, officer, director, member, partner or in-house counsel of a Receiving Party, regardless of title or role, it being the intent of the Parties that Highly Confidential – AEO Material be reviewed only by outside counsel, outside experts, outside consultants and other non-employee professionals identified in this Paragraph 12, and not by any individual employed by or otherwise affiliated with a Receiving Party in an operational, managerial or ownership capacity.

5. The Protective Order further provides that where Highly Confidential – AEO information is proposed to be used in open court, counsel for the Foreign Representative, the Designating Party, and any Receiving Party must confer in advance regarding procedures necessary to protect the confidentiality of that Discovery Material, and if counsel cannot agree, "the Designating Party bears the burden of requesting relief from the applicable court." *Id.* ¶ 15.

6. After entry of the Protective Order, Papaya produced over 5,200 pages of discovery in response to Skillz' requests, including documents related to Papaya's non-public financial information, projections, business operations, customers, confidential contracts, etc. Such documents were designated as either Confidential or Highly Confidential – AEO in accordance with the Protective Order. Papaya and Skillz are competitors in the mobile gaming market, and during the discovery meet and confer process both parties understood and discussed the need to protect Papaya's sensitive proprietary information from disclosure to its direct competitor. Skillz never objected or claimed that any of the Discovery Material produced with such stamps was improperly designated within the time frame provided under the Protective Order.

7. On October 8, 2026, the parties filed their *Joint Witness List, Deposition Designations, and Exhibits* [D.I. 145] (the "Joint List"). Exhibit B of the Joint List identifies numerous exhibits, designated as Highly Confidential – AEO, that the parties intend to use during the Recognition Hearing scheduled for October 14–16, 2026. Exhibit B of the Joint List was amended on October 13, 2026 by that certain *Joint Notice of Amended Exhibit B to Joint Witness List, Deposition Designations, and Exhibit List for the Recognition Hearing on October 14, 2026* [D.I. 153].

8. Pursuant to the Scheduling Order,[3] on Wednesday, October 7, 2026, the parties met and conferred regarding motions in limine and other pretrial motions. The parties discussed the need to seal the courtroom for certain Highly Confidential – AEO documents and agreed to continue meeting and conferring to see if an agreement could be reached. On Tuesday, October 13, the parties met and conferred again, together with the Office of the United States Trustee (the "OUST"), regarding the treatment of Highly Confidential – AEO Discovery Material at the hearing, including proposed category-by-category restrictions.[4] The parties are continuing to confer to identify how each category of Discovery Material described below will be treated, and the Foreign Representative intends to submit a list to the Court reflecting the intended and/or requested treatment of specific exhibits (the "Hearing Treatment List").

[3] The *Scheduling Order for Hearing on the Foreign Representative's Verified Petition for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* [D.I. 133] (the "Scheduling Order") governs the pretrial and hearing schedule for the Recognition Hearing.

[4] At the October 13 meet and confer, Skillz suggested for the first time that this Motion was due by October 9, 2026 under the Scheduling Order. The Foreign Representative does not agree. The Foreign Representative understood the October 9 deadline to reference motions to seal filings and declarations containing redactions, not the present request to seal the courtroom during the hearing. Furthermore, Skillz did not raise any timeliness concern during any prior discussion concerning treatment of confidential-designated exhibits or courtroom sealing during the hearing.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Foreign Representative consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. Venue is proper in the Court pursuant to 28 U.S.C. § 1410.

11. The statutory and legal predicates for the relief sought herein are section 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9018-1.

**RELIEF REQUESTED**

12. By this Motion, the Foreign Representative respectfully requests the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), to provide for (i) sealing of the courtroom during the presentation of certain Discovery Material designated Highly Confidential – AEO at the hearing scheduled to begin October 14, 2026 to only those individuals allowed to see or hear such confidential information as designated under the Protective Order; (ii) restricting the parties from eliciting testimony regarding, or displaying, specifically enumerated categories of sensitive details within such Discovery Material that is not germane to the issues in this proceeding (including, without limitation, the names of vendors and counterparties, confidential contract terms, specific payment amounts to certain third parties, and

account numbers), consistent with the Hearing Treatment List; and (iii) authorizing Papaya to release a redacted transcript of the sealed portions of the hearing in lieu of public access to those portions.

