**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Papaya Gaming Ltd., *et al.*,[1]<br><br>Debtors in a foreign proceeding. | Chapter 15<br><br>Case No. 26-11217 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: October 14, 2026 at 2:00 p.m. (ET)** |

**FOREIGN REPRESENTATIVE'S MOTION TO STRIKE**
**EXPERT DECLARATION AND EXCLUDE TESTIMONY OF JIM W. BERGMAN**

Oriel Bachar, the authorized foreign representative (the "**Foreign Representative**") of Papaya Gaming Ltd. ("**Papaya Israel**") and Papaya Gaming, Inc. ("**Papaya US**," and together with Papaya Israel, the "**Debtors**"), by his undersigned counsel, respectfully submits this Motion to Strike Expert Declaration [D.I. 125] and Exclude the Testimony of Jim W. Bergman,[2] Skillz Platform Inc.'s ("**Skillz**") proffered expert witness in anticipation of the upcoming Chapter 15 recognition hearing, and states as follows:

## PRELIMINARY STATEMENT

1. This Chapter 15 proceeding presents a straightforward question: does the Israeli Proceeding qualify for recognition? It plainly does. The Debtors are headquartered in, managed in, and operated from Tel Aviv, and every factor that governs the center-of-main-interests ("**COMI**") analysis unequivocally points to Israel. Jim W. Bergman's opinions neither help

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

[2] Terms not otherwise defined herein have the meaning ascribed to them in the *Declaration of Oriel Bachar in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [D.I. 5] (the "**Foreign Rep. Decl.**") or the *Declaration of Pinni Yaniv in Support of the (I) Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding and (II) Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [D.I. 6] (the "**Foreign Counsel Decl.**"), as applicable.

answer that question nor disturb its obvious conclusion—indeed, by design, they never even engage with the relevant COMI analysis. Rather than tie his views to the relevant *SPhinX* factors, Mr. Bergman, at Skillz' direction, flouts that standard, inventing a "geographic focus" test found in no statute, case, or treatise, and then declares that a majority U.S. customer base, and sales and marketing activity targeted (from Israel) to those U.S. customers, means that the United States is the Debtors' "geographic focus." On that logic, the COMI of the lion's share of foreign-based companies would automatically be the United States—the world's largest consumer market. That is not the law or economic reality.

2. Far from the product of any accepted economics methodology, Mr. Bergman's opinion is nothing more than a regurgitation of cherry-picked facts about Papaya's business, and it is precisely the kind of opinion that *Daubert* and Rule 702 are designed to exclude. Mr. Bergman's remaining opinions are similarly flawed. There is neither relevance to nor reliability behind his perspective on hypotheticals about Papaya's cash management or his criticisms of projections that are already undergoing independent third-party review in the Israeli proceeding. So beside the point are Mr. Bergman's opinions that Skillz' 80-page Objection does not even mention them. *See generally* D.I. 107.

3. These shortcomings are unsurprising. Mr. Bergman is a career damages witness for intellectual-property claimants. He has no noteworthy experience with, or training in, the operations or oversight of a multinational corporation. He is not qualified to opine on the Debtors' principal place of business, cash management, or projections. Even if he were, his opinions are not germane to the issues before the Court. They also lack any discernible methodology, apart from ignoring the hallmarks of the Debtors' principal place of business, selectively reading the record to identify each time the United States is mentioned, and to point out, unremarkably, that U.S. consumers drive a multinational Internet-based gaming company's revenues. Because his

opinions fail every prong of Rule 702—qualification, fit, and reliability—the Court should exclude Mr. Bergman's opinions in their entirety.

**BACKGROUND**

4. The Foreign Representative commenced these Chapter 15 Cases, seeking recognition of the Debtors' Israeli Proceeding pending before the District Court of Tel Aviv. D.I. 1. Skillz, and only Skillz, objects. *See* D.I. 107 (the "**Objection**" or "**Obj.**"). Although unmentioned in its Objection, Skillz submitted Mr. Bergman's Declaration in Support of the Objection. D.I. 125 ("**Declaration**" or "**Decl.**").

