**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Papaya Gaming Ltd., *et al.*,[1] | Case No. 26-11217 |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

**CERTIFICATION OF COUNSEL REGARDING FILING OF REVISED DEBT ARRANGEMENT IN ISRAELI PROCEEDING**

The undersigned counsel for Oriel Bachar, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") of Papaya Gaming Inc. ("Papaya US") and Papaya Gaming Ltd. ("Papaya Israel"), certifies as follows:

1. Pursuant to Her Honor's request at the recognition hearing on October 16, 2026, the Foreign Representative is providing the Court an as-filed copy of the revised debt arrangement (the "Debt Arrangement") filed by the Arrangement Administrator and the Debtors in the Israeli Proceeding today. The Debt Arrangement is attached hereto as Exhibit A, with a certified translation attached as Exhibit A-1. This certification additionally includes the underlying Motion to Convene Creditors' Meetings in the Israeli Proceeding, attached hereto as Exhibit B, with a machine translation thereof attached as Exhibit B-1. The Foreign Representative will supplement this certification with an additional filing of the certified translation of the Motion to Convene Creditors' Meetings when it becomes available.

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

2. Since the appointment of the Arrangement Administrator, the Debtors have worked closely and cooperatively with him to materially enhance the Debt Arrangement for the benefit and protection of the creditors. In doing so, the Debtors and their shareholders have agreed to substantial additional commitments, collateral, oversight rights, and operational and governance restrictions, reflecting their continued commitment to securing approval and successful implementation of the Debt Arrangement.

3. For ease of reference, the Foreign Representative provides a summary of the material revisions implemented by the Arrangement Administrator and the Debtors in response to the directives from the Israeli Court and feedback by the respective creditors:

**Repayment and Initial Distribution**

- Under the Debt Arrangement, the Debtors commit to paying all allowed claims in full, with post-judgment interest at the federal judgment rate running from the date specified in the underlying judgment. For Skillz, such post-judgment interest runs from July 31, 2026.
- The term of the Debt Arrangement is six (6) years. The Arrangement Administrator may, in his discretion, shorten this period to five (5) years by realizing on certain collateral, as described in more detail below.
- The Debtors have increased their aggregate deposit commitments to the Arrangement Administrator's fund (the "Fund") to account for repayment in full of all known debts, including interest on judgments.
- The Debtors must make minimum annual payments to the Fund equal to 85% of the applicable annual target, with enforcement mechanisms applying if they fail to do so.
- Upon the Effective Date of the Debt Arrangement, a non-refundable sum of $20 million will be distributed within fourteen (14) to Contingent Creditors whose approved claim for voting purposes exceeds $5 million (including Skillz), distributed pro rata in proportion to each such creditor's approved claim amount.
- Annual deposits will be calculated by reference to the available cash balance of the entities in the Papaya group, in Israel and abroad. The Arrangement Administrator will maintain ongoing oversight over the performance and revenue projections to monitor compliance with the minimum payment obligations as further detailed below.

**Collateral and Additional Contributions**

- Funds deposited into the Arrangement Administrator's account are to be held in trust by the Arrangement Administrator for the benefit of the Contingent Creditors and are pledged, as collateral, to secure the Debtors' performance under the Debt Arrangement.
- Shares representing 25% of Papaya Israel's issued and paid-up common equity, as well as 25% of the options for the new preferred shares to be issued (as described below), will be allotted to the Arrangement Administrator and will be held in trust. These shares carry no voting rights until exercised in accordance with the Debt Arrangement. If, at the end of the five (5) years from the Effective Date of the Debt Arrangement, the Debtors have not transferred to Fund the full amount of enforceable debts owed to eligible creditors, the Arrangement Administrator shall be entitled, but not obligated, to realize the Arrangement Administrator's shares after receiving input from the Contingent Creditors and with the approval of the Israeli Court.
- The founders will waive their annual bonuses for the duration of the Debt Arrangement (approximated at $25 million total). Papaya Israel will pay those amounts directly into the Arrangement Administrator's fund. The founders will be entitled to receive those amounts back only after all debts owed to eligible creditors have been paid in full.
- Papaya Israel will further grant a first priority lien in 100% of its equity in Papaya US to the Arrangement Administrator, perfected under both Israeli and U.S. law, to serve as collateral securing the Debtors' obligations under the Debt Arrangement.

