# EXHIBIT A

## Debt Arrangement
## (Hebrew)

# הסדר חוב בין החברות פאפאייה גיימינג בע"מ ו-Papaya Gaming Inc לבין נושיהן

## בהתאם להוראות חלק י' לחוק חדלות פירעון ושיקום כלכלי, התשע"ח-2018

### א. פרשנות והגדרות

בהסדר זה תהיה למונחים הבאים המשמעות המצוינת בצדם להלן, אלא אם יצוין במפורש אחרת:

| | |
|---|---|
| **"בית המשפט"** | בית המשפט המחוזי בתל אביב-יפו הדן בבקשה לאישור ההסדר. |
| **"בעלי מניות"** | כל אדם או תאגיד המחזיק, במישרין או בעקיפין, במועד כניסת ההסדר לתוקף, במניות של החברות. |
| **"דולר"** או **"$"** | דולר ארצות הברית. |
| **"הבקשה לאישור ההסדר"** | בקשה למתן צו לכינוס אסיפות לצורך אישור הסדר חוב זה המוגשת לבית המשפט. |
| **"ההסדר או הסדר החוב"** | הצעת הסדר חוב זו, וככל שתאושר בשינויים מסוימים - כפי שתאושר. |
| **"החברות"** | פאפאייה גיימינג בע"מ, ח.פ. 515422095 ("**פאפאייה ישראל**" או "**החברה**"), וכן חברת Papaya Gaming Inc, מספר חברה 32-0533649 ("**פאפאייה אינק**"), (וביחד: "**החברות**"). |
| **"החוק"** | חוק חדלות פירעון ושיקום כלכלי, התשע"ח-2018. |
| **"המייסדים"** | אוריאל בכר, ת.ז. 201410008<br>אלכס ליאכובצקי, ת.ז. 310520036<br>אנדריי בירמן, ת.ז. 310650387 |
| **"הממונה"** | הממונה על הליכי חדלות פירעון ושיקום כלכלי. |
| **"התנאי המתלה לכניסת ההסדר לתוקף"** | התנאי המתלה להסדר המפורט בפרק ד' להסדר זה. |
| **"התקנות"** | תקנות חדלות פירעון ושיקום כלכלי, התשע"ט-2019. |
| **"חברות הקבוצה"** | פאפאייה ישראל, פאפאייה אינק, Papaya Gaming UK Ltd. הרשומה באנגליה, Papaya Gaming India Private Limited הרשומה בהודו, Papaya Gaming Brazil LTDA הרשומה בברזיל, Papaya Poland Sp. Z o.o הרשומה בפולין, Papaya Stars Ltd. הרשומה בישראל, Papaya Payments Inc. הרשומה בארה"ב. |
| **"חוב אכיף"** | חוב מכוח פסק דין כספי אכיף. |
| **"חוב מותנה"** | חוב נטען מכוח אחת העילות המנויות בהגדרת נושה מותנה. |

| | |
|---|---|
| **"יתרת מזומנים פנויה"** | יתרת המזומנים המוחזקת בחשבונות הבנק של חברות הקבוצה, בישראל ומחוצה לה, בניכוי אך ורק של (א) הסכומים המשועבדים לטובת הבנקים שבהם מוחזקות היתרות, כדלקמן: פיקדונות להבטחת ערבות בנקאית למשכירי נכסים ולתשלומים בגין כרטיסי אשראי ולעסקאות גידור; ו-(ב) בניכוי יתרות זכות של שחקנים; ו-(ג) בניכוי סך של 30 מיליון דולר ארה"ב, המיועד לניהול תפעולי שוטף. |
| **"מועד הוכחות החוב"** | המועד להגשת תביעות חוב (להלן גם: "**הוכחות חוב**") כקבוע בסעיף 67 בפרק ו' להלן, או מועד אחר ככל שייקבע כך על ידי בית המשפט. |
| **"מועד כניסת התוקף של ההסדר"** או "**מועד הכניסה לתוקף של ההסדר**" | מועד שיחול בתיאום עם מנהל ההסדר בתוך 14 ימים ממועד התקיימות התנאי המתלה. |
| **"נושה זכאי"** | נושה מותנה שניתן לזכותו פסק דין כספי אכיף כנגד מי מהחברות או שמנהל ההסדר הכריע בתביעת החוב שלו ומצאו זכאי לתשלום, וזאת בכפוף לאמור בסעיף 75 להסדר לגבי מי שעשוי להכלל בקבוצת התובעים בהליך הייצוגי המתנהל בישראל כנגד החברה. |
| **"נושה מותנה"** | נושה שאינו בין הנושים המוחרגים ואשר נכון ליום הגשת הבקשה לאישור ההסדר -<br>(א) הוא מנהל נגד החברות, או איזו מהן, הליכים משפטיים התלויים ועומדים בערכאות בעילות הקשורות לפרקטיקות של שימוש עבר בבוטים וכל הנובע מכך והכרוך בכך, במישרין או בעקיפין; או<br>(ב) טוען לקיומה של עילה לנקוט הליך משפטי בעילות כאמור בס"ק (א) אף אם לא נקט הליך משפטי בגינה; או<br>(ג) ניתן לזכותו פסק דין זר, בעילות כאמור בס"ק (א), נגד החברות או איזו מהן, אשר עודנו כפוף לערעור ולפיכך טרם הפך לפסק דין כספי אכיף בישראל. |
| **"נושים מוחרגים"** | כל אחד מאלה:<br>כלל הספקים והעובדים של החברות;<br>כלל השחקנים, למעט בעילות הקשורות לפרקטיקות של שימוש עבר בבוטים וכל הנובע מכך והכרוך בכך, במישרין או בעקיפין.<br>רשויות מס, המוסד לביטוח לאומי, קופות גמל וקופות פנסיה;<br>התובע הכללי של מדינת ניו ג'רזי. |
| **"פיקדון מנהל ההסדר"** | כסף המופקד על פי ההסדר בקופת מנהל ההסדר, וישמש כמקור כספי ייעודי לפירעון חובותיהן של החברות כלפי נושים זכאים כקבוע בהסדר זה. |
| **"פסק דין כספי אכיף"** | פסק דין בר-אכיפה בישראל, כדלקמן:<br>(א) ביחס לפסק דין שניתן במדינה זרה - פסק חוץ העומד בכל התנאים לאכיפת פסק חוץ, כמשמעותם בסעיף 3 לחוק אכיפת פסקי-חוץ, התשי"ח-1958; |

| | |
|---|---|
| | (ב) ביחס לפסק דין שניתן במדינת ישראל - פסק דין שניתן על-ידי בית משפט מוסמך בישראל אשר לא ניתן לגביו צו לעיכוב ביצוע. |
| **"צו בית משפט"** | הצו האמור בפרק ד' להסדר זה. |
| **"ריבית ההסדר"** | ריבית בשיעור הממוצע השבועי של התשואה על איגרות חוב של ממשלת ארה"ב לשנה אחת (One-Year U.S. Treasury Securities), המחושבת על בסיס יומי ומצטרפת לקרן אחת לשנה. |
| **"תקופת ההסדר"** | תקופה של 6 (שש) שנים המנויה ב**נספח 1**. |

## ב. הסדר החוב – כללי

1. מטרתו של הסדר זה היא: (1) להבטיח את יכולת פירעון כלל החובות המותנים ככל שיהפכו לחובות אכיפים, והכל בהתאם לתנאי ההסדר, ו-(2) לאפשר את המשך פעילותן העסקית של החברות ושימור הכוח האנושי החיוני לפעילותן.

2. לחברות יש חוב מותנה כלפי נושים מותנים, אשר היקפו עולה על יתרות המזומנים שלהן, וזאת בשל פסק דין זר (לא חלוט וכפוף לערעור) שניתן לטובת חברת Skillz Platform Inc.[1]

3. החל ממועד כניסת ההסדר לתוקף, יהווה הסדר זה את המסגרת הבלעדית, הסופית והממצה להסדרת מערכת היחסים, הזכויות וההתחייבויות שבין החברות והנושים המותנים, ובלבד שלא יהיה בהסדר כדי לחסום את המשך ניהול ההליכים התלויים ועומדים בין החברות לבין הנושים המותנים בקשר עם קבלת פסק דין כספי אכיף.

4. ההסדר לא יחול על הנושים המוחרגים ואישור ההסדר לא יביא לשינוי בזכויותיהם או בבירור זכויותיהם של הנושים המוחרגים, וכל התחייבויותיהן השוטפות של החברות לנושים המוחרגים תמשכנה להיות משולמות כסדרן ובמועדן.

5. בהתאם, הנושים המוחרגים אינם נדרשים להגיש תביעת חוב. הסכומים המגיעים להם, כמפורט בבקשה המקורית לאישור ההסדר ובנספחיה, ימשיכו להשתלם כסדרם ובמועדם. פירוט הסכומים בטופס 1 נובע מדרישות הדין בלבד, ומובהר שלא יהיה בו כדי למנוע מנושה מוחרג לחלוק, במהלך העסקים הרגיל, על הסכומים שצוינו שם.

6. בדומה לכך, שחקנים שהפקידו או יפקידו כספים תוך שימוש בפלטפורמה של החברות יוכלו להוסיף ולפעול בכספים אלה אם לשימוש במשחקים ואם למשיכתם, והכל במהלך עסקים רגיל, בהתאם לתנאי השימוש.

7. כלל ההליכים התלויים ועומדים בערכאות נגד החברות או איזו מהן ביום הגשת הבקשה לאישור ההסדר, אשר עוכבו מכוח צו עיכוב ההליכים שניתן בתיק זה ושטרם חודשו, יחודשו באופן פרטני

---

[1] Skillz Platform Inc. v. Papaya Gaming, Ltd. et al., No. 1:24-cv-01646-DLC (S.D.N.Y).

