# EXHIBIT A-1

## Debt Arrangement
## (Certified English Translation)

# Debt arrangement between the companies Papaya Gaming Ltd. and Papaya Gaming Inc. and their creditors

## In accordance with the provisions of Part J of the Insolvency and Economic Rehabilitation Law, 5778-2018

## A. Interpretation and Definitions

Unless expressly stated otherwise, the following terms shall have the meanings set forth opposite them below in this Arrangement:

| | |
|---|---|
| The Tel Aviv-Yafo District Court hearing the Application for Approval of the Arrangement. | The **"Court"** |
| Any person or corporation that, directly or indirectly, holds shares in the Companies on the Arrangement Effective Date. | **"Shareholders"** |
| United States dollar. | "Dollar" or "**$**" |
| An application for an order convening meetings for the purpose of approving this Debt Arrangement, filed with the Court. | **"Application for Approval of the Arrangement"** |
| This proposed Debt Arrangement and, if approved with certain amendments, as so approved. | "**Arrangement**" or "**Debt Arrangement**" |
| Papaya Gaming Ltd., Company No. 515422095 ("**Papaya Israel**" or the "**Company**"), and Papaya Gaming Inc., Company No. 32-0533649 ("**Papaya Inc.**") (collectively: the "**Companies**"). | The **"Companies"** |
| The Insolvency and Economic Rehabilitation Law, 5778-2018. | The **"Law"** |
| Uriel Bachar, I.D. 201410008<br>Alex Liakhovetsky, I.D. 310520036<br>Andrey Birman, I.D. 310650387 | The "**Founders**" |
| The Commissioner of Insolvency Proceedings and Economic Rehabilitation. | The **"Commissioner"** |
| The condition precedent to the Arrangement set forth in Chapter D of this Arrangement. | **"Condition Precedent to the Arrangement Taking Effect"** |
| The Insolvency and Economic Rehabilitation Regulations, 5779-2019. | **"Regulations"** |

| | |
|---|---|
| Papaya Israel, Papaya Inc., Papaya Gaming UK Ltd. registered in England, Papaya Gaming India Private Limited registered in India, Papaya Gaming Brazil LTDA registered in Brazil, Papaya Poland Sp. Z o.o registered in Poland, Papaya Stars Ltd. registered in Israel, Papaya Payments Inc. registered in the US. | **"Group Companies"** |
| A debt by virtue of an enforceable monetary judgment. | **"Enforceable debt"** |
| An alleged debt arising from any of the grounds enumerated in the definition of Contingent Creditor. | **"Contingent Debt"** |
| The cash balance held in the bank accounts of the Group Companies, in Israel and abroad, less only: (a) the amounts pledged in favor of the banks in which the balances are held, as follows: deposits securing bank guarantees issued to lessors of properties, credit card payments, and hedging transactions; (b) credit balances of players; and (c) an amount of USD 30 million designated for ongoing operational management. | **"Available Cash Balance"** |
| The deadline for submitting claims of debt (hereinafter also: "Proofs of Debt"), as stipulated in Section 67 of Chapter F below, or such other deadline as may be determined by the Court. | **"Claims Submission Deadline"** |
| A date to be determined in coordination with the Arrangement Administrator within 14 days of the fulfillment of the Condition Precedent. | **"Effective Date of the Arrangement" or "Date of Entry into Force of the Arrangement"** |
| A Contingent Creditor who has obtained an Enforceable Monetary Judgment against any of the Companies or whose claim of debt has been adjudicated by the Arrangement Administrator and who has been found entitled to payment, subject to the provisions of Section 75 of the Arrangement regarding any person who may be included in the group of plaintiffs in the class action proceedings pending in Israel against the Company. | **"Eligible Creditor"** |
| A creditor who is not among the Excluded Creditors and who, as of the date of filing the Application for Approval of the Arrangement - | **"Contingent Creditor"** |

| | |
|---|---|
| (a) is conducting legal proceedings against the Companies, or any of them, which are pending before judicial tribunals on grounds relating to past practices involving the use of bots and anything arising therefrom or connected therewith, directly or indirectly; or<br>(b) alleges the existence of grounds for instituting legal proceedings on the grounds referred to in subsection (a), even if no legal proceedings have been instituted in respect thereof; or<br>(c) has obtained a foreign judgment in their favor, on the grounds referred to in subsection (a), against the Companies or any of them, which remains subject to appeal and therefore has not yet become an Enforceable Monetary Judgment in Israel. | |
| Each of the following:<br>All suppliers and employees of the Companies;<br>All players, except in respect of grounds relating to past practices involving the use of bots and anything arising therefrom or connected therewith, directly or indirectly;<br>Tax authorities, the National Insurance Institute, provident funds, and pension funds;<br>The Attorney General of the State of New Jersey. | **“Excluded Creditors”** |
| Money deposited pursuant to the Arrangement into the fund held by the Arrangement Administrator, which shall serve as a dedicated source of funds for repayment of the Companies' debts to Eligible Creditors, as stipulated in this Arrangement. | **“Arrangement Administrator's Deposit”** |
| A judgment enforceable in Israel, as follows:<br>(a) With respect to a judgment rendered in a foreign country – a foreign judgment satisfying all the conditions for enforcement of a foreign judgment, within the meaning of Section 3 of the Enforcement of Foreign Judgments Law, 5718–1958;<br>(b) With respect to a judgment rendered in the State of Israel: a judgment rendered by a court of competent jurisdiction in Israel for which no stay of execution has been ordered. | **“Enforceable Monetary Judgment”** |
| The order referred to in Chapter D of this Arrangement. | The **“Court Order”** |
| Interest at the average weekly yield rate on one-year U.S. government bonds (One-Year U.S. Treasury Securities), calculated on a daily basis and added to the principal once a year. | **"Arrangement Interest"** |
| A period of 6 (six) years specified in **Annex 1**. | **"The Settlement Period"** |

## B. The Debt Arrangement – General

1. The purposes of this Arrangement are: (1) to ensure the ability to pay all Contingent Debts if and to the extent that they become enforceable debts in Israel, all in accordance with the terms of the Arrangement; and (2) to enable the Companies to continue their business operations and retain the personnel essential to their operations.

2. The Companies have a Contingent Debt to Contingent Creditors, the amount of which exceeds their cash balances, due to a foreign judgment (which is not final and is subject to appeal) rendered in favor of Skillz Platform Inc..[1]

3. As of the Effective Date of the Arrangement, this Arrangement shall constitute the exclusive, final, and exhaustive framework for regulating the relationships, rights, and obligations between the Companies and the Contingent Creditors, provided that the Arrangement shall not preclude the continuation of the proceedings pending between the Companies and the Contingent Creditors in connection with obtaining an Enforceable Monetary Judgment.

4. The Arrangement shall not apply to the Excluded Creditors, and approval of the Arrangement shall not result in any change to the rights of the Excluded Creditors or the determination of their rights. All ongoing obligations of the Companies to the Excluded Creditors shall continue to be paid in full and on time.

5. Accordingly, the Excluded Creditors are not required to submit Proofs of Debt. The amounts due to them, as detailed in the original Application for Approval of the Arrangement and its annexes, shall continue to be paid in full and on time. The specification of the amounts in Form 1 arises solely from legal requirements, and it is clarified that it shall not prevent an Excluded Creditor from disputing, in the ordinary course of business, the amounts stated therein.

6. Similarly, players who have deposited or will deposit funds using the Companies' platform may continue to use such funds, whether for playing games or for withdrawing them, all in the ordinary course of business, in accordance with the Terms of Use.

7. All proceedings pending before judicial tribunals against the Companies or any of them on the date of filing the Application for Approval of the Arrangement, which were stayed pursuant to the stay of proceedings order issued in this case and have not yet been resumed, shall be resumed individually in accordance with formal orders submitted or to be submitted by agreement to the Court for the purpose of their resumption. Payment of any judgment in favor of an Eligible Creditor shall be made, insofar as required, in accordance with the provisions of this Arrangement.

