**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| PAPAYA GAMING LTD., *et al.*, | : | Case No. 26-11217 (MFW) |
| Debtors in a foreign proceeding.[1] | : | **Re: Docket Nos. 4, 107 & 165** |

**STATEMENT OF SKILLZ PLATFORM INC. IN RESPONSE TO CERTIFICATION OF COUNSEL REGARDING FILING OF REVISED DEBT ARRANGEMENT IN ISRAELI PROCEEDING**

Skillz Platform Inc. ("**Skillz**"), a judgment creditor of the above-captioned Debtors, hereby submits this statement (this "**Statement**") in response to the *Certification of Counsel Regarding Filing of Revised Debt Arrangement in Israeli Proceeding* [Docket No. 165] (the "**Certification**") filed by Oriel Bachar in his purported capacity as foreign representative (the "**Foreign Representative**") of Papaya Gaming Ltd. ("**Papaya Ltd.**") and Papaya Gaming Inc. ("**Papaya US**" and, together with Papaya Ltd., the "**Debtors**") disclosing a revised debt arrangement (the "**Revised Arrangement**"),[2] and in further support of Skillz's objection [Docket No. 107] (the "**Objection**") to the *Verified Petition under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* [Docket No. 4] (the "**Verified Petition**"). In support of this Statement, Skillz respectfully states as follows:

## STATEMENT

1. The Revised Debt Arrangement remains deeply flawed and further evidences the Debtors' disabling conflicts and willful disdain for a U.S. judgment arising from their own

[1] The Debtors in these Chapter 15 Cases, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649).

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Revised Arrangement.

fraud by using a foreign bankruptcy process to cram Skillz into the Debtors' unilateral restructuring without negotiation with Skillz—the creditor holding 97% of claims against the Debtors. The Revised Arrangement would never pass muster in a chapter 11 case, and its structure—which depends on disenfranchising the only creditor whose claim is meaningfully impaired—is manifestly contrary to the fundamental U.S. policies underlying the requirement that at least one impaired class of creditors accept a plan. Yet more, the Revised Arrangement violates the absolute priority rule, discriminates unfairly, and is premised upon illusory collateral and contributions.

2. The Revised Arrangement would drastically impair Skillz. The Debtors claim that Skillz is not impaired on the basis that the Revised Arrangement will purportedly pay all allowed claims in full six years from now. *See* Certification ¶ 3. But unimpaired treatment would be payment in full in cash upon the effectiveness of the Revised Arrangement. In contrast, Skillz's rights are impaired: the Revised Arrangement restructures it, stretches payment over a six-year Arrangement Period, with any unpaid balance not due until that period ends, and divests Skillz of the ability to enforce even the restructured rights. *See* Revised Arrangement §§ 11–12, 79.

3. The Debtors nonetheless contemplate they will obtain approval of the Revised Arrangement over Skillz' objection and without an impaired consenting class. The Revised Arrangement provides for only one impaired class of Contingent Debt, of which Skillz is the controlling member.[3] The Debtors told the Israeli Court that Skillz's vote "is expected to be disqualified"—even though Skillz is an unaffiliated third-party creditor holding an approximately $729 million judgment and is the admitted sole reason the Debtors commenced these proceedings—and that, even if it were not, "there is more than a reasonable prospect that, if it votes against the arrangement, the arrangement will nevertheless be approved despite its

[3] The Motion to Convene proposes a single meeting of all Contingent Creditors. Motion to Convene ¶ 60.

opposition, pursuant to Section 87 of the Law [i.e. a cramdown]." *See* Response to Responses to the Motion for an Order Staying Proceedings ¶¶ 4–6, Insolvency Case No. 87154-07-26 (Tel Aviv-Jaffa Dist. Ct. Aug. 21, 2026). Thus the only path to approval of the Revised Arrangement without Skillz's support remains a cram down without the acceptance of any impaired class—precisely the outcome the Bankruptcy Code forbids based on the fundamental U.S. policy that the terms of a reorganization that impairs creditors must be acceptable to at least one class of those impaired creditors.

4. While creditors are impaired, existing equity retains value, upside, and control, with incentives to pursue growth strategies with excess cash instead of repaying creditors. Existing shareholders retain 75% of the Company's ordinary equity and control, while the remaining 25% is allotted to the Administrator. *See* Revised Arrangement § 29. Moreover, the purported $25 million "Founders' Contribution" is in fact funded by the Company, not the Founders. *Id.* §§ 27, 28. Indeed, these so-called Founders Contributions would not be paid in the event Papaya was sold to repay its debt in full.

5. The Revised Arrangement thus allows shareholders to retain all of their equity without contribution, and leaves Skills to bear unsecured risk of payment with respect to the vast majority of its debt.

6. Yet worse, Skillz would bear that risk without having any recourse for non-payment. The Revised Arrangement provides that the Administrator solely controls impaired creditors' access to recovery.[4] Neither the Administrator nor the Debtors provided the Revised Arrangement or any draft of it to Skillz before its filing despite Skillz's request, so there can be no assurance that either party would consider Skillz's input in the future, whether in connection with enforcement of the Revised Arrangement or otherwise. Indeed, the Debtors

[4] *See, e.g.,* Revised Debt Arrangement § 31 (The Administrator "shall be entitled, but not obligated," to realize the Arrangement Administrator's Shares, and only after five years.).

and the Administrator filed their urgent request to extend the stay of proceedings through November 25, 2026 on the evening of October 20, 2026, the very day the stay was set to expire, and the Israeli Court granted it before Skillz had any opportunity to object. Skillz thus has no reason to believe its interests would be protected during the administration.

