# APPENDIX 2 TO THE DEBT ARRANGEMENT

## Amended Articles of Incorporation
## (English original)

The Companies Law - 1999

a Company Limited by Shares

# AMENDED AND RESTATED ARTICLES OF ASSOCIATION

OF

# PAPAYA GAMING LTD.

## PRELIMINARY

**1. Definitions and Interpretation**

1.1. Definitions. Capitalized terms used in these Articles shall bear the meanings ascribed to such terms as set forth in this Article, unless inconsistent with the context:

| | |
|---|---|
| "**Affiliate**" | With respect to any person, any other person controlling, controlled by, or under common control with such person. |
| "**Alternate Director**" | As defined in Article 53. |
| "**Arrangement Administrator**" | The administrator of the Debt Arrangement. |
| "**Articles**" | These Amended and Restated Articles of Association as amended from time to time by a Shareholders' resolution. |
| "**Auditors**" | The auditors of the Company. |
| "**Award**" | means a grant of options or restricted share units under the Company's Global Share Incentive Plan (2019), as amended from time to time (the "**Plan**") or allotment of Shares or other equity-based awards thereunder. |
| "**Board**" | The Board of Directors of the Company. |
| "**Bonus Shares**" | means shares issued by the Company for no consideration to all Shareholders entitled to receive them on a pro rata basis. |
| "**Chairman**" | The Chairman of the Board, as may be appointed, from time to time (if appointed), which shall initially be Mr. Oriel Bachar. |
| "**Company**" | Papaya Gaming Ltd. |
| "**Companies Law**" | The Companies Law 5759-1999. |
| "**Companies Ordinance**" | The Companies Ordinance (New Version), 5743-1983. |
| "**Director(s)**" | The member(s) of the Board appointed in accordance with these Articles holding office at any given time. |
| "**Deemed Liquidation**" | Any M&A Event. |
| "**GS Deemed Liquidation**" | As defined in Article 9.3.1. |
| "**Distribution**" | means the grant of a Dividend or an obligation for such grant, directly or indirectly, other than Repurchase |
| "**Dividend**" | means any asset transferred by the Company to a Shareholder in respect |

of such Shareholder's shares, whether in cash or in any other way, including a transfer without valuable consideration, but excluding Bonus Shares.

"**Extraordinary General Meetings**" As defined in Article 32.

"**Founder**" Each of Mr. Oriel Bachar, Mr. Andrey Birman and Mr. Alex Liakhovetsky.

"**GS Aggregate Preference Amount**" US $70,000,000 (seventy million United States dollars), subject to the provisions of Article 9.8.1.3~~9.8.1.3~~ below with respect to the issuance of warrants exercisable to Guarantee Preferred Shares to the Arrangement Administrator.

"**GS Participating Shareholder**" A Shareholder that has elected to provide, or to participate in providing, a Guarantee in accordance with Article 9.

"**GS Shareholder**" Following exercise of the warrants exercisable into Guarantee Preferred Shares, a holder of Guarantee Preferred Shares from time to time.

"**Guarantee**" A personal guarantee guaranteed by a security in the form required in the framework of the debt arrangement entered into by the Company in Insolvency Case (Tel Aviv District Court) 87154-07-26 (the "**Debt Arrangement**") provided by the GS Participating Shareholders.

"**Guarantee Preferred Shares**" As defined in Article 9.

"**Homeward**" Homeward Ventures Limited. For the avoidance of any doubt, the securities held by Homeward and its Permitted Transferees shall be aggregated together for the purpose of determining the entitlement and availability of any rights hereunder to Homeward, provided, however, that the Series Seed Lead Investor and its Permitted Transferees, and Homeward and its Permitted Transferees, shall be regarded as a single shareholder for the purpose of exercising such rights.

"**Guarantee Proportion**" With respect to each GS Participating Shareholder, the proportion (expressed as a percentage) that such GS Participating Shareholder's contribution to the Guarantee bears to the total amount of all contributions made by all GS Participating Shareholders to the Guarantee.

"**IPO**" The closing of (i)the first sale of Ordinary Shares to the public, pursuant to an effective registration statement under the United States Securities Act 1933, as amended, or the securities law of any other jurisdiction or (ii) the consummation of a SPAC Transaction.

"**IPO Pre-Money Valuation**" Means the pre money valuation of the Company in the IPO, which is reflected by the effective price per share at which shares are offered to the public in connection with the IPO multiplied by the amount of shares in the share capital of the Company immediately prior to the IPO and the conversion of the Guarantee Preferred Shares into Ordinary Shares as set out in Article 9.4.

"**Liquidation**" Any dissolution, liquidation or winding-up of the Company.

| | |
|---|---|
| "**M&A Event**" | (i) a merger or consolidation or any other transaction made by the Company, as a result of which the Shareholders prior to such event do not own, by virtue of their shareholdings in the Company prior to such event, a majority of the shares of the surviving entity (which surviving entity may be the Company), or (ii) the Transfer, in a single transaction or series of related transactions, of all or substantially all of the assets of the Company on a consolidated basis with its subsidiary or subsidiaries (including by way of a grant of an exclusive license or lease of all or substantially all of the intellectual property of the Company and its subsidiary or subsidiaries, taken together), or the sale, in a single transaction or series of related transactions, of all or substantially all of the outstanding shares of the Company, or (iii) any other transaction or series of related transactions in which Control of the Company is acquired by any person (other than an IPO); in each case other than a non-taxable sale to a wholly owned subsidiary of the Company or a reorganization for the purpose of change of domicile that does not affect the percentage ownership interest of the Shareholders, or a transaction of issuance of securities by the Company solely for bona fide equity financing purposes, or any issuance or Transfer of securities of the Company to the Arrangement Administrator, to the creditors of the Company or to the GS Participating Shareholders, in each case under and in accordance with the Debt Arrangement. |
| "**Major Shareholder**" | A Shareholder holding at least 3% of the Company's issued and outstanding share capital on an as-converted basis (other than the Arrangement Administrator). |
| "**Month**" | Calendar month. |
| "**New Securities**" | Any Ordinary Shares or shares of any other class of the Company, whether now or hereafter authorized, and rights, options, or warrants to purchase Ordinary Shares or shares of any other class, and securities of any typewhatsoever that are, or may become, convertible into said Ordinary Shares or shares of any other class; provided, however, that "New Securities" shall not include Shares issued: (i) as a Dividend or distribution, (ii) toa Strategic Investor (as defined below) as approved as such by the Board with the affirmative consent to one of the Preferred Directors,<br>(iii) to employees, consultants, service providers of the Company or Directors and any Affiliate thereof where such grant is consummated pursuant to the Company's option plan and/or from the option pool, up to the maximum number of shares reserved for issuance thereunder, as approved from time to time by the Board, (iv) to the public in a Qualified IPO, (v) as consideration for the acquisition by the Company of another company, (vi) securities issued pursuant to any credit arrangements or debt or loan financing, in each case, from a bank or other similar financial institution, which was approved by the Board, provided that with respect to any issuance according to subsections (ii) and/or (v), such issuances shall not constitute in the aggregate more than 4% of the Company's share capital on a fully diluted as converted basis following such issuances, (vii) Ordinary Shares issued pursuant to the Ordinary SPA, (viii) Ordinary A Shares issued to the Founders, (ix) shares of any class issued to the Arrangement Administrator under, |

| | |
|---|---|
| | and in accordance with, the Debt Arrangement, and (x) Guarantee Preferred Shares issued in accordance with Article 9. |
| "**NFX**" | NFX Capital Fund I, LP. For the avoidance of any doubt, the securities held by NFX and its Permitted Transferees shall be aggregated together for the purpose of determining the entitlement and availability of any rights hereunder to NFX. |
| "**Office**" | The Registered Office of the Company at any given time. |
| "**Officer (*'Nosei Misra'*)**" | As defined in the Companies Law. |
| "**Ordinary Shareholder**" | means a Shareholder who holds Ordinary Shares. |
| "**Ordinary Shares**" | As defined in Article 6. |
| "**Ordinary A Shares**" | As defined in Article 6. |
| "**Ordinary SPA**" | means that certain Ordinary Share Purchase Agreement by and among the Company and the investors provided therein, dated as of November 4, 2020. |
| "**Permitted Transferee**" | (A) with respect to any Shareholder who is a natural person – (i) such Shareholder's spouse, parents, children and grandchildren (each, a "**Family Member**"); (ii) any entity wholly-owned by such Shareholder provided that such entity remains wholly-owned by such Shareholder, (iii) a trust solely for the benefit of such Shareholder or its Family Members (and in case of a Shareholder who is a trustee – the beneficiaries of the trust, or a successor trustee for the benefit of the beneficiaries of the original trust); or (iv) such Shareholder's transferee by operation of law; provided however, that all shares held by a Permitted Transferee under this Article (A) shall be subject to the same rights and restrictions under these Articles as though such shares were held by the original shareholder who transferred them to such Permitted Transferee, and such Permitted Transferee shall be entitled to transfer its shares as a permitted transfer in accordance with these Articles only to the Permitted Transferees of the shareholder from whom the shares were originally transferred; (B) with respect to any Shareholder which is a limited liability company or a corporate entity: (i) its Affiliate, (ii) one of its human shareholders, (iii) the surviving entity in the merger of such Shareholder with another company or the entity succeeding to all or substantially all of the assets of such Shareholder; (C) in case of a Shareholder which is a partnership or limited partnership: (i) in the case of a Shareholder which is a partnership – its partners, (ii) in the case of a Shareholder which is a limited partnership – (x) the limited and general partners of such Shareholder and the limited and general partners of, and any director, officer, managing member, person or entity controlling (either directly or through an entity controlled by such person or entity), such limited or general partners, or any venture capital fund now or hereafter existing that is controlled by one or more general partners or managing members of, or shares the same management company with, such Shareholder, (y) any entity over which such Shareholder or its Affiliates exercises investment discretion or act as a principal investment advisor, or (z) any entity or group of related entities purchasing from such Shareholder all or substantially all the |

| | |
|---|---|
| | portfolio of its holdings, including securities of the Company; and (D) with respect to Homeward, each individual or entity included in the Series Seed Lead Investor Group and Series Seed Lead Investor, without derogating from any provision above – each shall be deemed a Permitted Transferee of the other. |
| "**Pro-Rata Ratio**" | A certain quantity or amount is distributed among the Shareholders who wish to participate according to the ratio of the shares held by each participating Shareholder to the total number of shares held by all the participating Shareholders. |
| "**Pro-Rata Share**" | means a fraction, the numerator of which is the number of shares of the Company owned by the respective Major Shareholder (on an as-converted basis) and the denominator of which is the aggregate number of the total issued and outstanding shares of the Company held by all Major Shareholders (on an as-converted basis). |
| **"Qualified Exit Event**" | The closing of each of the following transactions: (i) an IPO, the company's direct listing or registered offering on a stock exchange, A SPAC Transaction or a similar procedure in which the Company's (pre-money, if applicable) valuation is at least two hundred million dollars (US$200,000,000) (a "**Qualified IPO**"), or (ii) an M&A Event based on a Company's pre-money valuation equal to or higher than one hundred and fifty million dollars (US$150,000,000). |
| "**Recapitalization Event**" | means any event of share combination or subdivision, split or reverse split, distribution of Bonus Shares or any other reclassification, reorganization or recapitalization of the Company's share capital where the Shareholders retain their proportionate holdings in the Company, as was immediately prior to such event, on an as converted basis. |
| "**Register of Shareholders**" | The Register of Shareholders of the Company administered in accordance to Section 127 of the Companies Law. |
| "**Securities Law**" | the Israeli Securities Law, 5728-1968. |
| "**Series Seed Lead Investor**" | means PGF Synergy Limited Partnership. For the avoidance of any doubt, the securities held by the Series Seed Lead Investor and its Permitted Transferees shall be aggregated together for the purpose of determining the entitlement and availability of any rights hereunder to the Series Seed Lead Investor, provided, however, that the Series Seed Lead Investor and its Permitted Transferees, and Homeward and its Permitted Transferees, shall be regarded as a single shareholder for the purpose of exercising such rights. The definition of the "Series Seed Lead Investor" shall not be amended without the affirmative consent of the Series Seed Lead Investor. |
| "**Series Seed Lead Investor Group**" | means the following shareholders of the Company: ISV Capital and NOA.TW LLC. |
| **"Series Seed SPA"** | means that certain Preferred Share Purchase Agreement by and among the Company and the Investors (as defined therein), dated as of November 4, 2020. |

| | |
|---|---|
| "**SPAC Transaction**" | Means a merger, consolidation, share exchange, share purchase or other business combination between (1) the shareholders of the Company, the Company and/or a wholly-owned subsidiary of the Company and (2) a publicly listed "special purpose acquisition company" (a "**SPAC**") and/or its shareholders (or a subsidiary of the publicly listed company), in connection with which either (x) the Company becomes a publicly listed Company (or a subsidiary of a publicly listed company), or (y) the shareholders of the Company immediately prior to the closing of such merger, consolidation, share exchange, share purchase or other business combination hold or have the right, by virtue of their shareholdings in the Company, to acquire or to be issued, immediately following the closing of such merger, consolidation, share exchange, share purchase or other business combination, the majority shareholding in a publicly listed company that is the surviving entity of such merger, consolidation, share exchange, share purchase or other business combination. The surviving entity that is publicly listed in either case of clause (i) or (ii) is referred to as the "**Listed Entity".** |
| "**RTP Law**" | The Israeli Restrictive Trade Practices Law, 5758-1988. |
| "**Shareholder(s)**" | The Shareholders of the Company, at any given time. |
| "**Shares**" | means, collectively, Ordinary Shares, Ordinary A Shares, and Guarantee Preferred Shares. |
| "**Strategic Investor**" | An investor in the Company that, concurrently with the issuance of the applicable shares, enters into a commercial agreement with the Company that is capable of significantly contributing (other than by investing additional capital in the Company) to the Company's business, as shall be determined by the Board with the affirmative consent of one of the Preferred Directors (as defined below). |
| "**Transfer**" | Any sale, assignment, conveyance, pledge, grant of any security interest or gift, or any other disposition or transfer or any grant of any interest in any Share to, or creation in any way of any direct or indirect interest in any Share by a third party. |
| "**in writing**" | Written, printed, photocopied, typed, sent via facsimile, email transmission (in PDF format or the like, or, with respect to documents which are needed to be signed, signed with "DocuSign", e-sign or any similar form of signature by electronic mean) or produced by any visible substitute for writing, or partly one and partly another, and signed shall be construed accordingly. |
| "**year**" | Calendar year commencing on January 1st and ending on December 31st. |

