**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Papaya Gaming Ltd., *et al.*,[1]<br><br>Debtors in a foreign proceeding. | Chapter 15<br><br>Case No. 26-11217 (MFW)<br><br>(Jointly Administered) |

**DECLARATION OF RAZ REVAH IN SUPPORT OF THE FOREIGN REPRESENTATIVE'S PROPOSED FORM OF RECOGNITION ORDER**

I, Raz Revah, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a citizen of Israel and over the age of 18. I am the Chief Financial Officer of Papaya Gaming Ltd. ("Papaya Israel," and together with Papaya Gaming Inc., "Papaya" or the "Debtors"). I have served in this role since 2024. Consistent with my role as Chief Financial Officer of Papaya Israel, I have knowledge of the Debtors' international cash management system, financial condition, historical and projected cash sources and uses, obligations to vendors, suppliers, employees, customers, tax authorities and other parties, business operations, assets, and books and records. All facts set forth in this declaration are based upon (a) my personal knowledge of the Debtors and their assets and financial condition; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Israeli Proceeding and these chapter 15 cases (the "Chapter 15 Cases"); or (c) information supplied to me by the other officers, directors, employees or professionals retained by the Debtors.

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

2. Although my native language is Hebrew, I am fluent in English and have elected to execute and submit this declaration in English.

3. I understand that the Court held a hearing on October 23, 2026 (the "Hearing"), regarding the *Verified Petition Under Chapter 15 for Recognition of the Israeli Proceeding as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding* (the "Verified Petition")[2] filed by the Foreign Representative in these Chapter 15 Cases. I understand that, at the Hearing, the Court requested further information from the Foreign Representative and the Debtors to inform the Court's order to be entered on the Verified Petition and certain restrictions on the Debtors' respective accounts with banks located in the United States: specifically one account held by Papaya Israel at Silicon Valley Bank, one account held by Papaya Gaming Inc. at Silicon Valley Bank, and one account held by Papaya Gaming Inc. at Capital One (collectively the "U.S. Accounts").

4. I submit this declaration to provide (i) information regarding the Debtors' cash management system and the ordinary course payments that are necessary to be made from the U.S. Accounts in order to support the Debtors' operations, and (ii) historical and projected amounts for such payments, attached hereto as Exhibit A (the "Ordinary Course Vendor Payments Schedule").

5. If I were called upon to testify, I could and would testify competently to the statements set forth herein.

6. The Ordinary Course Vendor Payments Schedule sets forth Papaya's projected disbursements from the U.S. Accounts from October through December 2026, along with the historical disbursements for the past twelve months. The Ordinary Course Vendor Payments Schedule is organized by category of disbursement, the largest of which are payments to suppliers,

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Verified Petition.

including marketing and user acquisition costs and legal fees, followed by payment processor fees and settlements, sales and international tax remittances, and other recurring operating disbursements such as bank fees. Each category reflects amounts Papaya has paid or anticipates paying in the ordinary course of its business during this period.

7. Papaya projects disbursing between $22.9 million and $24.3 million per month from the U.S. Accounts in the ordinary course for the final three months of 2026. The October 2026 forecast is broken out into amounts already disbursed from the U.S. Accounts and remaining amounts projected to be disbursed based on amounts that have already been incurred and are due and owing before the end of the month. The projections for the final two months are a reasonable estimate of the actual costs Papaya will incur based on an analysis of historical practice. These projections reflect materially lower spending than the average of approximately $29.5 million per month for the past twelve months and the disbursements for the same months in 2025.

8. All payments by Papaya remain subject to the Arrangement Administrator's ongoing monitoring, as well as to the Israeli Court's prohibition on payments outside the ordinary course of business. The payments reflected in the Ordinary Course Vendor Payments Schedule are consistent with Papaya's ordinary course operations. They do not include any extraordinary or non-ordinary course payments of any kind.[3] The Ordinary Course Vendor Payments Schedule is also consistent with the budget and financial information for October 2026 that Papaya has submitted to the Israeli Court in connection with the Israeli Proceeding. With respect to payments for marketing and user acquisition, the amounts projected in the Ordinary Course Vendor Payments Schedule for October, November, and December are below Papaya's average spend in that category over the past twelve months.

