**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 15 |
| | ) | |
| PAPAYA GAMING LTD., *et al.*,[1] | ) | Case No. 26-11217 (MFW) |
| | ) | |
| Debtors in a foreign proceeding. | ) | (Jointly Administered) |
| | ) | |
| | ) | Rel. Docs: 4, 107, 108, 122, 123, 136, 137, 142, 143 |
| | ) | |

# ORDER

AND NOW this 26th day of OCTOBER, 2026, upon consideration of the Motion of the Foreign Representative of Papaya Gaming Ltd. and Papaya Gaming Inc. (the "Debtors") for Recognition of their Israeli Proceedings as a Foreign Main Proceeding or, Alternatively, a Foreign Nonmain Proceeding (the "Motion"),[2] the Objection thereto filed by Skillz Platform Inc. ("Skillz"), the testimony and exhibits admitted into evidence at the trial held on October 14-16, 2026, and for the reasons stated on the record at the hearing held this date, it is hereby

ORDERED that the proceeding filed in Israel by Papaya Gaming Ltd. is hereby RECOGNIZED AS A FOREIGN MAIN PROCEEDING pursuant to 11 U.S.C. § 1517; and it is further

ORDERED that the proceeding filed in Israel by Papaya

[1] The Debtors in these Chapter 15 proceedings, together with the last four digits of their business number or employee identification number, as applicable, are: Papaya Gaming Ltd. (2095); and Papaya Gaming Inc. (3649). The location of the Debtors' headquarters and Foreign Representative's contact address is 35 HaMasger St., Tel Aviv-Yaffo 6721407, Israel.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Gaming Inc. is hereby RECOGNIZED AS A FOREIGN NONMAIN PROCEEDING pursuant to 11 U.S.C. § 1517; and it is further

ORDERED that pursuant to 11 U.S.C. §§ 1521 & 1522, until such time as this Court enters an order on any motion seeking recognition and enforcement of a debt arrangement approved in the proceeding filed in Israel by the Debtors or further order from this Court, the Debtors shall not be authorized to make disbursements from any account held at any bank located in the United States which holds funds of either Papaya Gaming Ltd. or Papaya Gaming Inc. (each, a "U.S. Bank" and the accounts in which such funds are held the "U.S. Accounts") except for the following, which shall be authorized subject to the terms of this Order: (i) disbursements from the U.S. Accounts (by wire, ACH, check, or otherwise) solely that are in the ordinary course of business and are with respect to (x) the categories of payments listed in <u>Appendix A</u> attached hereto and incorporated by reference herein and (y) in an aggregate amount, measured each calendar month, not to exceed 115% of the aggregate amounts specified therein for all payments during such calendar month (such disbursements, the "Ordinary Course Payments"), (ii) transfers from any U.S. Account to any other U.S. Account in the ordinary course of the Debtors' business, and (iii) debits from the U.S. Accounts for all undisputed bank and service fees due to U.S. Banks in connection with the U.S. Accounts (the disbursements in the foregoing clauses (i) through (iii), the "Permitted

Disbursements"); and it is further

ORDERED that any U.S. Bank shall be authorized to allow Permitted Disbursements from the U.S. Accounts; and it is further

ORDERED that no disbursement from the U.S. Accounts other than the Permitted Disbursements shall be authorized absent further order of this Court; provided further that any U.S. Bank that relies in good faith on this Order and instructions provided by the Debtors or their representatives in permitting any disbursement shall not be liable to any party for such action; and it is further

ORDERED that, notwithstanding anything else in this Order, no transfer shall be made, directly or indirectly, to any insider (as defined in 11 U.S.C. § 101(31)) of either Debtor, any affiliate (as defined in 11 U.S.C. § 101(2)) of either Debtor, or any affiliate of any such insider; provided that transfers between U.S. Accounts of Papaya Gaming Ltd. and Papaya Gaming Inc. shall be permitted provided that such transfers are in the ordinary course of business and consistent with the Debtors' historical practice; and it is further