## BASIS FOR RELIEF

13. Section 107(b) of the Bankruptcy Code states that "[o]n request of a party in interest, the bankruptcy court *shall* . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information[]." 11 U.S.C. § 107(b) (emphasis added). Likewise, under Bankruptcy Rule 9018, either "[o]n motion or on its own, the court may, with or without notice, issue any order that justice requires to . . . protect the estate or any entity regarding a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018(a)(1).

14. "Once a court determines that a party in interest is seeking protection of information that falls within one of the categories enumerated in section 107(b), the court is *required* to protect a requesting party and has no discretion to deny the application." *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (emphasis in original, quotation omitted); *see also In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 430 (9th Cir. 2011) ("§ 107 eliminates a court's discretion by making it mandatory for a court to protect documents falling into one of the enumerated exceptions.").

15. "Commercial information" does not have to rise to the level of a trade secret in order to warrant protection under section 107. *In re Altegrity, Inc.*, 2015 WL 10963572, at *3 (Bankr. D. Del. Jul. 6, 2015). Rather, "commercial information" extends to any information that

will give an unfair advantage to an entity's competitors. *See, e.g.*, *Borders*, 462 B.R. at 47. Additionally, the term encompasses "situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors." *Id.* (quotation omitted). *See also In re Glob. Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) ("[C]ommercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors.").

16. Despite the public's general interest in access to judicial proceedings, courts in this District have closed hearings from the public in the interest of protecting parties' information under section 107(b). *See, e.g.*, *In re Spansion, Inc.*, No. 09-10690 (KJC), 2009 WL 1531788, at *1 n.3 (Bankr. D. Del. June 2, 2009) (noting parties had requested, and under section 107(b) were granted, requests to close certain portions of bankruptcy hearings). Indeed, courts have closed access to hearings even where the public's interest in learning the information presented was far more compelling than is the case here. *See, e.g.*, *In re Catholic Diocese of Wilmington, Inc.*, No. 09-13560 CSS, 2012 WL 2359880, at *2 (Bankr. D. Del. June 20, 2012) (closing court proceedings in bankruptcy case even when weighed against the special public benefit an open proceeding would have had on "the protection of children from physical and sexual abuse."); *cf. In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1984) ("Where only private commercial interests or damage are involved, we think the law justifies the steps taken by the District Court to [prevent public disclosure].").

17. Here, the parties intend to introduce testimony and exhibits related to confidential and commercially sensitive information relating to business strategy, confidential agreements, and the operation of Papaya, including the following categories:[5]

- the substantive commercial terms of confidential agreements related to the operation of Papaya's business, including vendor counterparties, commercial terms, specific payment amounts, and account numbers;
- non-public detailed financial information, including the backup for Papaya's financial forecasts and its financial ledger;
- specifically enumerated board minutes, board resolutions and board presentations discussing Papaya's forward-looking competitive business strategy;
- personal addresses and personal identifying information of Papaya employees and family members referenced in interrogatory responses;
- specifically enumerated proprietary business information, including Papaya's transfer pricing study and the founder's consulting agreement.