***Mr. Bergman's Background***

5. Mr. Bergman was Skillz' damages-modeling expert witness in the litigation between Skillz and the Debtors in the Southern District of New York, and he is retained by Skillz in two other similar litigations against Skillz' competitors. Exhibit A (Deposition of J. Bergman) ("**Tr.**") 56:20–25. He is an Executive Vice President at Aperture, "an economics firm specializing in the valuation of assets and the quantification of damages in complex litigation cases." Decl. ¶ 2. Before Aperture, Mr. Bergman was an in-house consultant and analyst at various law firms. Decl. App'x A, at 1. [redacted]. *Id.* ¶ 3; Tr. 24:3–10; Tr. 23:1–20 ([redacted]); Tr. 27:8–14 ([redacted]). [redacted]. *See* Decl. App'x A, at 2–13. [redacted] Tr. 25:11–22; 27:3–7 ([redacted]); *see*

*also* Decl. App'x A, at 2–4. [redacted] Tr. 17:11–16; *see also* Decl. App'x A, at 2. [redacted] *See, e.g.*, Tr. 20:25–22:20.

***Mr. Bergman's Opinions***

6. In his Declaration, Mr. Bergman [redacted] Decl. ¶ 11 n.3. He confirmed the same at his deposition, testifying that he is "[redacted] Tr. 91:21–92:2; 92:21–93:8; 95:3–6. [redacted] Decl. ¶ 11.

7. Mr. Bergman, in response, offers three wrong conclusions: (1) that the Debtors' "business activity, revenues, principal operating assets, and liabilities are overwhelmingly based and located in the United States" (the "**Geographic Focus Opinion**"); (2) that the Debtors' U.S.-generated cash "could be maintained within the United States in existing U.S. bank accounts" (the "**Cash Management Opinion**"); and (3) that the Debtors' financial projections submitted in the Israeli Proceeding lack support and are "unreliable" (the "**Projections Opinion**"). *Id.* ¶ 12; *see also id.* ¶¶ 49–50, 59 ([redacted]). Mr. Bergman [redacted]. *Id.* ¶ 13.

8. As to the Geographic Focus Opinion, [redacted]. *Id.* ¶ 23. Mr. Bergman also claims that [redacted]. *Id.* ¶ 30. He also notes that [redacted] *Id.* ¶ 39; D.I. 1 at 4–5, 9–14. Regarding Papaya US, [redacted]. Decl. ¶¶ 14–22. As he admitted at his deposition, [redacted]. Tr. 111:13–112:15. He further conceded that [redacted]. Tr. 217:3–218:6.

9. Mr. Bergman's Cash Management Opinion, concerning Papaya Israel's cash management, [redacted]. Decl. ¶¶ 41–59. He bases this conclusion primarily on the facts that [redacted]. *See id.*

10. The Projections Opinion, [redacted]

[redacted]. *Id.* ¶¶ 60–102.

***Mr. Gleichenhaus's Background and Opinions***

11. To address Mr. Bergman's extraneous opinions, the Foreign Representative retained Stuart Gleichenhaus of FTI Consulting. *See* D.I. 138 ("Gleichenhaus Decl."). Mr. Gleichenhaus has 45 years' experience holding operational, fiscal, treasury, and executive roles at multinational companies. *Id.* ¶¶ 5–13; App'x B at 1–2. He has served as Chairman, CEO, and Chief Restructuring Officer of companies navigating complex bankruptcy reorganizations, advised creditors' committees and debtors in landmark insolvency proceedings, and has extensive experience overseeing the financial operations of complex multinational corporations across a range of global industries. *See* Gleichenhaus Decl. ¶¶ 9–11.

12. According to Mr. Gleichenhaus, [redacted] *Id.* ¶¶ 14–68. Mr. Gleichenhaus further explains that [redacted]. *Id.* § III, ¶¶ 69–84. And, according to Mr. Gleichenhaus, [redacted]. *Id.* ¶¶ 85–122.