**Enforcement Mechanism for Shortfalls in Minimum Payments**

- If payments into the Fund fall short of the cumulative minimum payment obligations, a tiered enforcement mechanism applies in the following order:
    - Owners' Contribution. The shareholders will cover the shortfall through an "Owners' Contribution," backed by personal guarantees and pledged collateral capped at $10 million. Shareholders who provide a personal guarantee and collateral are entitled, in exchange, to receive options convertible into a new class of preferred shares carrying priority rights in dividend contributions and on a sale or IPO of the Papaya Israel, proportional to the amount of collateral provided. Dividend distributions are prohibited for the duration of the Debt Arrangement, as more fully described below.
    - Capital raise or financing. The Debtors may cover the remaining shortfall within an additional 60 days through a capital raise or financing approved in advance and in writing by the Arrangement Administrator. Any indebtedness incurred for this purpose will be subordinated to the Debtors' obligations under the Debt Arrangement.

- Additional Shares. To the extent any shortfall remains outstanding, Additional Shares in Papaya Israel will be allotted to the Arrangement Administrator at the lower of the most recent financing round price or a valuation-adjusted price scaled to reflect actual payment performance keyed to the degree of non-compliance with the payment schedule. The Debtors may redeem the Additional Shares by curing the shortfall.

- Event of Default. A cumulative shortfall exceeding $75 million, or an annual deviation exceeding 30% of the applicable annual minimum, constitutes an "Event of Default." Upon an Event of Default, the Arrangement Administrator may exercise all remedies available under the Debt Arrangement, including enforcement and realization of collateral. In addition, upon an Event of Default that has not been cured within sixty (60) days of written notice to the Debtors, the Arrangement Administrator may apply to the Israeli Court for an order annulling the Debt Arrangement, subject to the Israeli Court's approval.

**Oversight, Governance, and Related Restrictions**

- Restrictions. Throughout the duration of the Debt Arrangement, the Debtors are restricted from (i) granting new liens, (ii) incurring indebtedness outside the ordinary course of business, (iii) making distributions to shareholders, (iv) entering into related-party transactions, and (v) transferring or pledging equity interests, in each case except as expressly permitted under the Debt Arrangement or as approved by the Arrangement Administrator.

- Reverse Vesting. Fifty percent (50%) of each founder's shares will be held in trust by the Arrangement Administrator and will vest over five (5) years, subject to continued employment and specified acceleration events.

- Oversight. The Arrangement Administrator has materially expanded oversight rights, including (i) access to the Debtors' interim financial reports and annual financial statements, as well as additional information upon reasonable request, on an ongoing basis; (ii) the right to attend Papaya Israel's board meetings as a non-voting observer and to receive all board materials; and (iii) the right to apply to the Israeli Court for instructions, approval of actions, or any other relief, including the right to seek Israeli Court intervention upon any breach of a Debt Arrangement covenant.

- Third-Party Releases. All third-party releases of the Debtors and their respective officers and directors are contingent and are rescinded automatically if the Israeli Court annuls the Debt Arrangement due to an Event of Default, or if at the end of the Debt Arrangement period, the Debtors have failed to meet the minimum payment obligations, in which event the statute of limitations on the released claims is tolled so that the creditors' ability to pursue their respective claims is preserved.

**WHEREFORE**, the Foreign Representative submits the attached pleadings for the Court's attention. Counsel is available to provide any additional information the Court may find helpful in the interim.

Dated: October 20, 2026
Wilmington, Delaware

**COOLEY LLP**

Michael Klein (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
mklein@cooley.com

Matthew L. Kutcher (admitted *pro hac vice*)
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mkutcher@cooley.com

Olya Antle (admitted *pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
oantle@cooley.com

**BLANK ROME LLP**

By: */s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
Jennifer K. Malow (DE No. 7424)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Stanley.Tarr@BlankRome.com
Jennifer.Malow@BlankRome.com

Evan J. Zucker (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (917) 591-2726
Evan.Zucker@BlankRome.com

*Counsel to the Foreign Representative*