בהתאם לפסיקתות שהוגשו או יוגשו בהסכמה לבית המשפט לשם חידושם. תשלומו של כל פסק דין לזכות נושה זכאי יבוצע, ככל שיידרש, בהתאם להוראות הסדר זה.

8. בתקופת ההסדר, תמשכנה החברות לפעול במהלך העסקים הרגיל, והנהלות החברות ודירקטוריון החברות ייוותרו בתפקידיהם, כשלצידן פועל מנהל ההסדר, לשם הבטחת המשך פעילותן העסקית המיטבית.

## ג. **תנאי ההסדר המוצע לנושים**

### ג(1). **כללי**

9. בתקופת ההסדר ישולמו כלל ההתחייבויות השוטפות לכלל הנושים המוחרגים לפי תנאי פירעונן, בדרך העסקים הרגילה.

10. החובות המותנים ישולמו רק לנושים זכאים, כלומר רק לאחר שיהיה בידי הנושה המותנה פסק דין כספי אכיף, אלא אם (1) תביעת הנושה המותנה אינה נושא להליך משפטי תלוי ועומד, בישראל או מחוצה לה, או (2) שהנושה המותנה הגיש תביעת חוב עצמאית למנהל ההסדר; שאז יכריע מנהל ההסדר בתביעת החוב כקבוע בסעיף 76 להלן.

11. החברות מתחייבות לפרוע את מלוא החובות המותנים אשר יהפכו לחובות אכיפים. פיקדון מנהל ההסדר, הבטוחות והקצאות המניות על פי הסדר זה הינם אמצעים להבטחת הפירעון ולפריסתו בלבד, ואין בהם כדי להגביל את מקורות הפירעון או לגרוע מחבות החברות לפירעון מלוא החובות כאמור, ובלבד שבתקופת ההסדר וכל עוד ההסדר מקויים, מקורות הפרעון ופריסת התשלומים יהיו רק בהתאם להוראות ההסדר.

12. בתום תקופת ההסדר תעמוד לפירעון כל יתרת חוב אכיף שטרם נפרעה. יתרת החובות לנושים מותנים שטרם הפכו לחובות אכיפים תיפרע, אם וכאשר תהפוך לאכיפה, במהלך העסקים הרגיל ואולם הכספים והבטוחות עפ״י הסדר הנושים שהופקדו ו/או נמסרו למנהל ההסדר ישמשו בטוחה לפירעון חובות אלו עד למועד סיום ההליכים התלויים ועומדים, אלא אם התקבלה החלטת בית המשפט בהתאם לסעיף 24 להלן.

### ג(2). **פירעון החובות המותנים**

13. נושה זכאי, אשר ניתן לטובתו פסק דין כספי אכיף נגד מי מהחברות בסכום שאינו עולה על 5,000,000 $ (חמישה מיליון דולר), ישולם לו מלוא סכום פסק הדין במהלך העסקים הרגיל, ולא מתוך פיקדון מנהל ההסדר.

14. נושה זכאי, אשר ניתן לטובתו פסק דין כספי אכיף נגד מי מהחברות בסכום העולה על $5,000,000 (חמישה מיליון דולר), יהיה זכאי לקבלת מלוא סכום פסק הדין מתוך פיקדון מנהל ההסדר, כמפורט בפרק ג(4) להלן.

### ג(3). **הקמת פיקדון מנהל ההסדר והפקדות אליו**

15. בתוך 14 יום ממועד כניסת ההסדר לתוקף, תפקיד פאפאייה ישראל לחשבון בנק ייעודי שייפתח על ידי מנהל ההסדר סכום ראשוני בסך $60,000,000 (שישים מיליון דולר).

16. נוסף על ההפקדה הראשונית כאמור בסעיף 15 לעיל, תפקיד פאפאייה ישראל לחשבון פיקדון מנהל ההסדר מדי שנה, לא יאוחר מיום 15.1 (חמישה עשר בינואר), סכום השווה ליתרת המזומנים הפנויה נכון ליום 3.1 (שלושה בינואר) באותה שנה, אך בכל מקרה לא יותר מהסכומים הנקובים בנספח 1 להסדר זה, ולא פחות מסכומי המינימום כהגדרתם בפרק ג(10) להלן. בחרה החברה להפקיד סכומים העולים על הסכומים המפורטים בנספח 1 יזקפו סכומים אלו על חשבון הסכומים בהם מחוייבת החברה בשנה העוקבת. בכל מקרה, תפקע חובת ההפקדה כאשר יופקד בפיקדון מנהל ההסדר סך החובות המותנים בצירוף הריבית עליהם.

17. הכספים המצויים בפיקדון מנהל ההסדר יושקעו באיגרות חוב של ממשלת ארצות הברית בעלות מועד פדיון של שנה אחת (One-Year U.S. Treasury Securities), או בפיקדון בנקאי הנושא ריבית בשיעור ריבית ההסדר. כל הרווחים, התשואות ו/או ההכנסות שיצטברו ו/או שייווצרו בקשר עם הפקדה ו/או השקעה של כספים אלה, ייזקפו לזכות פיקדון מנהל ההסדר, וייעשה בהם שימוש אך ורק לצורך התשלומים על פי הסדר זה ובהתאם להוראותיו בלבד.

## ג(4). <u>השימוש בפיקדון מנהל ההסדר ותשלומים מתוכו</u>

18. נושה זכאי יפנה למנהל ההסדר לאחר מתן פסק דין כספי אכיף לטובתו בסכום העולה על $5,000,000, וימציא למנהל ההסדר את כל המסמכים הנדרשים לביסוס תביעתו. מנהל ההסדר יבחן את המסמכים שהוצגו לו וישלם לנושה המותנה הזכאי, מתוך הפיקדון שבידו, את סכום פסק הדין הכספי האכיף תוך שלושים יום, בכפוף לאמור להלן.

19. נושה זכאי כאמור, אשר סכום פסק הדין הכספי האכיף שניתן לטובתו עולה על הסכום ששולם לו בשנה קלנדרית מסוימת, יהא זכאי להוסיף ולקבל ממנהל ההסדר תשלומים מדי שנה, וזאת עד לסילוק מלוא סכום פסק הדין הכספי האכיף שניתן לטובתו.

20. ככל שבמועד כלשהו שבו יש לבצע תשלום מתוך פקדון מנהל ההסדר, יהיו בפני מנהל ההסדר יותר מפסק דין כספי אכיף אחד לתשלום, יחלק מנהל ההסדר בין אותם נושים הזכאים לתשלום כאמור, את הסכום המשולם, באופן יחסי (פרו-ראטה), בהתאם ליחס שבין יתרת סכומי פסקי הדין הכספיים האכיפים העומדים לתשלום באותו מועד.

21. לחובות לנושים המותנים תצטרף ריבית ההסדר החל מהמועד שנקבע בפסק הדין הרלבנטי. ריבית ההסדר על החובות המותנים תבוא במקום כל ריבית אחרת על פי דין או הסכם. ואולם, על אף כל הוראה אחרת בהסדר זה, לעניין ריבית על חובות שמקורם בהסכם פשרה, לרבות כזה שקיבל תוקף של פסק דין, יחולו הוראות הסכם הפשרה בלבד.

22. על אף האמור לעיל, בכל הנוגע לפסק הדין בתביעת מילברג, ככל שיהפוך לחוב אכיף, ובהנחה שסכומו לא ישתנה, הרי שרק סכום של כ-6.4 מיליון דולר ישולם בגינו מפקדון מנהל ההסדר, וזאת בהתאם למידע שנמסר מן ה-administrator בתביעת מילברג, לפיו היתרה בסך של כ-8.6

מיליון דולר תשולם על ידי זיכוי חשבונות השחקנים ב-in-game cash, וזיכוי זה ייעשה על ידי המבקשות ללא חיוב פיקדון מנהל ההסדר.

23. נספח 1 המתוקן המצורף להסדר מציג לוח תשלומים הכולל פריסת תשלומים לקופת מנהל ההסדר לאורך תקופת ההסדר, והכולל תשלומם של מלוא החובות המותנים כפי שהם ידועים כיום, לרבות פסק דין סקילז, פסק הדין בתביעת מילברג, וכן תשלום ריבית בשיעור ריבית ההסדר, תוך התחשבות בתשואה שתצטבר על ההפקדות בפקדון מנהל ההסדר. בהקשר זה מובהר כי אם תאושר בהליך הייצוגי כהגדרתו בסעיף 75 להלן בקשה לאישור תביעה ייצוגית נגד המבקשות או מי מהן, כי אז ישום מנהל ההסדר את סכום התביעה, אחרי שיקבל מן התובעת הייצוגית ומן החברה טיעונים ונתונים. עם קביעת שומה כאמור, וככל שסכום השומה עולה על $5,000,000, תהיה החברה חייבת להוסיף ללוח ההפקדות סכומים שישקפו תוספת זו, להבטחת תשלומו של פסק הדין אם יינתן. מובהר למען הסר ספק כי שומת מנהל ההסדר תערך רק לצורך הגדלת ההפקדות לקופת ההסדר כבטוחה לתשלום פסק דין אכיף בהליך הייצוגי, וכן לביצוע תשלום על חשבון החלוקה המיידית כאמור בסעיף 40 להלן, והיא אינה מייתרת את בירור ההליך הייצוגי עד קבלת פסק דין אכיף לצורך תשלומו.

24. היה ובטלה זכאותם של כל הנושים המותנים, בין מחמת שנפרע חובם, בין מחמת דחייה ו/או יישוב ו/או מחיקה של תביעתם, וכיוצא באלה, ו/או קבע בית המשפט שהמבקשות יכולות לשלמם במהלך העסקים הרגיל, אזי תפקע חובת ההפקדה השנתית לפיקדון מנהל ההסדר, ומנהל ההסדר יעביר לידי פאפאייה ישראל את יתרת הפיקדון ויתרת המניות מכל סוג וכן כל בטוחה שניתנה לו, ככל שנותרו בידו.