---

[1] Skillz Platform Inc. v. Papaya Gaming, Ltd. et al., No. 1:24-cv-01646-DLC (S.D.N.Y.)

8. During the Arrangement Period, the Companies shall continue to operate in the ordinary course of business, and the Companies' management and Boards of Directors shall remain in their positions, with the Arrangement Administrator operating alongside them, to ensure the optimal continuation of their business operations.

## C. Terms of the Proposed Arrangement for Creditors

### C(1). General:

9. During the Arrangement Period, all ongoing obligations to all Excluded Creditors shall be paid in accordance with their payment terms, in the ordinary course of business.

10. The Contingent Debts shall be paid only to Eligible Creditors, that is, only after the Contingent Creditor has obtained an Enforceable Monetary Judgment, unless (1) the Contingent Creditor's claim is not the subject of pending legal proceedings, in Israel or abroad, or (2) the Contingent Creditor has submitted an independent Proof of Debt to the Arrangement Administrator, in which case the Arrangement Administrator shall adjudicate the Proof of Debt as stipulated in Section 76 below.

11. The Companies undertake to repay in full all Contingent Debts that become Enforceable Debts. The Arrangement Administrator's Deposit, the securities, and the allocations of shares pursuant to this Arrangement are means solely for securing and spreading out repayment, and shall not limit the sources of repayment or derogate from the Companies' liability to repay all such debts in full, provided that during the Arrangement Period and for as long as the Arrangement is complied with, the sources of repayment and the payment schedule shall be solely in accordance with the provisions of the Arrangement.

12. At the end of the Arrangement Period, any outstanding balance of an Enforceable Debt shall become due and payable. The balance of the debts owed to Contingent Creditors that have not yet become Enforceable Debts shall be repaid, if and when they become enforceable, in the ordinary course of business. However, the funds and securities deposited and/or delivered to the Arrangement Administrator pursuant to the Creditors' Arrangement shall serve as security for the repayment of these debts until the conclusion of the pending proceedings, unless the Court has issued a decision pursuant to Section 24 below.

### C(2). Repayment of Contingent Debts

13. An Eligible Creditor in whose favor an Enforceable Monetary Judgment has been rendered against any of the Companies in an amount not exceeding $5,000,000 (five million dollars) shall

be paid the full amount of the judgment in the ordinary course of business, and not from the Arrangement Administrator's Deposit.

14. An Eligible Creditor in whose favor an Enforceable Monetary Judgment has been rendered against any of the Companies in an amount exceeding $5,000,000 (five million dollars) shall be entitled to receive the full amount of the judgment from the Arrangement Administrator's Deposit, as detailed in Chapter C(4)below.

## C(3). Establishment of the Arrangement Administrator's Deposit and Deposits Thereto

15. Within 14 days of the Effective Date of the Arrangement, Papaya Israel shall deposit an initial amount of $60,000,000 (sixty million dollars) into a dedicated bank account to be opened by the Arrangement Administrator.

16. In addition to the initial deposit referred to in Section 15 above, Papaya Israel shall deposit into the Arrangement Administrator's Deposit account each year, no later than January 15, an amount equal to the Available Cash Balance as of January 03 of that year, but in any event not exceeding the amounts specified in Annex 1 to this Arrangement, and not less than the minimum amounts as defined in Chapter C(10) below. Should the Company elect to deposit amounts exceeding those specified in Annex 1, such amounts shall be credited against the amounts the Company is obligated to deposit in the following year. In any event, the obligation to make deposits shall cease once an amount equal to the total Contingent Debts, together with the interest accrued thereon, has been deposited into the Arrangement Administrator's Deposit.

17. The funds held in the Arrangement Administrator's Deposit shall be invested in One-Year U.S. Treasury Securities or in a bank deposit bearing interest at the Arrangement Interest rate. All profits, yields and/or income accrued and/or generated in connection with the deposit and/or investment of these funds shall be credited to the Arrangement Administrator's Deposit and shall be used solely for the purpose of making payments pursuant to this Arrangement and exclusively in accordance with its provisions.

## C(4). Use of the Arrangement Administrator's Deposit and Payments Therefrom:

18. An Eligible Creditor shall apply to the Arrangement Administrator following the issuance of an Enforceable Monetary Judgment in its favor in an amount exceeding $5,000,000, and shall provide the Arrangement Administrator with all documents required to substantiate its claim. The Arrangement Administrator shall review the documents submitted to him and shall pay

the Eligible Contingent Creditor, from the Deposit held by him, the amount of the Enforceable Monetary Judgment within thirty days, subject to the provisions below.

19. An Eligible Creditor as aforesaid, for whom the amount of the Enforceable Monetary Judgment rendered in its favor exceeds the amount paid to it in a particular calendar year, shall be entitled to continue receiving annual payments from the Arrangement Administrator until the full amount of the Enforceable Monetary Judgment rendered in its favor has been discharged.

20. If, at any time when a payment is to be made from the Arrangement Administrator's Deposit, the Arrangement Administrator has more than one Enforceable Monetary Judgment awaiting payment, the Arrangement Administrator shall distribute the amount payable among those Eligible Creditors entitled to such payment on a proportional (pro rata) basis, according to the ratio between the outstanding balances of the Enforceable Monetary Judgments due for payment at that time.

21. Arrangement Interest shall accrue on the debts owed to Contingent Creditors from the date specified in the relevant judgment. Arrangement Interest on the Contingent Debts shall replace any other interest under law or agreement. However, notwithstanding any other provision of this Arrangement, with respect to interest on debts arising from a settlement agreement, including one that has been given the force of a judgment, only the provisions of the settlement agreement shall apply.

22. Notwithstanding the foregoing, with respect to the judgment in the Milberg action, insofar as it becomes an Enforceable Debt, and assuming its amount remains unchanged, only an amount of approximately $6.4 million shall be paid in respect thereof from the Arrangement Administrator's Deposit, in accordance with information provided by the administrator in the Milberg lawsuit, according to which the balance of approximately $8.6 million will be paid by crediting the players' accounts with in-game cash, and such crediting shall be carried out by the Applicants without charging the Arrangement Administrator's Deposit.

23. Amended Annex 1 attached to the Arrangement sets forth a payment schedule providing for payments into the Arrangement Administrator's Fund throughout the Arrangement Period, including payment of all Contingent Debts as currently known, including the Skillz Judgment, the judgment in the Milberg action, as well as payment of interest at the Arrangement Interest rate, taking into account the yield that will accrue on the deposits in the Arrangement Administrator's Deposit. In this regard, it is clarified that if, in the class proceeding as defined in section 75 below, a motion to certify a class action against the Applicants or any of them is approved, then the Arrangement Administrator shall assess the amount of the claim, after receiving arguments and data from the class plaintiff and from the Company. Upon determination of such assessment, and insofar as the assessed amount exceeds $5,000,000, the

Company shall be obligated to add amounts to the deposit schedule reflecting such increase, to secure payment of the judgment when rendered, if rendered. For the avoidance of doubt, it is clarified that the Arrangement Administrator's assessment shall be conducted solely for the purpose of increasing the deposits into the Arrangement Fund as security for payment of an Enforceable Judgment in the Class Action Proceedings, and for making a payment on account of the immediate distribution as referred to in Section 40 below, and shall not obviate the need for adjudicating the Class Action Proceedings until an Enforceable Judgment is obtained for the purpose of payment thereof.