7. The collateral offered to the Administrator is an illusory creditor protection. A pledge of a minority 25% stake in Papaya Ltd.[5] does not provide any value to creditors because that equity is already subject to the very Contingent Debts it purports to secure. Instead of being security, this equity pledge is actually a threat to further impair the Contingent Debts after a breach of the Revised Arrangement because the Administrator may deliver this equity at a contrived valuation[6] to creditors, who are then crammed into a minority, illiquid equity position.

8. The proposed pledge of Papaya Inc. shares is likewise of dubious value. Shortly before trial, Papaya Ltd.'s board resolved to incorporate a new Delaware subsidiary to perform payment processing services—the very function Papaya US performs—and the Foreign Representative could not explain why. *See* Objection ¶ 56; *see also* Revised Arrangement, § A (defining "Group Companies" to include Papaya Payments Inc., registered in the United States). Throughout the Arrangement Period, voting rights in the pledged shares remain with Papaya Ltd., and the Companies "shall be entitled to continue managing the operations of Papaya Inc. in the ordinary course of business." *Id.* § 34. Papaya Ltd. thus has every incentive, and the ability, to minimize Papaya US's role before the pledge could be enforced—which may occur only upon an Event of Breach that remains uncured 60 days after written notice. *Id.* § 35. And even if Papaya US retains its role, it is unclear how the pledge of a single entity in the

---

[5] Revised Debt Arrangement § 29.

[6] The equity distributed to creditors without their consent could be valued at the lower of the most recent financing-round price or the Annex 4 Valuation, multiplied by the percentage of target deposits actually made. Revised Debt Arrangement §§ 31, 46(c).

corporate group would maximize value to creditors. The Debtors themselves argue that "[s]elling the code, intellectual property rights, and other assets in piecemeal fashion may sever them from the team and the operational infrastructure, and yield a price lower than their value as part of a functioning business." Motion to Convene ¶ 69.6.

9. The prejudice continues through discrimination among creditors. Not only are "Excluded Creditors" paid in full, but creditors in the sole impaired class receive different treatment that unfairly discriminates against Skillz. The Revised Arrangement favors the claims arising from the Milberg class action. Approximately $6.4 million of that judgment would be paid from the Arrangement Administrator's Deposit, while "the balance of approximately $8.6 million will be paid by crediting the players' accounts with in-game cash," which "shall be carried out by the Applicants [the Milberg class action plaintiffs] without charging the Arrangement Administrator's Deposit." Revised Arrangement § 22. The majority of the value of the Milberg judgment would thus be satisfied by way of such crediting outside the Deposit, apart from the pro rata sharing that governs distributions to Skillz, *see id.* § 20. Because the Revised Arrangement provides no clarity as to when that crediting would occur, it presumably allows faster repayment of the Milberg judgment, while Skillz must await payments from the Deposit over the six-year Arrangement Period.

10. Further, insiders still receive non-consensual releases of claims arising from their fraud. The Revised Arrangement provides a "full and final release" in favor of the Companies and their officers, directors, employees, agents, advisers, representatives, and Shareholders from any claim, known or unknown, including claims relating to the formulation of the arrangement itself. Revised Arrangement § 80(d). Although the release is now styled as conditional, it is revoked only if the Israeli Court cancels the arrangement due to an Event of Breach or if, at the end of the six-year Arrangement Period, the Company is found to have failed to meet the Minimum Payments. *Id.* As a result of this forced standstill, creditors may

be unable to enforce their rights in the meantime and may lose access to information or assets that are dissipated over time.

11. For these reasons, Skillz renews its request for relief and respectfully requests that, in any event, the Court implement protections to keep cash generated by Papaya US in the United States.

**RESERVATION OF RIGHTS**

12. Skillz submits this Statement based on its preliminary review of the Revised Arrangement. Skillz reserves all rights to supplement, amend, or modify this Statement and the Objection; to submit additional evidence and declarations; to examine and cross-examine witnesses at any hearing; and to be heard on all matters relating to the Verified Petition, the Certification, and the Revised Arrangement. Nothing in this Statement constitutes a waiver of, and Skillz expressly reserves, all rights, claims, defenses, and remedies, including with respect to its judgment and its enforcement, any request to dismiss or terminate these Chapter 15 cases, any objection to the Revised Arrangement or its enforcement in the United States, and any claims against the Debtors, their insiders, or their affiliates.

[*Remainder of page intentionally left blank.*]

Dated: October 21, 2026
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP
*/s/ Sean M. Beach*
Sean M. Beach (DE Bar No. 4070)
Michael S. Neiburg (DE Bar No. 5275)
Joshua Hall (DE Bar No. 7510)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: sbeach@ycst.com
mneiburg@ycst.com
jhall@ycst.com

-and-

Ray C. Schrock (*pro hac vice*)
Christopher Harris (*pro hac vice*)
Adam J. Goldberg (*pro hac vice*)
Michael Ardeljan (*pro hac vice*)
Tianjiao "T.J." Li (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
christopher.harris@lw.com
adam.goldberg@lw.com
michael.ardeljan@lw.com
tj.li@lw.com

Amy C. Quartarolo (*pro hac vice*)
**LATHAM & WATKINS LLP**
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (213) 485-1234
Email: amy.quartarolo@lw.com

-and-

Lazar P. Raynal (*pro hac vice*)
Michael A. Lombardo (*pro hac vice*)
**KING & SPALDING LLP**
110 N Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312)-995-6333
Email: lraynal@kslaw.com
mlombardo@kslaw.com
***Counsel for Skillz Platform Inc.***