1.2. Unless the context shall otherwise require: words in the singular shall also include the plural, and vice versa; any pronoun shall include the corresponding masculine, feminine and neuter forms; the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation"; the words "herein", "hereof" and "hereunder" and words of similar import refer to these Articles in its entirety and not to any part hereof; all references herein to Articles, Sections or clauses shall be deemed references to Articles, Sections or clauses of these Articles, unless provided otherwise; any references to any agreement or other instrument or law, statute or regulation are to it as amended, supplemented or restated, from time to time (and, in the case of any law, to any successor provisions or re-enactment or modification thereof being in force at the time); any reference in this Articles to a "day" or a number of "days" (without any explicit reference otherwise, such as to business days) shall be interpreted as a reference to a calendar day or number of calendar

days; reference to month or year means according to the Gregorian calendar; reference to a "company", "corporate body" or "entity" shall include a, partnership, corporation, limited liability company, association, trust, unincorporated organization, or a government or agency or political subdivision thereof, and reference to a "person" shall mean any of the foregoing or an individual; and for purposes of any calculation under these Articles made "on an as-converted basis", the Guarantee Preferred Shares (and any warrants exercisable into Guarantee Preferred Shares) shall be disregarded, both in the numerator and in the denominator, unless expressly provided otherwise.

1.3. Save as aforesaid any words or expressions defined in the Companies Law or in the Companies Ordinance (to the extent still in effect according to the provisions of the Companies Law), shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

1.4. The captions in these Articles are for convenience only and shall not be deemed a part hereof or affect the construction of any provision hereof.

1.5. In the event that a Hebrew version of these Articles is filed with any regulatory or governmental agency, including the Israeli Registrar of Companies, then whether or not such Hebrew version contains signatures of Shareholders, such Hebrew version shall be considered solely a convenience translation and shall have no binding effect, as between the Shareholders of the Company and with respect to any third party. The English version shall be the only binding version of these Articles, and in the event of any contradiction orinconsistency between the meaning of the English version and the meaning of the Hebrew version of these Articles, the Hebrew version shall be disregarded, shall have no binding effect and shall have no impact on theinterpretation of these Articles or any provision hereof.

1.6. These Articles hereby amend, restate and supersede in their entirety any previously adopted Articles of Association of the Company, and any such previous Articles of Association are hereby terminated and of no further force and effect.

**2. <u>Private company</u>**

The Company is a private company, and accordingly, the following limitations shall apply to the Company:

(a) the right to transfer shares is restricted in the manner hereinafter provided;

(b) the number of Shareholders at any time (excluding employees and former employees of the Company who have been Shareholders during their employment and remain Shareholders after termination of their employment with the Company) shall not exceed 50; provided, however, that if two or more individuals hold a share or shares of the Company jointly, they shall be deemed to be one Shareholder for purposes of these Articles; and,

(c) an offer to the public to subscribe for securities of the Company is prohibited.

## LIMITED LIABILITY

3. The Company is a Limited Liability Company and therefore each Shareholder's obligations to the Company's obligations shall be limited to the payment of the full consideration for which the shares held by such Shareholder were issued, subject tothe provisions of the Companies Law.

## COMPANY'S OBJECTIVES; DONATION

4. The Company's objectives are to carry on any business, and do any act, which is not prohibited by law.

5. The Company may donate a reasonable amount of money for any purpose that the Board deems appropriate, even if the donation is not for business considerations for the purpose of achieving profits to the Company.

**6. Share Capital**

The share capital of the Company is divided into 442,990,000 Ordinary Shares, having no par value (the "**Ordinary Shares**"); and 57,010,000 Ordinary A Shares, having no par value (the "**Ordinary A Shares**"); and 6,666,667 Guarantee Preferred Shares, having no par value (the "**Guarantee Preferred Shares**").

**7. Ordinary Shares**

The Ordinary Shares shall rank *pari passu* between them and shall entitle their holders:

7.1. To receive notices of, and to attend and vote in, all General Meetings where each Ordinary Share shall have one vote for all purposes;

7.2. To share, on a per share pro rata basis, in Bonus Shares, bonuses, profits or Distributions as may be declared by the Board and approved by the Shareholders, if required, out of funds legally available therefor, subject to the preference of the Guarantee Preferred Shares under Article 9; and

7.3. Upon Liquidation or dissolution – subject to the preference of the Guarantee Preferred Shares under Article 9, to participate in the distribution of the assets of the Company legally available for distribution to Shareholders after payment of all debts and other liabilities of the Company, in accordance withthe terms of these Articles.

7.4. For the avoidance of doubt, no reference in these Articles to Ordinary Shares shall include the Ordinary A Shares.

**8. Ordinary A Shares**

8.1. The Ordinary A Shares shall rank *pari passu* between them and shall entitle their holders only to receive notices of, and to attend and vote in, all General Meetings where each Ordinary A Share shall vote together with the Ordinary Shares and have ten votes for all purposes; provided however that (a) such rights shall only be triggered after the Company consummates an IPO, SPAC Transaction or other transaction as a result of which its shares are public traded and only as long as the Company's shares are so publicly traded, and (b) such rights shall be afforded to the holders of such shares, only as long as such shares are held by any of Mr. Oriel Bachar, Mr. Andrey Birman, Mr. Alex Liakhovetsky and Mr. Yonatan Zvik (the "**Designated Individuals**"), (c) such Ordinary A Shares are non-transferable, and (d) such Ordinary A Shares shall be automatically forfeited and repurchased by the Company for no consideration upon the consummation of an M&A Event.

8.2. The Ordinary A Shares shall not confer any other rights to the holders thereof, including no right to participate in any dividend distribution or other distribution of assets or liquidation of the Company.

8.3. Every one Ordinary A Share issued to the Founders shall be deemed bundled together with each one Ordinary Share held by the Designated Individuals as of the date hereof, such that upon any sale, transfer or other disposition (excluding pledges or grants of security interest unless and until exercised) of an Ordinary Share, the applicable "bundled" Ordinary A Share shall automatically, and without the need for any action or resolution, be forfeited and repurchased by the Company for no consideration.

8.4. No amendment or change to this Article 8 or the rights of the Ordinary A Shares under these Articles shall be approved without the prior written consent of the holders of a majority of the Ordinary A Shares.

8.5. <u>No Further Issuances</u>. Except for the issuance of Ordinary A Shares to the Designated Individuals effected immediately following the adoption of these Articles and the creation of the authorized Ordinary A Shares, the Company shall not at any time thereafter issue any additional Ordinary A Shares or any other class of shares with more than 1 vote per share.

**9. Guarantee Preferred Shares**

9.1. The Guarantee Preferred Shares shall confer on their holders only the rights expressly set out in this Article 9, and the holders of Guarantee Preferred Shares shall have no further right to participate in any other distribution, return of capital or surplus assets of the Company (whether on a liquidation, winding-up or otherwise) beyond the entitlements expressly provided for in this Article 9. For the avoidance of doubt, the Guarantee Preferred Shares are a separate class of shares from the Ordinary Shares and the Ordinary A Shares.

9.2. Issuance and Allocation. Upon consummation of the Debt Arrangement, the Company shall issue each GS Participating Shareholder, in consideration for providing the Guarantee, a warrant, exercisable into Guarantee Preferred Shares by each such GS participating Shareholder for no additional consideration. The amount of Guarantee Preferred Shares to be issued to each GS Participating Shareholder upon exercise of the warrant shall equal: (A) the total number of Guarantee Preferred Shares to be issued on a fully converted basis, multiplied by (B) that GS Participating Shareholder's Guarantee Proportion.

9.3. Ranking. The Guarantee Preferred Shares shall rank senior to all other classes of shares of the Company (including the Ordinary Shares) as to the payment of dividends and distributions upon a GS Deemed Liquidation or Liquidation.

9.3.1. GS Deemed Liquidation. Upon a GS Deemed Liquidation or a Liquidation, each GS Shareholder shall receive, before any distribution to holders of other shares, an amount equal to such GS Shareholder's GS Preference Amount.

For this purpose:

"**GS Deemed Liquidation**" means a Deemed Liquidation, provided that neither an IPO nor a Share Merger (as defined below) shall constitute a GS Deemed Liquidation (and shall instead be governed by Articles 9.4 and 9.5, respectively).

**"GS Preference Amount**" means, for each GS Shareholder:

GS Preference Amount = (GS Aggregate Preference Amount *minus* any amount paid to the GS Shareholders as dividend preference in accordance with Article 9.3.2~~9.3.2~~) × (N / T)

where "N" is the number of Guarantee Preferred Shares held by such GS Shareholder and "T" is the total number of outstanding Guarantee Preferred Shares.

9.3.2. Dividend Preference. If the Company declares or pays any Dividend or Distribution to holders of Ordinary Shares (other than a dividend payable solely in shares), the GS Shareholders shall first receive an amount equal to each GS Shareholder's GS Preference Amount and up to the GS Aggregate Preference Amount.

9.4. IPO Conversion.

9.4.1. Immediately prior to the completion of an IPO, all outstanding Guarantee Preferred Shares or warrants for Guarantee Preferred Shares shall automatically convert into fully paid shares of the class admitted to trading in the IPO (the "**IPO Shares**"). If the IPO is not complete, no conversion shall occur.

9.4.2. The aggregate number of IPO Shares to be issued to all GS Shareholders upon conversion shall be calculated as follows:

Aggregate Conversion Shares = [(GS Aggregate Preference Amount *minus* any amount paid to the GS Shareholders as dividend preference in accordance with Article 9.3.2~~9.3.2~~) / IPO Pre-Money Valuation] × the number of shares in the issued and outstanding share capital of the Company immediately prior to the IPO (excluding the Guarantee Preferred Shares).

9.4.3. The IPO Shares shall be allocated among the GS Shareholders *pro rata* based on their holdings of Guarantee Preferred Shares immediately prior to conversion, rounded down to the nearest whole share.

9.4.4. Upon conversion, the converted Guarantee Preferred Shares shall be cancelled and all rights under this Article 9 shall terminate.

9.5. Share Merger conversion. Notwithstanding Article 9.3.1, in the event of an M&A Event structured as a merger in which the shareholders of the Company receive shares of the surviving or acquiring entity, other than a SPAC Transaction (which shall be governed by Article 9.4) (a "**Share Merger**"), immediately prior to the completion of such Share Merger and subject to its completion, all outstanding Guarantee Preferred Shares shall automatically convert into fully paid Ordinary Shares of the Company. The provisions of Articles 9.4.2 through 9.4.4 shall apply to such conversion *mutatis mutandis*, provided that references to the IPO Shares shall be deemed references to Ordinary Shares and references to the IPO Pre-Money Valuation shall be deemed references to the pre-money valuation of the Company implied by the terms of such Share Merger. If the Share Merger is not completed, no conversion shall occur.

9.6. Voting Rights. The Guarantee Preferred Shares shall not carry any voting rights, except as required by law or as provided in Article 9.8 (Class Consent Matters).

9.7. Cancellation. Without derogating from the foregoing, upon the payment in full to a GS Shareholder of its GS Preference Amount, the Guarantee Preferred Shares held by such GS Shareholder shall automatically, and without the need for any further action or resolution, be forfeited and cancelled for no consideration, and all rights attached thereto under this Article 9 shall terminate.