---

[3] The Ordinary Course Vendor Payments Schedule includes legal expenses driven by the Skillz Litigation, Israeli Proceeding, and these Chapter 15 Cases.

9. Marketing and user acquisition spend ("UA Spend") is the largest single category reflected in the Ordinary Course Vendor Payments Schedule, and its continued and timely funding is critical to Papaya's business. Substantially all UA Spend is incurred as an obligation of Papaya Israel. UA Spend is the lifeblood of Papaya's customer acquisition model: it must be maintained at appropriate levels, or Papaya's user base, and the revenues generated from it, will rapidly and materially decline. A failure to fund UA Spend would therefore cause immediate harm to Papaya's operations. Moreover, I understand that the Debt Arrangement proposed in the Israeli Proceeding will require Papaya to meet certain revenue projections, which are predicated on Papaya's continued investment in user acquisition to drive growth, to avoid default. Thus, the inability to fund UA Spend would also jeopardize compliance with the Debt Arrangement and Papaya's capacity to generate the returns necessary to pay all creditors in full over time. Papaya Israel determines the precise amount and allocation of UA Spend from month to month based on market conditions in order to optimize profitability; these judgments are a key feature of Papaya Israel's business and competitive advantage and are reflected in the Ordinary Course Vendor Payments Schedule.

10. UA Spend is, as a practical matter, very difficult to fund from Papaya's accounts in Israel. Papaya has attempted to establish a means of making UA payments from its Israeli accounts before, but those efforts have proven difficult and costly to implement on the timeline that vendors require. Any further attempt to shift the payment source from U.S. Accounts to Israeli accounts, while technically possible, would be burdensome and meaningfully increase the risk of delays, especially if required to be done on an expedited basis. Timeliness is critical: if payments to UA vendors are not made in full when due, Papaya's ability to market to and acquire customers would be immediately curtailed, causing irreparable harm to the business that could not adequately be

remedied after the fact. Likewise, any interference with Papaya's ability to fund its UA Spend would jeopardize Papaya's ability to meet its obligations under the proposed Debt Arrangement.

11. A number of other categories reflected in the Ordinary Course Vendor Payments Schedule are likewise practically necessary for Papaya to pay from the U.S. Accounts, including payments to payment processors, which must be executed from U.S. bank accounts as a condition of those processors' services, and tax payments to various federal and state government authorities in the United States. In addition, approximately $2 million per month reflected in the Ordinary Course Vendor Payments Schedule is subject to automatic debit arrangements that draw directly from the U.S. Accounts, relating primarily to tax obligations and payment processor fees. These amounts cannot practically be shifted to accounts in Israel without significant time and cost.

12. Papaya operates a complex, multinational cash management system that reflects the complexity of its business and the differing requirements of the numerous jurisdictions and counterparties with which it transacts, and that system processes hundreds of payments each month. Changing years of established payment practice by shifting these disbursements from the U.S. Accounts to accounts in Israel on short notice would disrupt that system and would likely result in delayed payments to key suppliers and vendors, which may in turn cause irreparable harm to Papaya's business relationships and operations.

13. For the foregoing reasons, it is my belief that Papaya's ability to make ordinary course payments from the U.S. Accounts for the items set forth in the Ordinary Course Vendor Payments Schedule is necessary to Papaya's operations and continuing viability. If Papaya were no longer able to make these payments from the U.S. Accounts, the resulting disruption to its cash management system, even if only for a short period of time, would harm its operations in both the

short and long term, and would jeopardize the Debt Arrangement and the recoveries it is intended to deliver to creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 25, 2026

/s/ *Raz Revah*
Raz Revah