ORDERED that, no later than three calendar days prior to any Ordinary Course Payment, the Debtors shall deliver to the Office of the United States Trustee (on a confidential basis) and counsel for Skillz a report (a "Pre-Funding Report") containing transaction data for such Ordinary Course Payment(s)

in a form substantially similar to Appendix A hereto, including the anticipated amount, currency, date, category, and subcategory of the transfer; provided that such information shall be kept by Skillz on an attorneys’ eyes only basis; and it is further

ORDERED that, no later than one calendar day prior to any Ordinary Course Payment, the applicable U.S. Account shall have received from the Debtors’ non-U.S. bank accounts into the applicable U.S. Accounts a pre-funding amount equal to 115% of the anticipated aggregate amount of such Ordinary Course Payment(s); provided that, to the extent an Ordinary Course Payment is made by unforeseen direct debit from a third party that was not subject to pre-funding, the Debtors shall immediately (i) initiate a transfer from any one or more of their non-U.S. bank accounts into the applicable U.S. Accounts in an amount equal to 115% of the amount of such Ordinary Course Payment and (ii) provide written notice to the Office of the United States Trustee (on a confidential basis) and counsel for Skillz of (i) transaction data for such direct debit, including amount, currency, date, recipient, category and subcategory of the debit, (ii) an explanation of any material differences from the information contained in the applicable Pre-Funding Report and the reason the debit was unforeseen, and (iii) the current balances for each U.S. Account; provided that such information shall be kept by Skillz on an attorneys’ eyes only basis; and it

is further

ORDERED that, no later than three Israeli business days following any Ordinary Course Payment, the Debtors shall deliver to the Office of the United States Trustee (on a confidential basis) and counsel for Skillz bank statements covering the period from the last received bank statement through the date of that Ordinary Course Payment, and a report (a "Post-Funding Report"), in a form substantially similar to Appendix A hereto, containing (i) transaction data for all such Ordinary Course Payments, including amount, currency, date, category and subcategory of the transfer, (ii) an explanation of any material differences from the information contained in the applicable Pre-Funding Report, and (iii) the current balances for each U.S. Account; provided that such information shall be kept by Skillz on an attorneys' eyes only basis; and it is further

ORDERED that any U.S. Bank is authorized to continue to accept all incoming deposits into the U.S. Accounts (by wire, ACH, check, or otherwise); and it is further

ORDERED that any U.S. Bank is authorized to rely on the representations of the Debtors without further inquiry as to which disbursements are authorized pursuant to this Order; and it is further

ORDERED that no U.S. Bank shall be deemed in violation of this Order, and no U.S. Bank shall have liability for relying on such representations by the Debtors, without any duty of further

inquiry, or permitting any disbursement that is subject to this Order either (a) at the direction of the Debtors, (b) in the good faith belief that this Court has authorized such disbursement, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures; and it is further

ORDERED that any existing agreements between or among the Debtors, a U.S. Bank, and other parties shall continue to govern the cash management system (including the merchant services and deposit relationship) among the Debtors and such U.S. Bank, and all of the provisions of such agreements, including, without limitation, the termination, reserve provisions, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements (including any provisions requiring the Debtors to reimburse a U.S. Bank for legal fees or expenses incurred by such U.S. Bank on account of this proceeding) shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and each U.S. Bank may, subject to the terms of this Order, without further order of this Court, agree to and implement changes to the Debtors' cash management system and cash management procedures in the ordinary course of business, consistent with historical practices; and it is further

ORDERED that any U.S. Bank is authorized to maintain any existing reserve or collateral arrangements with the Debtors subject to any U.S. Bank's rights to change such reserve or

collateral arrangements from time to time in accordance with the terms and conditions of the documents and agreements governing such banking arrangements with the Debtors; and it is further

ORDERED that each U.S. Bank is hereby granted relief from the automatic stay to the extent necessary to implement and enforce the terms of this Order and each U.S. Bank's rights under the terms and conditions of its agreements with the Debtors, and the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(4), to the extent applicable, is hereby waived; and it is further