18. The disclosure of this information to a direct competitor of Papaya and third parties will substantially harm Papaya's ongoing ability to operate in a competitive gaming market. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, Dkt. No. 1649 at 10, 16 (N.D. Cal. Aug. 9, 2012) (granting sealing of agreements that contain "a whole host of terms" that would be unnecessary to make public (e.g., termination conditions, side-agreements, waivers) and could result in "significant competitive harm" to the licensees if disclosed); *Amgen Inc. v. Amneal Pharms. LLC*, No. CV 16-853-MSG, 2021 WL 4133516, at *3 (D. Del. Sept. 10, 2021) *on reconsideration in part*, 2021 WL 4843959, at *1 (D. Del. Oct. 18, 2021) ("Courts have repeatedly protected from disclosure financial data showing pricing, costs, sales revenue, and profits where it could place movants at a competitive disadvantage."). Indeed, courts have recognized that the

[5] To the extent any such information is not disclosed or discussed in open court, it shall retain its existing confidentiality designation under the Protective Order.

disclosure of confidential "financial data such as pricing, costs, sales revenue, and profit margins" would "provide competitors in the [] industry with access to confidential and proprietary data from which they could deduce profit margins and adjust their marketing and pricing strategies to weaken [a party's] competitive position in the marketplace." *Id.*; *see also Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 2007 WL 2085350, at *10 (D.N.J. July 18, 2007) (granting motion to seal "cost and profit information" because it could be "manipulated or distorted by competitors for a business advantage").

19. The parties are continuing to meet and confer and will endeavor to present evidence in such a way as to minimize the need for sealing the courtroom. Where possible, the parties will avoid displaying or inquiring into the highly sensitive categories of information enumerated above. For example, with respect to contracts with Papaya's vendor counterparties, the parties are conferring on whether they can agree in principle to avoid displaying or inquiring into sensitive commercial terms while consenting to inquiry into vendor names (already made public) or vendor categories, choice of law provisions, and vendor locations. With respect to a limited set of documents, the courtroom will need to be sealed from those individuals not qualified under the Protective Order to hear or see Highly Confidential – AEO information. Papaya requests that the courtroom be sealed for those portions of the hearing during which such information is addressed.

20. As a substitute for public access to this hearing, Papaya proposes releasing a redacted transcript of these proceedings. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1072 (3d Cir. 1984) (a transcript may "substitute for the presence of reporters and the public at a hearing"). Closing the courtroom but releasing a redacted transcript shortly thereafter will protect Papaya's confidential and commercially sensitive information, while also providing the public

with the substance of the hearing and with "confidence that standards of fairness are being observed." *Id.*

**COMPLIANCE WITH LOCAL RULE 9018-1(d)**

21. Papaya met and conferred with Skillz and the OUST regarding a proposal for sealing the courtroom in connection with the parties' use of Highly Confidential – AEO information. The parties continue to confer to narrow and finalize the treatment of the categories of Discovery Material described above in order to finalize the Hearing Treatment List, which will be submitted in advance of the Hearing.

22. The OUST takes no position on this Motion. Skillz is evaluating its position and reserves all rights.

**CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court enter the Proposed Order, substantially in the form submitted herewith (i) sealing the courtroom during the presentation of certain confidential information at the hearing scheduled to begin October 14, 2026; (ii) permitting the parties to refrain in open court from eliciting testimony regarding, or displaying, specifically enumerated categories of sensitive details within certain categories of Discovery Material, with the treatment of specific exhibits to be addressed in a list to be submitted to the Court; and (iii) authorizing Papaya to release a redacted transcript of the sealed portions of the hearing in lieu of public access to those portions.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 13, 2026
Wilmington, Delaware

**COOLEY LLP**

Matthew L. Kutcher (admitted *pro hac vice*)
Ben Thomson (admitted *pro hac vice*)
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
bthomson@cooley.com

Michael Klein (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
mklein@cooley.com

Erin Trenda (admitted *pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
etrenda@cooley.com

Olya Antle (admitted *pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
oantle@cooley.com

Matthew Oliver (admitted *pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-1337
Facsimile: (617) 937-2400
moliver@cooley.com

**BLANK ROME LLP**

By: /s/ Jennifer K. Malow
Stanley B. Tarr (DE No. 5535)
Jennifer K. Malow (DE No. 7424)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Stanley.Tarr@BlankRome.com
Jennifer.Malow@BlankRome.com

Evan J. Zucker (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (917) 591-2726
Evan.Zucker@BlankRome.com

*Counsel to the Foreign Representative*