## LEGAL STANDARD

13. "The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence . . . ." *In re Opus E., LLC*, 528 B.R. 30, 58 (Bankr. D. Del. 2015) (Walrath, J.). Rule 702 permits expert evidence only when it is offered by a "qualified" witness and the "proponent demonstrates" that the evidence: "will help the trier of fact to understand the evidence," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "The proponent of the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence." *Par Pharm., Inc. v. Hospira, Inc.*, 2019 WL 2396748, at *2 (D. Del. June 6, 2019); *accord Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). Ultimately, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *In re Opus E.,* 528 B.R. at 58 (quoting *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)); *see also, e.g.*, *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (same).

## ARGUMENT

14. Mr. Bergman's opinions satisfy none of the three restrictions imposed by Rule 702 and the Third Circuit. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). He is not qualified to opine on the "focus" of a multinational mobile gaming company, nor on its cash management needs and the Debtors' financial projections—an irrelevant consideration anyway, because those projections are not before this Court and are subject to court-supervised independent review in Israel. His opinions have no application, or "fit," to the standards governing these Chapter 15 Cases, and they rest on unreliable methodology.

## I. Mr. Bergman, a Damages Expert, Is Not Qualified to Opine on Anything to Help Assess the Debtors' COMI or "Establishment"

15. The first reason for Mr. Bergman's exclusion is his lack of qualifications to weigh in on the central dispute of these Chapter 15 Cases. "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). While there is no rigid test for determining qualification, "at a minimum, a proferred [sic] expert witness . . . must possess skill or knowledge greater than the average layman." *Id.* (quoting *Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 114 (3d Cir. 1987)). And the "fact that a proposed witness is an expert in one area, does not ipso facto qualify him to testify as an expert in all related areas." *Sheetz v. Wal-Mart Stores, East, L.P.*, 2017 WL 5625767, at *4 (M.D. Pa. Nov. 22, 2017) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001)). Put differently, an "expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). As such, "[a] court should exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." *Crockett v. Luitpold Pharms., Inc.*, 2023 WL 2187641, at *5 (E.D. Pa. Feb. 23, 2023) (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 2000 WL 962545, at *3 (E.D. Pa. June 28, 2000)).

16. Such is the case here. This dispute is over the recognition of the Debtors' Israeli Proceeding, and specifically, the Debtors' COMI, or their "real seat" and "principal place of business." *See, e.g.*, *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 279 (Bankr. S.D.N.Y. 2019); *In re Betcorp Ltd.*, 400 B.R. 266, 287 (Bankr. D. Nev. 2009). In resolving that dispute, a court must assess in which jurisdiction the Debtors are headquartered, managed, and have their principal assets. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*,

371 B.R. 10, 19 (S.D.N.Y. 2007). [redacted]. *See, e.g.*, Decl. App'x A, at 1–13; Decl. ¶ 3. [redacted]. *See, e.g.*, *id.*; *supra* at 3. Determining a multinational company's operational, management, and structural organization is thus well "outside" Mr. Bergman's "expertise," and the Court "should exclude it." *J.L. v. Lower Merion Sch. Dist.*, 2025 WL 35759, at *2 (E.D. Pa. Jan. 6, 2025); *see also, e.g.*, *Yazujian v. PetSmart*, 729 F. App'x 213, 215–16 (3d Cir. 2018) (affirming exclusion of witness who was an expert in retail liability but not store safety).

17. This is true not only for Mr. Bergman's Geographic Focus Opinion but also for the Cash Management and Projections Opinions. [redacted]. *See* Decl. App'x A, at 1–13; Decl. ¶ 3. [redacted]. Decl. ¶ 4 ([redacted]). Mr. Bergman [redacted] Tr. 19:1–9; 29:18–38:14; *see also, e.g.*, Tr. 85:18–23 ("[redacted]"). He has thus [redacted] *In re Opus E., LLC*, 528 B.R. at 59.