## ג(5). <u>בטוחות ההסדר</u>

25. להבטחת קיום התחייבויות החברה ובעלי המניות על פי הסדר זה, נקבעו ההוראות המפורטות להלן:

(א) **פיקדון**: פיקדון מנהל ההסדר כמפורט בפרק ג(3) לעיל. הכספים שיופקדו בפיקדון מנהל ההסדר יוחזקו בנאמנות עבור הנושים המותנים להבטחת התשלומים לנושים אלו בהתאם להוראות הסדר זה וישועבדו להבטחת התחייבויות אלו, בדרך של משכון מופקד. מנהל ההסדר יוכל לפי שיקול דעתו לדרוש לצורך זה רישומו של שעבוד קבוע ראשון בדרגה על פקדון מנהל ההסדר. תשלום ראשון יופקד בידי מנהל ההסדר תוך 14 יום ממועד כניסת התוקף של ההסדר. עם פירעון מלוא החובות לנושים הזכאים על פי הסדר זה, יפקע השעבוד, ומנהל ההסדר יחתום על כל מסמך הנדרש להסרתו מכל מרשם.

(ב) **תרומת המייסדים**: שלושת המייסדים יוותרו על הבונוס השנתי המגיע להם מכח תנאי ההעסקה שלהם, וסכום זה (המשקף סך של כ-25 מיליון דולר לתקופת ההסדר), יתווסף לפיקדון מנהל ההסדר (להלן: "**תרומת המייסדים**"), הכל כמפורט בפרק ג(6) להלן.

(ג) **מניות מנהל ההסדר**: מניות מנהל ההסדר כמפורט בפרק ג(6) להלן, יוקצו ויופקדו בידי מנהל ההסדר, בנאמנות לטובת הנושים המותנים, במועד כניסת התוקף של ההסדר.

(ד) **שעבוד מניות פאפאייה אינק**: כמפורט בפרק ג(8) להלן, יבוצע במועד כניסת התוקף של ההסדר.

(ה) **חלוקה מיידית**: תבוצע חלוקה מיידית כמפורט בפרק ג(9) להלן, במועד כניסת התוקף של ההסדר.

(ו) **תשלומי מינימום**: סכומי מינימום לתשלום כמפורט בפרק ג(10) להלן.

(ז) **מניות נוספות**: המניות הנוספות כמפורט בסעיף 46(ג) להלן, יוקצו ויופקדו בידי מנהל ההסדר, בנאמנות לטובת הנושים המותנים, בתוך 21 ימים מהמועד בו נתן מנהל ההסדר הודעה לחברה כי התקיימו התנאים המפורטים בהסדר זה המחייבים את ההקצאה תוך שהוא מפרט בגוף ההודעה את החישוב הנדרש לכמות המניות בהתאם למנגנון הנקוב שם.

(ח) **המניות הכפופות**: המניות הכפופות כמפורט בסעיף 52, יופקדו בנאמנות בידי מנהל ההסדר במועד כניסת התוקף של ההסדר.

(ט) **תקופת מגבלה על כל בעלי המניות הקיימים**: בעלי המניות הקיימים יהיו מנועים ממכירה, העברה, שעבוד או הענקת זכות אחרת בכל מניותיהם, במשך כל תקופת המגבלה כהגדרתה בסעיף 53 להלן. למתן תוקף מלא לקביעה זו יתוקן תקנון החברה בנוסח המצורף כ**<u>נספח 2</u>** להסדר זה ("**התקנון המתוקן**"), וההחלטה בדבר אישור ההסדר משמעותה גם אישור תיקון התקנון.

(י) **ערבויות אישיות**: בעלי מניות יעמידו ויפקידו בידי מנהל ההסדר, תוך חמישה עשר יום ממועד כניסתו לתוקף של ההסדר, ערבות אישית מוגבלת כך שסך הערבויות האישיות יעמוד על 5,000,000 $ (חמישה מיליון דולר) (להלן: "**הערבויות האישיות**") להבטחת תרומת הבעלים כאמור בסעיף 46 להלן.

(1) זהות הערבים ואופן חלוקת החבות ביניהם יפורטו בכתבי הערבות שיצורפו כנספח להסדר לפני מועד ההצבעה. להבטחת קיום הערבויות תועמדנה בתוך 30 יום מיום כניסת ההסדר לתוקף בטוחות לטובת מנהל ההסדר מסוג פקדונות כספיים, ניירות ערך סחירים סולידיים או נדל"ן (להלן- "**הביטחונות לערבות**").

(2) בעל מניות שיעמיד ערבות אישית ובטוחה כאמור (בין בעצמו ובין באמצעות צד שלישי) זכאי לכך שיונפקו לו כנגד העמדת הערבות האישית והבטוחה אופציות הניתנות להמרה למניות בכורה כמפורט להלן ללא תוספת מימוש (להלן: "**אופציות למניות הבכורה החדשות**" ולאחר ההמרה "**מניות הבכורה החדשות**"). מניות הבכורה החדשות יקנו לבעליהן עדיפות בחלוקת דיבידנד עד סכום שייקבע, וכן זכויות עדיפות במקרה של מכירת החברה או הנפקה ראשונה לציבור של מניותיה וכפי שיפורט בתקנון המתוקן ("**זכויות הבכורה העדיפות**"), ושיעמוד ביחס לגובה הבטוחה שהועמדה. מניות הבכורה החדשות יפוגו לאחר שקיבל בעליה של מניה כזו את סכום זכויות הבכורה העדיפות שיהיה זכאי לו בהתאם לתנאי מניות הבכורה החדשות.

(3) למען הסר ספק: מניות הבכורה החדשות תהיינה כפופות למגבלות החלוקה הקבועות בהסדר הנושים; ועוד למען הסר ספק: ככל שיונפקו אופציות למניות הבכורה חדשות כאמור לעיל, כי אז יונפקו גם למנהל ההסדר אופציות כאלה, כקבוע בפרק ג(6) להלן.

(4) בעל מניות שהעמיד ערבות אישית וביטחונות לערבות כאמור בס״ק (1) ו-(2) לעיל יהיה רשאי להחליף בטחונות שהעמיד לערבותו בביטחונות אחרים או אף להחליף את ערבותו האישית לרבות את הביטחונות לערבות, בערבותו של בעל מניות אחר לרבות בביטחונות לערבות שיעמיד בעל המניות האחר, וזאת בכפוף לאישור מראש ובכתב של מנהל ההסדר, לפי שיקול דעתו. העברה של אופציות למניות הבכורה החדשות ו/או העברה של מניות הבכורה החדשות, שתיעשה במסגרת החלפה שאושרה כאמור, תיחשב כהעברה מותרת על אף האמור בסעיף 49 להלן ובתקנון המתוקן.

(יא) לא יאוחר ממועד הכניסה לתוקף של ההסדר יינתנו הסכמות ואישורים מתאימים ככל שנדרש מצד צדדים שלישיים, לרבות בעלי מניות ביחס להעמדת ערבויות אישיות וביטחונות לערבויות, אישור המייסדים ביחס למניות הכפופות וביחס לתרומת המייסדים וכן אישור חברות הקבוצה הרלוונטיות ביחס להתחייבויותיהן כקבוע בהסדר.

**ג(6). <u>תרומת המייסדים</u>**

26. במהלך תקופת ההסדר המייסדים יוותרו על הבונוס השנתי המגיע להם מכח תנאי ההעסקה שלהם.

27. סכום זה (המשקף סך של כ-25 מיליון דולר לתקופת ההסדר) יועבר לפיקדון מנהל ההסדר ישירות על ידי החברה.

28. רק לאחר תשלום מלוא החובות לנושים הזכאים והשלמת ההסדר, יהיו זכאים המייסדים לקבל מן החברה את הסכומים עליהם ויתרו כאמור, וזאת בתוספת ריבית על פי דין. פירעון זה ייעשה בעדיפות לפני תשלום דיבידנד לבעלי המניות.

**ג(7). <u>מניות מנהל ההסדר – בטוחה נוספת להבטחת החובות לנושים המותנים</u>**

29. במועד כניסת התוקף של ההסדר תקצה החברה מניות רגילות חדשות אשר לאחר הקצאתן יהוו 25% מהון המניות הרגילות המונפק והנפרע של החברה, וכן 25% מהאופציות למניות הבכורה החדשות שיונפקו כאמור לעיל. המניות האמורות יוקצו למנהל ההסדר, בנאמנות לטובת הנושים המותנים, להבטחת פירעון החובות כלפיהם על פי ההסדר. (להלן: ״**מניות מנהל ההסדר**״). מניות מנהל ההסדר יקנו למחזיק בהן זכות הצבעה רק לאחר מימושן בהתאם להוראות הסדר זה. לצורך כך ייתן מנהל ההסדר ייפוי כוח לדירקטוריון החברה להצביע במניות, והכל כאמור בייפוי הכוח המצורף כ**<u>נספח 3</u>**. ייפוי הכוח יעמוד בתוקפו עד למימושן של מניות מנהל ההסדר כמפורט בהסדר זה.

30. החברה תהיה רשאית לבצע פירעון מוקדם, מלא או חלקי, של החובות לנושים המותנים בכל עת. מנהל ההסדר יחזיר לחברה את כלל המניות שהוקצו לו (והן יהפכו למניות רדומות) כנגד העברה לקופת מנהל ההסדר של כספים בסכום מלוא החובות לנושים המותנים.