24. If the entitlement of all Contingent Creditors ceases, whether because their debts have been repaid, or because their claims have been dismissed and/or settled and/or struck out, or the like, and/or the Court determines that the Applicants are able to pay them in the ordinary course of business, the obligation to make annual deposits into the Arrangement Administrator's Deposit shall cease, and the Arrangement Administrator shall transfer to Papaya Israel the remaining balance of the Deposit and the remaining shares of any class, and any security provided to him, insofar as any remain in his possession.

## C(5). Arrangement Securities

25. To secure the performance of the obligations of the Company and the Shareholders under this Arrangement, the following provisions have been established:

a) **Deposit**: The Arrangement Administrator's deposit as detailed in Chapter C(3) above. The funds deposited into the Arrangement Administrator's Deposit shall be held in trust for the Contingent Creditors to secure payments to such creditors in accordance with the provisions of this Arrangement and shall be pledged to secure these obligations by way of a possessory pledge. The Arrangement Administrator may, at his discretion, require the registration of a first-ranking fixed charge over the Arrangement Administrator's Deposit for this purpose. An initial payment shall be deposited with the Arrangement Administrator within 14 days as of the Effective Date of the Arrangement. Upon repayment in full of all debts owed to Eligible Creditors pursuant to this Arrangement, the charge shall expire, and the Arrangement Administrator shall sign any document required to remove it from any register.

b) **Founders' Contribution**: The three Founders shall waive the annual bonus to which they are entitled under their terms of employment, and this amount (representing approximately $25 million over the Arrangement Period) shall be added to the Arrangement Administrator's Deposit (hereinafter: the "**Founders' Contribution**"), all as detailed in Chapter C(6) below.

c) **Arrangement Administrator Shares**: The Arrangement Administrator Shares, as detailed in Chapter C(6) below, shall be allocated and deposited with the Arrangement Administrator, in trust for the benefit of the contingent creditors, on the effective date of the arrangement.

d) **Pledge of Papaya Inc. shares**: As detailed in Chapter C(8) below, shall be effected on the Effective Date of the Arrangement.

e) **Immediate distribution**: An immediate distribution will be carried out as detailed in Chapter C(9) below, on the Effective Date of the Arrangement.

f) **Minimum Payments**: Minimum payment amounts as detailed in Chapter C(10) below.

g) **Additional Shares**: The Additional Shares as specified in Section 46.c) below, shall be allotted and deposited with the Arrangement Administrator, in trust for the benefit of the Contingent Creditors, within 21 days of the date on which the Arrangement Administrator notifies the Company that the conditions specified in this Arrangement requiring the allotment have been fulfilled, setting out in the notice the calculation required to determine the number of shares in accordance with the mechanism stipulated therein.

h) **Restricted Shares**: The Restricted Shares, as detailed in Section 52, shall be deposited in trust with the Arrangement Administrator on the Effective Date of the Arrangement.

i) **Restriction Period Applicable to All Existing Shareholders**: The existing Shareholders shall be prohibited from selling, transferring, pledging, or granting any other right in all of their shares, throughout the Restriction Period as defined in Section 53 below. To give full effect to this provision, the Company's Articles of Association shall be amended in the form attached as **Annex 2** to this Arrangement (the "**Amended Articles of Association**"), and the resolution approving the Arrangement shall also constitute approval of the amendment to the Articles of Association.

j) **Personal Guarantees**: The Shareholders shall provide and deposit with the Arrangement Administrator, within fifteen days of the Effective Date of the Arrangement, limited personal guarantees such that the aggregate amount of the personal guarantees shall amount to $5,000,000 (five million dollars) (hereinafter: the "**Personal Guarantees**") to secure the Owners' Contribution as referred to in Section 46 below.

(1) The identity of the guarantors and the manner in which liability is allocated among them shall be specified in the deeds of guarantee to be attached as an annex to the Arrangement before the voting date. To secure the performance of the guarantees, collateral in the form of cash deposits, conservative marketable securities, or real estate shall be provided in favor of the Arrangement

Administrator within 30 days of the Effective Date of the Arrangement (hereinafter - the "**Guarantee Collateral**").

(2) A Shareholder who provides a Personal Guarantee and collateral as aforesaid (whether personally or through a third party) shall be entitled to be issued, in consideration for providing the Personal Guarantee and collateral, options convertible into preference shares as detailed below, without any additional exercise consideration (hereinafter: "**the Options for the New Preferred Shares**" and following conversion "**the New Preferred Shares**"). The New Preference Shares shall confer upon their holders priority in the distribution of dividends up to a specified amount, as well as preferential rights in the event of a sale of the Company or an initial public offering of its shares, as shall be detailed in the Amended Articles of Association (the "**Preferential Priority Rights**"), which shall be proportionate to the amount of collateral provided. The New Preference Shares shall expire once the holder of such a share has received the amount of the Preferential Priority Rights to which the holder is entitled under the terms of the New Preference Shares.

(3) For the avoidance of doubt: The New Preference Shares shall be subject to the distribution restrictions stipulated in the Creditors' Arrangement; and, for the further avoidance of doubt: Insofar as Options for New Preference Shares are issued as aforesaid, such options shall also be issued to the Arrangement Administrator, as stipulated in Chapter C(6) below.

(4) A Shareholder who has provided a Personal Guarantee and Guarantee Collateral as referred to in subsections (1) and (2) above shall be entitled to replace the collateral provided to secure his guarantee with other collateral, or even to replace his Personal Guarantee, including the Guarantee Collateral, with a guarantee provided by another Shareholder, including Guarantee Collateral to be provided by such other Shareholder, subject to the prior written approval of the Arrangement Administrator, at his discretion. Any transfer of Options for New Preference Shares and/or transfer of New Preference Shares made in connection with a replacement approved as aforesaid shall be deemed a permitted transfer notwithstanding the provisions of Section 49 below and the Amended Articles of Association.

k) No later than the Effective Date of the Arrangement, appropriate consents and approvals shall be obtained, insofar as required, from third parties, including Shareholders in relation to the provision of Personal Guarantees and Guarantee Collateral, the Founders' approval in relation to the Restricted Shares and the Founders' Contribution, and the approval of the relevant Group Companies in relation to their obligations as stipulated in the Arrangement.

## C(6). <u>Founders' Contribution</u>

26. During the Arrangement Period, the Founders shall waive the annual bonus to which they are entitled under their terms of employment.

27. This amount (representing approximately $25 million over the Arrangement Period) shall be transferred directly by the Company to the Arrangement Administrator's Deposit.

28. Only after payment in full of all debts owed to Eligible Creditors and completion of the Arrangement shall the Founders be entitled to receive from the Company the amounts they waived as aforesaid, together with interest pursuant to law. Such repayment shall have priority over the payment of dividends to Shareholders.

## C(7). <u>Arrangement Administrator's Shares – Additional Security for Securing the Debts Owed to Contingent Creditors</u>

29. On the Effective Date of the Arrangement, the Company shall allot new ordinary shares which, following their allotment, shall constitute 25% of the issued and paid-up ordinary share capital of the Company, as well as 25% of the Options for New Preference Shares to be issued as aforesaid. The aforementioned shares shall be allotted to the Arrangement Administrator, in trust for the benefit of the Contingent Creditors, to secure repayment of the debts owed to them pursuant to the Arrangement (hereinafter: the "**Arrangement Administrator's Shares**"). The Arrangement Administrator's Shares shall confer voting rights upon their holder only after their realization in accordance with the provisions of this Arrangement. For this purpose, the Arrangement Administrator shall grant the Company's Board of Directors a power of attorney to vote the shares, all as set forth in the power of attorney attached as **<u>Annex 3</u>**. The power of attorney shall remain in effect until the realization of the Arrangement Administrator's Shares as detailed in this Arrangement.

30. The Company shall be entitled to make early repayment, in full or in part, of the debts owed to the Contingent Creditors at any time. The Arrangement Administrator shall return all the shares allocated to him to the company (and they shall become dormant shares) against the transfer of funds to the Arrangement Administrator's fund in the amount of the full debts to the Contingent Creditors.