9.8. Class Consent Matters.

9.8.1. The Company shall not, without the prior written consent of the holders of a majority of the outstanding Guarantee Preferred Shares, voting as a separate class:

9.8.1.1. amend, alter or repeal any provision of these Articles in a manner that adversely affects the rights, preferences or privileges of the Guarantee Preferred Shares;

9.8.1.2. create, authorize or issue any shares ranking senior to or *pari passu* with the Guarantee Preferred Shares as to dividends or distributions on a GS Deemed Liquidation or Liquidation; or

9.8.1.3. increase or decrease the authorized number of Guarantee Preferred Shares except that the Company may issue additional Guarantee Preferred Shares to the Arrangement Administrator as part of the Debt Arrangement in proportion to the percentage of Ordinary Shares to be issued to the Arrangement Administrator to the total outstanding Ordinary Shares of the Company in accordance with the Debt arrangement, and the GS Aggregate Preference Amount will be accordingly adjusted (i.e., to the extent that warrants exercisable to Guarantee Preferred Shares constituting 25% of the total Guarantee Preferred Shares are issued to the Arrangement Administrator, then the GS Aggregate Preference Amount shall be increased to US $93,333,333 and all other provisions applying to the Guarantee Preferred Shares shall apply to the Guarantee Preferred Shares issues to the Arrangement Administrator *mutatis mutandis*).

## 10. Increase of Share Capital

Subject to the provisions of Article 82, the Company may, from time to time, by a Shareholders resolution, whether or not all the shares then authorized have been issued, and whether or not all the shares theretofore issued have been called up for payment, increase its share capital by the creation of new shares. Any such increase shall be in such number of shares, and such shares shall confer such rights and preferences, and shall be subject to such restrictions, as such resolution shall provide.

## 11. Special Rights; Modifications of Rights

11.1. Subject to the provisions of these Articles (including, without limitation, the provisions of Article 82) and the Companies Law, the Company may, from time to time, provide for shares with such preferred or deferred rights or rights of redemption or other special rights and/or such restrictions, whether in regard to Dividends, voting, repayment of share capital or otherwise, as may be stipulated in such resolution.

11.2. The rights attached to any class of shares of the Company, unless otherwise provided by these Articles (including, without limitation, the provisions of Article 82), may be modified or abrogated by the Company, subject to a resolution passed at a separate Shareholders meeting of the holders of the shares of such class.

11.3. The provisions of these Articles relating to General Meetings shall apply, in the relevant changes, to any separate Shareholders meeting of the holders of the shares of a particular class.

11.4. Subject to Articles 8.4 and 9.8, and without prejudice, the increase of the authorized share capital, the creation of a new class of shares, the increase of the authorized share capital of a class of shares, or the issuance of shares of any class out of the authorized and unissued share capital, shall not be deemed to modify or abrogate the rights attached to any class of shares, whether previously issued shares of such class or of any other class.

**12. <u>Consolidation, Subdivision, Cancellation and Reduction of Share Capital</u>**

12.1. Subject to the provisions of Article 82, the Company may, by Shareholders' resolution and subject to the Companies Law, from time to time:

(a) consolidate all or any of its issued or unissued share capital into a smaller number of shares;

(b) divide its shares (issued or unissued) or any of them into a larger number of shares (subject to applicable law) and the resolution whereby any share is dividedmay determine that, as among the holders of the shares resulting from such subdivision, one or more ofthe shares may, in contrast to others, have any such preferred or deferred rights or rights of redemptionor other special rights, or be subject to any such restrictions, as the Company may attach to unissued ornew shares;

(c) cancel any shares which, at the date of the adoption of such resolution, have not been taken or agreed to be taken by any person, and reduce the number of shares in its authorized share capital by the number of the shares so canceled; or

(d) reduce its authorized share capital in any manner.

12.2. With respect to any consolidation of issued shares and with respect to any other action which may result in fractional shares, the Board may settle any difficulty which may arise with regard thereto, as it deems fit, including, inter alia, resort to one or more of the following actions:

(a) determine, as to the holder of shares so consolidated, which issued shares shall be consolidated into each share of larger, equal or smaller nominal value;

(b) allot, in contemplation of or subsequent to such consolidation or other action, such shares or fractional shares sufficient to preclude or remove fractional share holdings;

(c) redeem, in the case of redeemable shares, and subject to applicable law, such shares or fractional shares sufficient to preclude or remove fractional share holdings;

(d) round up, round down or round to the nearest whole number, any fractional shares resulting from the consolidation or from any other action which may result in fractional shares;

(e) cause the transfer of fractional shares by certain Shareholders to other Shareholders so as to most expediently preclude or remove any fractional shareholdings, and cause the transferees to pay the transferors the fair value of fractional shares so transferred, and the Board is hereby authorized to act as agent for the transferors and transferees with power of substitution for purposes of implementing the provisions of this sub-Article 12.2(e).

## THE SHARES

**13. Issuance of Share Certificates; Replacement of Lost Certificates**

13.1. Share certificates shall be issued under the stamp of the Company and shall bear the signatures of a Director and/or of any other person or persons authorized thereto by the Board.

13.2. Each Shareholder shall be entitled to one numbered certificate for all the shares of any specific class registered in such Shareholder's name, and if the Board so approves, to several certificates, each for one or more of such shares.

13.3. A share certificate registered in the names of two or more persons shall be delivered to the person first named in the Register of Shareholders in respect of such co-ownership.

13.4. If a share certificate is defaced, lost or destroyed, it may be replaced, upon payment of such fee, and upon the furnishing of such evidence of ownership and such indemnity, as the Board may deem appropriate.

**14. Registered Holder**

Except as otherwise provided in these Articles and in the Companies Law, the Company shall be entitled to treat the registered holder of any share as the absolute owner thereof, and, accordingly, shall not, except as ordered by a court of competent jurisdiction, or as required by statute, be bound to recognize any equitable or other claim to, or interest in such share on the part of any other person.

**15. Allotment of Shares**

Subject to the provisions of Article 82, the shares, other than the issued and outstanding shares, shall be under the control of the Board, who shall have the power to allot shares or otherwise dispose of them to such persons, on such terms and conditions (including inter alia terms relating to calls as set forth in Article 16 hereof), for such consideration, and at such times, as the Board may deem appropriate, and the power to give to any person the option to acquire from theCompany any shares, during such time and for such consideration as the Board may deem appropriate. Such issuance may be made in cash,cash equivalents or for in kind consideration.

**16. Payment in Installments**

If by the terms of allotment of any share, the whole or any part of the price thereof shall be payable in installments, every such installment shall, when due, be paid to the Company by the then registered holder(s) of the share of the person(s) entitled thereto.

**17. Calls on Shares**

17.1. The Board may, from time to time make such calls as it may deem appropriate upon Shareholders in respect of any sum unpaid in respect of shares held by such Shareholders which is not, by the terms of allotment thereof or otherwise, payable at a fixed time, and each Shareholder shall pay the amount of every call so made upon him (and of each installment thereof if the same is payable in installments), to the person(s) and at the time(s) and place(s) designated by the Board, as any such time(s) may be thereafter extended and/or such person(s) or place(s) changed. Unless otherwise stipulated in the resolution of the Board (and in the notice hereafter referred to), each payment in response to a call shall be deemed to constitute a pro rata payment on account of all shares in respect of which such call was made.

17.2. Notice of any call shall be given in writing to the Shareholder(s) in question not less than fourteen (14) days prior to the time of payment, specifying the time and place of payment, and designating the person to whom such payment shall be made, provided, however, that before the time for any such payment, the Board may, by notice in writing to such Shareholder(s), revoke such call in whole or in part, extend such time, or alter such person and/or place. In the event of a call payable in installments, only one notice thereof need be given.

17.3. If, by the terms of allotment of any share or otherwise, any amount is made payable at any fixed time, every

such amount shall be payable at such time as if it were a call duly made by the Board and of which due notice had been given, and all the provisions herein contained with respect to such calls shall apply to each such amount.

17.4. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof and all interest payable thereon.

17.5. Any amount unpaid in respect of a called shall bear interest from the date on which it is payable until actual payment thereof, at such rate (not exceeding the then prevailing debitory rate charged by leading commercial banks in Israel), and at such time(s) as the Board may determine.

17.6. Upon the allotment of shares, the Board may provide for differences among the allottees of such shares as to the amount of calls and/or the times of payment thereof.

**18. Prepayment**

With the approval of the Board, any Shareholder may pay to the Company any amount not yet payable in respect of such Shareholder's shares, and the Board may approve the payment of interest on any such amount until the same would be payable if it had not been paid in advance, at such rate and time(s) as may be approved by the Board. The Board may at any time cause the Company to repay all or any part of the money so advanced, without premium or penalty. Nothing in this Article 18 shall derogate from the right of the Board to make any call before or after receipt by the Company of any such advance.

**19. Forfeiture and Surrender**

19.1. If any Shareholder fails to pay any amount payable in respect of a call, or interest thereon as provided for herein, on or before the day fixed for payment of the same, the Company, by resolution of the Board, and subject to the provisions of Section 181 of the Companies Law, and these Articles, may at any time thereafter, so long as the said amount or interest remains unpaid, forfeit all or any of the shares underlying the unpaid amount in respect of which said call had been made. Any expense incurred by the Company in attempting to collect any such amount or interest, including, inter alia, attorneys' fees and costs of suit, shall be added to, and shall, for all purposes (including the accrual of interest thereon), constitute a part of the amount payable to the Company in respect of such call.

19.2. Upon the adoption of a resolution of forfeiture, the Board shall cause notice thereof to be given to such Shareholder, which notice shall state that, in the event of the failure to pay the entire amount so payable within a period stipulated in the notice (which period shall not be less than fourteen (14) days and which may be extended by the Board), such shares shall be *ipso facto* forfeited, provided, however, that, prior to the expiration of such period, the Board may nullify such resolution of forfeiture, but no such nullification shall stop the Board from adopting a further resolution of forfeiture in respect of the non-payment of the same amount.

19.3. Whenever shares are forfeited as herein provided, all Dividends theretofore declared in respect thereof and not actually paid shall be deemed to have been forfeited at the same time.

19.4. The Company, by resolution of the Board, may accept the voluntary surrender of any share.

19.5. Any share forfeited or surrendered as provided herein shall become dormant shares (as defined in Section 308 of the Companies Law), shall not confer any rights, and shall not be considered part of the Company's issued and outstanding share capital for purpose of any calculation of a quorum or majority required under these Articles, so long as it is held by the Company, and the same, subject to the provisions of these Articles, may be sold, re-allotted or otherwise disposed of as the Board deems appropriate.

19.6. Any Shareholder whose shares have been forfeited or surrendered shall cease to be a Shareholder in respect of the forfeited or surrendered shares, but shall, notwithstanding, be liable to pay, and shall forthwith pay, to the Company, all calls, interest and expenses owing upon or in respect of such shares at the time of forfeiture or surrender, together with interest thereon from the time of forfeiture or surrender until actual payment, at the rate prescribed in Article 17.5 above, unless such shares were sold by the Company, and the Company shall have received in full the amounts specified above in addition to any additional costs of such sale of shares, and the Board, in its discretion, may enforce the payment of such moneys, or any part thereof, but shall not be under any obligation to do so. In the event of such forfeiture or surrender, the Company, by resolution of the Board, may accelerate the date(s) of payment of any or all amounts then owing by the Shareholder in question (but not yet due) in respect of all shares owned by such Shareholder, solely or jointly with another, and in respect of any other matter or transaction whatsoever.

19.7. The Board may at any time, before any share so forfeited or surrendered shall have been sold, re-allotted or otherwise disposed of, nullify the forfeiture or surrender on such conditions as it deems appropriate, but no such nullification shall stop the Board from re-exercising its powers of forfeiture pursuant to this Article 19.7.

**20. Lien**

20.1. Except to the extent the same may be waived or subordinated in writing, the Company shall have a first and paramount lien upon all the shares registered in the name of each Shareholder (without regard to any equitable or other claim or interest in such shares on the part of any other person), and upon the proceeds of the sale thereof, for the call on shares made by the Board, in respect of unpaid sum relating to shares held by such Shareholder. Such lien shall extend to all Dividends from time to time declared in respect of such share. Unless otherwise provided, the registration by the Company of a transfer of shares shall not be deemed to be a waiver on the part of the Company of the lien (if any) existing on such shares immediately prior to such transfer.

20.2. The Board may cause the Company to sell any shares subject to such lien when any such debt, liability or engagement has matured, in such manner as the Board may deem appropriate, but no such sale shall be made unless such debt, liability or engagement has not been satisfied within fourteen (14) days after written notice of the intention to sell shall have been served on such Shareholder, such Shareholder's executors or administrators.

20.3. The net proceeds of any such sale, after payment of the costs thereof, shall be applied in or toward satisfaction of the debts, liabilities or engagements of such Shareholder (whether or not the same have matured), or any specific part of the same (as the Company may determine), and the residue (if any) shall be paid to the Shareholder, such Shareholder's executors, administrators or assigns.

**21. Sale after Forfeiture or Surrender or in Enforcement of Lien**

Upon any sale of shares after forfeiture or surrender or for enforcing a lien, the Board may appoint some person to execute an instrument of transfer of the shares so sold and cause the purchaser's name to be entered in the Register of Shareholders in respect of such shares, and the purchaser shall not be bound to see to the regularity of the proceedings, or to the application of the purchase money, and after such purchaser's name has been entered in the Register of Shareholders in respect of such shares, the validity of the sale shall not be impeached by any person, and the remedy of any person aggrieved by the sale shall be in damages only and against the Company exclusively.