ORDERED that counsel of record for the Debtors in this case shall immediately serve a copy of this Order on all banks located in the United States which hold funds of either Papaya Gaming Ltd. or Papaya Gaming Inc.; and it is further

ORDERED that the Foreign Representative and counsel of record for the Debtors in this case shall immediately take all other necessary actions to assure that no funds are transferred out of any U.S. Account, except as set forth in this Order; and it is further

ORDERED that this Order shall not apply to any bank account of Papaya Gaming Ltd. or Papaya Gaming Inc. located in jurisdictions outside of the United States, including Israel; and it is further

ORDERED that the Foreign Representative and counsel of record shall take all necessary actions to assure that payments

from payment servicers doing business with the Debtors in the United States continue to be deposited into one or more of the U.S. Accounts; and it is further

ORDERED that pursuant to 11 U.S.C. §§ 1521 & 1522, until further order of this Court, neither of the Debtors (nor any of their representatives) shall make any changes to the Services Agreement dated February 4, 2023; and it is further

ORDERED that pursuant to 11 U.S.C. §§ 1521 & 1522, until further order of this Court, Papaya Gaming Ltd. shall not enter into any other agreements with any other party covering the services performed by Papaya Gaming Inc. under that Services Agreement; and it is further

ORDERED that, except as otherwise provided in this Order, all relief afforded to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code is granted to Papaya Gaming Ltd. and the Foreign Representative, as applicable, including that sections 361 and 362 of the Bankruptcy Code shall apply with respect to the Papaya Gaming Ltd. and the property of the Papaya Gaming Ltd. that is within the territorial jurisdiction of the United States; and it is further

ORDERED that all entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and his authorized representatives and/or agents, are hereby enjoined pursuant to 1521(a) (as limited under the Bankruptcy Code and this Order, including the limitations

described in sections 362, 1521(d) and (f) thereof), from, among other things:

1. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Debtors, or any of their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors, or any of their assets or proceeds thereof;
2. the enforcement, against the Debtors, or any of their property, of any judgment obtained before the commencement of these Chapter 15 Cases;
3. any act to obtain possession of, exercise control over, or create, perfect, or enforce any lien against, any property of the Debtors;
4. any act to collect, assess, or recover a claim against the Debtors, or any of their property that arose before the commencement of these Chapter 15 Cases;
5. the transfer, relinquishment, or disposal of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code); and
6. terminating or modifying an executory contract or unexpired lease at any time after the commencement of the Israeli Proceeding solely because a provision in such contract or

lease is conditioned upon the commencement of the Israeli Proceeding or a case under the Bankruptcy Code, except as permitted under section 365(e)(2);

provided, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; provided further that nothing herein shall: (i) prevent any entity from filing any claims against the Debtors in the Israeli Proceeding, (ii) prevent any entity from seeking relief from the Israeli Court in the Israeli Proceeding or this Court in these Chapter 15 Cases, as applicable, for relief from the injunctions contained in this Order, (iii) affect or modify the rights of Papaya Customers to engage in any activities on the Papaya Platform, including to fund, use and withdraw cash from their accounts on the Papaya Platform, (iv) affect or modify the rights of any entity in its capacity as an "Excluded Creditor" (as such term is defined in the Debt Arrangement); or (v) affect or modify the rights of any U.S. Bank under the terms and conditions of its agreements with a Debtor, or enjoin a U.S. Bank's rights or ability to enforce its rights and remedies under such agreements, or limit the grant of stay relief to a U.S. Bank as set forth herein; and it is further

ORDERED that section 365(e) of the Bankruptcy Code shall hereby apply with respect to these Chapter 15 Cases and the Debtors' executory contracts and unexpired leases; and it is further

ORDERED that the *Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [Docket No. 39] shall terminate upon entry of this Order; and it is further

ORDERED that this Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief, any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity for relief from the automatic stay or other provisions of this Order that is properly commenced and within the jurisdiction of this Court.

BY THE COURT:

Mary F. Walrath

United States Bankruptcy Judge