**II. Mr. Bergman's Opinions Are Not Suited for this Case and Are Designed to Confuse and Waste Time**

18. Even if Mr. Bergman were qualified, his opinions should be excluded for a lack of "fit" and relevance. *E.g.*, *Elcock*, 233 F.3d at 741. "[F]it requires that the expert's testimony 'be relevant for the purposes of the case and must assist the trier of fact.'" *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, 2017 WL 6402633, at *2 (D.N.J. Dec. 15, 2017) (quoting *Schneider*, 320 F.3d at 404). "This is essentially a relevance determination." *Slattery v. Main Line Health, Inc.*, 2025 WL 897526, at *4 (E.D. Pa. Mar. 24, 2025). For evidence to be relevant, it must help the factfinder decide a disputed issue. Fed. R. Evid. 401. For relevant evidence to be admissible, its probative value must not be outweighed by the risk of confusing the issues or wasting time. Fed. R. Evid. 403.

19. None of Mr. Bergman's opinions is relevant. The Geographic Focus Opinion [redacted]—addresses a concept that appears nowhere in the elements for deciding recognition under Chapter 15 or in any case interpreting those elements. Unlike Mr. Bergman's conclusion, courts addressing the *SPhinX* factors do not scrutinize the geographic origins of a company's revenue or customers. They examine first and foremost the business's location of management. *See, e.g.*, Eleanor Brennan Conlon, *An Analysis of Courts' Applications of the SPhinX Factors to Determine a Debtor's Center of Main Interests*, 34 Am. Bankr. Inst. L. Rev. 107 (Winter 2026) (comprehensive empirical study reviewing twenty-nine U.S. Chapter 15 recognition decisions through 2024 and concluding that headquarters and management location are the most determinative factors, while creditor location and applicable law are the least). Mr. Bergman's opinion conspicuously avoids addressing the actual question before the Court—where the Debtors' management work and where all of their employees operate the company—and his

invented "geographic focus" test does not help answer it either. *See, e.g.*, *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 180–81 (2d Cir. 2014) (upholding exclusion of evidence of industry practice found irrelevant); *Slattery*, 2025 WL 897526, at *5 (excluding medical expert testimony where religion rather than science was at issue); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *5 (S.D.N.Y. Jan. 28, 2014) (excluding expert testimony when industry practice was "not an issue in this case").

20. The same is true for the remainder of Mr. Bergman's opinions. That the Debtors *could* retain some unspecified amount of cash in the United States is not relevant to COMI. At most, it is related to Skillz' fallback demand that the Debtors be prohibited from transferring U.S.-generated cash outside of the United States, which is premised on section 1521 of the Bankruptcy Code and conditioned on a finding that Israel is not the Debtors' COMI. Obj. ¶¶ 100, 104, 114–116. Even on that narrow score, Mr. Bergman's banal opinion does not help the Court, because [redacted]. *See* Decl. ¶¶ 41–59. Nor does Mr. Bergman opine [redacted] Tr. 234:7–237:2.

21. Mr. Bergman's Projections Opinion is likewise misplaced. [redacted]. *See* Decl. ¶¶ 60–102. The statute directs the Court to determine whether the Israeli Proceeding qualifies for recognition, not whether the Debt Arrangement that may ultimately emerge from that proceeding will succeed on its merits. The merits of the Debt Arrangement, including the projections that partially underlie it, will be evaluated by the Israeli Court, with full creditor participation, under the supervision of an independent Administrator who has retained his own auditor and valuation professional for

precisely that purpose. It will be for the Israeli Court to determine the projection's adequacy and, if necessary, make appropriate adjustments to the Debt Arrangement.

22. At bottom, the unifying theme of Mr. Bergman's theories betrays their purpose: raise topics well outside of this Court's Chapter 15 review to distort the relevant questions and waste substantial time at the upcoming recognition hearing. His testimony should be stricken for that reason alone. *See, e.g.*, *Pennmark Coventry Holding, LLC v. Kohl's Dep't Stores, Inc.*, 2026 WL 2654087, at *7 (E.D. Pa. Sept. 9, 2026) (excluding an expert's opinion on a subject with no connection to the pertinent issues to be addressed at trial).

**III. Mr. Bergman's Opinions Lack a Reliable Methodology**

23. Alternatively, the Court should exclude Mr. Bergman's opinions for unreliability. Courts assessing reliability look at, among other things, "whether the method is generally accepted," "the qualifications of the expert witness," and the "relationship of the technique to methods which have been established to be reliable." *In re Opus E.*, 528 B.R. at 58–59. Mr. Bergman's opinions do not meet those standards.