31. אם בתום 5 (חמש) שנים ממועד הכניסה לתוקף של ההסדר לא העבירה החברה לקופת מנהל ההסדר כספים בסכום מלוא החובות האכיפים לנושים הזכאים, יהיה מנהל ההסדר רשאי, אך לא חייב, ולאחר קבלת עמדת הנושים המותנים ובאישור בית המשפט, לממש את מניות מנהל ההסדר, כולן או חלקן, בין אם באמצעות העברתן לנושים זכאים לפי מחיר למניה כמפורט בסעיף 46(ג) ובין בדרך של מכירה לכל המרבה במחיר, ולעשות שימוש בתמורת המימוש, בניכוי הוצאות מימוש סבירות, שאושרו על ידי בית המשפט, לשם תשלום לנושים הזכאים ו/או הפקדת הסכומים בקופת מנהל ההסדר עד להתקיימות התנאים הקבועים לשם חלוקתם לנושים המותנים. ככל שלא יהיה בתמורת מימוש מניות מנהל ההסדר כדי להשלים הסכומים המופקדים בקופת מנהל ההסדר לסכום השווה למלוא יתרת החובות לנושים המותנים, החברה תמשיך להפקיד כספים בקופת מנהל ההסדר בהתאם להוראות הסדר זה עד לתשלום מלוא החובות לנושים המותנים. מניות מנהל ההסדר שנמכרו, ותמורתן הועברה לפיקדון, או שהועברו לנושים זכאים כאמור לעיל, יילקחו בחשבון, על פי הערך שיוחס להן בהתאם להוראות ההסדר, לצורך כל תחשיב לפי הסדר זה, ודינן כדין כל הפקדה בפועל שבוצעה לקופת מנהל ההסדר.

32. בטרם יממש מנהל ההסדר את מניות מנהל ההסדר כאמור (ובכל מקרה לא לפני תום תקופת חמש השנים האמורה בסעיף 31), תינתן לחברה תקופה בת 90 ימים לגיוס הון או להשלמת יתרת החובות בדרך אחרת; לא הושלמה היתרה בתוך התקופה האמורה, יהיה מנהל ההסדר רשאי לממש את המניות, ובלבד שהמימוש ייעשה בסייגים האמורים בסעיף 31 לעיל.

**ג(8). <u>שעבוד מניות פאפאייה אינק</u>**

33. להבטחת קיום מלוא התחייבויות החברות על פי הסדר זה, תשעבד פאפאייה ישראל לטובת מנהל ההסדר, בנאמנות עבור הנושים המותנים, בשעבוד קבוע, יחיד וראשון בדרגה, את מלוא אחזקותיה במניות פאפאייה אינק, (להלן: "**שעבוד מניות פאפאייה אינק**"). השעבוד ייווצר במועד כניסת התוקף של ההסדר ויירשם בכל מרשם הנדרש על פי דין, בישראל ומחוצה לה, בתוך 21 ימים ממועד יצירתו.

34. כל עוד לא מומש השעבוד, תיוותרנה זכויות ההצבעה והזכויות הנלוות למניות המשועבדות בידי פאפאייה ישראל, והחברות תהיינה רשאיות להמשיך ולנהל את פעילות פאפאייה אינק במהלך העסקים הרגיל, בכפוף להוראות הסדר זה. בתקופת השעבוד לא תיצור פאפאייה ישראל כל שעבוד נוסף על המניות המשועבדות ולא תעביר בהן כל זכות.

35. מנהל ההסדר יהיה רשאי לממש את שעבוד מניות פאפאייה אינק רק בקרות ארוע הפרה של ההסדר כמשמעותו בהסדר זה, שלא תוקן בתוך 60 ימים ממתן הודעה בכתב לחברות, ובכפוף לאישור בית המשפט. תמורת המימוש, בניכוי הוצאות מימוש סבירות שאושרו על ידי בית המשפט, תשמש לתשלום לנושים זכאים ו/או להפקדה בקופת מנהל ההסדר וזאת בנוסף לכל סעד אחר העומד לזכות הנושים המותנים על פי הסדר זה.

36. עם פירעון מלוא החובות לנושים הזכאים על פי הסדר זה, יפקע שעבוד מניות פאפאייה אינק, ומנהל ההסדר יחתום על כל מסמך הנדרש להסרתו מכל מרשם.

**ג(9). <u>חלוקה מיידית לנושים המותנים (רשת ביטחון)</u>**

37. הואיל ועל פי ההסדר נושים מותנים, שסכום תביעת החוב המאושרת שלהם לצרכי הצבעה נמוך מ-5 מיליון דולר, זכאים, עם קבלת פסק דין כספי אכיף בקשר עם תביעתם, לתשלום מן התזרים השוטף של החברה, ללא תלות במקורות פיקדון מנהל ההסדר (כפי שיהיה במועד קבלת פסק דין אכיף כאמור), זאת בשונה מנושים מותנים שתביעת החוב המאושרת שלהם לצרכי הצבעה עולה על 5 מיליון דולר, אזי נקבע בזאת כי מנהל ההסדר ישלם לנושים המותנים, שסכום תביעת החוב המאושרת שלהם לצרכי הצבעה עולה על 5 מיליון דולר, תשלום מקדמה מיידי בסך $20,000,000 (עשרים מיליון דולר) מתוך הסכום הראשון שיופקד בידיו בסמוך לאחר כניסת ההסדר לתוקף, כאמור בסעיף 15 לעיל, הכל כמפורט להלן (להלן: "**החלוקה המיידית**").

38. החלוקה המיידית תיעשה תוך 14 (ארבעה עשר) יום ממועד כניסת התוקף של ההסדר, והיא תחולק באופן יחסי לסכום תביעת החוב המאושרת לצרכי הצבעה של כל נושה כאמור בסעיף 37 לעיל מתוך כלל סכומי תביעות החוב המאושרות לצרכי הצבעה העולים על 5 מיליון דולר של הנושים המותנים.

39. סכום החלוקה המיידית ייחשב כמקדמה על חשבון התשלומים העתידיים המגיעים לכל נושה מותנה על פי ההסדר. ואולם, על אף האמור, סכום ששולם במסגרת החלוקה המיידית לא יוחזר לחברה, אף אם יתברר לאחר מכן כי אותו נושה מותנה אינו זכאי לתשלומים עתידיים בגובה המקדמה שחולקה לו או בכלל.

40. אשר לנושה מותנה שהינו תובע בהליך הייצוגי כהגדרתו בסעיף 75 להלן, הרי שאם בהליך הייצוגי בו הוא תובע, תאושר התביעה כתובענה ייצוגית, ובשומה שביצע מנהל ההסדר בהתאם לסעיף 23 לעיל, הוא יישום את התביעה הייצוגית בסכום העולה על 5 מיליון דולר, יהיו התובע הייצוגי וחברי הקבוצה התובעת זכאים לקבל סכום על חשבון החלוקה המיידית, כמקדמה שלא תוחזר, על חשבון סכום פסק הדין ("**סכום החלוקה המיידית הנדחה**"). סכום החלוקה המיידית הנדחה יחושב על פי החלק היחסי של סכום פסק הדין כפי שנישום, ביחס ליתר החובות המותנים שהשתתפו בחלוקה המיידית על פי סעיף זה, כאילו היה החוב המותנה הייצוגי קיים במועד אישור ההסדר. סכום החלוקה המיידית הנדחה ישולם בפועל או יופקד בנאמנות בהתאם ובכפוף להוראות בית המשפט הדן בהליך הייצוגי.

41. החלוקה המיידית אין משמעה הודאה בתביעת החוב, והיא לא תקים לנושה כל טענה או זכות מעבר לקבלת חלקו בחלוקה המיידית.

**ג(10).<u>תשלומי מינימום לקופת מנהל ההסדר ומנגנון להגדלת הבטוחות</u>**

42. נספח 1 להסדר כולל את סכומי התשלומים השנתיים המיועדים לקופת מנהל ההסדר עבור הנושים המותנים בכל מועד תשלום (להלן: "**סכומי היעד השנתיים**").

43. החברה תמסור למנהל ההסדר, בכל 31 בינואר ו-31 ביולי, דוח בדבר מצבה הפיננסי של הקבוצה, וכן מידע נוסף לפי דרישתו הסבירה; הפעלת המנגנונים המפורטים להלן תיעשה אחת לשנה כמפורט בס"ק 45 להלן

44. החברה מתחייבת לשלם לקופת מנהל ההסדר בכל אחד מן המועדים הנקובים בנספח 1 סכום שלא יפחת מ-85% מסכום היעד השנתי הקבוע לאותו מועד (להלן: "**תשלומי המינימום**").

45. מדי שנה יבדוק מנהל ההסדר בתוך 30 ימים מהמועד הקבוע בנספח 1 את עמידת החברה בתשלומי המינימום המצטברים בגין התקופה שחלפה מאז אישור ההסדר ועד למועד הבדיקה (להלן: "**תקופות הבדיקה**"). ככל שהתשלומים ששולמו בפועל בתקופת בדיקה כלשהי יפחתו מתשלומי המינימום המצטברים (להלן: "**סכום הפער**"), יבוצעו הפעולות המפורטות בסעיף קטן 46 שלהלן.