31. If, at the end of 5 (five) years from the Effective Date of the Arrangement, the Company has not transferred to the Arrangement Administrator's Fund funds in an amount equal to the full amount of the Enforceable Debts owed to Eligible Creditors, the Arrangement Administrator shall be entitled, but not obligated, after obtaining the position of the Contingent Creditors and subject to Court approval, to realize all or part of the Arrangement Administrator's Shares, whether by transferring them to Eligible Creditors at a price per share as detailed in Section 46.c) or by selling them to the highest bidder, and to use the proceeds of realization, less

reasonable realization expenses approved by the Court, to make payments to Eligible Creditors and/or deposit the amounts into the Arrangement Administrator's Fund until the conditions prescribed for their distribution to the Contingent Creditors are fulfilled. If the proceeds from the realization of the Arrangement Administrator's Shares are insufficient to bring the amounts deposited in the Arrangement Administrator's Fund to an amount equal to the entire outstanding balance of the debts owed to the Contingent Creditors, the Company shall continue to deposit funds into the Arrangement Administrator's Fund in accordance with the provisions of this Arrangement until all debts owed to the Contingent Creditors have been paid in full. Arrangement Administrator's Shares that have been sold, with the proceeds thereof transferred to the Deposit, or that have been transferred to Eligible Creditors as aforesaid, shall be taken into account, at the value attributed to them in accordance with the provisions of the Arrangement, for the purpose of any calculation under this Arrangement, and shall be treated in the same manner as any actual deposit made into the Arrangement Administrator's Fund.

32. Before the Arrangement Administrator realizes the Arrangement Administrator's Shares as aforesaid (and in any event not before the expiration of the five-year period referred to in Section 31), the Company shall be granted a period of 90 days to raise capital or otherwise make up the outstanding balance of the debts. If the outstanding balance is not made up within the aforesaid period, the Arrangement Administrator shall be entitled to realize the shares, provided that such realization is subject to the limitations set forth in Section 31 above.

## C(8). <u>Pledge of Papaya Inc. shares</u>

33. To secure the performance of all obligations of the Companies under this Arrangement, Papaya Israel shall pledge in favor of the Arrangement Administrator, in trust for the benefit of the Contingent Creditors, by way of a sole, first-ranking fixed charge, all of its holdings in the shares of Papaya Inc. (hereinafter: the "**Pledge of Papaya Inc. Shares**"). The pledge shall be created on the Effective Date of the Arrangement and registered in every register required by law, in Israel and abroad, within 21 days of its creation.

34. For as long as the pledge has not been realized, the voting rights and rights attached to the pledged shares shall remain with Papaya Israel, and the Companies shall be entitled to continue managing the operations of Papaya Inc. in the ordinary course of business, subject to the provisions of this Arrangement. During the period in which the pledge remains in effect, Papaya Israel shall not create any additional charge over the pledged shares or transfer any rights therein.

35. The Arrangement Administrator shall be entitled to realize the Pledge of Papaya Inc. Shares only upon the occurrence of an Event of Breach of the Arrangement, within the meaning of this Arrangement, which has not been remedied within 60 days of written notice being given to the Companies, and subject to Court approval. The proceeds of realization, less reasonable

realization expenses approved by the Court, shall be used to make payments to Eligible Creditors and/or deposited into the Arrangement Administrator's Fund, in addition to any other remedy available to the Contingent Creditors under this Arrangement.

36. Upon repayment in full of all debts owed to Eligible Creditors pursuant to this Arrangement, the Pledge of Papaya Inc. Shares shall expire, and the Arrangement Administrator shall sign any document required to remove it from any register.

## C(9). Immediate Distribution to Contingent Creditors (Safety Net)

37. Whereas, under the Arrangement, Contingent Creditors whose claims of debt approved for voting purposes are less than $5 million are entitled, upon obtaining an Enforceable Monetary Judgment in connection with their claims, to payment from the Company's ongoing cash flow, regardless of the sources of the Arrangement Administrator's Deposit (as they shall be at the time such Enforceable Judgment is obtained), unlike Contingent Creditors whose claims of debt approved for voting purposes exceed $5 million, it is hereby stipulated that the Arrangement Administrator shall pay Contingent Creditors whose claims of debt approved for voting purposes exceed $5 million, it is hereby stipulated that the Arrangement Administrator shall pay the Contingent Creditors, whose approved debt claim amount for voting purposes exceeds 5 million dollars, an immediate advance payment of $20,000,000 (twenty million dollars) from the initial amount deposited with him shortly after the Arrangement takes effect, as stated in section 15 above, all as detailed below (hereinafter: the "**Immediate Distribution**").

38. The Immediate Distribution shall be made within 14 (fourteen) days of the Effective Date of the Arrangement and shall be distributed in proportion to the amount of each creditor's claim of debt approved for voting purposes, as referred to in Section 37 above out of the aggregate amount of the Contingent Creditors' claims of debt exceeding $5 million that have been approved for voting purposes.

39. The amount of the Immediate Distribution shall be deemed an advance payment on account of future payments due to each Contingent Creditor under the Arrangement. However, notwithstanding the foregoing, an amount paid as part of the Immediate Distribution shall not be returned to the Company, even if it is subsequently determined that the Contingent Creditor concerned is not entitled to future payments in the amount of the advance distributed to it, or to any future payments whatsoever.

40. With respect to a Contingent Creditor who is a plaintiff in the Class Action Proceedings as defined in Section 75 below, if, in the Class Action Proceedings in which such creditor is a plaintiff, the action is certified as a class action, and, in the assessment conducted by the Arrangement Administrator pursuant to Section 23 above, he assesses the class action claim at

an amount exceeding $5 million, the representative plaintiff and the members of the plaintiff class shall be entitled to receive an amount on account of the Immediate Distribution, as a non-refundable advance payment on account of the judgment amount (the "**Deferred Immediate Distribution Amount**"). The Deferred Immediate Distribution Amount shall be calculated according to the proportionate share of the judgment amount as assessed, relative to the other Contingent Debts that participated in the Immediate Distribution pursuant to this Section, as though the Contingent Debt arising from the class action had existed on the date of approval of the Arrangement. The Deferred Immediate Distribution Amount shall actually be paid or deposited in trust in accordance with and subject to the instructions of the Court hearing the Class Action Proceedings.

41. The Immediate Distribution shall not constitute an admission of the claim of debt and shall not give rise to any claim or right on the part of the creditor beyond receipt of its share of the Immediate Distribution.

## C(10). Minimum Payments to the Arrangement Administrator's Fund and Mechanism for Increasing the Security

42. Annex 1 to the Arrangement includes the amounts of the annual payments designated for the Arrangement Administrator's Fund for the benefit of the Contingent Creditors on each payment date (hereinafter: the "**Annual Target Amounts**").

43. The Company shall provide the Arrangement Administrator, on January 31 and July 31 of each year, with a report on the Group's financial position, as well as additional information upon his reasonable request; the mechanisms detailed below shall be implemented once a year, as specified in subsection 45 below

44. The Company undertakes to pay into the Arrangement Administrator's Fund, on each of the dates specified in Annex 1, an amount of not less than 85% of the Annual Target Amount stipulated for that date (hereinafter: the "**Minimum Payments**").

45. Each year, within 30 days of the date specified in Annex 1, the Arrangement Administrator shall examine the Company's compliance with the cumulative Minimum Payments for the period elapsed from the approval of the Arrangement until the date of examination (hereinafter: the "**Review Periods**"). To the extent that the payments actually made during any examination period are less than the cumulative minimum payments (hereinafter: the "**Shortfall Amount**"), the actions detailed in subsection 46 below shall be taken.