**22. Redeemable Shares**

The Company may, subject to applicable law, issue redeemable shares and redeem the same on such terms and conditions as determined by the Board.

## TRANSFER OF SHARES

**23. Effectiveness and Registration**

23.1. Board Approval for Transfer. No Transfer of shares in the Company, and no assignment of an option to acquire such sharesfrom the Company, shall be effective unless the transfer or assignment (i) has been approved by the Board and (ii) is effected in compliance with the provisions of these Articles, such approval shall be at the sole discretion of the Board. The Board shall not unreasonably withhold its approval of any such transfer or assignment unless such Transfer is in contradiction to the Debt Arrangement.

23.2. No such transfer as described in Article 23.1 shall be registered unless a proper instrument of transfer (in form and substance satisfactory to the Board) has been submitted to the Company, together with the share certificate(s) and such other evidence of title as the Board may reasonably require. Until the transferee has been registered in the Register of Shareholders in respect of the shares so transferred, the Company may continue to regard the transferor as the owner thereof. The Board, may, from time to time, prescribe a fee for the registration of a transfer.

23.3. The Board may suspend the registration of transfers during the fourteen (14) days immediately preceding the Annual General Meeting.

23.4. Notwithstanding anything herein to the contrary, the provisions of Article 23.1 shall not apply to the transfer of shares from one Founder to another Founder pursuant to agreements or arrangements among the Founders in case of, or in connection with, the termination of engagement of a Founder with the Company.

23.5. The provisions of this Article 23 shall also apply to Transfer of warrants, any other debt or securities of the Company or any rights to acquire any such debt or securities of the Company, unless otherwise determined by the Board.

23.6. The provisions of this Article 23 shall also apply to any Transfer of an Award and any grant of any interest in any Award to, or creation in any way of any direct or indirect interest in any Award by, any party other than such recipient of an Award in accordance with the Plan, unless otherwise determined by the Board.

23.7. Debt Arrangement Restriction Period. Notwithstanding anything to the contrary in these Articles (including Articles 23.4, 23.5, 23.6, 25 and 28), from the effective date of the Debt Arrangement and until the earlier of (i) the full completion of the Debt Arrangement in accordance with its terms, or (ii) the termination or cancellation of the Debt Arrangement by the court overseeing the Debt Arrangement (the "**Restriction Period**"), no Shareholder or holder of any option, warrant, Award or other right to acquire shares of the Company shall, directly or indirectly, Transfer any of its shares or such securities in the Company, except (a) as expressly permitted under the Debt Arrangement or approved by the court overseeing the Debt Arrangement; (b) a Transfer by a Shareholder whose business is investments, where such Transfer is made as part of a transfer of all of its investments to a third party; or (c) a Transfer of Guarantee Preferred Shares or the warrants exercisable to Guarantee Preferred Shares to another shareholder in connection with the replacement of a GS Participating Shareholder's Guarantee by such shareholder in accordance with the Debt Arrangement and Article 9. Any Transfer in breach of this Article 23.7 shall be null and void, and the Board shall not approve or register such Transfer in the Register of Shareholders.

**24. Preemptive Rights**

Each Major Shareholder shall have a right to purchase, each such Major Shareholder's Pro-Rata Share (or at such Major Shareholder's discretion, any part thereof), as of the date of the Rights Notice (as defined below), of any New Securities that the Company may, from time to time, propose to sell and issue. This right is subject to the following provisions:

24.1. If the Company proposes to issue New Securities, it shall give the Major Shareholders a written notice (the "**Rights Notice**") of its intention, describing the New Securities, the price, the general terms upon which the Company proposes to issue the New Securities and the number of New Securities that each Major Shareholder has the right to purchase. Each of the Major Shareholders shall have fourteen (14) days from delivery of the Rights Notice to agree to purchase all or any part of such Major Shareholder's Pro-Rata Share of such New Securities for the price and upon the general terms specified in the Rights Notice, by giving written notice to the Company setting forth the quantity of New Securities to be purchased.

24.2. In the event that the Major Shareholders have failed to purchase the entire amount of New Securities offered under the Rights Notice, the Company shall have ninety (90) days after delivery of the Rights Notice to sell the remaining unsubscribed portion of such New Securities at a price and upon general terms no more favorable to the purchasers thereof than specified in the Rights Notice. If the Company did not sell the New Securities within said ninety (90) days period, the Company shall not thereafter issue or sell any New Securities without first offering such Securities to the Major Shareholders in the manner provided above.

24.3. The pre-emptive rights granted under this Article 24 shall terminate upon the earlier of: (i) a Qualified IPO; or (ii) an M&A Event.

24.4. Each Major Shareholder shall be entitled to waive its own preemptive rights described in this Article 24 or assign it to its Permitted Transferees.

24.5. The provisions of Section 290(a) of the Companies Law shall not apply to the Company.

**25. <u>Right of First Refusal</u>**

Until the closing of a Qualified IPO and other than in respect of a Transfer of shares as part of an M&A Event or to a Permitted Transferee, then the Company first, and, if waived in accordance with the provisions of this Article 25, each Major Shareholder, shall have a right of first refusal with respect to any Transfer of any shares of the Company held by any Shareholder (the "**Transferor**"), in accordance with the following provisions:

25.1. Any Transferor proposing to Transfer all or any of its shares (the "**Offered Shares**") shall first provide to the Board a written offer stating that it received a bona fide offer from a third-party transferee to acquire the Offered Shares, the identity of the Transferor and the transferee and the terms of the proposed Transfer (the "**Offer**"). The Company, subject to satisfying the requirements set by any applicable law, may accept such Offer in respect of all of the Offered Shares, on the terms of the Offer by giving the Transferor written notice to that effect (with a copy to the Company) within fourteen (14) days from the date of the Offer (an "**Company**'s **Acceptance**").

25.2. To the extent a Company's Acceptance was not duly provided, the Transferor shall provide to each Major Shareholder the Offer. Each Major Shareholder may accept such Offer in respect of any portion of the Offered Shares ("**Accepting Shareholders**") by giving the Transferor written notice to that effect (with a copy to the Company) within fourteen (14) days from the date of the delivery of the Offer to the Major Shareholders (a "**Shareholders Acceptance**").

25.3. If the Shareholders Acceptances, in the aggregate, are in respect of all of, or more than, the Offered Shares, then the Accepting Shareholders shall acquire the Offered Shares, on the terms aforementioned, in proportion to their Pro-Rata Ratio, provided, however, that no Accepting Shareholders shall be entitled or shall be forced to acquire under the provisions of this Article 25 more than the number of Offered Shares initially accepted by such Accepting Shareholder under its Shareholders Acceptance, and upon the allocation to such Accepting Shareholder of the full number of Offered Shares so accepted, such Accepting Shareholder shall be disregarded in any subsequent computations and allocations hereunder. Any Offered Shares remaining after the computation of such respective entitlements shall be re-allocated among the remaining Accepting Shareholders (other than those to be disregarded as aforesaid), in the same manner, until 100% (one hundred percent) of the Offered Shares have been allocated as aforesaid.

25.4. If the Major Shareholders do not offer to purchase all or more than the Offered Shares, then none of the Accepting Shareholders shall be entitled to acquire the Offered Shares, and the Transferor, at the expiration of the aforementioned fourteen (14) day period, shall be entitled to Transfer all (but not less than all) of the Offered Shares to the proposed transferee(s) identified in the Offer; provided, that in no event shall the Transferor Transfer any of the Offered Shares to any transferee other than such proposed transferee(s) or Transfer the same on terms more favorable to the transferee(s) than those stated in the Offer; and provided further, that if the Offered Shares are not Transferred within ninety (90) days after the expiration of such fourteen (14) day period (the "**Sale Period**"), then they shall again be subject to the provisions of this Article 25.

25.5. The Transferor shall be bound, upon payment of the purchase amount in consideration for the shares underlying the Offer, to Transfer to the Accepting Shareholders the Offered Shares which have been allocated to the Accepting Shareholders, pursuant to this Article 25. If, after becoming so bound, the Transferor defaults in Transferring the Offered Shares, the Company may receive the purchase price therefor and the Transferor shall be deemed to have appointed any member of the Board as his agent to execute a Transfer of the Offered Shares to the Accepting Shareholders, and, upon execution of such Transfer, the Company shall hold the purchase price therefor in trust for the Transferor.

25.6. If the offer to Shareholders under this Article 25 may, in the opinion of the Company's counsel, constitute an offer to the public under applicable laws or regulations which is subject to prospectus requirements or otherwise may reasonably be expected to constitute a breach or violation of applicable securities laws or regulations then such offer shall be limited to the type of offerees the offering to which is exempted from such prospectus requirement or who provide appropriate certificates or representations as may be required under applicable securities laws.

25.7. A Major Shareholder's right of first refusal under this Article 25 may be assigned to its Permitted Transferees.

25.8. Notwithstanding anything herein to the contrary, the provisions of Article 25 shall not apply to the transfer of shares from one Founder to another Founder pursuant to agreements or arrangements among the Founders in case of, or in connection with, the termination of engagement of a Founder with the Company.

25.9. In accordance with the provisions of Article 23.5~~23.5~~, this Article 25~~25~~ shall apply also to Transfer of warrants, any other debt or securities of the Company or any rights to acquire any such warrants, debt or securities of the Company, unless otherwise determined by the Board.

25.10. In accordance with the provisions of Article 23.5~~23.5~~ -23.6~~23.6~~, this Article 25~~25~~ shall also apply to any Transfer of an Award and any grant of any interest in any Award to, or creation in any way of any direct or indirect interest in any Award by, any party other than such recipient of an Award in accordance with the Plan, unless otherwise determined by the Board.

25A. Any Transferor who shall have failed to take any action in the manner required to take action as set forth in Article 25, as the case may be, shall be deemed to have given an exclusive and irrevocable proxy and power of attorney to such person as shall be designated by the Board to (i) where an Offer was not provided in accordance with the provisions of Article 25, as the case may be, provide such Offer on such Transferor's behalf; (ii) execute and deliver on such Transferor's behalf any and all documents to effect the Offer as shall be deemed necessary by the person so designated by the Board, at the Board's sole and absolute discretion, including, without limitation, a deed of transfer of shares or any other instrument of transfer, and (iii) at the closing of the Offer, Transfer all such Transferor's shares or other securities to the respective purchasers, pursuant to Article 25, as the case may be; in each case, if and to the extent such Transferor fails for any reason to take the applicable action, when and as required by the Board to effect the Offer. The irrevocable proxies and powers of attorney set forth in this Article 25A shall be valid and in full force and effect for the purposesof this Article 25A. Each Shareholder recognizes and accepts that any powers granted to the person designated by the Board as set forth in this Article 25 are granted in order to ensure and protect the rights ofthe other Shareholders and that therefore, such powers, upon exercise thereof, shall be irrevocable with respectto such matter or action executed or taken by the Board with such powers.

**26. Reserved.**

27. The right of first refusal set forth in Article 25 shall not apply to Transfers of securities (i) from a Shareholder to the Permitted Transferees of such Shareholder, and from such Permitted Transferee back to the original Shareholder or to another Permitted Transferee of the original Shareholder, provided in each case that such transfer is made pursuant to a transaction in which no consideration is actually paid for the transferred securities, or (ii) in accordance with Article 28 (including a Transfer pursuant to Section 341 of the Companies Law).

26A. **Limitations on Holdings**

Notwithstanding anything to the contrary provided herein, except in connection with a Deemed Liquidation, no Shareholder shall acquire shares in the Company, whether directly from the Company or from another Shareholder, that will result in such acquiring Shareholder (together with its Permitted Transferees) holding in the aggregate immediately following such acquisition more than 40% of the share capital of the Company on an as converted and fully diluted basis voting power represented by the then issued and outstanding shares of the Company (on an as-converted basis) (the "**Maximum Percentage**"), unless such a transaction is approved by the holders of at least a majority of the then issued share capital of the Company, on an as-converted basis, (disregarding (both in numerator and denominator) shares held by such acquiring Shareholder, or any of their Permitted Transferees) (the "**Shareholders Approval**").