24. Consider first the Geographic Focus Opinion, which suffers from several flaws. *See* Gleichenhaus Decl. ¶¶ 14–68. [redacted]—objective measures key to any *SPhinX* analysis—[redacted]. *Compare* Decl. ¶¶ 23–39; *with Gleichenhaus* Decl. ¶¶ 14–68. [redacted] Tr. 119:3–120:9. Contrary to Mr. Bergman's opinion, it is unsurprising that a multinational mobile gaming company derives most of its business from the United States, the largest economy in the world. Under Mr. Bergman's methodology, foreign cross-border companies of all sorts would have their COMI automatically

in the United States, because they collect a majority of their revenues here. Chapter 15 does not permit that rote result. *See SPhinX*, 351 B.R. at 117–18.

25. Mr. Bergman's Geographic Focus Opinion, moreover, contains multiple false assumptions. [redacted]. *See* Decl. ¶ 39; Tr. 231:20–21 ("[redacted]). Mr. Bergman, likewise, [redacted]. Decl. ¶ 30; *see also* Gleichenhaus Decl. ¶¶ 47–52. Mr. Bergman acknowledged that, [redacted]. Tr. 199:6–9.

26. Mr. Bergman's Cash Management and Projections Opinions are similarly defective. [redacted] Tr. 234:7–235:9; 238:18–239:24; 240:2–14. An opinion that never quantifies those inputs is, by definition, not "based on sufficient facts or data" and cannot reflect a "reliable application" of any method to the facts of this case. It is, as a result, too vague to be meaningful. Decl. ¶ 41 ([redacted]). Mr. Bergman further opines that [redacted] Decl. ¶ 49. Again, that is an unreliable indicator of where a multinational company *should* hold its cash; [redacted]

[redacted][3] Similarly, Mr. Bergman's projection-related methodology is unreliable. [redacted] Tr. 284:14–24, [redacted] the third-party firm engaged by the Arrangement Administrator and approved by the Israeli Court reviewing them in Israel under that court's supervision. Decl. ¶¶ 64–71. His opinions likewise suffer from base-assumption flaws, [redacted] *See* Gleichenhaus Decl. ¶¶ 89–103.

27. [redacted]. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("the level of expertise may affect the reliability of the expert's opinion"). Mr. Bergman's opinions should be barred.

**<u>CONCLUSION</u>**

28. For the reasons stated above, the Foreign Representative respectfully requests that the Court strike the Declaration of Jim W. Bergman and exclude his testimony at the Chapter 15 recognition hearing.

[3] *See, e.g.*, Standards for Covered Clearing Agencies for U.S. Treasury Securities and Application of the Broker-Dealer Customer Protection Rule with Respect to U.S. Treasury Securities, 89 Fed. Reg. 2714, 2715–16 (Jan. 16, 2024) (stating that U.S. Treasury securities "play a critical and unique role in the U.S. and global economy" and serve as a risk-free benchmark for other financial instruments, and that confidence in the U.S. Treasury market is "critical to the stability of the global financial system").

Dated: October 9, 2026
Wilmington, Delaware

**COOLEY LLP**

Matthew L. Kutcher (admitted *pro hac vice*)
Benjamin J. Thomson (admitted *pro hac vice*)
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com
bthomson@cooley.com

Michael Klein (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
mklein@cooley.com

Erin Trenda (admitted *pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
etrenda@cooley.com

Olya Antle (admitted *pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
oantle@cooley.com

Matthew Oliver (admitted *pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-1337
Facsimile: (617) 937-2400
moliver@cooley.com

**BLANK ROME LLP**

By: *Jennifer K. Malow*

Stanley B. Tarr (DE No. 5535)
Jennifer K. Malow (DE No. 7424)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Stanley.Tarr@BlankRome.com
Jennifer.Malow@BlankRome.com

Evan J. Zucker (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (917) 591-2726
Evan.Zucker@BlankRome.com

*Counsel to the Foreign Representative*