46. סטייה מתשלומי המינימום בגין תקופת בדיקה כלשהי תגרור את הפעולות המפורטות בסעיפים הקטנים שלהלן:

(א) בעלי המניות יידרשו להשלים את הפער שבין התשלומים המצטברים בפועל לבין תשלום סכומי המינימום המצטברים עד לאותה תקופת בדיקה, כתרומת בעלים (להלן: "**תרומת הבעלים**"). להבטחת תרומת הבעלים, תינתנה ערבויות אישיות ויועמדו בטוחות כאמור בסעיף 25(י). הערבויות האישיות תמומשנה רק לאחר שמנהל ההסדר מסר לבעלי המניות הערבים הודעה בכתב בדבר סכום תרומת הבעלים הנדרש מכוח ערבותם (להלן – "**הסכום הנדרש**") ובעלי המניות לא השלימו את תשלום הסכום הנדרש בתוך 30 ימים ממועד קבלת ההודעה; ככל ששולם חלק מהסכום הנדרש (לרבות בכל המקרים מסוג זה עד לאותו מועד), יהיה זכאי מנהל ההסדר לפעול למימוש הביטחונות לערבות לצורך גביית יתרת הסכום הנדרש עפ"י שיקול דעתו, וככל שיהיה צורך בנקיטת הליך משפטי לשם כך, יהיה בית המשפט המוסמך בית המשפט הדן בהסדר נושים זה. עם תשלום מלוא סכום הערבות תפקע הערבות וככל שלא מומשו כל הביטחונות לערבות יפעל מנהל ההסדר לשחרור השעבוד עליהם. ככל שבעלי המניות לא ישלימו את תרומת הבעלים, הסנקציה היחידה עליהם תהיה מימוש הזכות מכוח הערבויות האישיות וזאת בתנאי שסך כל תרומות הבעלים המצטברות עד אותו מועד לא עלה על סך של חמישה מיליון דולר, כמפורט לעיל בסעיף 25(י) לעיל.

(ב) החברה תהיה רשאית להשלים תוך 60 ימים נוספים כל סכום שלא שולם כאמור, עד להשלמת סכומי המינימום כאמור, באמצעות גיוס הון חיצוני או באמצעות מקור מימון אחר שיאושר מראש ובכתב על ידי מנהל ההסדר. מובהר כי גיוס אשראי על ידי החברה לצורך זה, יעשה כנגד אשראי נחות לחובות החברה לנושים המותנים וקביעת תנאי האשראי יהיו כפופים לאישור מנהל ההסדר. כל הסכומים שיגויסו על ידי החברה בהתאם לסעיף זה (בהפחתת עלויות גיוס ישירות) יופקדו בפיקדון מנהל ההסדר, אלא אם אושר אחרת על ידי מנהל ההסדר, באישור בית המשפט.

(ג) במקרה בו לא הושלם מלוא הסכום החסר באמצעים המפורטים לעיל בתקופות הריפוי דלעיל, תבוצע הקצאה של מניות רגילות של החברה לטובת מנהל ההסדר כנגד יתרת הסכום החסר (להלן: "**המניות הנוספות**"). ההקצאה תבוצע על בסיס מחיר למניה הנמוך מבין (א) מחיר מנית החברה בסיבוב הגיוס האחרון של החברה שלאחר כניסתו לתוקף של ההסדר (ומאותו סוג מניה בסיבוב כאמור) או (ב) המחיר למניה רגילה הנובע מהערכת שווי חברה שנערכה לצרכי ההסדר ומצורפת כ**נספח 4** ("**הערכת השווי**") תוך התאמתה לנתוני תזרים ההכנסות בפועל באופן הבא: שווי החברה על פי הערכת השווי יוכפל בשיעור התשלום בפועל שהופקד לקופת מנהל ההסדר עד לאותו מועד (ובכלל זה תרומות הבעלים הנובעות ממימוש הערבויות האישיות) בהתאם לסך התשלום בפועל (לכלל התקופה) אל מול סכומי היעד השנתיים. לדוגמה: אם התשלום בפועל, תרומת הבעלים והגיוס החיצוני מהווים יחד 82% מסכומי היעד השנתיים עד לאותו מועד, מחיר המניה לצורך חישוב מספר המניות להקצאה יהיה מחיר המניה על פי הערכת השווי במועד הכניסה לתוקף של ההסדר כפול 82%.

(ד) ככל שבמועד הקצאת המניות הנוספות כאמור קיים נושה זכאי, או שבמועד מאוחר יותר הפך נושה מותנה לנושה זכאי, אשר לא קיבל את מלוא התשלום המגיע לו, מנהל ההסדר יהיה רשאי להעביר לו את חלקו היחסי במניות הנוספות לאחר קבלת עמדת הנושה ובאישור בית המשפט. לעניין זה, "חלקו היחסי" של נושה זכאי – הינו היחס שבין יתרת החוב האכיף כלפיו שטרם נפרעה, לבין סך יתרות החוב האכיף כלפי כלל הנושים הזכאים שטרם נפרעו, כפי שהן במועד ההעברה.

כל עוד המניות הנוספות יוחזקו בקופת מנהל ההסדר, הן לא יקנו זכות הצבעה, ולהבטחת העניין ייתן מנהל ההסדר ייפוי כוח לדירקטוריון החברה להצביע במניות הנוספות, והכל כאמור ביפוי הכוח המצורף כ**נספח 3**. יפוי הכוח יעמוד בתוקפו עד להעברתן או מימושן של המניות הנוספות כמפורט בהסדר זה. לחברה תעמוד האפשרות לקבל את המניות הנוספות בחזרה על ידי השלמת הסכום החסר, בין אם על ידי תזרים מזומנים מפעילות שוטפת (ובלבד שהחברה עומדת בתשלומי המינימום לקופת ההסדר), תרומת בעלים או גיוס הון חיצוני. הועברו מניות לנושה זכאי כאמור, ייזקף על חשבון פירעון חובו שווי המניות שהועברו, כפי שנגזר מהמנגנון הקבוע בס"ק (ג) לעיל. עם השלמת הסכום החסר, כולו או חלקו, יחזיר מנהל ההסדר לחברה את המניות שהוקצו, באופן יחסי לסכום החסר שהושלם, והן תהפוכנה למניות רדומות. בהתקיים הנסיבות להפיכת מניות למניות רדומות יגיש מנהל ההסדר בקשה לבית המשפט לקבלת פסיקתא המורה לרשם החברות להפוך את המניות למניות רדומות.

47. **תקרת החריגה מסכומי ההפקדה -** מנהל ההסדר יבחן מדי שנה את החריגה המצטברת מסכומי המינימום ("**סכום החריגה המצטבר**"), ואת החריגה השנתית מסכומי המינימום השנתיים ("**סכום החריגה השנתי**"). לצורך חישוב כאמור יילקחו בחשבון גם השלמות שנעשו באמצעות תרומת בעלים, גיוס הון או גיוס אשראי, ובלבד שנעשו בהתאם למגבלות ולתנאים הקבועים בהסדר. אם עלה סכום הפער המצטבר על סך של $75,000,000 (שבעים וחמישה מיליון דולר) ("**תקרת סכום החריגה המצטבר**"), או אם עלתה הסטייה השנתית על 30% מסכום המינימום

השנתי הקבוע לשנת הבדיקה (״**תקרת סכום החריגה השנתי**״), ייחשב הדבר לארוע הפרה ויקנה למנהל ההסדר את כל הזכויות, הסעדים, הכוחות והסמכויות העומדים לרשותו לתיקון ההפרה, לרבות זכויות אכיפה ומימוש בטוחות, בהתאם להוראות הדין והסדר זה.

48. מעמדן של המניות הנוספות, הגיוסים והתשלומים שישולמו בהתאם למפורט לעיל, לצורך עמידה בהוראות ההסדר:

(א) מניות נוספות שיונפקו, הגיוסים והתשלומים שישולמו בהתאם למפורט לעיל, יילקחו בחשבון לצורך תקופות בדיקה עתידיות, ודינן יהיה כדין הפקדות שבוצעו לקופת מנהל ההסדר, יחד עם זאת לצורך חישוב סכום החריגה השנתי או סכום החריגה המצטבר כהגדרתם לעיל, לא יובאו בחשבון המניות הנוספות שהונפקו למנהל ההסדר כל עוד לא מומשו לתמורה שהופקדה בפקדון ההסדר, או הועברו לנושים בהתאם להוראות ההסדר ועל פי הערך שיוחס להן.

(ב) עוד מובהר כי מניות נוספות שהוקצו או הופקדו על פי הסדר זה מהוות בטוחה בלבד ואינן מהוות פירעון של החוב, אלא במקרה ובמידה שמומשו, ובגובה התמורה שהתקבלה בפועל בלבד, או במקרה שבו הועברו מניות לנושים בהתאם להוראות ההסדר, ואז הן ייחשבו כפירעון וערכן יחושב בהתאם למנגנון הקבוע בסעיף 46(ג).

**ג(11).<u>מגבלות ובטוחות נוספות</u>**

49. **הגבלות על יצירת שעבודים ונטילת אשראי**: בתקופת ההסדר לא תיצור החברה ולא ייצרו איזה מחברות הקבוצה שעבוד על נכסיהן, כולם או חלקם, ולא ייטלו אשראי או התחייבויות פיננסיות אחרת, למעט: (1) אשראי ספקים, (2) מסגרות אשראי שוטפות במהלך העסקים הרגיל בהיקף של עד <u>50 מיליון דולר</u> במצטבר לחברה ולכלל חברות הקבוצה; (3) אשראי ושעבודים הנדרשים למימון פעילותה השוטפת של החברה וחברות הקבוצה ובלבד שסכום האשראי המובטח בשעבודים של החברות וחברות הקבוצה לא יעלה על סך של <u>5 מיליון דולר</u>; (4) שעבודים קיימים במועד הכניסה לתוקף של ההסדר, וחידושם בתנאים דומים. כל חריגה מהאמור תהא טעונה אישור מראש ובכתב של מנהל ההסדר.

50. **איסור חלוקות ומשיכת דיבידנד**: בתקופת ההסדר לא תבצע החברה חלוקה כמשמעותה בחוק החברות, התשנ״ט-1999, לרבות חלוקת דיבידנד ורכישה עצמית של מניות, ולא תבצע כל תשלום אחר לבעלי מניותיה או למי מטעמם, בין במישרין ובין בעקיפין, למעט שכר ותנאי העסקה נלווים של המייסדים כפי שהם במועד הכניסה לתוקף של ההסדר.