46. Any deviation from the Minimum Payments in respect of any Review Period shall trigger the actions detailed in the following subsections:

a) The Shareholders shall be required to make up the shortfall between the actual cumulative payments and the cumulative Minimum Payments due up to that Review Period, as an owners' contribution (hereinafter: the "**Owners' Contribution**"). To secure the Owners' Contribution, personal guarantees shall be provided and collateral shall be made available as stated in Section 25.j). The Personal Guarantees shall be enforced only after the Arrangement Administrator has delivered written notice to the guaranteeing Shareholders specifying the amount of the Owners' Contribution required under their guarantees (hereinafter: the "**Required Amount**"), and the Shareholders have failed to pay the Required Amount in full within 30 days of receipt of the notice; insofar as part of the Required Amount has been paid (including in all such cases up to that date), the Arrangement Administrator shall be entitled, at his discretion, to take action to realize the Guarantee Collateral for the purpose of collecting the outstanding balance of the Required Amount, and insofar as legal proceedings are necessary for that purpose, the court of competent jurisdiction shall be the Court hearing this Creditors' Arrangement. Upon payment of the full amount of the guarantee, the guarantee shall expire, and insofar as not all the Guarantee Collateral has been realized, the Arrangement Administrator shall take action to release the charge thereon. If the Shareholders fail to make the Owners' Contribution in full, the sole sanction against them shall be enforcement of the rights under the Personal Guarantees, provided that the aggregate amount of all cumulative Owners' Contributions up to that date has not exceeded five million dollars, as detailed above in Section 25.j) above.

b) The Company shall be entitled, within an additional 60 days, to make up any amount not paid as aforesaid, up to the full Minimum Payments as aforesaid, by raising external capital or through another source of financing approved in advance and in writing by the Arrangement Administrator. It is clarified that any borrowing by the Company for this purpose shall be made by way of credit subordinated to the Company's debts to the Contingent Creditors, and the terms of such credit shall be subject to the approval of the Arrangement Administrator. All amounts raised by the Company pursuant to this Section (less direct fundraising costs) shall be deposited into the Arrangement Administrator's Deposit, unless otherwise approved by the Arrangement Administrator, with the approval of the Court.

c) If the entire Shortfall Amount has not been made up by the means specified above within the aforementioned cure periods, ordinary shares of the Company shall be allotted to the Arrangement Administrator against the outstanding Shortfall Amount (hereinafter: the "**Additional Shares**"). The allotment shall be made on the basis of the lower of (a) the price per share of the Company in its most recent financing round following the Effective Date of the Arrangement (and of the same class of shares as in such round), or (b) the price per ordinary share derived from a valuation of the Company conducted for the purposes of

the Arrangement and attached as **Annex 4** (the " **Valuation**") adjusted to actual revenue cash flow data as follows: The company's value according to the valuation will be multiplied by the proportion of the actual payment deposited into the Arrangement Administrator's fund up to that date (including the owners' contributions arising from the realization of the personal guarantees) in accordance with the total actual payment (for the entire period) relative to the annual target amounts. For example: If the actual payment, the owner's contribution and the external fundraising constitute together 82% of the Annual Target Amounts up to that date, the share price for the purpose of calculating the number of shares to be allotted shall be the share price according to the Valuation as of the Effective Date of the Arrangement multiplied by 82%.

d) If, at the time of allotment of the Additional Shares as aforesaid, there is an Eligible Creditor, or if, at a later date, a Contingent Creditor becomes an Eligible Creditor, who has not received the full payment due to it, the Arrangement Administrator shall be entitled to transfer to such creditor its Pro Rata Share of the Additional Shares, after obtaining the creditor's position and subject to the approval of the Court. For this purpose, the "Pro Rata Share" of an Eligible Creditor shall mean the ratio between the outstanding Enforceable Debt owed to that creditor and the aggregate outstanding Enforceable Debts owed to all Eligible Creditors, as at the date of transfer.

For as long as the Additional Shares are held in the Arrangement Administrator's Fund, they shall not confer voting rights, and to ensure this, the Arrangement Administrator shall grant the Company's Board of Directors a power of attorney to vote the Additional Shares, all as set forth in the power of attorney attached as **Annex 3**. The power of attorney shall remain in effect until the transfer or realization of the Additional Shares as detailed in this Arrangement. The company shall have the option to receive the additional shares back by making up the shortfall, whether through cash flow from current operations (provided that the company meets the minimum payments to the settlement fund), owner contributions, or external capital raising. Where shares have been transferred to an Eligible Creditor as aforesaid, the value of the shares transferred, as derived from the mechanism stipulated in subsection c) above, shall be credited against repayment of that creditor's debt. Upon making up all or part of the Shortfall Amount, the Arrangement Administrator shall return to the Company the shares allotted, in proportion to the Shortfall Amount made up, and they shall become dormant shares. Upon the occurrence of circumstances giving rise to the conversion of shares into dormant shares, the Arrangement Administrator shall submit an application to the Court for a formal order directing the Registrar of Companies to convert the shares into dormant shares.

47. **Deviation Caps on Deposit Amounts** – The Arrangement Administrator shall examine annually the cumulative deviation from the Minimum Payments (the "**Cumulative Deviation Amount**") and the annual deviation from the Annual Minimum Payments (the "**Annual Deviation Amount**"). For the purpose of such calculation, amounts contributed through Owners' Contributions, capital raising, or borrowing shall also be taken into account, provided that they were made in accordance with the restrictions and conditions stipulated in the Arrangement. If the Cumulative Shortfall Amount exceeds $75,000,000 (seventy-five million dollars) (the "**Cumulative Shortfall Cap**"), or if the annual shortfall exceeds 30% of the Annual Minimum Payment stipulated for the Review Year (the "**Annual Shortfall Cap**"), this shall constitute an Event of Breach and shall confer upon the Arrangement Administrator all the rights, remedies, powers, and authorities available to him to remedy the breach, including rights to enforce and realize security, in accordance with the provisions of the law and this Arrangement.

48. Status of the Additional Shares, funds raised, and payments made as detailed above, for the purpose of compliance with the provisions of the Arrangement:

a) Additional Shares issued, funds raised, and payments made as detailed above shall be taken into account for future Review Periods and shall be treated as deposits made into the Arrangement Administrator's Fund. However, for the purpose of calculating the Annual Deviation Amount or the Cumulative Deviation Amount, as defined above, Additional Shares issued to the Arrangement Administrator shall not be taken into account unless and until they have been realized for proceeds deposited into the Arrangement Deposit, or transferred to creditors in accordance with the provisions of the Arrangement and at the value attributed to them.

b) It is further clarified that Additional Shares allotted or deposited pursuant to this Arrangement constitute security only and do not constitute repayment of the debt, except where and to the extent that they have been realized, and only up to the amount of the proceeds actually received, or where shares have been transferred to creditors in accordance with the provisions of the Arrangement, in which case they shall be deemed repayment and their value shall be calculated in accordance with the mechanism stipulated in Section 46.c).

## C(11). <u>Additional Restrictions and Security</u>

49. **Restrictions on the Creation of Charges and Obtaining Credit**: During the Arrangement Period, neither the Company nor any of the Group Companies shall create any charge over all or part of their assets, nor shall they obtain credit or incur other financial obligations, except for: (1) supplier credit, (2) revolving credit facilities in the ordinary course of business in an amount of up to $<u>50 million</u> cumulatively for the Company and all Group companies; (3) credit

and charges required to finance the ongoing operations of the Company and the Group Companies, provided that the amount of credit secured by charges granted by the Company and the Group Companies shall not exceed $5 million; (4) charges existing on the Effective Date of the Arrangement and their renewal on similar terms. Any deviation from the foregoing shall require the prior written approval of the Arrangement Administrator.