**28. Bring Along**

28.1. Notwithstanding Articles 24 and 25 above and without limitation of any provision of applicable Law, in the event that prior to an IPO, Shareholders holding more than 50% of the Company's issued and outstanding and voting Shares, on an as-converted basis, voting together as a single class, including the affirmative consent of at least 2 Founders, provided however that if a Founder is no longer engaged by the Company or holds less than 5% of the Company's issued and outstanding share capital and voting Shares, on an as-converted basis, the consent of such Founder shall not be required and the threshold of 2 Founders indicated above shall be deemed to require one of the remaining Founders in lieu of two, (the "**Selling Shareholders**" and "**Sale Approval Threshold**", respectively) accept and/or approve a bona fide offer from a potential buyer (the "**Buyer**") to effect, in a single transaction or series of related transactions, an M&A Event (other than pursuant to clause (iii) of the definition thereof) (the "**Proposed Transaction**"), then each Shareholder shall (i) vote all shares of the Company then held or controlled by such Shareholder or over which such Shareholder then holds voting power (in person, by proxy or by way of an action by written consent, as applicable): (A) in favor of or to approve such Proposed Transaction and any matter determined by the Board or Selling Shareholders in connection with such Proposed Transaction, and (B) against any matter determined by the Board or the Selling Shareholders, including against any proposal for any recapitalization, merger, sale of shares or assets or other M&A Event (other than the Proposed Transaction) between the Company and/or its Shareholders and any person or entity (other than the Buyer) or any other action, transaction or agreement that would result in a breach of any covenant, representation or warranty or any other obligation or agreement of the Company under the definitive agreement(s) related to such Proposed Transaction, or which could result in any of the conditions to the Company's obligations under such agreement(s) not being fulfilled, or that would otherwise impair the ability of the Company or the Shareholders to properly and timely consummate such Proposed Transaction, in each case unless otherwise determined by the Board or the Selling Shareholders; (ii) not challenge, or claim against, the Proposed Transaction, including the terms, validity or binding effect thereof; (iii) execute and cause to be executed all the relevant documents (including without limitation any share transfer deeds, instruments of conveyance and transfer, purchase agreements, merger agreements, escrow agreements, indemnification agreements, shareholders representative appointments, etc.) in connection with, and shall otherwise take all actions necessary and reasonable to effect, such Proposed Transaction as requested by the Board and/or the Selling Shareholders; (iv) not deposit, and cause its Affiliates not to deposit, any shares or securities of the Company owned by such Shareholder or Affiliate in a voting trust or subject any shares or securities of the Company to any arrangement or agreement with respect to the voting of such shares of the Company, unless specifically requested to do so by the Board or the Selling Shareholders in connection with the Proposed Transaction; and (v) if the Proposed Transaction is structured as the sale of all of the shares of the Company to the Buyer (a "**Sale of Shares Transaction**"), then, transfer and deliver, or cause to be sold, transferred or delivered, all its shares or other securities in the Sale of Shares Transaction to the Buyer, free and clear of any liens, claims or encumbrances, on the terms and conditions of the Proposed Transaction.

28.2. The provisions of this Article 28 set forth an independent and distinct arrangement, separate and unrelated to the procedures set forth in Section 341 of the Companies Law, which the Company's Shareholders intend to apply in the circumstances described therein, and any conditions or requirements that are set forth in Section

341 of the Companies Law shall not apply to the arrangements set forth in this Article 28. No Shareholder other than the Selling Shareholders shall be entitled to request the Company, the other Shareholders or any other party to the Proposed Transaction (e.g. the Buyer) to act upon the provisions of Section 341 of the Companies Law and to object to the execution and delivery of any transaction documentation pertaining to the Proposed Transaction. In addition, and without limitation of the foregoing, in the event of a Proposed Transaction, the provisions of Section 341 may also be implemented, without derogating from this Article 28, and in such event the Sale Approval Threshold shall also be deemed as the majority threshold applicable for the purpose of Section 341 of the Companies Law (with no need for a separate vote or consent of each class, if applicable). Additionally, to the extent that the forced sale provisions of Section 341 of the Companies Law are implemented, the Shareholders specifically agree that Section 341 shall be implemented in accordance with the provisions of this Article 28 (such as, the notices, time frames, etc.).

28.3. For purposes of Section 341 of the Companies Law and these Articles, (i) the price, terms and conditions of a Proposed Transaction shall be considered to apply in the same manner as to all Shareholders, and the Shareholders shall be deemed to have been treated equally in the Proposed Transaction, if the application of such price, terms and conditions to the respective shares of the Company held by each Shareholder is made based upon and in accordance with the rights, preferences and privileges conferred upon such shares under these Articles; (ii) any payments made in the Proposed Transaction to Shareholders in their capacity as employees, consultant, creditors or beneficiaries of any bonus, retention or incentive plan or any similar payment or arrangement shall not be deemed to be treated or paid unequally compared to any Shareholders not receiving such additional payments; and (iii) if the consideration to be paid in exchange for the securities to be sold in the Proposed Transaction pursuant to this Article 28 includes any securities and due receipt thereof by any Shareholder would require under applicable law (A) the registration or qualification of such securities or of any person as a broker or dealer or agent with respect to such securities; or (B) the provision to any Shareholder of any information other than such information as a prudent issuer would generally furnishin an offering made solely to "accredited investors", then the Board or the Selling Shareholders may cause tobe paid to any such Shareholder in lieu thereof an amount in cash equal to the fair value (as determined in good faith by the Board or the Selling Shareholders) of the securities which such Shareholder would otherwisereceive as of the date of the issuance of such securities in exchange for the Company's shares, and to that extent such Shareholder shall not be deemed to be treated or paid unequally compared to any other Shareholders.

28.4. In the event that a Shareholder fails to surrender its certificate(s) or any instrument evidencing other security(ies) in connection with the consummation of the Proposed Transaction, such certificate(s) or instrument(s) shall be deemed cancelled and the Company shall be authorized to issue a new certificate or instrument in the name of the Buyer and the Board shall be authorized to establish an escrow account, for the benefit of such Shareholder, as applicable, into which the consideration for such securities represented by such cancelled certificate(s) or instrument(s) shall be deposited and which will be administered by such person as determined by the Company or the Selling Shareholders, until such time as such Shareholder shall surrender its certificate(s) or instrument(s) or otherwise present evidence to the Company's satisfaction that such certificate or instrument was lost, stolen or destroyed and shall otherwise comply with the conditions for release then set by the Board or the Selling Shareholders.

28.5. Any Shareholder who shall have failed to vote or take any action in the manner required to be voted or take action as set forth in Article 28.1 above, shall be deemed to have given an exclusive and irrevocable proxy and power of attorney to such person as shall be designated by the Board or the Selling Shareholders to (i) vote all shares of the Company then held or controlled by such Shareholder or over which such Shareholder then holds voting power, in each case in the manner required to be voted in accordance with Article 28.1 above; (ii) accept on such Shareholder's behalf the Proposed Transaction and any additional obligations applicable to all Shareholders, including, without limitation, escrow and indemnification obligations; (iii) execute and deliver on such Shareholder's behalf any and all documents to effect the Proposed Transaction as shall be deemed necessary by the person so designated by the Board or the Selling Shareholders, in such person's sole and absolute discretion, including, without limitation, a deed of transfer of shares or any other instrument of transfer, and (iv) at the closing of the Proposed Transaction, Transfer all such Shareholder's shares or other

securities to the Buyer; in each case, if and to the extent such Shareholder fails for any reason to vote or take the applicable action, when and as required by the Board or the Selling Shareholders to effect the Proposed Transaction. The irrevocable proxies and powers of attorney set forth in this Article 28 shall be valid and in full force and effect for the purposes of this Article 28 and/or for the purposes of Section 341 of the Companies Law, should it be applicable to such transaction. Each Shareholder recognizes and accepts that any powers granted to the Board and the Selling Shareholders as set forth in this Article 28 are granted in order to ensure and protect the rights of the other Shareholders and that therefore, such powers, upon exercise thereof, shall be irrevocable with respect to such matter or action executed or taken by the Board and/or the Selling Shareholders with such powers.

28.6. In the event that the Sale Approval Threshold is met, any sale or other Transfer of Company's shares by the Shareholders, other than pursuant to the Proposed Transaction, shall be absolutely prohibited until the earlier of the consummation, termination or expiration of such Proposed Transaction, and therefore, shall be deemed null and void.

28.7. Shares delivered and sold pursuant to this Article 28 shall be free and clear of all security interests, and all title thereto, and all rights and privileges of ownership thereof shall immediately be vested in the Buyer.

28.8. Notwithstanding the foregoing, a non-Selling Shareholder will not be required to comply with this Article 28 in connection with any Proposed Transaction, unless:

(a) The proceeds in the Proposed Transaction shall be distributed and allocated among the Shareholders in accordance with the provisions of these Articles (including Article 9 hereof);

(b) Any representations and warranties to be made by such Shareholder in connection with the Proposed Transaction are limited to matters particular to such Shareholder, such as representations and warranties related to authority, ownership and the ability to convey title to such Shareholder's shares of the Company;

(c) Such Shareholder shall not be liable for the inaccuracy of any representation or warranty or for breach of any covenant made by any other person in connection with the Proposed Transaction, other than the Company, in which case the liability of such Shareholder shall be several and not joint (except to the extent that funds may be paid out of escrow or hold-back amounts (or as set off from earn out amounts) established to cover losses arising from breaches by any Shareholder of any identical representations, warranties and covenants provided by all Shareholders);

(d) Such Shareholder's liability shall in no event exceed the amount of consideration paid or otherwise payable (including amounts held in escrow or otherwise held back or earned but not yet paid prior to the indemnity payment date) to such Shareholder in connection with such Proposed Transaction, except with respect to claims related to fraud, willful misrepresentation or willful misconduct by such Shareholder.

(e) Such Shareholder shall not be required to undertake any covenant in connection with the Proposed Transaction limiting the business activities and operations of such Shareholder and/or its Affiliates (other than covenants regarding confidentiality and non-publicity in connection with the completion of the Proposed Transactions).

## TRANSMISSION OF SHARES

**29. <u>Decedent's Shares</u>**

29.1. In case of a share registered in the names of two or more holders, the Company shall recognize the survivor(s) as the sole owner(s) thereof unless and until the provisions of Article 29.2 have been effectively invoked.

29.2. Any person becoming entitled to a share in consequence of the death of any person, upon producing evidence of the grant of probate or letters of administration or declaration of succession shall be registered as a

Shareholder in respect of such share, or may, subject to the regulations as to transfer herein contained, transfer such share.

**30. Receivers and Liquidators**

30.1. The Company may recognize the receiver or liquidator of any Shareholder that is a corporate entity in winding-up or dissolution, or the receiver or trustee in bankruptcy of any Shareholder, as being entitled to the shares registered in the name of such Shareholder.

30.2. The receiver or liquidator of a Shareholder that is a corporate entity in winding-up or dissolution, or the receiver or trustee in bankruptcy of any Shareholder, upon producing such evidence as the Board may deem sufficient that such receiver or liquidator sustains the character in respect of which such receiver or liquidator proposes to act under this Article or of such receiver or liquidator's title, shall with the consent of the Board (which the Board may grant or refuse in its absolute discretion), be registered as a Shareholder in respect of such shares, or may, subject to the regulations as to transfer herein contained, transfer such shares.

## GENERAL MEETINGS

**31. Annual General Meeting**

The Company shall not be required to hold an annual general meeting unless required for the purposes of appointing an auditor or unless one of the Shareholders or Directors requests the Company to hold such a meeting.

**32. Extraordinary General Meetings**

All General Meetings other than the Annual General Meetings shall be called "Extraordinary General Meetings". The Board may, whenever it deems appropriate, convene an Extraordinary General Meeting at such time and place, as may be determined by the Board, and shall be obliged to do so upon a requisition in writing in accordance with Section 63 of the Companies Law.

**33. Notice of General Meetings; Omission to Give Notice; Record Date**

33.1. Not less than seven (7) days' prior notice shall be given of every General Meeting, provided, however, that such notice shall not be delivered more than forty-five (45) days prior to the date fixed for the General Meeting. Each such notice shall specify the place and the day and hour of the meeting and the general nature of each item to be acted upon thereat. Notice shall be given to all Shareholders who would be entitled to attend and vote at such meeting, if it were held on the date when such notice is issued. Anything herein to the contrary notwithstanding, with the consent of all Shareholders entitled to vote thereon, a resolution may be proposed and passed at such meeting although a lesser notice than hereinabove prescribed has been given.

33.2. The accidental inadvertent omission, which results from an oversight, to give notice of a meeting to any Shareholder or the non-receipt of notice sent to such Shareholder, shall not invalidate the proceedings at such meeting.

33.3. Unless otherwise specified in these Articles, the Board shall specify a record date for determining the identity of the Shareholders entitled to receive notices of Shareholders meetings, vote in such meetings and for any other matter with regard to the rights of the Shareholders, including without limitation, the rights with regard to distribution of Dividends.

## PROCEEDINGS AT GENERAL MEETINGS

**34. Quorum**

34.1. Any two or more Shareholders (not in default in payment of any sum referred to in Article 40.1 hereof), present in person, by other means in accordance with Article 34.2 below, or by proxy and holding shares conferring in the aggregate a majority of the voting power of the Company, shall constitute a quorum at General Meetings.

No business shall be transacted at a General Meeting, or at any adjournment thereof, unless the requisite quorum is present when the meeting proceeds to business.

34.2. Shareholders entitled to be present and vote at a General Meeting may participate in a General Meeting by means of audio or video conference or any other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute attendance in person at the meeting.

34.3. If within an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon requisition under Sections 63 or 64 of the Companies Law, shall stand adjourned to the same day in the next week (or the first Business Day thereafter), at the same time and place, or to a later date if so mentioned in the General Meeting's notice. No business shall be transacted at any adjourned meeting except business, which might lawfully have been transacted at the meeting as originally called. At such adjourned meeting, a quorum shall be required in accordance with Article 34.1 above. If an adjourned General Meeting is convened in accordance with this Article 34.3 and a quorum is not present within 30 minutes of the announced time the requisite quorum at such adjourned General Meeting shall be any number of Shareholders present in person or by proxy, or if convened upon requisition under Sections 63 or 64 of the Companies Law, then the requisite quorum at an adjourned General Meeting shall be as set forth in Section 63 of the Companies Law.