51. **איסור עסקאות בעלי עניין**: בתקופת ההסדר לא תתקשר החברה, בעצמה או באמצעות מי מחברות הקבוצה, בעסקה עם בעל עניין בה, עם מי מהמייסדים או עם צד קשור למי מהם, למעט הסכמי ההעסקה הקיימים של המייסדים ללא שייערכו בהם תיקונים או שינויים. כל עסקת בעל עניין אחרת תהא טעונה אישור מראש ובכתב של מנהל ההסדר, נוסף על כל אישור הנדרש על פי דין.

52. **מנגנון Reverse Vesting**: (א) במועד הכניסה לתוקף של ההסדר יסווגו 50% מאחזקותיו של כל אחד מהמייסדים בחברה כמניות כפופות להבשלה ותופקדנה בנאמנות בידי מנהל ההסדר ולא תהיינה ניתנות להעברה, לשעבוד או להענקת זכות אחרת בהן. זכויות ההצבעה והזכות לדיבידנד בגינן יוותרו בידי המייסד כל עוד הוא מועסק בחברה, בכפוף להוראות ההסדר לעניין איסור חלוקות (להלן: "**המניות הכפופות**"). (ב) המניות הכפופות יבשילו על פני חמש שנים ממועד הכניסה לתוקף של ההסדר, כדלקמן: בשנתיים הראשונות ממועד הכניסה לתוקף של ההסדר לא תהיה הבשלה; בתום השנתיים הראשונות תבשיל, בבת אחת, מנה בשיעור 40% מהמניות הכפופות; ויתרת המניות הכפופות תבשיל בקו ישר, על בסיס רבעוני, בשיעור של 5% מהמניות הכפופות בתום כל רבעון, ובלבד שהמייסד מועסק בחברה באותו מועד. (ג) סיים מייסד את העסקתו בחברה מיוזמתו לפני תום תקופת ההבשלה, שלא בנסיבות האמורות בס"ק (ד) להלן – יהפכו המניות הכפופות שטרם הבשילו באותו מועד למניות רדומות. (ד) על אף האמור, תחול האצה מלאה וכל המניות הכפופות שטרם הבשילו יבשילו לאלתר, בקרות אחד מאלה: (1) פיטורי המייסד על ידי החברה למעט בנסיבות של פיטורין עקב מעילה, מרמה, הפרת אימונים; (2) שינוי מהותי לרעה בתפקידו או בהגדרת תפקידו שלא בהסכמתו; (3) פגיעה מהותית בתנאי העסקתו ביחס לתנאי העסקתו כפי שהם במועד הכניסה לתוקף של ההסדר, שלא בהסכמתו; (4) פטירת המייסד או אובדן כושר עבודתו. (5) פירעון או פקיעה של מלוא החובות המותנים.

53. **איסור העברה**: בעלי המניות לא יהיו רשאים למכור , להעביר, לשעבד, להמחות או להעניק זכות, במישרין או בעקיפין ("**העברה**"), את כל אחזקותיהם בחברה, או את חלקן, במשך כל תקופת ההסדר ("**תקופת המגבלה**"). העברה בניגוד לסעיף זה תהיה בטלה כלפי החברה ולא תירשם במרשם בעלי המניות. איסור כאמור לא יחול על בעל מניות שהוא גוף שעיסוקו בהשקעות, אם ההעברה נעשית בגדר העברה של כלל השקעותיו לצד שלישי. כמו כן האיסור כאמור לא יחול על העברת אופציות למניות הבכורה החדשות ו/או מניות הבכורה החדשות, שהונפקו לבעל מניות כנגד העמדת ערבות אישית וביטחונות לערבות כאמור בסעיף 25(י)(2) לעיל, לבעל מניות אחר, במסגרת החלפת הערבות האישית של אותו בעל מניות בערבות אישית וביטחונות לערבות שיעמיד אותו אדם.

54. **הגבלה על גיוס הון ואשראי**: מבלי לגרוע מן האמור בסעיף 49 לעיל, במהלך תקופת ההסדר החברה תהיה רשאית לגייס הון או אשראי אך ורק לשם ביצוע הפקדות לפיקדון ההסדר, בין להשלמת חוסרים, בין להקדמת הפקדות, ובין לקבלתן בחזרה של המניות הנוספות, או חלקן, שהוקצו למנהל ההסדר, אלא אם אושר אחרת על ידי מנהל ההסדר, באישור בית המשפט. בגיוס הון אפשר שיונפקו למשקיע מניות הנותנות לו בכורה על פני בעלי מניות קיימים, וזאת רק עד גובה השקעתו, אלא אם אושר אחרת על ידי מנהל ההסדר, באישור בית המשפט.

55. **שמירת ביטוחים**: החברה וכל חברות הקבוצה יפעלו לשמור בתוקף לאורך תקופת ההסדר את כל הכיסויים הביטוחיים המהותיים הקיימים, ישלמו את הפרמיות בגינם במועד, ולא יבטלו פוליסות קיימות, לא יגרמו לפקיעתן ולא יפעלו לצמצומן באופן מהותי.

56. הסדר זה יבוא אל סיומו לאחר השלמת ביצוען המלא של כלל ההתחייבויות והפעולות הקבועות בו, בהתאם ובכפוף להוראות הסדר זה.

## ד. **תנאי מתלה לביצוע הסדר החוב**

57. תנאי מתלה לכניסת הסדר החוב לתוקף הינו קבלת אישור בית המשפט להסדר זה ("**צו בית המשפט**"), ובכלל זה קבלת צו המורה על הפטר מלא, סופי, מוחלט ומחייב של החברות כמפורט בהסדר זה, בהתאם לפרק ו' להסדר, ועל תיקון תקנון החברה והחלפתו בתקנון המתוקן, בהתאם לפרק ז' להסדר, בין אם במסגרת אישור ההסדר, או במסגרת החלטה שיפוטית נלווית.

58. לא התקיים התנאי המתלה לכניסת הסדר זה לתוקף, או שהסדר זה לא נכנס לתוקף מכל סיבה שהיא, אזי מבלי לגרוע מכל זכות או טענה העומדת לחברות על פי דין, יחולו ההוראות שלהלן:

(א) הסדר זה, על כל הוראותיו ונספחיו, ההסכמות, ההצעות, הוויתורים, המצגים, ההצהרות, ההתחייבויות והעמדות שהועלו, נמסרו או נשקלו במסגרתו או בקשר אליו, יהיו בטלים, נעדרי תוקף ולא יחייבו את החברות בכל דרך שהיא;

(ב) לא יהיה בהסדר זה, בכתבי בי-דין בהליכים לאישורו של הסדר זה, ובהליכים קשורים, או בכל חלק מהם, כדי לשמש ראיה, הודאה, מצג, השתק, ויתור, הסכמה, בסיס לטענה בדבר היקף חוב, תוקפו, שיעורו, סיווגו, עדיפותו או אופן פירעונו, או בסיס לכל טענה, דרישה, תביעה או הליך מכל מין וסוג.

(ג) אף צד לא יהיה רשאי להסתמך על כל דבר שנאמר בהסדר זה או בכתבי בי-דין בהליך לאישורו של ההסדר, או בהליכים קשורים, בכל הליך שיפוטי, מעין-שיפוטי, בוררות, מנהלי או אחר, בישראל או מחוצה לה;

(ד) במקרה כאמור, יהיו הצדדים מושבים ככל הניתן, למצבם המשפטי, הדיוני והמסחרי כפי שהיה ערב הגשת הבקשה לאישור ההסדר.

(ה) ס"ק (ב) ו-(ג) לעיל יחולו ויעמדו בתוקפם בכל מקרה, לרבות אם ההסדר עומד בתוקפו, אם נכס לתוקף ובוטל, ואם לא נכנס לתוקף כלל.

## ה. **מנהל הסדר**

59. מנהל ההסדר הינו עו"ד גיל אורן.

60. שכרו של מנהל ההסדר, וכן הוצאותיו כפי שיאושרו על ידי בית המשפט הנכבד, ייקבעו וייפסקו על ידי בית המשפט הנכבד בהתאם להוראות הדין.

61. מובהר, כי שכרו של מנהל ההסדר והוצאותיו יחולו על החברה ולא על חשבון הנושים; ככל שישולמו מתוך פיקדון מנהל ההסדר, תשלים החברה לפיקדון כל סכום ששולם כאמור, בתוך 30 ימים.

62. מנהל ההסדר יהיה מוסמך לבצע כל פעולה הנדרשת לשם יישומו, ניהולו, ביצועו ואכיפתו של הסדר זה, וכן קבלת סעדים בגין הפרתו, והכל בהתאם להוראות הדין, הוראות הסדר זה והחלטות בית המשפט הנכבד.

63. מבלי לגרוע מכלליות האמור לעיל, מנהל ההסדר יהיה מוסמך, בין היתר:

(א) לקבל, לבדוק, לברר ולהכריע בהוכחות חוב ובתביעות חוב, כולן או חלקן;

(ב) לדרוש מכל נושה, מן החברות או מכל צד רלוונטי אחר כל מסמך, אסמכתה, נתון, תצהיר, הבהרה או מידע שימצא לנכון לצורך מילוי תפקידו;

(ג) לאשר, לדחות או לתקן הוכחות חוב, כולן או חלקן, וכן לקבוע את שיעורו, מעמדו וסיווגו של כל חוב לצורכי הסדר זה;

(ד) לנהל את פיקדון מנהל ההסדר, לרבות קבלת כספים לידיו, החזקתם, השקעתם בהתאם להוראות ההסדר, ככל שהדבר מותר על פי דין או לפי הוראות בית המשפט, וביצוע תשלומים מתוכו בהתאם להוראות הסדר זה;

(ה) לקבוע את אופן הגשת המסמכים והפניות אליו, לרבות מועדים, מתכונת, אופן המצאה ודרישות צורניות;

(ו) לפנות לבית המשפט הנכבד, מעת לעת, בבקשה למתן הוראות, לאישור פעולה, להכרעה במחלוקת, להבהרת הוראות הסדר זה או לכל סעד אחר הדרוש, לפי שיקול דעתו, לשם ביצוע תפקידו;

(ז) להסתייע ביועצים, מומחים, רואי חשבון, עורכי דין ובעלי מקצוע אחרים, ככל שימצא לנכון לצורך מילוי תפקידו, והוצאות כאמור ייחשבו כהוצאות מנהל ההסדר.