50. **Prohibition on Distributions and Dividend Withdrawals**: During the Arrangement Period, the Company shall not make any distribution within the meaning of the Companies Law, 5759–1999, including dividend distributions and share buybacks, nor shall it make any other payment to its Shareholders or anyone acting on their behalf, whether directly or indirectly, except for the Founders' salaries and ancillary employment benefits as they stand on the Effective Date of the Arrangement.

51. **Prohibition on Interested-Party Transactions**: During the Arrangement Period, the Company shall not enter into any transaction, whether directly or through any of the Group Companies, with an interested party therein, any of the Founders, or any party related to any of them, except for the Founders' existing employment agreements, without any amendments or modifications thereto. Any other interested-party transaction shall require the prior written approval of the Arrangement Administrator, in addition to any approval required by law.

52. **Reverse Vesting Mechanism**: (a) On the Effective Date of the Arrangement, 50% of each Founder's holdings in the Company shall be classified as shares subject to vesting and deposited in trust with the Arrangement Administrator, and shall not be transferable, pledgeable, or subject to the granting of any other rights therein. The voting rights and dividend rights attached thereto shall remain with the Founder for as long as he is employed by the Company, subject to the provisions of the Arrangement concerning the prohibition on distributions (hereinafter: the "**Restricted Shares**"). (b) The Restricted Shares shall vest over five years from the Effective Date of the Arrangement, as follows: During the first two years from the Effective Date of the Arrangement, no vesting shall occur; at the end of the first two years, a tranche representing 40% of the Restricted Shares shall vest in a single installment; and the remaining Restricted Shares shall vest on a straight-line basis, quarterly, at a rate of 5% of the Restricted Shares at the end of each quarter, provided that the Founder is employed by the Company at that time. (c) If a Founder terminates his employment with the Company on his own initiative before the end of the vesting period, other than in the circumstances referred to in subsection (d) below, the Restricted Shares that have not yet vested at that time shall become dormant shares. (d) Notwithstanding the foregoing, full acceleration shall apply, and all Restricted Shares that have not yet vested shall vest immediately upon the occurrence of any of the following: (1) dismissal of the Founder by the Company, except in circumstances involving dismissal due to embezzlement, fraud, or breach of fiduciary duty; (2) a material adverse change in his position or job description without his consent; (3) a material

deterioration in his terms of employment compared with his terms of employment as they stand on the Effective Date of the Arrangement, without his consent; (4) the death of the Founder or his incapacity for work;. (5) repayment or extinguishment of all Contingent Debts.

53. **Prohibition on Transfer**: The Shareholders shall not be entitled to sell, transfer, pledge, assign, or grant any right, directly or indirectly ("**Transfer**"), in respect of all or part of their holdings in the Company throughout the Arrangement Period (the "**Restriction Period**"). Any Transfer in violation of this Section shall be void vis-à-vis the Company and shall not be recorded in the Register of Shareholders. The foregoing prohibition shall not apply to a Shareholder that is an entity engaged in investment activities, if the Transfer is made as part of a transfer of all its investments to a third party. Furthermore, the foregoing prohibition shall not apply to the Transfer of Options for New Preference Shares and/or New Preference Shares issued to a Shareholder in consideration for providing a Personal Guarantee and Guarantee Collateral as referred to in Section 25.j)(2) above, to another Shareholder, as part of the replacement of that Shareholder's Personal Guarantee with a Personal Guarantee and Guarantee Collateral to be provided by such other person.

54. **Restriction on Raising Capital and Credit**: Without derogating from the provisions of Section 49 above, during the Arrangement Period, the Company shall be entitled to raise capital or obtain credit solely for the purpose of making deposits into the Arrangement Deposit, whether to make up shortfalls, accelerate deposits, or recover all or part of the Additional Shares allotted to the Arrangement Administrator, unless otherwise approved by the Arrangement Administrator, with the approval of the Court. In raising capital, shares may be issued to an investor conferring priority over existing Shareholders, but only up to the amount of the investor's investment, unless otherwise approved by the Arrangement Administrator, with the approval of the Court.

55. **Maintenance of Insurance Coverage**: The Company and all Group Companies shall take steps to maintain in force throughout the Arrangement Period all existing material insurance coverage, pay the premiums therefor on time, and shall not cancel existing policies, cause them to lapse, or take steps to materially reduce their coverage.

56. This Arrangement shall terminate upon the full completion of all obligations and actions stipulated herein, in accordance with and subject to the provisions of this Arrangement.

## D. Condition Precedent to Implementation of the Debt Arrangement

57. The condition precedent to the Debt Arrangement taking effect is obtaining the Court's approval of this Arrangement (the "**Court Order**"), including an order granting a full, final, absolute, and binding discharge of the Companies as detailed in this Arrangement, in

accordance with Chapter F hereof, and the amendment of the Articles of the Company and their replacement with the Amended Articles, in accordance with Chapter G of the Arrangement, whether as part of the approval of the Arrangement or pursuant to an ancillary judicial decision.

58. If the Condition Precedent to this Arrangement taking effect is not fulfilled, or if this Arrangement does not take effect for any reason whatsoever, then, without derogating from any right or claim available to the Companies under law, the following provisions shall apply:

a) This Arrangement, including all its provisions and annexes, the agreements, proposals, waivers, representations, declarations, undertakings, and positions raised, submitted, or considered within its framework or in connection therewith, shall be null and void, have no force or effect, and shall not bind the Companies in any manner whatsoever;

b) Neither this Arrangement, nor the pleadings in the proceedings for approval of this Arrangement, nor any related proceedings, nor any part thereof, shall serve as evidence, an admission, representation, estoppel, waiver, consent, a basis for any contention concerning the extent, validity, amount, classification, priority, or manner of repayment of any debt, or a basis for any allegation, demand, claim, or proceeding of any kind whatsoever.

c) No party shall be entitled to rely on anything stated in this Arrangement or in the pleadings in the proceedings for approval of the Arrangement, or in related proceedings, in any judicial, quasi-judicial, arbitration, administrative, or other proceeding, in Israel or abroad;

d) In such event, the parties shall be restored, insofar as possible, to their legal, procedural, and commercial positions as they stood immediately prior to the filing of the Application for Approval of the Arrangement.

e) Subsections (b) and (c) above shall apply and remain in force in all circumstances, including where the Arrangement remains in effect, where it has taken effect and subsequently been canceled, and where it has not taken effect at all.

## E. Arrangement Administrator

59. The Arrangement Administrator is Adv. Gil Oren.

60. The remuneration of the Arrangement Administrator, as well as his expenses as approved by the Honorable Court, shall be determined and awarded by the Honorable Court in accordance with the provisions of law.

61. It is clarified that the remuneration and expenses of the Arrangement Administrator shall be borne by the Company and shall not be at the expense of the Creditors; insofar as they are paid from the Arrangement Administrator's Deposit, the Company shall replenish the Deposit with any amount so paid within 30 days.

62. The Arrangement Administrator shall be authorized to take any action required for the implementation, administration, execution, and enforcement of this Arrangement, as well as to obtain remedies for its breach, all in accordance with the provisions of law, the provisions of this Arrangement, and the decisions of the Honorable Court.

63. Without derogating from the generality of the foregoing, the Arrangement Administrator shall be authorized, inter alia, to:

a) Receive, examine, investigate, and adjudicate Proofs of Debt and claims of debt, in whole or in part;

b) Require any creditor, the Companies, or any other relevant party to provide any document, supporting evidence, data, affidavit, clarification, or information he deems appropriate for the performance of his duties;

c) Approve, reject, or amend Proofs of Debt, in whole or in part, and determine the amount, status, and classification of each debt for the purposes of this Arrangement;

d) Administer the Arrangement Administrator's Deposit, including receiving funds, holding them, investing them in accordance with the provisions of the Arrangement, insofar as permitted by law or pursuant to the Court's instructions, and making payments therefrom in accordance with the provisions of this Arrangement;

e) Determine the manner of submitting documents and applications to him, including deadlines, format, method of service, and formal requirements;

f) Apply to the Honorable Court, from time to time, for directions, approval of an action, resolution of a dispute, clarification of the provisions of this Arrangement, or any other relief required, at his discretion, for the performance of his duties;

g) Engage consultants, experts, accountants, attorneys, and other professionals, as he deems appropriate for the performance of his duties, and such expenses shall be deemed expenses of the Arrangement Administrator.