**35. <u>Chairman</u>**

The Shareholders present shall choose someone of their number to be chairman of the General Meeting. The office of chairman shall not, by itself, entitle the holder thereof to vote at any General Meeting nor shall it entitle such holder to a second or casting vote (without derogating, however, from the rights of such chairman to vote as a Shareholder or proxy of a Shareholder if, in fact, he is also a Shareholder or such proxy).

**36. <u>Adoption of resolutions at General Meetings</u>**

36.1. A Shareholders resolution shall be deemed adopted if approved by the holders of a majority of the voting power represented at the Shareholders meeting in person or by proxy and voting thereon.

36.2. Every question submitted to a General Meeting shall be decided by a show of hands, but if a written ballot is demanded by any Shareholder present in person or by proxy and entitled to vote at the meeting, the same shall be decided by such ballot. A written ballot may be demanded before the proposed resolution is voted upon or immediately after the declaration by the chairman of the results of the vote by a show of hands. If a vote by written ballot is taken after such declaration, the results of the vote by a show of hands shall be of no effect, and the proposed resolution shall be decided by such written ballot. The demand for a written ballot may be withdrawn at any time before the same is conducted, in which event another Shareholder may then demand such written ballot. The demand for a written ballot shall not prevent the continuance of the meeting for the transaction of business other than the question on which the written ballot has been demanded.

36.3. A declaration by the chairman of the meeting that a resolution has been carried unanimously, or carried by a particular majority, or lost, and an entry to that effect in the minute book of the Company, shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favor of or against such resolution.

**37. <u>Resolutions in Writing</u>**

A resolution in writing signed by all of the Shareholders then entitled to attend and vote at General Meetings or to which all such Shareholders have given their written consent or their oral consent by telephone or otherwise (provided that a written summary thereof has been approved and signed by the chairman of the meeting), shall be deemed to have been unanimously adopted by a General Meeting duly convened and held.

**38. <u>Power to Adjourn</u>**

38.1. The chairman of a General Meeting at which a quorum is present may, with the consent of the holders of a majority of the voting power represented in person or by proxy and voting on the question of adjournment

(and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting as originally called.

38.2. It shall not be necessary to give any notice of an adjournment, unless the meeting is adjourned for a date which is more than twenty-one (21) days, in which event notice thereof shall be given in the manner required for the meeting as originally called.

**39. Voting Power**

Subject to any provision hereof conferring special rights as to voting, or restricting the right to vote, every Shareholder shall have one vote for each Share held by such Shareholder of record, on every resolution, without regard to whether the vote thereon is conducted by a show of hands, by written ballot or by any othermeans.

**40. Voting Rights**

40.1. No Shareholder shall be entitled to vote at any General Meeting (or be counted as a part of the quorum thereat), unless all calls and other sums then payable by such Shareholder in respect of such Shareholder's shares in the Company have been paid.

40.2. A company or other corporate body being a Shareholder of the Company may authorize any person to be its representative at any meeting of the Company. Any person so authorized shall be entitled to exercise on behalf of such Shareholder all the power, which the latter could have exercised if it were an individual Shareholder. Upon the request of the Chairman of the meeting, a written evidence of such authorization (in form acceptable to the Chairman) shall be delivered by such Shareholder to the Chairman.

40.3. Any Shareholder entitled to vote may vote either personally or by proxy (who need not be a Shareholder of the Company), or, if the Shareholder is a company or other corporate body, by a representative authorized pursuant to Article 40.2.

40.4. If two or more persons are registered as joint holders of any share, the vote of the senior who tenders a vote, in person or by proxy, shall be accepted to the exclusion of the vote(s) of the other joint holder(s); and for this purpose seniority shall be determined by the orders in which the names stand in the Register of Shareholders.

40.5. An objection to the right of a Shareholder or a proxy to vote in a General Meeting must be raised at such meeting or at such adjourned meeting wherein that person was supposed to vote, and every vote not disqualified at such a meeting shall be valid for each and every matter. The chairman of the meeting shall decide whether to accept or reject any objection raised at the appropriate time with regard to the vote of a Shareholder or proxy, and chairman's decision shall be final.

40.6. A Shareholder of unsound mind, or in respect of whom an order to that effect has been made by any court having jurisdiction, may vote, whether on a show of hands or by a count of votes, only through such Shareholder's legal guardian or such other person, appointed by the aforesaid court, who performs the function of a representative or guardian. Such representative, guardian, or other person may vote by proxy.

## PROXIES

**41. Instrument of Appointment**

41.1. The instrument appointing a proxy shall be in writing and shall be substantially in the following form or in any usual or common form or in such other form as may be approved by the Board. It shall be duly signed by the appointer or the appointer's duly authorized attorney or, if such appointer is a company or other corporate body, under its common seal or stamp by its duly authorized agent(s) or attorney(s):

"I_____________________of_______________being a Shareholder of Papaya Gaming Ltd. (the "**Company**") hereby appoint_____________of____________or, failing him, ______________of______________as my proxy to vote for me and on my behalf at the annual or extraordinary or adjourned (as the case may be) General Meeting of theCompany, to be held on the_____day of________and at any adjournment thereof.

IN WITNESS WHEREOF, I affix my signature this____day of________,___."

41.2. The instrument appointing a proxy (and the power of attorney or other authority, if any, under which such instrument has been signed) shall either be delivered to the Company (at its Office, or at its principal place of business or at such place as the Board may specify) not less than forty-eight (48) hours prior to the time fixed for the meeting at which the person named in the instrument proposes to vote or presented to the chairman at such meeting.

**42. Effect of Death of Appointer or Revocation of Appointment**

A vote cast pursuant to an instrument appointing a proxy shall be valid notwithstanding the previous death of the appointing Shareholder (or of such Shareholder's attorney-in-fact, if any, who signed such instrument), or the revocation of the appointment or the transfer of the share(s) in respect of which the vote is cast, provided no written intimation of such death, revocation or transfer shall have been received by the Company or by the chairman of the meeting before such vote is cast and provided, further, that the appointing Shareholder, if present in person at said meeting, may revoke the appointment by means of a writing, oral notification to the chairman, or otherwise.

## BOARD

**43. Powers of Board**

43.1. In addition to all powers and authorities of the Board as specified in the Companies Law, the determination of the Company's policy, and the supervision of the CEO and the Company's officers shall be vested in the Board. In addition, the Board may exercise all such powers and do all such acts and things as the Company is authorized to exercise and do and are not hereby or by law required to be exercised or done by the Company in General Meeting or by the Chief Executive Officer of the Company (the "**CEO**") under the CEO's express or residual authority. The authority conferred on the Board by this Article 43.1 shall be subject to the provisions of the Companies Law, these Articles and any regulation or resolution consistent with these Articles adopted from time to time by the Company in General Meeting, provided, however, that no such regulation or resolution shall invalidate any prior act done by or pursuant to a decision of the Board which would have been valid if such regulation or resolution had not been adopted.

43.2. Subject to Article 82.1(g), the Board may from time to time, in its discretion, cause the Company to borrow or secure the payment of any sum or sums of money for the purposes of the Company, and may secure or provide for the repayment of such sum or sums in such manner, at such times and upon such terms and conditions in all respects as it deems appropriate, and, in particular, by the issuance of bonds, perpetual or redeemable debentures, or any mortgages, charges, or other securities on the undertaking or the whole or any part of the property of the Company, both present and future, including its uncalled or called but unpaid capital for the time being.

43.3. The Board may, from time to time, set aside any amount(s) out of the profits of the Company as a reserve or reserves for any purpose(s) which the Board, in its absolute discretion, shall deem appropriate, and may invest any sum so set aside in any manner and from time to time deal with and vary such investments, and dispose of all or any part thereof, and employ any such reserve or any part thereof in the business of the Company without being bound to keep the same separate from other assets of the Company, and may subdivide or re-

43.4. designate any reserve or cancel the same or apply the funds therein for another purpose, all as the Board may from time to time deem appropriate.

**44. Exercise of Powers of Directors; Written resolution**

44.1. A meeting of the Board at which a quorum is present shall be competent to exercise all the authorities, powers and discretion vested in or exercisable by the Board.

44.2. A resolution proposed at any meeting of the Board shall be deemed adopted if approved by a majority of the Directors present when such resolution is put to a vote and voting thereon. Each Director shall have a single vote and no Director, including the Chairman, shall have any casting vote.

44.3. If the number of votes for and against a resolution proposed at any meeting of the Board to approve a related party transaction is equal, such resolution shall be resolved by the General Meeting of the Company.

44.4. A resolution in writing, signed or agreed to in writing, including by facsimile or email transmission (in PDF format or the like, or signed with "DocuSign", e-sign or any similar form of signature by electronic mean) by all of the Directors entitled to participate and vote on the issue at stake, shall be valid for any purpose as a resolution adopted at a Board meeting that was duly convened and held. In place of a Director the aforesaid resolution may be signed and delivered by an Alternate Director. In addition, the Board may reach a resolution without actual meeting, in accordance with the provisions of Section 103 of the Companies Law and subject to the terms provided therein.

**45. Delegation of Powers; Committees**

45.1. The Board may, subject to the provisions of the Companies Law, delegate any or all of its powers to committees, each consisting of two or more members, and it may from time to time revoke such delegation or alter the composition of any such committee. Any Committee so formed (in these Articles referred to as a "**Committee of the Board**"), shall, in the exercise of the powers so delegated, conform to any regulations imposed on it by the Board. The meeting and proceeding of any such Committee of the Board shall be governed, in the relevant changes, by the provisions herein contained for regulating the meetings of the Board, so far as not superseded by any regulations adopted by the Board under this Article. Unless otherwise expressly provided by the Board in delegating powers to a Committee of the Board, such Committee shall not be empowered to further delegate powers.

45.2. The Board may, subject to the provisions of the Companies Law, from time to time appoint a secretary to the Company (the "**Secretary**"), a Treasurer and/or Controller or Chief Financial Officer as well as other officers, personnel and agents, including management companies, for fixed, provisional or special duties, as the Board may deem appropriate, and may terminate the service of any such person. The Board may, subject to the provisions of the Companies Law, determine the powers and duties, as well as the salaries and emoluments, of all such persons, and may require security in such cases and in such amounts as it deems appropriate.

45.3. The Board may from time to time, by power of attorney or otherwise, appoint any person, company, firm or body of persons to be the attorney or attorneys of the Company at law or in fact for such purpose(s) and with such powers, authorities and discretion, and for such period and subject to such conditions, as it deems appropriate, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Board may deem appropriate, and may also authorize any such attorney to delegate all or any of the powers, authorities and discretion vested in such attorney.

**46. Composition of the Board**

46.1. The Board shall consist of a total of up to Five (5) members as follows:

(a) One (1) director shall be appointed, removed or replaced by Mr. Oriel Bachar; Such director shall initially be Mr. Bachar himself;

(b) One (1) director shall be appointed, removed or replaced by Mr. Andrey Birman. Such director shall initially be Mr. Birman himself;

(c) One (1) director shall be appointed, removed or replaced by Mr. Alex Liakhovetsky. Such director shall initially be Mr. Liakhovetsky himself;

(d) For as long as Series Seed Lead Investor holds at least three and a half percent (3.5%) of the Company's issued and outstanding share capital (on an as-converted basis), one (1) director shall be appointed, removed or replaced by the Series Seed Lead Investor (the "**Series Seed LI Director**"). This Article 46.1(d) shall not be amended without the affirmative consent of the Series Seed Lead Investor; and

(e) For as long as NFX holds at least three and a half percent (3.5%) of the Company's issued and outstanding share capital, one (1) director shall be appointed, removed or replaced by NFX. This Article 46.1(e) shall not be amended without the affirmative consent of NFX (the "**NFX Director**", and together with the Series Seed LI Director, the "**Preferred Directors**").

46.2. The Series Seed LI Director shall be entitled, at the Series Seed Lead Investor's discretion, to membership in each Committee of the Board. This Article 46.2 shall not be amended without the affirmative consent of the Series Seed Lead Investor.

46.3. The Founders shall have the right to appoint one (1) non-voting observer to attend all meetings of the Board.

**47. <u>Appointment and Removal of Directors</u>**

The appointment, removal or replacement of a Director, as applicable, as set forth in Article 46, may be effected at any time, including during term of service of a Director, as applicable, by the delivery of a writtennotice to the Company at its Office, signed by the Shareholder or Director entitled to effect such appointmentremoval or replacement (except for the Directors pursuant to Article 46 whose service shall be initially effectedas set forth therein).

**48. <u>Qualification of Directors</u>**

Only persons who are competent to serve as directors in accordance with applicable law shall be appointed to the Board. No person shall be disqualified as a Director by reason of such Director not holding shares in the Company.