.64 מבלי לגרוע מהאמור, מנהל ההסדר יהיה זכאי לקבל מהחברות דוחות כספיים שנתיים ודוחות שוטפים ככל שיבקש, באופן סביר, בדבר מצבן הפיננסי של חברות הקבוצה כאמור בהסדר זה, וכן מידע נוסף בקשר לעמידת המבקשות בהתחייבויותיהן על פי הסדר זה, לפי דרישתו הסבירה; כמו כן יהיה מנהל ההסדר רשאי להשתתף, בעצמו או באמצעות נציג מטעמו, כמשקיף בישיבות דירקטוריון החברה, ולקבל את החומרים הנמסרים לדירקטורים לקראת ישיבות כאמור, ללא זכות הצבעה ובכפוף לחובת סודיות. מבלי לגרוע מכלליות האמור לעיל, החברה מתחייבת להודיע בכתב למנהל ההסדר, ללא דיחוי, על כל אירוע של הפרה קיימת או צפויה של הוראות הסדר זה, וכן על חשש לאי-עמידה בהפקדות, פגיעה מהותית בנזילות, עיקול או הקפאת חשבון, אירוע רגולטורי מהותי, פגיעה בבטוחה או הליך משפטי חדש בעל השלכה מהותית.

.65 מובהר למען הסדר הטוב כי אחריותו של מנהל ההסדר היא אך ורק לתפקידים ולסמכויות שהוגדרו לו בהסדר זה ועל פי דין.

<u>מנגנון הוכחות החוב</u>

.66 הואיל וההסדר קובע שכלל התחייבויותיהן השוטפות של החברות לנושים המוחרגים ימשיכו להיות משולמות כסדרן ובמועדן, הנושים המוחרגים אינם נדרשים להגיש הוכחות חוב כתנאי להמשך תשלום הסכומים השוטפים המגיעים להם, כמפורט בטופס 1 המצורף לבקשה לאישור ההסדר, והם ישולמו להם כסדרם ובמועדם.

.67 הזמנת הנושים המותנים להגיש הוכחות חוב נועדה לאפשר בירור של חובות מותנים או טענות של נושים מותנים שאינם ידועים לחברות במועד הגשת הבקשה לאישור ההסדר. לפיכך, כל נושה מותנה הטוען כי עומד לזכותו חוב מותנה כלפי מי מהחברות, בין מחמת שלא נזכר בטופס 1 ובין

אם מחמת שהוא חולק על הסכום הנקוב לצד שמו בטופס 1, נדרש להגיש למנהל ההסדר הוכחת חוב בתוך 21 ימים ממועד מינויו של מנהל ההסדר ("**מועד הוכחות החוב**").

68. מנהל ההסדר יהיה רשאי לקבל הוכחת חוב שהוגשה לאחר מועד הוכחות החוב רק אם שוכנע כי קיימת הצדקה מיוחדת לאיחור בהגשתה. נושה מותנה שנדרש להגיש הוכחת חוב בהתאם להוראות הסדר זה ושלא הגיש הוכחת חוב במועד, או שהוכחת החוב שהגיש לא אושרה, לא יהיה זכאי להצביע ביחס להסדר חוב זה, ולא תהיה לו כל תביעה, דרישה או טענה כלפי מי מהחברות ביחס לחובות המותנים.

69. מנהל ההסדר יהיה רשאי לדרוש כל מסמך ו/או נתון שיידרש לו לפי שיקול דעתו לצורך ההכרעה בהוכחת החוב של נושים מותנים שהגישו תביעות חוב, בין אם לצרכי הצבעה או לצורך בירורן לגופן. לא הומצאו המסמכים או הנתונים שנדרשו בתוך המועד שיקבע מנהל ההסדר, יהיה מנהל ההסדר רשאי להכריע בהוכחת החוב על יסוד החומר המצוי בידיו, או לדחות את הוכחת החוב, כולה או חלקה.

**ה(1). <u>הכרעה בתביעות חוב לצורכי הצבעה</u>**

70. כל נושה מותנה המפורט בטופס 1 אשר לא יגיש הוכחת חוב בתוך מועד הוכחות החוב, ייחשב, לצורכי הצבעה על הסדר זה, כמי שהסכים לגובה החוב הנקוב לצד שמו בטופס 1, כמי שהגיש הוכחת חוב בסכום האמור, וכמי שהוכחת החוב שלו אושרה בסכום זה לצורכי הצבעה על הסדר זה.

71. הכרעת החוב לצורכי הצבעה לא תהווה הכרעה בהוכחת החוב לגופה.

72. נושה אשר יהא מעוניין לערער על הכרעת החוב לצורך הצבעה, יהא רשאי לעשות כן בפנייה לבית המשפט תוך שבעה (7) יום מהמועד בו קיבל את הכרעת החוב בכתב (ולרבות בדואר אלקטרוני או בפקסימיליה). ערעור שיוגש לאחר מועד זה לא יתקבל, אלא אם כן בית המשפט יורה אחרת.

**ה(2). <u>הכרעה בתביעות חוב לגופן לצרכי חלוקה</u>**

73. לצורך בירור תביעות החוב לגופן לא תידרש הגשת הוכחת חוב נוספת, והוכחת החוב שהוגשה לצרכי הצבעה תשמש גם לצורך זה.

74. מובהר, כי לצרכי חלוקה בפועל יוכל נושה מותנה להגיש תביעת חוב אף אם לא הגישה במועד לצרכי הצבעה, ובלבד שהוגשה עד המועד שיקבע ויפרסם מנהל ההסדר, אשר לא יפחת מתום ארבעה חודשים ממועד אישור הסדר החוב על ידי בית המשפט.

75. מעמדם של חברי קבוצה בהליך הייצוגי המתנהל בישראל ("**ההליך הייצוגי**"), גם אם הגישו תביעת חוב לצרכי הצבעה או חלוקה, לרבות האפשרות לבצע opt-out יהיו בהתאם לדין ולהחלטות הערכאה הדנה בהליך הייצוגי.

76. ההכרעה בהוכחות החוב לגופן תיעשה כדלקמן: (א) ככל שתביעת חוב של נושה מותנה היא נושא להליך הייצוגי, במסגרתו אושרה בקשה לאישור תביעה ייצוגית נגד המבקשות או מי מהן,

ההכרעה לעניין זכאותו של אותו נושה לתשלום לפי הסדר זה, תיעשה בהתאם לפסק דין כספי אכיף, כמשמעותו בהסדר (אם וככל שיינתן); ככל שהבקשה לאישור התובענה כייצוגית תידחה, וכן במקרה שנושה מותנה יבחר להחריג את עצמו מהקבוצה לאחר שהבקשה כאמור אושרה, אזיי יכריע מנהל ההסדר בתביעת החוב של נושה כאמור שהוגשה כדין, לצרכי חלוקה, על פי הודעה שנתן הנושה המותנה למנהל ההסדר בתוך 30 ימים ממועד אישור התובענה כייצוגית, בהתבסס על המסמכים והנתונים שיומצאו לו ועל חומר רלוונטי אחר שימצא לנכון. (ב) ככל שהוכחת חוב של נושה מותנה אינה נושא להליך משפטי תלוי ועומד, בישראל או מחוצה לה, יכריע מנהל ההסדר בתביעת החוב על יסוד הוכחת החוב, המסמכים והנתונים שיומצאו לו וכל חומר רלוונטי אחר שימצא לנכון.

77. נושה אשר יהא מעוניין לערער על הכרעת החוב לגופה, יהא רשאי לעשות כן בפנייה לבית המשפט תוך שלושים (30) יום מהמועד בו קיבל את הכרעת החוב לגופה בכתב (ולרבות בדואר אלקטרוני או בפקסימיליה). ערעור שיוגש לאחר מועד זה לא יתקבל, אלא אם כן בית המשפט יורה אחרת.

78. כל חוב בר-הוכחה שלא הוגשה בגינו הוכחת חוב בתוך מועד הוכחות החוב, מקום שבו נדרשה הגשת הוכחת חוב לפי הוראות הסדר זה, או שלא אושר במסגרת מנגנון הוכחות החוב, לא יקנה לנושה כל זכות תביעה, דרישה, קיזוז או היפרעות כלפי מי מהחברות, והוא ייחשב כמסולק לצורכי הסדר זה.

79. החל ממועד כניסת ההסדר לתוקף לא ניתן יהיה להיפרע ממי מהחברות בגין חוב מותנה, אלא על פי הוראות הסדר זה.

## ו. **<u>פטור וויתור מותנים</u>**

80. הסדר זה יגבש ויבטא באופן סופי, בלעדי ומוחלט את מערכת היחסים, הזכויות וההתחייבויות שבין החברות והנושים המותנים, והוא ימצה ויסדיר את מעמדם של כלל החובות המותנים של החברות. בהתאם, עם כניסתו לתוקף של הסדר זה, יחולו ההוראות שלהלן:

(א) לא תהיה למי מהנושים המותנים כל עילה, טענה, דרישה או תביעה מכל מין וסוג ובכל עילה שהיא, כלפי החברות ו/או כלפי מי מטעמן בכל עניין הנוגע ו/או הקשור לחובות המותנים, למעט אלו שאושרו לגופן (להבדיל מאישור לצרכי הצבעה) כתביעות חוב;

(ב) הנושים המותנים לא יהיו זכאים לנקוט כל סעד עצמי מכל מין וסוג בקשר עם החובות המותנים, כלפי החברות, או מי מטעמן, לרבות קיזוז, עיכבון, עיקול, תפיסת נכסים, מימוש בטוחה או ערבות, המחאת חוב, מימוש זכות עיכוב או כל פעולה עצמאית אחרת שמטרתה גבייה, אכיפה, סיכול הסדר זה או פירעון אינדיבידואלי שלא במסגרת ההסדר. אין באמור למנוע נקיטת פעולות על ידי הנושים המותנים עקב ביטול ההסדר מחמת הפרתו, בהחלטת בית המשפט.