64. Without derogating from the foregoing, the Arrangement Administrator shall be entitled to receive from the Companies annual financial statements and periodic reports, as reasonably requested by him, concerning the financial position of the Group Companies as stipulated in this Arrangement, as well as additional information concerning the Applicants' compliance with their obligations under this Arrangement, upon his reasonable request; furthermore, the

Arrangement Administrator shall be entitled to attend, personally or through a representative on his behalf, meetings of the Company's Board of Directors as an observer, and to receive the materials provided to the directors in preparation for such meetings, without voting rights and subject to a duty of confidentiality. Without derogating from the generality of the foregoing, the Company undertakes to notify the Arrangement Administrator in writing, without delay, of any event constituting an existing or anticipated breach of the provisions of this Arrangement, as well as any concern regarding failure to meet deposit obligations, a material impairment of liquidity, attachment or freezing of an account, a material regulatory event, impairment of any security, or new legal proceedings having a material impact.

65. For the sake of good order, it is clarified that the Arrangement Administrator's responsibility is limited solely to the duties and powers assigned to him under this Arrangement and by law.

Proof of Debt Mechanism

66. Whereas the Arrangement provides that all ongoing obligations of the Companies to the Excluded Creditors shall continue to be paid in full and on time, the Excluded Creditors are not required to submit Proofs of Debt as a condition for the continued payment of the ongoing amounts due to them, as detailed in Form 1 attached to the Application for Approval of the Arrangement, and such amounts shall be paid to them in full and on time.

67. The invitation to the Contingent Creditors to submit Proofs of Debt is intended to enable the examination of Contingent Debts or claims of Contingent Creditors that are unknown to the Companies on the date of filing the Application for Approval of the Arrangement. Accordingly, any Contingent Creditor claiming to have a Contingent Debt owed to it by any of the Companies, whether because it is not listed in Form 1 or because it disputes the amount stated alongside its name in Form 1, is required to submit a Proof of Debt to the Arrangement Administrator within 21 days of the date of the Arrangement Administrator's appointment (the "**Claims Submission Deadline**").

68. The Arrangement Administrator shall be entitled to accept a Proof of Debt submitted after the Claims Submission Deadline only if he is satisfied that special justification exists for the delay in its submission. A Contingent Creditor who is required to submit a Proof of Debt in accordance with the provisions of this Arrangement and who has failed to submit a Proof of Debt by the deadline, or whose submitted Proof of Debt has not been approved, shall not be entitled to vote on this Debt Arrangement and shall have no claim, demand, or contention against any of the Companies in respect of the Contingent Debts.

69. The Arrangement Administrator shall be entitled to require any document and/or data that he deems necessary, at his discretion, for adjudicating the Proofs of Debt of Contingent Creditors who have submitted claims of debt, whether for voting purposes or for their substantive determination. If the required documents or data are not provided within the deadline set by

the Arrangement Administrator, the Arrangement Administrator shall be entitled to adjudicate the Proof of Debt on the basis of the material in his possession or to reject the Proof of Debt, in whole or in part.

## E(1). Adjudication of Claims of Debt for Voting Purposes:

70. Any Contingent Creditor listed in Form 1 who does not submit a Proof of Debt by the Claims Submission Deadline shall be deemed, for the purposes of voting on this Arrangement, to have agreed to the amount of the debt stated alongside its name in Form 1, to have submitted a Proof of Debt in that amount, and to have had its Proof of Debt approved in that amount for the purposes of voting on this Arrangement.

71. The adjudication of a claim of debt for voting purposes shall not constitute a substantive adjudication of the Proof of Debt.

72. A creditor wishing to appeal the adjudication of a claim of debt for voting purposes shall be entitled to do so by applying to the Court within seven (7) days of the date on which the creditor received the written adjudication of the claim of debt (including by email or facsimile). An appeal filed after this deadline shall not be accepted unless the Court orders otherwise.

## E(2). Substantive Adjudication of Claims of Debt for Distribution Purposes:

73. For the purpose of substantively adjudicating claims of debt, the submission of an additional Proof of Debt shall not be required, and the Proof of Debt submitted for voting purposes shall also serve this purpose.

74. It is clarified that, for the purposes of actual distribution, a Contingent Creditor may submit a claim of debt even if it was not submitted by the deadline for voting purposes, provided that it is submitted by the deadline to be determined and published by the Arrangement Administrator, which shall not be earlier than four months after the date of approval of the Debt Arrangement by the Court.

75. The status of class members in the class action proceedings pending in Israel (the "**Class Action Proceedings**"), even if they have submitted a claim of debt for voting or distribution purposes, including the possibility of opting out, shall be governed by law and the decisions of the judicial instance hearing the Class Action Proceedings.

76. The substantive adjudication of Proofs of Debt shall be conducted as follows: (a) Insofar as a Contingent Creditor's claim of debt is the subject of the Class Action Proceedings, in which an application for certification of a class action against the Applicants or any of them has been approved, the determination of that creditor's entitlement to payment under this Arrangement shall be made in accordance with an Enforceable Monetary Judgment, within the meaning of

the Arrangement (if and to the extent rendered); insofar as the application for certification of the action as a class action is dismissed, and also where a Contingent Creditor elects to exclude itself from the class after such application has been approved, the Arrangement Administrator shall adjudicate the claim of debt of such creditor, duly submitted for distribution purposes, pursuant to a notice given by the Contingent Creditor to the Arrangement Administrator within 30 days of the certification of the action as a class action, on the basis of the documents and data provided to him and any other relevant material he deems appropriate. (b) Insofar as a Contingent Creditor's Proof of Debt is not the subject of pending legal proceedings, in Israel or abroad, the Arrangement Administrator shall adjudicate the claim of debt on the basis of the Proof of Debt, the documents and data provided to him, and any other relevant material he deems appropriate.

77. A creditor wishing to appeal the substantive adjudication of a claim of debt shall be entitled to do so by applying to the Court within thirty (30) days of the date on which the creditor received the written substantive adjudication of the claim of debt (including by email or facsimile). An appeal filed after this deadline shall not be accepted unless the Court orders otherwise.

78. Any provable debt in respect of which no Proof of Debt was submitted by the Claims Submission Deadline, where submission of a Proof of Debt was required under the provisions of this Arrangement, or which was not approved under the Proof of Debt Mechanism, shall confer upon the creditor no right to bring a claim, make a demand, exercise a right of set-off, or seek recovery against any of the Companies, and shall be deemed discharged for the purposes of this Arrangement.

79. From the Effective Date of the Arrangement, no recovery may be sought from any of the Companies in respect of a Contingent Debt except in accordance with the provisions of this Arrangement.