**49. <u>Continuing Directors in the Event of Vacancies</u>**

If any member of the Board is not designated or appointed or in the event of one or more vacancies in the Board, the continuing Directors may continue to act in every matter, and, pending the filling of any vacancy pursuant to the provisions of Article 47, may temporarily fill any such vacancy, provided, however, that if their number is less than a majority of the number provided for pursuant to Article 46 hereof, they may only act in an emergency, and may call a General Meeting of the Company for the purpose of electing Directors tofill any or all vacancies, so that at least a majority of the number of Directors provided for pursuant to Article46 hereof are in office as a result of said meeting.

**50. <u>Vacation of Office</u>**

50.1. The office of a Director shall be vacated, *ipso facto*, upon such Director's death, if such Director is found to be legally incompetent, if such Director becomes bankrupt, if the Director is a company, upon its winding-up, if such Director is prevented by applicable law from serving as a Director, or if such Director's directorship expires pursuant to these Articles and/or applicable law.

50.2. The office of the Director shall be vacated by such Director's written resignation. Such resignation shall become effective on the date fixed therein, or upon the delivery thereof to the Company, whichever is later.

**51. Remuneration of Directors**

Following an IPO, a Director may be paid remuneration by the Company for such Director's services as Director, subject to the provisions of the Companies Law.

**52. Conflict of Interests**

Subject to the provisions of the Companies Law and these Articles, the Company may enter into any contract or otherwise transact any business with any Director in which contract or business such Director has a personal interest, directly or indirectly; and may enter into any contract of otherwise transact any business with any third party in which contract or business a Director has a personal interest, directly or indirectly.

**53. Alternate Directors**

53.1. Subject to the provisions of the Companies Law, a Director may, by written notice to the Company, appoint an alternate for such Director (in these Articles referred to as "**Alternate Director**"), remove such Alternate Director and appoint another Alternate Director in place of any Alternate Director appointed by such Director whose office has been vacated for any reason whatsoever. Unless the appointing Director, by the instrument appointing an Alternate Director or by written notice to the Company, limits such appointment to a specified period of time or restricts it to a specified meeting or action of the Board, or otherwise restricts its scope, the appointment shall be for an indefinite period, and for all purposes.

53.2. Any notice given to the Company pursuant to Article 53.1 shall become effective on the date fixed therein, or upon the delivery thereof to the Company, whichever is later.

53.3. An Alternate Director shall have all the rights and obligations of the Director who appointed such Alternate Director, provided, however, that such Alternate Director may not in turn appoint an alternate for himself or herself (unless the instrument appointing such Alternate Director otherwise expressly provides), and provided further that an Alternate Director shall have no standing at any meeting of the Board or any committee thereof while the Director who appointed such Alternate Director is present.

53.4. Any natural person may act as an Alternate Director.

53.5. An Alternate Director shall be responsible for such Alternate Director's own acts and defaults, as provided in the Companies Law.

53.6. The office of an Alternate Director shall be vacated under the circumstances, *mutatis mutandis*, set forth in Article 50 and such office shall *ipso facto* be vacated if the Director who appointed such Alternate Director ceases to be a Director.

## PROCEEDINGS OF THE BOARD

**54. Meetings**

54.1. The Board may meet and adjourn its meetings at such places and otherwise regulate such meetings and proceedings as the Directors deem appropriate. Subject to all of the other provisions of these Articles concerning meetings of the Board, the Board may meet by audio or video conference so long as each Director participating in such call can hear, and be heard by, each other Director participating in such call.

54.2. Any Director may at any time, and the Chairman, upon the request of such Director, shall, convene a meeting of the Board, but not less than five (5) business days' written notice shall be given of any meeting, unless such notice is waived in writing by all of the Directors as to a particular meeting or unless the matters to be discussed

at such meeting is of such urgency and importance that notice ought reasonably to be waived under the circumstances.

**55. Quorum**

55.1. Until otherwise unanimously decided by the Board, a quorum at a meeting of the Board shall be constituted by the presence (in person, via audio or video conference, or by proxy) of the majority of Directors then in office who are lawfully entitled to participate in the meeting.

55.2. If within an hour from the time appointed for the meeting a quorum is not present, the meeting shall stand adjourned at the same place and time 48 hours thereafter (or the first Business Day thereafter, unless the Chairman of the Board has determined that there is such urgency and importance that a shorter period is required under the circumstances). No business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at themeeting as originally called. At such adjourned meeting, a quorum shall be required in accordance with Article
55.1 above. If an adjourned meeting is convened in accordance with this Article 55.2 and a quorum is not present within 30 minutes of the announced time, the requisite quorum at such adjourned meeting shall be any two (2) Directors then in office who are lawfully entitled to participate in the meeting who are present at such adjourned meeting.

**56. Chairman of the Board**

The Board may from time to time elect one of its members to be the Chairman of the Board, remove such Chairman from office and appoint another in its place. The Chairman of the Board shall preside at every meeting of the Board, but if there is no such Chairman, or if at any meeting the Chairman is not present within fifteen (15) minutes of the time fixed for the meeting, or if the Chairman is unwilling to take the chair, the Directors present shall choose one of their number to be the chairman of such meeting. The Chairman of the Board shall preside over meetings of the Board and shall sign the minutes of the meetings. The Chairman of the Board shall not have an additional or casting vote.

**57. Validity of Acts Despite Defects**

Subject to the provisions of the Companies Law, all acts done *bona fide* at any meeting of the Board, or of a Committee of the Board, or by any person(s) acting as Director(s), shall, notwithstanding that it may afterwards be discovered that there was some defect in the appointment of the participants in such meetings or any of them or any person(s) acting as aforesaid, or that they or any of them were disqualified, be as valid as if there were no such defect or disqualification.

## THE CHIEF EXECUTIVE OFFICER

**58. The Chief Executive Officer**

58.1. Subject to the provisions of Article 82.1(k), the Board may from time to time appoint one or more persons, whether or not Directors, as CEO(s) of the Company and may confer upon such person(s), and from time to time modify or revoke, such title(s) (including Chief Executive Officer, Managing Director, General Manager(s), Director General or any similar or dissimilar title) and such duties and authorities of the Board as the Board may deem appropriate, subject to such limitations and restrictions as the Board may from time to time prescribe and subject to the provisions of the Companies Law. Such appointment(s) may be either for a fixed term or without any limitation of time, and the Board may from time to time (subject to the provisions of the Companies Law, and of any contract between any such person and the Company) fix the salaries and emoluments of such person(s), remove or dismiss such person(s) from office and appoint another or others in the place(s) of such person(s).

58.2. Subject to the resolutions of the Company's Board, the management and the operation of the Company's affairs and business in accordance with the policy determined by the Company's Board shall be vested in the CEO,

in addition to all powers and authorities of the CEO, as specified in the Companies Law. Without derogating from the above, all powers of management and executive authorities which were not vested by the Companies Law or by these Articles in another organ of the Company shall be vested in the CEO, subject to the resolutions of the Company's Board.

## MINUTES

**59. Minutes**

59.1. Minutes of each General Meeting and of each meeting of the Board shall be recorded and duly entered in books provided for that purpose. Such minutes shall set forth the names of the persons present at the meeting and all resolutions adopted thereat.

59.2. Any minutes as aforesaid, if purporting to be signed by the Chairman of the meeting or by the Chairman of the next succeeding meeting, shall constitute *prima facie* evidence of the matters recorded therein.

## DIVIDENDS

**60. Declaration of Dividends**

The Board may from time to time declare and cause the Company to pay Dividend, subject to the Companies Law. The Board shall determine the time for payment of such Dividends, and the record date for determining the Shareholders entitled thereto.

**61. Funds Available for Payment of Dividends**

No Dividend shall be paid other than out of the profits of the Company.

**62. Amount Payable by Way of Dividends**

Subject to the rights of the holders of shares with special rights as to Dividends, any Dividend paid by the Company shall be allocated among the Shareholders entitled thereto in proportion to the respective holdings of the shares in respect of which such Dividend is being paid.

**63. Interest**

No Dividend shall carry interest as against the Company.

**64. Payment in Specie**

Upon the declaration of a Dividend in accordance with Article 60, a Dividend may be paid, wholly or partly, by the distribution of specific assets of the Company or by distribution of paid up shares, debentures or debenture stock of the Company or of any other companies, or in any one or more of such ways.

**65. Capitalization of Profits, Reserves, etc.**

Upon approval by the Board, the Company:

(a) may cause any moneys, investments, or other assets forming part of the undivided profits of the Company, standing to the credit of a reserve fund, or to the credit of a reserve fund for the redemption of capital, or in the hands of the Company and available for Dividends, or representing premiums received on the issuance of shares and standing to the credit of the share premium account, to be capitalized and distributed among such of the Shareholders as would be entitled to receive the same if distributed by way of Dividend and in the same proportion, on the footing that they become entitled thereto as capital, or may cause any part of such capitalized fund to be applied on behalf of such Shareholders in paying up in full, either at par or at such premium as the resolution may provide, any

unissued shares or debentures or debenture stock of the Company which shall be distributed accordingly, in payment, in full or in part, of the uncalled liability on any issued share or debentures or debenture stock; and

(b) may cause such distribution or payment to be accepted by such Shareholders in full satisfaction of their interest in the said capitalized sum.

**66.** Implementation of Powers under Articles 64 and 65

For the purpose of giving full effect to any resolution under Articles 64 and 65, the Board may settle any difficulty which may arise in regard to the distribution as it deems expedient, and, in particular, may issue fractional certificates, and may fix the value for distribution of any specific assets, and may determine that cash payments shall be made to any Shareholders upon the footing of the value so fixed, or that fractions of less value than the nominal value of one share may be disregarded in order to adjust the rights of all parties, and may vest any such cash, shares, debentures, debenture stock or specific assets in trustees upon such trusts for the persons entitled to the Dividend or capitalized fund as may seem expedient to the Board. Where requisite under the Companies Law, a proper contract shall be filed, and the Board may appoint any person to sign such contract on behalf of the persons entitled to the Dividend or capitalized fund.

**67. Deductions from Dividends**

The Board may deduct from any Dividend or other moneys payable to any Shareholder in respect of a share any and all sums of money then payable by such Shareholder to the Company on account of calls or otherwise in respect of shares of the Company and/or on account of any other matter of transaction whatsoever.

**68. Retention of Dividends**

68.1. The Board may retain any Dividend or other moneys payable or property distributable in respect of a share on which the Company has a lien and may apply the same in or toward satisfaction of the debts, liabilities, or engagements in respect of which the lien exists.

68.2. The Board may retain any Dividend or other moneys payable or property distributable in respect of a share in respect of which any person is, under Articles 29 or 30, entitled to become a Shareholder, or which any person is, under said Articles, entitled to transfer, until such person shall become a Shareholder in respect of such share or shall transfer the same.

**69. Unclaimed Dividends**

All unclaimed Dividends or other moneys payable in respect of a share may be invested or otherwise made use of by the Board for the benefit of the Company until claimed. The payment by the Directors of any unclaimed Dividend or such other moneys into a separate account shall not constitute the Company a trustee in respect thereof, and any Dividend unclaimed after a period of seven (7) years from the date of declaration of such Dividend, and any such other moneys unclaimed after a like period from the date the same were payable, shall be forfeited and shall revert to the Company, provided, however, that the Board may, at its discretion, cause the Company to pay any such Dividend or such other moneys, or any part thereof, to a person who would have been entitled thereto had the same not reverted to the Company.

**70. Mechanics of Payment**

Any Dividend or other moneys payable in cash in respect of a share may be paid by check or warrant sent through the post to, or by transfer to a bank account specified by such person (or, if two or more persons are registered as joint holders of such share or are entitled jointly thereto in consequence of the death or bankruptcy of the holder or otherwise, to any one of such persons or to such person's bank account), or to such person and at such address as the person entitled thereto may be writing direct. Every such check or warrant shall be made payable to the order of the person to whom it is sent, or to such person as the person entitled thereto as aforesaid

may direct, and payment of the check or warrant by the banker upon whom it is drawn shall be a good discharge to the Company. Every such check or warrant shall be sent at the risk of the person entitled to the money represented thereby.

**71. Receipt from a Joint Holder**

If two or more persons are registered as joint holders of any share, or are entitled jointly thereto in consequence of the death or bankruptcy of the holder or otherwise, any one of them may give effectual receipts for any Dividend or other moneys payable or property distributable in respect of such share.

## ACCOUNTS

**72. Books of Account**

The Board shall cause accurate books of account to be kept in accordance with the provisions of the Companies Law and any other applicable law. Such books of account shall be kept at the Registered Office of the Company, or at such other place or places as the Board may deem appropriate, and they shall always be open to inspection by all Directors. Other than as set forth under Section 185 of the Companies Law, no Shareholder shall have any right to inspect any account or book or other similar document of the Company, except as conferred by law or authorized by the Board, unless such shareholder is a Director. The Company shall make copies of its annual financial statements available for inspection by the Shareholders at the principal offices of the Company.

**73. Audit**

At least once in every fiscal year the accounts of the Company shall be audited and the correctness of the profit and loss account and balance sheet certified by one or more duly qualified auditors.

**74. Auditors**

The appointment, authorities, rights and duties of the Auditor(s) of the Company, shall be regulated by applicable law, provided, however, that in exercising its authority to fix the remuneration of the auditor(s), the Shareholders in a General Meeting may act (and in the absence of any action in connection therewith shall be deemed to have so acted) to authorize the Board to fix such remuneration subject to such criteria or standards, if any, as may be provided in such resolution, and if no such criteria or standards are so provided, such remuneration shall be fixed in an amount commensurate with the volume and nature of the services rendered by such auditor(s).