(ג) כל כתב פטור, כתב שיפוי, זכות שיפוי, ביטוח נושאי משרה או זכות אחרת להגנה, לשיפוי או לפטור, שניתנו או העומדים לזכותם של נושאי משרה, דירקטורים ובעלי תפקידים

בחברות לפי מסמכי ההתאגדות של החברות, לפי הסכם, לפי פוליסת ביטוח או לפי כל דין, יוסיפו לעמוד בתוקפם המלא ולא ייגרע מהם דבר מחמת אישורו או ביצועו של הסדר זה;

(ד) בכפוף להוראות הדין ולהוראות הסדר זה, ייכנס לתוקפו, החל ממועד כניסת ההסדר לתוקף, פטור מלא, סופי לטובת החברות, נושאי המשרה בהן, הדירקטורים, העובדים, השלוחים, היועצים, נציגיהן, בעלי מניותיהן וכל אדם או גוף שפעל או פועל מטעמן או בשמם, מפני כל עילה, טענה, דרישה או תביעה, מכל מין וסוג, ידועה או בלתי ידועה, קיימת, מותנית או עתידית, (למעט המשך ניהול ההליכים התלויים ועומדים נגד החברה בקשר עם החובות המותנים), וכן ביחס לגיבושו של ההסדר, שעילתה קמה עד למועד כניסת התוקף של ההסדר ("**תביעות עבר**"). על אף האמור, אם בוטל ההסדר, בהחלטת בית המשפט, מחמת ארוע הפרה, או אם בתום תקופת ההסדר, הוברר שהחברה לא עמדה בתשלומי המינימום, יתבטל הפטור ולא יעמוד עוד בתוקפו. במקרה כזה התקופה שממועד כניסת ההסדר לתוקף ועד מועד סיום ההסדר לא תבוא במנין תקופת ההתיישנות.

## ז. תקנון החברה

81. לשם יישום הוראות ההסדר, ובכלל זה הקצאת מניות מנהל ההסדר, יצירת סוגי מניות חדשים, ביטול סוגי מניות והטלת מגבלות על ביצוע עסקאות במניות החברה, יתוקן תקנון החברה בהתאם לנוסח התקנון המתוקן המצורף להסדר כ**נספח 2** לעיל.

82. התקנון המתוקן מהווה חלק בלתי נפרד מן ההסדר. אישור ההסדר יכלול גם את אישור תיקון תקנון החברה והחלפתו בתקנון המתוקן, אשר ייכנס לתוקף במועד כניסת ההסדר לתוקף. אישור כאמור יבוא במקום כל אישור אחר הנדרש על פי דין או הסכם לצורך תיקון התקנון והחלפתו.

## ח. הוראות כלליות

83. המבוא להסדר זה והנספחים לו מהווים חלק בלתי נפרד ממנו; כותרות הסעיפים הינן לצורך הנוחות בלבד ולא יסתמכו עליהן בפירוש או בביאור הסדר זה.

84. בכל מקום בהסדר זה שבו נדרש אישורו של מנהל ההסדר או נתונה לו סמכות הכרעה, יהיה מנהל ההסדר רשאי, לפי שיקול דעתו, לפנות לבית המשפט הנכבד בבקשה למתן הוראות בטרם מתן החלטתו, וככל שלא עשה כן יהיה צד הרואה עצמו נפגע מהחלטה כאמור, רשאי לפנות בבקשה למתן הוראות לאחר מתן החלטתו, החלטת בית המשפט תחייב את הצדדים.

85. לצרכי פרשנות הוראות הסדר זה, תחשבנה הוראות הסדר זה והוראות איזה מנספחיו כמשלימות זו את זו וככאלו הדרות בכפיפה אחת.

86. כל שינוי, תיקון או תוספת להסדר, לא יהא להם תוקף וייחשבו כלא נעשו, אלא אם כן ייעשו בכתב, ייחתמו על ידי החברות, ויאושרו על ידי בית המשפט הנכבד.

87. התייחסות להסדר זה או להוראה ספציפית בהסדר זה או למסמך אחר כלשהו, תפורש כהתייחסות להסדר זה, להוראה האמורה או למסמך האמור, כפי שהינם בתוקפם באותה העת ובכלל זאת כפי שתוקנו, שונו, או הושלמו מפעם לפעם, נכון לעת הרלוונטית.

88. בהסדר חוב זה לשון יחיד כוללת רבים, ולהיפך; לשון מין זכר כוללת מין נקבה, ולהיפך; המונח "אדם" כולל כל אדם פרטי, תאגיד, חברות, שותפות (בין רשומה ובין שאינה רשומה), עמותה, נאמנות, גוף מאוגד או בלתי מאוגד וכל ישות משפטית אחרת.

89. הסדר זה, ביחד עם נספחיו, ממצים את כל ההסכמות, ההתניות וההצהרות בין החברות לנושים המותנים בקשר עם העניינים המוסדרים בו, ולא יהיה תוקף לכל הצעה, סיכום, הבנה, מצג או הבטחה בקשר אליהם שנעשו או ניתנו קודם לכניסתו לתוקף של הסדר זה ע"י מי מהצדדים, בין בכתב ובין בעל-פה, בין במפורש ובין במשתמע, אלא כאמור בהסדר זה.

90. הימנעות של מי מהצדדים משימוש בזכות כלשהי הנתונה לו לפי הסדר זה או על פי דין, או דחיה או שיהוי בשימוש כאמור, לא יחשבו כוויתור על הזכות האמורה, ולא יהיה בהפעלה חלקית או חד-פעמית של זכות כאמור כדי למנוע הפעלה נוספת או אחרת שלה, או של כל זכות אחרת. ארכה או הקלה שניתנו, או ויתור או פשרה שנעשו, במקרה כלשהו, ע"י איזה מהצדדים, לא יפורשו כתקדים או כוויתור לגבי מקרה אחר ולא יגרעו מזכויות אותו צד, לפי הסדר זה או לפי דין.

91. שום טיוטות של הסדר זה ונספחיו לא תהיינה קבילות כראיה בפני גופים שיפוטיים ו/או מעין שיפוטיים, לרבות בוררים ו/או פוסקים, ולא ישמשו לפרשנות הסדר זה, תניותיו או נספחיו.

92. על הסדר זה יחולו דיני מדינת ישראל בלבד והוא יפורש על פי ובהתאם להם.

93. הסמכות המקומית הייחודית והבלעדית בכל עניין הנוגע להסדר זה תהא נתונה לבית המשפט המוסמך בתל אביב-יפו. אין באמור כדי לגרוע מנקיטת הליכים לפי פרק 15 ל- U.S. Bankruptcy Code. ואולם, פנייה כאמור לא תיחשב כהסכמה לסמכות שיפוט של ערכאה זרה ביחס לכל מחלוקת הנוגעת לפרשנותו, יישומו וביצועו של הסדר זה.

94. בכל מקרה של סתירה, אי התאמה בין הוראות הסדר זה לבין הוראות מי מנספחיו, תגברנה הוראות הסדר זה, אלא אם נקבע אחרת במפורש.

95. מבלי לגרוע מהוראות הסדר זה, יהא מנהל ההסדר, וכן כל אחד מהצדדים, רשאי לפנות לבית המשפט בבקשה למתן הוראות בכל עניין הנוגע לפרשנותו, יישומו, ביצועו או אכיפתו של הסדר זה.

96. הוראות הסדר זה תחייבנה ותזכינה את הצדדים לו, וכן את חליפיהם, נמחיהם, נעבריהם, יורשיהם, וכל הבא מכוחם, לפי העניין ובכפוף להוראות הדין.

**נספח 1 - לוח תשלומים לקופת מנהל ההסדר**

## <u>לוח תשלומי פאפאייה לקופת מנהל ההסדר</u>

פאפאייה תפקיד במהלך תקופת ההסדר סך כולל של עד $862,865,000 (שמונה מאות ששים ושניים מיליון, ושמונה מאות וששים וחמישה אלף דולר) לקופת מנהל ההסדר (או סכום אחר, הכל כפי שיידרש על פי ההסדר), על פי פריסת התשלומים כדלקמן, והכל בכפוף להוראות ההסדר :

1. תוך 14 ימים ממועד כניסת ההסדר לתוקף, סך של $60,000,000 (שישים מיליון דולר).
2. תוך 15 ימים מתום שנת 2026, סכום של $30,000,000 (שלושים מיליון דולר).
3. תוך 15 ימים מתום שנת 2027, סכום של $75,000,000 (שבעים וחמישה מיליון דולר).
4. תוך 15 ימים מתום שנת 2028, סכום של $100,000,000 (מאה מיליון דולר).
5. תוך 15 ימים מתום שנת 2029, סכום של $120,000,000 (מאה ועשרים מיליון דולר).
6. תוך 15 ימים מתום שנת 2030, סכום של $130,000,000 (מאה ושלושים מיליון דולר).
7. תוך 15 ימים מתום שנת 2031, סכום של $150,000,000 (מאה וחמישים מיליון דולר).
8. תוך 6 שנים ממועד כניסת ההסדר לתוקף, סכום של $197,865,000 (מאה תשעים ושבעה מיליון ושמונה מאות וששים וחמישה אלף דולר), או סכום אחר שישקף באותו מועד את יתרת החובות האכיפים.