## F. Conditional Release and Waiver

80. This Arrangement shall finally, exclusively, and conclusively establish and reflect the relationships, rights, and obligations between the Companies and the Contingent Creditors, and shall exhaustively regulate and settle the status of all Contingent Debts of the Companies. Accordingly, upon this Arrangement taking effect, the following provisions shall apply:

a) None of the Contingent Creditors shall have any cause of action, contention, demand, or claim of any kind whatsoever, on any grounds whatsoever, against the Companies and/or anyone acting on their behalf in any matter relating to and/or connected with the

Contingent Debts, except for those substantively approved (as distinct from approval for voting purposes) as claims of debt;

b) The Contingent Creditors shall not be entitled to exercise any self-help remedy of any kind whatsoever in connection with the Contingent Debts against the Companies or anyone acting on their behalf, including set-off, retention, attachment, seizure of assets, realization of security or guarantees, assignment of debt, exercise of a right of retention, or any other independent action intended to effect collection, enforcement, frustration of this Arrangement, or individual repayment outside the framework of the Arrangement. The foregoing shall not prevent the Contingent Creditors from taking action following the cancellation of the Arrangement due to its breach, pursuant to a Court decision.

c) Any deed of release, deed of indemnity, right to indemnification, directors' and officers' insurance, or other right to protection, indemnification, or exemption granted to or held by officers, directors, and other officeholders of the Companies pursuant to the Companies' incorporation documents, any agreement, insurance policy, or any law shall remain in full force and effect and shall not be impaired in any manner by reason of the approval or implementation of this Arrangement;

**d)** Subject to the provisions of law and this Arrangement, a full and final release in favor of the Companies, their officers, directors, employees, agents, advisers, representatives, Shareholders, and any person or entity that acted or acts on their behalf or in their name shall take effect as of the Effective Date of the Arrangement, from any cause of action, contention, demand, or claim of any kind whatsoever, whether known or unknown, existing, contingent, or future (except for the continuation of pending proceedings against the Company in connection with the Contingent Debts), including in relation to the formulation of the Arrangement, where the cause of action arose on or before the Effective Date of the Arrangement (the "**Past Claims**"). Notwithstanding the foregoing, if the Arrangement is canceled by a Court decision due to an Event of Breach, or if, at the end of the Arrangement Period, it is determined that the Company failed to meet the Minimum Payments, the release shall be revoked and shall cease to have effect. In such event, the period from the Effective Date of the Arrangement until the termination date of the Arrangement shall not be counted toward the limitation period.

## G. The Company's Articles of Association

81. For the purpose of implementing the provisions of the Arrangement, including the allotment of the Arrangement Administrator's Shares, the creation of new classes of shares, the cancellation of classes of shares, and the imposition of restrictions on transactions involving

the Company's shares, the Company's Articles of Association shall be amended in accordance with the Amended Articles of Association attached to the Arrangement as **Annex 2** above.

82. The Amended Articles of Association constitute an integral part of the Arrangement. Approval of the Arrangement shall also include approval of the amendment of the Company's Articles of Association and their replacement with the Amended Articles of Association, which shall take effect on the Effective Date of the Arrangement. Such approval shall replace any other approval required by law or agreement for the amendment and replacement of the Articles of Association.

## H. General Provisions

83. The preamble to this Arrangement and its annexes constitute an integral part hereof; the section headings are for convenience only and shall not be relied upon in interpreting or construing this Arrangement.

84. Wherever this Arrangement requires the approval of the Arrangement Administrator or grants him decision-making authority, the Arrangement Administrator shall be entitled, at his discretion, to apply to the Honorable Court for directions before rendering his decision, and insofar as he has not done so, any party considering itself adversely affected by such decision shall be entitled to apply for directions after the decision has been rendered. The Court's decision shall be binding upon the parties.

85. For the purposes of interpreting the provisions of this Arrangement, the provisions of this Arrangement and the provisions of any of its annexes shall be deemed complementary to one another and shall be construed as coexisting.

86. Any change, amendment, or addition to the Arrangement shall have no effect and shall be deemed not to have been made unless made in writing, signed by the Companies, and approved by the Honorable Court.

87. Any reference to this Arrangement, to a specific provision of this Arrangement, or to any other document shall be construed as a reference to this Arrangement, such provision, or such document, as in force at the relevant time, including as amended, modified, or supplemented from time to time, as of the relevant time.

88. In this Debt Arrangement, the singular includes the plural, and vice versa; the masculine includes the feminine, and vice versa; the term "person" includes any individual, corporation, company, partnership (whether registered or unregistered), nonprofit association, trust, incorporated or unincorporated body, and any other legal entity.

89. This Arrangement, together with its annexes, constitutes the entire agreement, stipulations, and representations between the Companies and the Contingent Creditors concerning the

matters regulated herein, and no proposal, summary, understanding, representation, or promise concerning such matters, made or given by any of the parties before the Effective Date of this Arrangement, whether written or oral, express or implied, shall have any effect except as provided in this Arrangement.

90. The failure of any party to exercise any right available to it under this Arrangement or by law, or any postponement or delay in such exercise, shall not be deemed a waiver of such right, nor shall the partial or one-time exercise of such right preclude any further or other exercise thereof, or the exercise of any other right. Any extension or concession granted, or any waiver or compromise made, in any particular instance by any of the parties shall not be construed as a precedent or waiver in respect of any other instance and shall not derogate from that party's rights under this Arrangement or by law.

91. No drafts of this Arrangement or its annexes shall be admissible as evidence before judicial and/or quasi-judicial bodies, including arbitrators and/or adjudicators, nor shall they be used to interpret this Arrangement, its provisions, or its annexes.

92. This Arrangement shall be governed exclusively by the laws of the State of Israel and shall be interpreted in accordance therewith.

93. Exclusive local jurisdiction over any matter relating to this Arrangement shall be vested in the competent court in Tel Aviv-Yafo. The foregoing shall not derogate from the right to institute proceedings under Chapter 15 of the U.S. Bankruptcy Code. However, such application shall not be deemed consent to the jurisdiction of a foreign judicial forum in respect of any dispute concerning the interpretation, implementation, or performance of this Arrangement.

94. In the event of any conflict or inconsistency between the provisions of this Arrangement and the provisions of any of its annexes, the provisions of this Arrangement shall prevail, unless expressly stipulated otherwise.

95. Without derogating from the provisions of this Arrangement, the Arrangement Administrator, as well as each of the parties, shall be entitled to apply to the Court for directions on any matter relating to the interpretation, implementation, performance, or enforcement of this Arrangement.

96. The provisions of this Arrangement shall be binding upon and shall inure to the benefit of the parties hereto, as well as their successors, assignees, transferees, heirs, and all persons claiming through them, as applicable and subject to the provisions of law.

**Annex 1 - Payment Schedule for the Arrangement Administrator's Fund**

# Papaya's Payment Schedule for the Arrangement Administrator's Fund

During the Arrangement Period, Papaya shall deposit a total amount of up to $862,865,000 (eight hundred sixty-two million, eight hundred sixty-five thousand dollars) into the Arrangement Administrator's Fund (or such other amount as may be required under the Arrangement), in accordance with the following payment schedule, all subject to the provisions of the Arrangement:

1. Within 14 days after the Arrangement Effective Date, an amount of $60,000,000 (sixty million dollars).
2. Within 15 days following the end of 2026, an amount of $30,000,000 (thirty million dollars).
3. Within 15 days following the end of 2027, an amount of $75,000,000 (seventy-five million dollars).
4. Within 15 days following the end of 2028, an amount of $100,000,000 (one hundred million dollars).
5. Within 15 days following the end of 2029, an amount of $120,000,000 (one hundred twenty million dollars).
6. Within 15 days following the end of 2030, an amount of $130,000,000 (one hundred thirty million dollars).
7. Within 15 days following the end of 2031, an amount of $150,000,000 (one hundred fifty million dollars).
8. Within 6 years of the Effective Date of the Arrangement, an amount of $197,865,000 (one hundred ninety-seven million, eight hundred and sixty-five thousand dollars), or such other amount as shall reflect the outstanding balance of the Enforceable Debts at that time.

TRANSPERFECT

I, Asaf Talmi, hereby certify that I am competent to translate from Hebrew to English (US) and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the document entitled “הסדר חוב 20.10.2026 נקי סופי(16074403.18)” from Hebrew to English (US).

Asaf Talmi Talmi
Talmi (Oct 20, 2026 19:11:29 GMT+3)
[name]

20 Oct 2026
[Date]