## RIGHTS OF SIGNATURE AND STAMP

**75. Rights of Signature and Stamp**

75.1. The Board shall be entitled to authorize any person or persons (who need not be Directors) to act and sign on behalf of the Company, and the acts and signature of such person(s) on behalf of the Company shall bind the Company insofar as such person(s) acted and signed within the scope of such person(s) authority.

75.2. Company shall have at least one official stamp.

## NOTICES

**76. Notices**

76.1. Any notice or other document may be served by the Company on any Shareholder, by any of the methods set forth below, to such Shareholder at such Shareholder’s address or other contact details as described in the

Register of Shareholders or such other address or other contact details as such Shareholder may have designated in writing for the receipt of notices and other documents.

76.2. Any notice or other document may be served by any Shareholder upon the Company by tendering the same in person to the Secretary or the CEO of the Company at the principal office of the Company or by sending it by prepaid registered mail (airmail if posted outside Israel) to the Company at its Office.

76.3. Any such notice or other document, shall be deemed to have been served on two (2) business days after it has been posted (seven (7) business days if sent to a place not located on the same continent as the place from where it was posted), or when actually received by the addressee if sooner than two (2) days or seven days, as the case may be, after it has been posted; or when actually tendered in person, to such Shareholder (or to the Secretary or the CEO); or one (1) day upon transmission if it has been sent by facsimile, email or other electronic means with electronic confirmation of delivery (or, if transmitted on a non-business day, upon the first business day after such transmission) or when actually received by such Shareholder (or by the Company), whichever is earlier. If a notice is, in fact, received by the addressee, it shall be deemed to have been duly served, when received, notwithstanding that it was defectively addressed or failed, in some respect, to comply with the provisions of this Article.

76.4. All notices to be given to the Shareholders shall, with respect to any share to which persons are jointly entitled, be given to any one of the joint holders, and any notice so given shall be sufficient notice to the holders of such share.

76.5. Any Shareholder whose address or other contact details were not provided to the Company to be specified in the Register of Shareholders, or who shall not have designated an address or other contact details for the receipt of notices, shall not be entitled to receive any notice from the Company.

## INDEMNITY, INSURANCE AND EXEMPTION

**77. Indemnity**

77.1. Subject to the provisions of the Companies Law including the receipt of all approvals as required therein or under any applicable law, the Company may indemnify an Officer, to the fullest extent permitted by the Companies Law, with respect to any of the following:

(a) A financial liability imposed on the Officer in favor of a third party in any judgment, including any settlement confirmed as judgment and an arbitrator's award which has been confirmed by the court, in respect of an act performed by the Officer by virtue of the Officer being an Officer of the Company; or

(b) Reasonable litigation fees, including attorney's fees, incurred by an Officer due to an investigation or proceeding conducted against the Officer by an authority authorized to conduct such investigation or proceeding, and which concluded without a bill of indictment being filed against the Officer (as defined in Section 260(1a) of the Companies Law), and without a financial obligation being imposed against the Officer in lieu of criminal proceedings, or which concluded without a bill of indictment being filed against the Officer but with financial obligation being imposed in lieu of criminal proceedings (as defined in Section 260(1a) of the Companies Law) for a crime which does not require a finding of criminal intent, all in respect of an act performed by the Officer by virtue of the Officer being an Officer of the Company.

(c) Reasonable legal expenses, including attorney's fees, which the Officer incurred or with which the Officer was charged by a court of law, in a proceeding brought against the Officer, by the Company or by another on behalf of the Company, or in a criminal prosecution in which the Officer was acquitted, or in a criminal prosecution in which the Officer was convicted of an offense that does not require proof

of criminal intent, all in connection with an act performed by the Officer by virtue of the Officer being an Officer of the Company.

(d) Any other event, occurrence, matter or circumstances under any law with respect to which the Company may, or will be able to, indemnify an Officer, and to the extent such law requires the inclusion of a provision permitting such indemnity in these Articles, then such provision is deemed to be included and incorporated herein by reference (including, without limitation, in accordance with Section 56h(b)(1) of the Israeli Securities Law, if applicable, and Section 50P(b)(2) of the RTP Law).

77.2. Subject to the provisions of the Companies Law or any applicable law, the Company may undertake to indemnify an Officer as aforesaid: (i) prospectively, provided that for the purpose of Article 77.1(a) the undertaking is limited to categories of events which in the opinion of the Board can be foreseen when the undertaking to indemnify is given, in view of the Company's current activities at the time and to an amount set by the Board as reasonable under the circumstances, and (ii) retroactively.

**78. <u>Insurance</u>**

78.1. Subject to the provisions of the Companies Law or any applicable law including the receipt of all approvals as required therein or under any applicable law, the Company may procure, for the benefit of any of its Officers, Officers' Liability insurance in respect of an act performed by the Officer by virtue of the Officer being an Officer of the Company, with respect to any of the following:

(a) a breach of the duty of care owed to the Company or any other person;

(b) a breach of the fiduciary duty owed to the Company, provided that the Officer acted in good faith and had reasonable grounds to assume that the action would not injure the Company;

(c) a financial liability imposed on an Officer in favor of a third party; or

(d) any other event, occurrence, matters or circumstances under any law with respect to which the Company may, or will be able to, insure an Officer, and to the extent such law requires the inclusion of a provision permitting such insurance in these Articles, then such provision is deemed to be included and incorporated herein by reference (including, without limitation, in accordance with Section 56h(b)(1) of the Securities Law, if applicable, and Section 50P of the RTP Law).

**79. <u>Exemption</u>**

Subject to the provisions of the Companies Law or any applicable law, the Company may exempt in advance, by a Board resolution, Officers from all or part of their responsibilities for damages due to their violation of their duty of care to the Company. Notwithstanding the foregoing, the Company may not release an Officer from such Officer's duty of care in connection with a Distribution (as such term is defined in the Companies Law).

**80. <u>General</u>**

80.1. Articles 77 through 79 shall not apply under any of the following circumstances:

(a) a breach of an Officer's duty of loyalty, except as specified in Article 78.1(b);

(b) a reckless or intentional violation of an Officer's duty of care, but not if only committed negligently;

(c) an action intended to reap a personal gain illegally; and,

(d) a fine or ransom levied on an Officer.

80.2. The provisions of Articles 77 through 79 above are not intended, and shall not be interpreted, to restrict the Company in any manner in respect of the procurement of insurance and/or in respect of indemnification (i) in

connection with any person who is not an Officer, including, without limitation, any employee, agent, consultant or contractor of the Company who is not an Officer, and/or (ii) in connection with any Officer to the extent that such insurance and/or indemnification is not specifically prohibited under applicable law; provided that the procurement of any such insurance and/or the provision of any such indemnification shall be approved by the Board.

80.3. In any case where insurance of liability of an Officer of the Company or indemnification and exemption of such Officer is prohibited by any applicable law, the Company shall not insure the liability of such Officer of the Company, nor shall it indemnify or exempt such Officer.

80.4. Any amendment to the Companies Law or other applicable law adversely affecting the right of any Officer to be indemnified, insured or exempted pursuant to Articles 77 to 79 shall be prospective in effect, and shall not affect the Company's obligation or ability to indemnify or insure an Officer for any act or omission occurring prior to such amendment, unless otherwise provided by applicable law.

## WINDING UP

**81. Winding Up**

81.1. If the Company be wound up, then, subject to applicable law and to the preference of the Guarantee Preferred Shares under Article 9, the assets of the Company available for distribution among the Shareholders shall be distributed among the holders of Ordinary Shares, *pro rata* to their respective holdings of Ordinary Shares.

81.2. For the avoidance of doubt, the Ordinary A Shares shall not participate in any distribution of assets upon a winding-up of the Company, and the holders of Guarantee Preferred Shares shall not participate in any distribution beyond their entitlements under Article 9.

## MAJOR RESOLUTIONS

**82. Special Majority Requirements**

82.1. All resolutions of the Board or the shareholders, whether adopted in a meeting duly convened or by written consent, shall require the affirmative vote of at least (A) two (2) Founders, in connection with resolution of the Board; or (B) shareholders holding more than fifty percent (50%) of the Company's total issued and outstanding share capital (on an as-converted basis), in each of the following matters, including the affirmative vote of the majority of the Ordinary Shares:

(a) creating any class or series of shares or other securities having rights, preferences or privileges superior to those of the Ordinary Shares;

(b) altering or changing the rights, preferences, or privileges of the Ordinary Shares;

(c) affecting a Recapitalization Event;

(d) affecting any financing, IPO or an M&A event which does not constitute a Qualified Exit Event;

(e) modifying the size of the Board or changing its mandate, powers or the way Directors are being designated, appointed or removed;

(f) declaring or paying any Dividend or distribution to the Shareholders whether in cash or in specie;

(g) creating any mortgage, pledge or other security interest on property of the Company or any of its share capital in an amount above $1,500,000;

(h) affecting a Liquidation of the Company or cessation of all or a substantial part of the business of the Company;

(i) approving or amending the annual budget of the Company, and any deviation of twenty percent (20%)

or more from such approved budgets;

(j) making any loans or advances to directors, officers or employees other than payment of salaries or engagement fees in the ordinary course of business;

(k) appointing and removing the Company's CEO;

(l) adopting and/or changing the signatory rights of the Company;

(m) amending or otherwise modifying the Articles in a way that adversely affects the rights of the Founders; or

(n) approving, affecting, changing or amending any related party transaction, including, without limitation the Founder's Consulting Agreements, excluding increase of service fees in accordance with the terms of the applicable services agreements, by not more than five percent (5%) per year.

82.2. The following resolutions of the Board or the shareholders, whether adopted in a meeting duly convened or by written consent, in which the Board or the shareholders, shall require the affirmative vote of at least (A) a Preferred Director, in connection with resolution of the Board; or (B) NFX or the Series Seed Lead Investor, in connection with resolution of the shareholders:

(a) Removing the Company's CEO; and

(b) sale, assignment or transfer of any material part of the Company's intellectual property to a third party (excluding any subsidiary or parent of the Company);

(c) issuance of new securities to the Founders, in addition to those agreed and/or approved pursuant to the Ordinary SPA and/or the Transaction Documents (as defined in the Series Seed SPA);

(d) acquisition of real estate; and

(e) engaging of a Family Member/s of a Founder by the Company; provided, however, that such resolution shall not be withheld without reasonable grounds to assume that the engagement's terms are not industry standard and/or that such engagement might harm the Company.

**83. Confidentiality.**

(a) In order to protect the interests of the Company in preserving the confidentiality of its non-public information and ensuring that financial, commercial and other proprietary non-public information of the Company is not at risk of disclosure, and to the maximum extent permitted under applicable law, it is acknowledged that the Board may adopt certain guidelines and arrangements for disclosure of the Company's information (as may be determined by the Board in its sole discretion from time to time).

(b) Each Shareholder is hereby deemed to have agreed that any information relating to or obtained from the Company (including, without limitation, any information obtained by such Shareholder pursuant to these Articles) will not be disclosed to any other Person or used for any purpose (other than use in order to evaluate and monitor such Shareholder's investment in or holding of shares of the Company and to enforce such Shareholder's rights, in its capacity as a Shareholder, under any agreement with the Company), without the prior written consent of the Company, unless such information (a) is known or becomes known to the public in general (other than as a result of a breach of the confidentiality obligation owed to the Company by such Shareholder), or (b) is or has been made known or disclosed to such Shareholder by a third party without a confidentiality obligation to the Company, or (c) is required to be disclosed or made known by applicable law, rule or regulation or is required or requested to be disclosed or made known by any regulatory authority, provided that such Shareholder promptly notifies the Company of such requirement or request and takes commercially reasonable steps to minimize the extent of any such required disclosure and to obtain confidential treatment for any information so disclosed. Notwithstanding the foregoing, a Shareholder may disclose confidential or proprietary information (i) to its attorneys and accountants to the extent necessary

to obtain their services in connection with either monitoring such Shareholder's investment in or holding of shares of the Company and/or enforcing its rights, in its capacity as a Shareholder, under any agreement with the Company; or (ii) in a summary form to any Affiliate, partner, member or shareholder of such Shareholder in connection with periodic internal reporting of such Shareholder in the ordinary course of business, provided that the Shareholder takes reasonable steps to minimize the extent of any such required disclosure. Without limiting the foregoing, a Shareholder may disclose such confidential or proprietary information to any bona fide purchaser or prospective purchaser of Company securities from such Shareholder subject to the prior approval by the Company, which shall not be unreasonably withheld, delayed or conditioned, provided that such potential transferee signs and delivers to the Company, prior to such disclosure, a non-disclosure and confidentiality agreement on terms not less favorable to the Company than those contained in this Article and provided further that such potential transferee is not a competitor of the Company nor is it engaged, in whole or in part, in the same area of business as the Company. The provisions of this Article 8383 shall survive and remain binding upon each Shareholder at all times after the date on which such Shareholder no longer holds any shares of, or other interests in, the Company.

***************